# AHMAD KESHAVARZ
*Attorney at Law*

---

16 COURT STREET, #2600  
BROOKLYN, NY 11241

WWW.NEWYORKCONSUMERATTORNEY.COM  
E-mail: ahmad@NewYorkConsumerAttorney.com

Telephone: (718) 522-7900  
Fax: (877) 496-7809

September 30, 2025

**VIA ECF**

Honorable Lara K. Eshkenazi  
United States District Court,  
Eastern District of New York  
225 Cadman Plaza East  
Brooklyn, New York 11201

> **Re: Plaintiff's Opposition to Letter Motion to Stay Discovery of Defendant Renaissance Equity Holdings LLC D, Dkt. No. 30.**
> *Gachelin et al v. Kavulich & Associates, P.C. et al*, 1:25-cv-03127-PKC-LKE

Dear Judge Eshkenazi:

This office represents Plaintiffs Louis Gachelin and Deborah Abrahams in their suit against the debt collection law firm Kavulich & Associates, P.C. and the firm's principal, Gary Kavulich (collectively Kavulich), as well as Hashem Hussein and A & F Process Service, Inc. d/b/a Allied Process Service ("Allied") (collectively "Process Server Defendants"), for their violations of the FDCPA; against a putative creditor and former landlord Renaissance Equity Holdings LLC D ("Renaissance"), Kavulich and the Process Server Defendants for violations New York GBL § 349 and for negligence and gross negligence; and against Kavulich for violating New York Judiciary Law § 487.

Plaintiff files this letter in opposition to the Letter Motion to Stay Discovery Pending Resolution of Motion to Dismiss by Defendant Renaissance, Dkt. 30.

### I.     Introduction and summary of claims.

Louis Gachelin had been a tenant of Renaissance since 2005 when Renaissance, represented by attorney Benjamin Epstein, filed a nonpayment action against him and his wife Deborah Abrahams in housing court in November 2020. The housing court case culminated in a settlement, with Mr. Gachelin and Ms. Abrahams vacating the premises on September 13, 2022 in exchange for Renaissance's "waive[r of] any and all claims it asserted or could have asserted in this action related to [Gachelin's] tenancy, including but not limited to *any claim for rental arrears owed*." (Emphasis added.)

Renaissance, now represented by Kavulich, nevertheless filed suit for the settled rental arrears against Mr. Gachelin and Ms. Abrahams in Kings County Civil Court on June 9, 2023. Renaissance and Kavulich then used a false affidavit of service executed by the Process Server Defendants that allowed Renaissance and Kavulich to fraudulently conceal their suit against Mr. Gachelin and Ms. Abrahams. Mr. Gachelin and Ms. Abrahams only became aware of the lawsuit in 2024, when, oddly, Kavulich filed a lengthy motion to enter default judgment and mailed it to an address where their daughter resided. The daughter received the application for default judgment and, panicked, called her parents in Florida to tell them about the papers, and they rushed to New York. The Defendants forced Mr. Gachelin and Ms. Abrahams, *pro se*, to make

multiple trips from Florida to Kings County Court in attempt to strong-arm and wear them down to sign a judgment and release when Kavulich was repeatedly told by them that the debt was settled in landlord-tenant court. It was only after four trips from Florida to court in Brooklyn that Mr. Gachelin and Ms. Abrahams, *pro se*, were able to defeat the motion to enter default judgment, and to have the suit dismissed with prejudice.

The various Renaissance Equity Holdings LLC entities, lettered Renaissance Equity Holdings A-F, used Kavulich to file collection lawsuits in civil court, filing 181 collection suits in 2023; all but the last eight were filed by Kavulich. In an unrelated lawsuit, Mr. Hussein was subpoenaed to produce his logbooks reflecting service for a period from 2022 to 2023. Critically, in response to the subpoena, Hussein emailed a detailed spreadsheet he stated he received from process serving agency Allied showing service he performed for Allied. These were Allied's own records. The spreadsheet documents impossible or nearly impossible service. For a twelve-month period, from October 3, 2022 to September 25, 2023, Mr. Hussein attempted service of 3,525 lawsuits. Unbelievably, in each and every instance he was successful in service; all service was to a person of suitable age and discretion; and all service was successful on the very first attempt.

## II.   Argument.

"The mere filing of a dispositive motion does not warrant the issuance of a stay under Rule 26(c)." *Hachette Distribution, Inc. v. Hudson County News Co., Inc*., 136 F.R.D. 356, 358 (E.D.N.Y. 1991); *see also Fantastic Graphics Inc. v. Hutchinson*, 2010 WL 475309, * 3 (E.D.N.Y. 2010). Instead Courts look to a number of factors, no one of which is dispositive. *Id*. The burden to show "good cause" is on the party seeking the stay.

Among the other factors are whether all defendants have sought dismissal and whether the party seeking stay may still be a non-party witness if dismissal is granted; the risk of unfair prejudice to the party opposing the stay; and the breadth of discovery and the burden of responding to it; and,. *Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 78 (E.D.N.Y. 2006).

First, this stay should be denied because Renaissance, the only defendant seeking dismissal, would likely still be subject to non-party discovery. *ADL, LLC v. Tirakian*, No. CV2006-5076(SJF) (MDG), 2007 WL 1988751, at *3 (E.D.N.Y. July 5, 2007) (denying motion to stay) ("Given the nature of the allegations against defendants, the moving defendants are important witnesses... Even if the moving defendants are dismissed, the plaintiffs are likely to continue to seek discovery from the moving defendants as non-parties.").

In the case at bar, it is easy to expect the testimony and evidence by Renaissance would differ with Kavulich as to the following key points: why they filed a collection lawsuit against Plaintiffs for a debt that was already settled; what and when Renaissance and Kavulich each knew of the settlement when the collection lawsuit was filed; why they continued to vigorously litigate the collection lawsuit after Plaintiffs (repeatedly) told Kavulich the debt was already settled; and if Kavulich even checked with Renaissance regarding Plaintiffs claims the debt was settled. The consistency of the evidence and testimony provided by Renaissance and Kavulich could be expected to differ sharply on these points, and this evidence is key to Plaintiff's gross negligence claim against Kavulich.

Second, plaintiff will be prejudiced by the stay in at least four ways. The additional passage of time would allow the memories of Renaissance to "fade" – whether truthfully or not –

as to the above issues. Plaintiffs are elderly. Their own memories are likely to fade with the passage of time. They would thus be less able to challenge by memory the eventual testimony and evidence of Renaissance as to the above issues. In addition, Kavulich may invoke an attorney-client privilege as to some of Plaintiff's discovery demands. As that privilege is held by Renaissance, Plaintiff would somehow need to compel Renaissance to justify or withdraw the Kavulich privilege objections even though there is a discovery stay as to Renaissance.

Further, a stay would delay the ability of Plaintiffs to obtain insurance information, coverage or denial letters, or the identification of related Renaissance entities that may be liable for Plaintiffs' damages. For example, property management companies are typically the entity between the property owner and the collection attorney that controls the litigation. The attached article raises issues as to the entity that is the actual the owner and the property management company for the subject building, Renaissance, a related entity, Clipper Realty, or someone else. It is important for all the proper parties be joined into the action immediately as an argument could be made that the statute of limitations as to a related Renaissance entity may not be tolled. Further, whether there is *potential* insurance coverage is something that needs to be established immediately and demands for coverage being made promptly, either by the insured or by Plaintiffs. Over a period of weeks after the filing of this action, an individual claiming to be with an insurance company reached out to the undersigned and indicated there is more than one insurance policy that may be at play and that there were disclaimers of coverage, at least for the policies invoked. It is crucial for this issue to be explored and addressed immediately. Lastly, harm as to Renaissance in being a party to litigation is minimal given its enormous resources and, in any event, pales as to the burden they inflicted on the elderly couple who they wrongfully sued and who are now Plaintiffs in this action.

Third, Renaissance cannot complain about the "burden of responding" to discovery, as discovery has not yet been served. A stay would unfairly prejudice plaintiff, violating the Fed.R.Civ.P. 1 admonition for a "just, speedy, and inexpensive" determination of every action. The parties would likely be able to complete (or nearly complete) fact discovery in the time it would take to fully brief and have a decision rendered on the motion to dismiss.

Fourth, Renaissance has no basis of claiming the delay of a stay would be "brief." In one case cited by Renaissance, motions to dismiss had apparently already been fully briefed when the stay application was pending. HAHA Glob., Inc. v. Barclays, 2020 U.S. Dist. LEXIS 29637, at *3 (S.D.N.Y. Feb. 20, 2020) (stay "would not unfairly prejudice Plaintiff as the motions to dismiss already ***have been filed***…") emphasis added. In the case at bar a hearing on the letter for pre-motion conference has not even been set, much less a briefing schedule set. In my own experience, discovery stays have delayed cases by a year or more.

Fifth, Renaissance vaguely asserts discovery "will likely require disproportionate burdens on Renaissance," citing "potentially extensive discovery into medical histories." However, Renaissance need not request medical records in this action—and, in fact, such a request would be inappropriate where, as here, Plaintiffs allege only garden-variety emotional distress. "In this Circuit, 'courts have held that where a plaintiff seeks damages for 'garden-variety' emotional distress, the plaintiff has not put his medical history in issue, nor has he waived his physician-patient privilege.'" *Misas v. North-Shore Long Island Jewish Health System*, 2016 WL 4082718 at *4 (S.D.N.Y. 2016).

For these reasons, the Court should deny Renaissance's motion to stay discovery.

Respectfully,

/s/

Ahmad Keshavarz

cc: Enclosure