CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS: PART 34

----------------------------------------------------------------X

RENAISSANCE EQUITY HOLDINGS LLC D,

                                    Plaintiff,

        - against -

LOUIS GACHELIN,
DEBORAH H. ABRAHAMS,

                                    Defendants.

----------------------------------------------------------------X

Index No. 10080/23
File No. 31113

**NOTICE OF MOTION**

| | |
|---|---|
| MOTION BY: | Kavulich & Associates, P.C.<br>Attorneys for Plaintiff |
| DATE, TIME AND PLACE<br>OF HEARING: | June 26, 2024<br>9:30 a.m.<br>Motion Term: Part 34, Room 1102<br>Civil Court of the City of New York<br>County of Kings<br>141 Livingston Street<br>Brooklyn, NY 11201 |
| SUPPORTING PAPERS: | Affirmation in Support of Peter J. Oliveri, Esq., dated June 4, 2024, Affirmation in Support of Plaintiff's managing agent, and upon all the papers and proceedings heretofore had herein. |
| RELIEF REQUESTED: | Order, pursuant to CPLR §3215, awarding Plaintiff a default judgment against Defendants Louis Gachelin and Deborah H. Abrahams in the amount of $23,940.39 plus interest from August 1, 2020, costs and disbursements, based upon the Defendants' failure to answer the summons and complaint, and for such other and further relief as this Court may deem just and proper. |

Dated: June 4, 2024

Yours Etc.,

Kavulich & Associates, P.C.
By: Peter J. Oliveri, Esq.
Attorneys for Plaintiff
181 Westchester Ave., Suite 500C
Port Chester, NY 10573
(914) 355-2074

To:    Louis Gachelin
1655 Flatbush Avenue, Apt. C111
Brooklyn, NY 11210
Defendant

Deborah H. Abrahams
1655 Flatbush Avenue, Apt. C111
Brooklyn, NY 11210
Defendant

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS: PART 34

------------------------------------------------------------X

RENAISSANCE EQUITY HOLDINGS LLC D,

                        Plaintiff,

- against -

LOUIS GACHELIN
DEBORAH H. ABRAHAMS,

                        Defendants.

------------------------------------------------------------X

Index No. 10080/23
File No. 31113

**AFFIRMATION**
**IN SUPPORT**

     Peter J. Oliveri, Esq., an attorney duly admitted to practice law before the Courts of the State of New York, hereby affirms the following under the penalty of perjury:

    1.   I am an associate of the law firm of Kavulich & Associates, P.C., attorneys for the Plaintiff, herein. As such, I am fully familiar with the facts and circumstances of the within proceeding except as to those matters stated to be based upon information and belief, and as to those matters, I believe them to be true. The basis of my belief is information furnished to me by my client, information contained within the Court's file and information maintained by your affirmant's office.

    2.   I make this affirmation in support of the Plaintiff's instant motion which seeks a default judgment against Defendants Louis Gachelin and Deborah H. Abrahams in the amount of $23,940.39 plus interest from August 1, 2020 together with costs and disbursements, based upon the Defendants' failure to answer the summons and complaint, and for such other and further relief as this Court may deem just and proper.

    3.   On or about April 27, 2005, Defendant Louis Gachelin entered into a two (2) year written lease agreement for the demised premises located at 3305 Foster Avenue, Apt. 2G, Brooklyn, New York 11203 (the "Premises") with Plaintiff's predecessor, Gateway

Sherman Inc. See Exhibit "1" for the Affirmation in Support of Plaintiff's managing agent, Arnice Steward. See Exhibit "2" for relevant portions of the initial lease.

4.    The term of the initial lease terminated on April 30, 2007. See Exhibit "2."

5.    On October 7, 2005, Plaintiff purchased the building located at 3305 Foster Avenue, Brooklyn, New York 11203, along with all rights and obligations arising out of the leases in effect at that time. See Exhibit "3" for the relevant Deed; see also Exhibit "1."

6.    Thereafter, the parties entered into several renewal leases to extend Defendant's tenancy of the Premises. See Exhibit "1."

7.    Gachelin's wife, Defendant Deborah H. Abrahams, became a co-tenant of record of the Premises in early 2019. See Exhibit "1."

8.    On or about March 1, 2019, Plaintiff and Louis Gachelin and Deborah H. Abrahams (the "Defendants") entered into the latest renewal lease for a term of two (2) years commencing May 1, 2019 and terminating on April 30, 2021. See Exhibit "4" for the lease renewal.

9.    Defendants were obligated to pay monthly rent in the amount of $1,680.87 for the term of the renewal lease. See Exhibit "4."

10.   Defendants failed to remit rent payments due under the terms of the aforesaid lease, and in breach of their obligations thereto. See Exhibit "5" for the tenant ledger.

11.   Defendants remained in possession of the Premises after the term of the lease expired on April 30, 2021. See Exhibit "1."

12.   As of May 1, 2021, Defendants were responsible to remit monthly payments of $1,680.87 for their continued use and occupancy of the Premises. See Exhibit "5"; see also Exhibit "1."

13.     Thereafter, Defendants failed to remit any payments due for their continued use and occupancy of the Premises to Plaintiff. See Exhibit "5"; see also Exhibit "1."

14.     Defendants vacated the Premises on or about September 14, 2022. See Exhibit "1."

15.     On or about January 11, 2023, Plaintiff received LRAP payments in the total amount of $20,170.44 which was payment for rental arrears due for the month of April, 2020, and for the months of September, 2020 through July, 2021, at the monthly rental rate of $1,680.87. See Exhibit "6" for the LRAP confirmation email.

16.     After application of the security deposit and all payments received, Defendants owe the sum of $1,304.67, which represents unpaid rent due for the month of August, 2020 balance of $1,304.67, plus interest from August 1, 2020. See Exhibit "5"; see also Exhibit "1."

17.     Additionally, Defendants owe the sum of $22,635.72, which represents unpaid use and occupancy due for the months of August, 2021 through August, 2022 at the monthly rate of $1,680.87, and for the first fourteen (14) days of September, 2022 prorated balance of $784.41, plus interest from August 1, 2021. See Exhibit "5"; see also Exhibit "1."

18.     Thus, Defendants owe the sum of $23,940.39 in unpaid rent and use and occupancy after application of all payments received and the security deposit, plus interest from August 1, 2020.

19.     On June 27, 2023, Plaintiff commenced the within proceeding against the Defendants by filing a summons and complaint with this Court. See Exhibit "7" for the summons and endorsed complaint.

20.     On July 19, 2023, Defendants were served with the summons and complaint at their residence located at 1655 Flatbush Avenue, Apt. C111, Brooklyn, New York via a person of suitable age and discretion. See Exhibit "8" for the affidavits of service of the summons and complaint.

21.     Thereafter, Defendants failed to serve or file an answer to the summons and complaint upon the Plaintiff, although duly served. See Exhibit "8."

22.     On August 10, 2023, Plaintiff served Defendants with an additional notice of suit. See Exhibit "9" for the Affirmation of Mailing of Additional Notice of Suit.

23.     Upon investigation, it has been determined that the Defendants are not currently in the military service of the United States or the State of New York (National Guard). See Exhibit "10" for the Affirmations of Investigator along with the corresponding Affidavits from the Department of Defense Manpower Data Center.

24.     On a motion for leave to enter a default judgment pursuant to CPLR §3215, the movant is required to submit proof of the facts constituting the claim, proof of service of the summons and complaint, and proof of the defaulting party's default in answering or appearing. See CPLR §3215[f]; Allstate Ins. Co. v Austin, 48 AD3d 720 (2nd Dept. 2008); Atlantic Cas. Ins. Co. v RJNJ Services, Inc, 89 AD3d 649 (2nd Dept. 2011).

25.     Plaintiff's submissions satisfy each of those requirements, and establish its prima facie entitlement to the judgment it seeks.

26.     As Defendants have yet to file an answer to the complaint or otherwise appear in this action, Plaintiff respectfully requests that this Court enter a default judgment against Defendants Louis Gachelin and Defendant Deborah H. Abrahams in the amount of

$23,940.39 plus interest from August 1, 2020, together with the costs and disbursements of this action.

WHEREFORE, Plaintiff respectfully requests that this motion be granted in all respects and for such other and further relief as this Court may deem just and proper.

Dated: June 4, 2024

Kavulich & Associates, P.C.
By: Peter J. Oliveri, Esq.
Attorneys for Plaintiff
181 Westchester Ave., Suite 500C
Port Chester, NY 10573
(914) 355-2074

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS: PART 34
------------------------------------------------------------X
RENAISSANCE EQUITY HOLDINGS LLC D,

Index No. 10080/23
File No. 31113

                                        Plaintiff,

**AFFIRMATION**
**OF SERVICE**

    - against -

LOUIS GACHELIN
DEBORAH H. ABRAHAMS,

                                        Defendant.
------------------------------------------------------------X

      Peter J. Oliveri, Esq., an attorney duly admitted to practice law before the Courts of the State of New York, hereby affirms the following under the penalty of perjury:

      On June 4, 2024, I served the within Motion for Default Judgment upon the Defendants in this action by depositing true and correct copies in post-paid envelopes addressed to:

      Louis Gachelin
      1655 Flatbush Avenue, Apt. C111
      Brooklyn, NY 11233

      Deborah H. Abrahams
      1655 Flatbush Avenue, Apt. C111
      Brooklyn, NY 11233

in an official depository under the exclusive dominion and control of the United States Postal Service within the State of New York via regular first-class mail.

Kavulich & Associates, P.C.
By: Peter J. Oliveri, Esq.
Attorneys for Plaintiff
181 Westchester Ave., Suite 500C
Port Chester, NY 10573
(914) 355-2074

# EXHIBIT 1

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS

Index No. 10080/23
File No. 31113

-----------------------------------------------------------------X

RENAISSANCE EQUITY HOLDINGS LLC D,

**AFFIRMATION IN SUPPORT**

Plaintiff,

- against -

LOUIS GACHELIN
DEBORAH H. ABRAHAMS,

Defendants.

-----------------------------------------------------------------X

Amice Steward, states that:

1.     I am the managing agent of Renaissance Equity Holdings LLC D ("Plaintiff"), and, as such, I am fully familiar with the facts and circumstances of the within proceeding.

2.     I have personal knowledge of Plaintiff's regular business practices and record keeping practices and procedures regarding Plaintiff's leases and renewal leases and tenant ledgers, including electronically transmitted data.

3.     I also have personal knowledge of Plaintiff's procedures for creating and maintaining computer generated tenant ledgers and that Plaintiff's systems used to create and maintain data and to produce tenant ledgers or rent statements are reliable and kept in a good state of repair.

4.     These records were made at or near the time by, or from information provided by, persons with knowledge of the activity and transactions reflected in such records, and were kept in the course of business activity conducted regularly by Plaintiff.

5.     It is in the regular practice of Plaintiff to make and keep these records.

6.     The contents of this Affirmation are based upon my knowledge of Plaintiff's records and a review of the Defendants' tenant file.

7.      On or about April 27, 2005, Defendant Louis Gachelin entered into a two (2) year written lease agreement for the demised premises located at 3305 Foster Avenue, Apt. 2G, Brooklyn, New York 11203 (the "Premises") with Plaintiff's predecessor, Gateway Sherman Inc.

8.      The term of the initial lease terminated on April 30, 2007.

9.      On October 7, 2005, Plaintiff purchased the building located at 3305 Foster Avenue, Brooklyn, New York 11203, along with all rights and obligations arising out of the leases in effect at that time.

10.     Thereafter, the parties entered into several renewal leases to extend Defendant's tenancy of the Premises.

11.     Gachelin's wife, Defendant Deborah H. Abrahams, became a co-tenant of record of the Premises in early 2019.

12.     On or about March 1, 2019, Plaintiff and Louis Gachelin and Deborah H. Abrahams (the "Defendants") entered into the latest renewal lease for a term of two (2) years commencing May 1, 2019 and terminating on April 30, 2021.

13.     Defendants were obligated to pay monthly rent in the amount of $1,680.87 for the term of the renewal lease.

14.     Defendants failed to remit rent payments due under the terms of the aforesaid lease, and in breach of their obligations thereto.

15.     Defendants remained in possession of the Premises after the term of the lease expired on April 30, 2021.

16.     As of May 1, 2021, Defendants were responsible to remit monthly payments of $1,680.87 for their continued use and occupancy of the Premises.

17. Thereafter, Defendants failed to remit any payments due for their continued use and occupancy of the Premises to Plaintiff.

18. Defendants vacated the Premises on or about September 14, 2022.

19. On or about January 11, 2023, Plaintiff received LRAP payments in the total amount of $20,170.44 which was payment for rental arrears due for the month of April, 2020, and for the months of September, 2020 through July, 2021, at the monthly rental rate of $1,680.87.

20. After application of the security deposit and all payments received, Defendants owe the sum of $1,304.67, which represents unpaid rent due for the month of August, 2020 balance of $1,304.67, plus interest from August 1, 2020.

21. Additionally, Defendants owe the sum of $22,635.72, which represents unpaid use and occupancy due for the months of August, 2021 through August, 2022 at the monthly rate of $1,680.87, and for the first fourteen (14) days of September, 2022 prorated balance of $784.41, plus interest from August 1, 2021.

22. Thus, Defendants owe the sum of $23,940.39 in unpaid rent and use and occupancy after application of all payments received and the security deposit, plus interest from August 1, 2020.

23. To date, no part of the aforesaid balance owed to Plaintiff has been satisfied by the Defendants or any other source despite due demand.

24. My attorneys have informed me that the Defendants have not filed an answer to the complaint or otherwise appeared in this action.

25. Accordingly, Plaintiff is entitled to entry of judgment against Defendant Louis Gachelin and Defendant Deborah H. Abrahams in the amount of $23,940.39 plus interest from August 1, 2020, together with the costs and disbursements of this action.

26.     I affirm this 4th day of June, 2024, under the penalties of perjury under the laws of New York, which may include a fine or imprisonment, that the foregoing is true, and I understand that this document may be filed in an action or proceeding in a court of law.

**WHEREFORE,** your affirmant prays that the relief sought herein is granted in all respects and for such other and further relief as this Court may deem just and proper.

Arnice Steward

# EXHIBIT 2

ATTACHED RIDER SETS FORTH RIGHTS AND OBLIGATIONS OF TENANTS AND LANDLORDS UNDER
THE RENT STABILIZATION LAW. (LOS DERECHOS Y RESPONSABILIDADES DE INQUILINOS Y
CASEROS ESTÁN DISPONIBLE EN ESPAÑOL.)

# STANDARD FORM OF APARTMENT LEASE

## NEW YORK STABILIZED LEASE form #A1/88/A

**PREAMBLE:** This lease contains the agreements between You and Owner concerning Your rights and obligations and the rights and obligations of Owner. You and Owner have other rights and obligations which are set forth in government laws and regulations.

You should read this Lease and all its attached parts carefully. If You have any questions, or if You do not understand any words or statements, get clarification. Once You and Owner sign this Lease, You and Owner will be presumed to have read it and understood it. You and Owner admit that all agreements between You and Owner have been written into this Lease. You understand that any agreements made before or after this Lease was signed and not written into it will not be enforceable.

THIS LEASE is made on <u>April 27, 2005</u>
between Owner, <u>Gateway Sherman, Inc. c/o Langsam Property Services Corporation</u>
whose address is <u>1601 Bronxdale Avenue, Bronx, NY  10462</u>
and You, the Tenant, <u>Louis Gachelin</u>
whose address is <u>9014 Ave K, Brooklyn , NY 11236</u> .

1. **APARTMENT AND USE**  Owner agrees to lease to You Apartment <u>2-G</u> in the Building at <u>3305 FOSTER AVENUE, Brooklyn, NY 11203</u>, Borough of Brooklyn, City and State of New York.

   You shall use the Apartment for living purposes only. The Apartment may be occupied by the tenant or tenants named above and by the immediate family of the tenant or tenants and by occupants as defined in and only in accordance with Real Property Law §235-f.

2. **LENGTH OF LEASE**  The term (that means the length) of this Lease is <u>2 years</u>, beginning on <u>May 1, 2005</u> and ending on <u>April 30, 2007</u>. If You do not do everything You agree to do in this Lease, Owner may have the right to end it before the ending date. If Owner does not do everything that Owner agrees to do in this Lease, You may have the right to end the Lease before ending date.

3. **RENT**  Your monthly rent for the Apartment is <u>$1,250.10 (See attached Preferential Rent Rider)</u> until adjusted pursuant to Article 4 below. You must pay Owner the rent, in advance, on the first day of each month, either at the Owner's office or at another place that Owner may inform You of by written notice. You must pay the first month's rent to Owner when You sign this Lease if the lease begins on the first day of the month. If the lease begins after the first day of the month, You must pay when you sign this lease (1) the part of the rent from the beginning date of this Lease until the last day of the month; and (2) the full rent for the next full calendar month. If this Lease is a Renewal Lease, the rent for the first month of this Lease need not be paid until the first day of the month when the renewal term begins.

4. **RENT ADJUSTMENTS**  If this Lease is for a Rent Stabilized apartment, the rent herein shall be adjusted up or down during the Lease term, including retroactively, to conform to the Rent Guidelines. Where Owner, upon application to the State Division of Housing and Community Renewal ("authorized agency") is found to be entitled to an increase in rent or other relief, You and Owner agree: (a) to be bound by such determination; (b) where the authorized agency has granted an increase in rent, You shall pay such increase in the manner set forth by the authorizing agent; and (c) except that in the event than an order is issued increasing the stabilization rent because of Owner hardship, You may, within thirty (30) days of Your receipt of a copy of the order, cancel Your lease on sixty (60) days written notice to Owner. During said period You may continue in occupancy at no increase in rent.

5. **SECURITY DEPOSIT**  You are required to give Owner the sum of <u>$1,081.10</u> when You sign this Lease as a security deposit, which is called in law a trust. Owner will deposit this security in _____ . If the Building contains six or more apartments, the bank account will earn interest. If You carry out all agreements in this Lease, at the end of each calendar year Owner or bank will pay to Owner 1% interest in the deposit for

1

OWNER'S RULES - a part of this lease - see attached page

TO CONFIRM OUR AGREEMENTS, OWNER AND YOU RESPECTIVELY SIGN THIS LEASE AS OF THE DAY AND YEAR FIRST WRITTEN ON PAGE 1.

Witnesses

BY: GATEWAY SHERMAN, INC. C/O LANGSAM PROPERTY SERVICES CORPORATION

_____    _____    _____    _____
(Witness)                  Date      (Owner/Agent)                Date

_____    _____    _____    _____
(Witness)                  Date      Louis Gachello (Tenant)      Date

_____    _____
(Witness)                  Date

## GUARANTY

The undersigned Guarantor guarantees to Owner the strict performance of and observance by Tenants of all the agreements, provisions and rules in the attached Lease. Guarantor agrees to waive all notices when Tenant is not paying rent or not observing and complying with all the provisions of the attached Lease. Guarantor agrees to be equally liable with Tenant so that Owner may sue the Guarantor directly without first suing Tenant. The Guarantor further agrees that his guaranty shall remain in full effect even if the Lease is renewed, changed or extended in any way and even if Owner has to make a claim against Guarantor. Owner and Guarantor agree to waive trial by jury in any action, proceeding or counterclaim brought against the other on any matters concerning the attached Lease or Guaranty.

Dated _____, New York City

_____    _____    _____    _____
(Witness)                  Date      (Guarantor)                 Date

                                     _____
                                     (Address)

Initials

8

# EXHIBIT 3



**NYC DEPARTMENT OF FINANCE**
**OFFICE OF THE CITY REGISTER**

This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document.

2005103000048001002E77A4

## RECORDING AND ENDORSEMENT COVER PAGE

PAGE 1 OF 7

| | | |
|---|---|---|
| Document ID: 2005103000048001 | Document Date: 10-07-2005 | Preparation Date: 10-30-2005 |
| Document Type: DEED | | |
| Document Page Count: 6 | | |

**PRESENTER:**
MADISON TITLE AGENCY, LLC
AS AGENT FOR FIDELITY
1125 OCEAN AVENUE
LAKEWOOD, NJ 08701
212-808-9400
PICKUP

**RETURN TO:**
TROUTMAN SANDERS LLP
405 LEXINGTON AVENUE, 8TH FLOOR
NEW YORK, NY 10174
MTANY-017298C

### PROPERTY DATA

| Borough | Block | Lot | Unit | Address |
|---|---|---|---|---|
| BROOKLYN | 4967 | 40 | Entire Lot | 1351-1355 NEW YORK AVENUE |

Property Type: APARTMENT BUILDING

### CROSS REFERENCE DATA

CRFN_____ or Document ID_____ or _____ Year____ Reel ____ Page____ or File Number_____

### PARTIES

**GRANTOR/SELLER:**
GATEWAY SHERMAN, INC.
300 N. LAKE AVENUE, SUITE 620
PASADENA, CA 91101

**GRANTEE/BUYER:**
RENAISSANCE EQUITY HOLDINGS LLC D
4611 12TH AVENUE, SUITE 1L
BROOKLYN, NY 11219

### FEES AND TAXES

| Mortgage | | | | |
|---|---|---|---|---|
| Mortgage Amount: | $ | 0.00 | Recording Fee: $ | 67.00 |
| Taxable Mortgage Amount: | $ | 0.00 | Affidavit Fee: $ | 0.00 |
| Exemption: | | | NYC Real Property Transfer Tax Filing Fee: | |
| TAXES: County (Basic): | $ | 0.00 | $ | 165.00 |
| City (Additional): | $ | 0.00 | NYS Real Estate Transfer Tax: | |
| Spec (Additional): | $ | 0.00 | $ | 111,624.00 |
| TASF: | $ | 0.00 | | |
| MTA: | $ | 0.00 | | |
| NYCTA: | $ | 0.00 | | |
| Additional MRT: | $ | 0.00 | | |
| TOTAL: | $ | 0.00 | | |

**RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK**
Recorded/Filed        11-04-2005 15:59
City Register File No.(CRFN):
2005000620334

*Annette M Hill*

*City Register Official Signature*

NYC HPD Preliminary Residential Property Transfer Form

18 of 74

## BARGAIN AND SALE DEED WITHOUT

## COVENANT AGAINST GRANTOR'S ACTS

THIS INDENTURE, dated <sub>^as of</sub> October 7, 2005, by GATEWAY SHERMAN, INC., a California corporation, having an address at 300 N. Lake Avenue, Suite 620, Pasadena, California 91101 ("**Grantor**"), to RENAISSANCE EQUITY HOLDINGS LLC D, a New York limited liability company having an address at 4611 12th Avenue, Suite 1L, Brooklyn, NY 11219 ("**Grantee**").

WITNESSETH, that Grantor in consideration of the sum of Ten Dollars ($10.00) and other good and valuable consideration paid by the Grantee, the receipt and sufficiency of which is hereby acknowledged by Grantor, does hereby grant and release and assign forever unto Grantee, and the heirs, successors and assigns of Grantee, those certain plots, pieces or parcels of land situate lying and being in the City of New York, County of Kings, State of New York, known as and by the street addresses of 1351, 1353 and 1355 New York Avenue, 3301, 3303 and 3305 Foster Avenue, 3401, 3403 and 3405 Foster Avenue, 3501, 3503 and 3505 Foster Avenue, Brooklyn, New York, each as more particularly bounded and described in **Exhibit A** attached hereto and made a part hereof (the "**Land**").

**TOGETHER** with all right, title and interest of Grantor in and to any and all buildings and improvements located on the Land (the "**Improvements**");

**TOGETHER** with all right, title and interest, it any, of Grantor in and to any easements, rights of way, privileges, benefits, appurtenances, hereditaments, strips, gaps and gores, and any and all other rights, if any, thereon or in any way pertaining thereto, including, without limitation, any land lying in the bed of any streets and roads abutting the above-described property to the center lines thereof (the foregoing rights, together with the Land and the Improvements being hereinafter referred to, collectively, as the "**Premises**");

**TO HAVE AND TO HOLD** the Premises herein granted, or mentioned and intended so to be, unto Grantee, and the heirs, successors and assigns of Grantee, forever.

**AND** Grantor, in compliance with Section 13 of the Lien Law, covenants that Grantor will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of improvements and will apply the same first to the payment of the cost of improvements before using any part of the total of the same or any other purpose.

[SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, Grantor has duly executed this deed the day and year first above written.

GRANTOR:

GATEWAY SHERMAN, INC.,
  a California corporation

By: _____

  Name:
  Title:                    EARL W. BUEHNER
                 VICE PRESIDENT, ASST. SECRETARY
                        & ASST. TREASURER

State of California )
)  ss:
County of Los Angeles )

On October 3, 2005, before me, Shirley T. Sarkisian, Notary Public, personally
appeared Earl W. Buehner, personally known to me to be the person whose name is
subscribed to the within instrument, and acknowledged to me that he executed the
same in his authorized capacity, and that by his signature on the instrument the
person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_Shirley J. Sarkisian_

Print Notary Name: _____ Shirley T. Sarkisian _____                    [seal]
Notary Public

> SHIRLEY T. SARKISIAN
> Commission # 1583982
> Notary Public - California
> Los Angeles County
> My Comm. Expires Jun 28, 2009

<u>BARGAIN AND SALE DEED WITHOUT</u>

<u>COVENANT AGAINST GRANTOR'S ACTS</u>

GATEWAY SHERMAN, INC.

TO

Block:       Lot:
4967         40

County:      Kings
Addresses:   1351, 1353 and 1355
             New York Avenue,
             3301, 3303 and 3305
             Foster Avenue, 3401,
             3403 and 3405 Foster
             Avenue, 3501, 3503
             and 3505 Foster
             Avenue

**RECORD AND RETURN TO:**

Troutman Sanders LLP
405 Lexington Avenue
(Chrysler Building) 8th Floor
New York, NY  10174_____

_____
_____

Attention: Leonard Grunstein, Esq.

## EXHIBIT A

### Legal Description

**Parcel IV (Block 4967 Lot 40):**

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:

BEGINNING at the corner formed by the intersection of the southerly side of Newkirk Avenue and the easterly side of New York Avenue;

RUNNING THENCE southerly along the easterly side of New York Avenue 430 feet to the northerly side of Foster Avenue;

THENCE easterly along the northerly side of Foster Avenue 720 feet to the westerly side of Brooklyn Avenue;

THENCE northerly along the westerly side of Brooklyn Avenue 197 feet 6 inches;

THENCE westerly parallel with Foster Avenue 200 feet to the easterly side of 35th Street;

THENCE southerly along the easterly side of East 35th Street 20 feet;

THENCE westerly parallel with Foster Avenue and along the southerly side of Victor Road 320 feet to the westerly side of East 34th Street;

THENCE northerly along the westerly side of East 34th Street 252 feet 6 inches to the Southerly side of Newkirk Avenue;

THENCE westerly along the southerly side of Newkirk Avenue 200 feet to the corner, the point or place of BEGINNING.

Such property conveyed subject to the items described on Exhibit B attached hereto and made a part hereof.

## EXHIBIT B

### Title Exceptions

1. Railroad consent recorded in Liber 3463 cp 310.

2. Declaration of covenants, restrictions and easement for right of way contained in instruments recorded in Liber 7500 cp 81.

3. Easements Grants to Consolidated Edison Company of New York, Inc. recorded in Liber 7435 cp 686 and Liber 7435 cp 691.

4. Easement Grant to The Brooklyn Union Gas Company recorded in Liber 7493 cp 601.

5. Letter Agreements (Re: Cable TV Agreements) made by TPT Communications, Inc. to Faymour Development Co., Inc. all dated October 1, 1968 recorded September 9, 1969 in Reel 360 page 710, Reel 360 page 723, Reel 360 page 736, Reel 360 pages 749 and Reel 360 pages 762.

6. Declaration of Easements (Re: Facilities Access Easement) made by Faymor Development Company, Inc. dated as of June 26, 1981 and recorded June 30, 1981 in Reel 1247 page 1280.

7. Terms, covenants and provisions contained in Settlement Agreement dated January 27, 1998 made among Allen I. Gross, et al, a memorandum of which was recorded on April 28, 1998 in Reel 4180 page 213.

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER |  |
|---|---|

2005103000048001002SB925

**SUPPORTING DOCUMENT COVER PAGE**     PAGE 1 OF 1

Document ID: 2005103000048001    Document Date: 10-07-2005    Preparation Date: 10-30-2005
Document Type: DEED

**ASSOCIATED TAX FORM ID: 2005100400548**

**SUPPORTING DOCUMENTS SUBMITTED:**

RP - 5217 REAL PROPERTY TRANSFER REPORT       Page Count 1

**FOR CITY USE ONLY**

| C1. County Code | | C2. Date Deed Recorded | | | |
|---|---|---|---|---|---|
| | | Month | Day | Year | |

| C3. Book OR | |
|---|---|
| C4. Page | |
| C5. CRFN | |

# REAL PROPERTY TRANSFER REPORT
## STATE OF NEW YORK
### STATE BOARD OF REAL PROPERTY SERVICES
# RP - 5217NYC
(Rev 11/2002)

**PROPERTY INFORMATION**

**1. Property Location**
1351-1355 STREET NUMBER    NEW YORK AVENUE STREET NAME    BROOKLYN BOROUGH    11203 ZIP CODE

**2. Buyer Name**
RENAISSANCE EQUITY HOLDINGS LLC D
LAST NAME / COMPANY    FIRST NAME
LAST NAME / COMPANY    FIRST NAME

**3. Tax Billing Address**
Indicate where future Tax Bills are to be sent if other than buyer address (at bottom of form)
LAST NAME / COMPANY    FIRST NAME
STREET NUMBER AND STREET NAME    CITY OR TOWN    STATE    ZIP CODE

**4. Indicate the number of Assessment Roll parcels transferred on the deed**    1  # of Parcels   OR  ☐ Part of a Parcel

4A. Planning Board Approval - N/A for NYC
4B. Agricultural District Notice - N/A for NYC

**5. Deed Property Size**
FRONT FEET  X  DEPTH   OR   ACRES

Check the boxes below as they apply:
6. Ownership Type is Condominium ☐
7. New Construction on Vacant Land ☐

**6. Seller Name**
GATEWAY SHERMAN, INC.
LAST NAME / COMPANY    FIRST NAME
LAST NAME / COMPANY    FIRST NAME

**9. Check the box below which most accurately describes the use of the property at the time of sale:**

| A | One Family Residential | C | ☐ Residential Vacant Land | E | Commercial | G | ☐ Entertainment / Amusement | I | ☐ Industrial |
|---|---|---|---|---|---|---|---|---|---|
| B | ☐ 2 or 3 Family Residential | D | ☐ Non-Residential Vacant Land | F | ☐ Apartment | H | ☐ Community Service | J | ☐ Public Service |

**SALE INFORMATION**

**10. Sale Contract Date**   8 / 4 / 2005   Month Day Year

**11. Date of Sale / Transfer**   10 / 7 / 2005   Month Day Year

**12. Full Sale Price** $   2,7 9 0,5 7 6,9
( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.)  Please round to the nearest whole dollar amount.

**13. Indicate the value of personal property included in the sale**

**14. Check one or more of these conditions as applicable to transfer:**

| A | ☐ Sale Between Relatives or Former Relatives |
|---|---|
| B | ☐ Sale Between Related Companies or Partners in Business |
| C | ☐ One of the Buyers is also a Seller |
| D | ☐ Buyer or Seller is Government Agency or Lending Institution |
| E | ☐ Deed Type not Warranty or Bargain and Sale (Specify Below) |
| F | ☐ Sale of Fractional or Less than Fee Interest ( Specify Below ) |
| G | ☐ Significant Change in Property Between Taxable Status and Sale Dates |
| H | ☐ Sale of Business is Included in Sale Price |
| I | ☐ Other Unusual Factors Affecting Sale Price ( Specify Below ) |
| J | ☑ None |

**ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill**

**15. Building Class**  D 1

**16. Total Assessed Value (of all parcels in transfer)**   5 3 5 5 0 0 0

**17. Borough, Block and Lot / Roll Identifier(s)  ( If more than three, attach sheet with additional Identifier(s) )**

BROOKLYN 4967 40

**CERTIFICATION**   I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and I understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

| BUYER | BUYER'S ATTORNEY |
|---|---|
| BUYER SIGNATURE    DATE | LAST NAME    FIRST NAME |
| STREET NUMBER    STREET NAME  (AFTER SALE) | AREA CODE    TELEPHONE NUMBER |
| | SELLER |
| CITY OR TOWN    STATE    ZIP CODE | SELLER SIGNATURE    DATE |



CERTIFICATION    I certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and understand that the making of any willful false statement of material fact herein will subject me to the provisions of the penal law relative to the making and filing of false instruments.

BUYER                                                    BUYER'S ATTORNEY

BUYER SIGNATURE                          DATE          LAST NAME                         FIRST NAME

STREET NUMBER        STREET NAME (AFTER SALE)          AREA CODE    TELEPHONE NUMBER
                                                                        SELLER

CITY OR TOWN              STATE       ZIP CODE          SELLER SIGNATURE                  DATE

2005100400548201

## SIGNATURE RIDER TO RP-5217NYC

**SELLER:**

GATEWAY SHERMAN, INC.,
a California corporation

By: _____

    Name:            EARL W. BUEHNER
    Title:        VICE PRESIDENT, ASST. SECRETARY
                 & ASST. TREASURER

**BUYER:**

RENAISSANCE EQUITY HOLDINGS LLC D,
a New York Limited Liability Company

By: _____

Name: David Bistricer

Title: Managing Member

# EXHIBIT 4

6. Kings or Brooklyn
f230 d 2G t0002895

## RENEWAL LEASE FORM

Owners and Tenants should read **INSTRUCTIONS TO OWNER and INSTRUCTIONS TO TENANT**
on reverse side before filling out or signing this form

THIS IS A NOTICE FOR RENEWAL OF LEASE AND RENEWAL LEASE FORM ISSUED UNDER SECTION 2523.5(a) OF THE
RENT STABILIZATION CODE. ALL COPIES OF THIS FORM MUST BE SIGNED BELOW AND RETURNED TO YOUR
LANDLORD WITHIN 60 DAYS.

Dated: __January 09, 2019__

Tenant's Name(s) and Address:

LOUIS GACHELIN and DEBORAH H. ABRAMS
3305 FOSTER AVENUE 2G

BROOKLYN, NY            11210

Owner's /Agent's Name and Address:

Renaissance Equity Holdings LLC D
1368 New York Avenue

Brooklyn, NY 11210

1. The owner hereby notifies you that your lease
will expire on:    4  /  30  /  2019

| PART A. OFFER TO TENANT TO RENEW |

2. You may renew this lease, for one or two years, at your option, as follows:

| Column A Renewal Term | Column B Legal Rent on Sept. 30th Preceding Commencement Date of this Renewal Lease | Column C Guideline % or Minimum $ Amount (If unknown, check box and see below)* ☐ | Column D Applicable Guideline Supplement, If any | Column E Lawful Rent Increase, If any, Effective after Sept. 30th | Column F New Legal Rent (If a lower rent is to be charged, check box and see item 5 below )☐ |
|---|---|---|---|---|---|
| 1 Year | $ 1,639.88 | ( 1.50% ) $ 24.59 | $ | $ | $ 1,664.47 |
| 2 Years | Same as above | ( 2.50 % ) $ 40.99 | $ | $ | $ 1,680.87 |

* If applicable guideline rate is unknown at time offer is made check box in column c and enter current guideline which will
be subject to adjustment when rates are ordered.

3. Security Deposit:
Current Deposit: $1,597.01

Additional Deposit Required – 1 year lease: $ 67.46
Additional Deposit Required – 2 year lease: $ 83.86

4. Specify separate charges, if applicable:
   a. Air conditioner : $_____      c. 421a (2.2%): $_____      Total separate charges: $_____
   b. Appliances    : $_____      d. Other:        $_____

5. Lower Rent to be charged, if any.  1 year lease $_____  2 year lease $_____  Agreement attached: Yes ☐  No ☒

6. Tenant shall pay a monthly rent (enter amount from 2F or 5) of $1,664.47  for a 1 year renewal or $1,680.87  for a
2 year renewal, plus total separate charges (enter amount from 4) $_____  for a total monthly payment of
$1,664.47  for a 1 year renewal or $1,680.87  for a 2 year renewal.

7. This renewal lease shall commence on  05/01/2019 , which shall not be less than 90 days nor more than 150
days from the date of mailing or personal delivery of this Renewal Lease Form. This Renewal Lease shall terminate on
04 / 30 / 2020  (1 year lease) or  04 / 30 / 2021  (2 year lease.)

8. This renewal lease is based on the same terms and conditions as your expiring lease. (See instructions about additional provisions.)

9. SCRIE and DRIE.  Owner and Tenant acknowledge that, as of the date of this renewal, Tenant is entitled to pay a reduced monthly
rent in the amount of $_____  under the New York City SCRIE program or the New York City DRIE program. The
reduced rent may be adjusted by orders of such program.

10. Leased premises does ☐, does not ☒ have an operative sprinkler system. If operative, it was last maintained and inspected
on _____

This form becomes a binding lease renewal when signed by the owner below and returned to the tenant. A rider setting forth the
rights and obligations of tenants and owners under the Rent Stabilization Law must be attached to this lease when signed by the
owner and returned to the tenant. The rent, separate charges and total payment provided for in this renewal lease may be increased or
decreased by order or annual updates of the Division of Housing and Community Renewal (DHCR) or the Rent Guidelines Board (RGB).

| PART B. TENANT'S RESPONSE TO OWNER |

Tenant: Check and complete where indicated one of three responses below after reading instructions on reverse side.  Then date and sign
your response below. You must return this Renewal Lease Form to the owner in person or by regular mail, within 60 days of the date this
Notice was served upon you by the owner. Your failure to do so may be grounds for the commencement of an action by the owner to evict
you from your apartment.

☐ I (we), the undersigned Tenant(s), accept the offer of a one (1) year renewal lease at a monthly rent of $ 1,664.47
plus separate charges of $_____  for a total monthly payment of $ 1,664.47

☑ I (we), the undersigned Tenant(s), accept the offer of a two (2) year renewal lease at a monthly rent of $ 1,680.87
plus separate charges of $_____  for a total monthly payment of $ 1,680.87

☐ I (we) will not renew my (our) lease and I (we) intend to vacate the apartment on the expiration date of the present lease.

Dated: C2/19/19     20____
Dated: March 1    20 19

Tenant's Signature(s): _____

Owner's Signature(s): Renee Stevaach
Renaissance Equity Holdings LLC D

RTP-8 (9/14)



**INSTRUCTIONS TO OWNER**

At least two copies of this completed Renewal Lease Form must be mailed to the tenant in occupancy or personally delivered not more than 150 days and not less than 90 days prior to the end of the tenant's lease term.

If the owner offers a Renewal Lease less than 90 days prior to the expiration of the existing lease, the lease term selected by the tenant shall begin at the tenant's option either (1) on the date a renewal lease would have begun had a timely offer been made or (2) on the first rent payment date occurring no less than 90 days after the date that the owner does offer the lease to the tenant. The guidelines rate applicable for such lease shall be no greater than the rate in effect on the commencement date of the lease for which a timely offer should have been made, and the increased rental shall not begin before the first rent payment date occurring no less than 90 days after such offer is made.

The owner must fully complete PART A on the reverse side of this Form explaining how the new rent has been computed. Any rent increase must not exceed the applicable Rent Guidelines Board adjustment(s) plus other adjustments authorized by the Rent Stabilization Code.

Failure to file a current registration for this housing accommodation with DHCR bars the collection of any guidelines increase after such registration should have been filed. This sanction is lifted prospectively upon the filing of a proper registration.

This Renewal Lease must be offered on the same terms and conditions as the expiring lease, except for such additional provisions as are permitted by law or the Rent Stabilization Code which must be set forth by the owner and attached to this Form. If there are any additional lawful agreements between the owner and tenant, a copy signed by both parties must be attached to this Form.

The tenant must return to the owner all copies of this Form, completed and signed by the tenant in PART B on the reverse side of this Form.

The owner must furnish the tenant with a fully executed copy of this Renewal Lease Form bearing the tenant's and owner's signatures in PART B, and a copy of the DHCR New York City Lease Rider, within 30 days of the owner's receipt of this Form signed by the tenant. Service of this fully executed Form, upon the tenant, constitutes a binding renewal lease. If the owner fails to furnish the tenant with a fully executed copy of this Form within 30 days of receipt of the Form signed by the tenant, the tenant shall continue to have all rights afforded by the Rent Stabilization Law and Code, and the owner will be barred from commencing any action or proceeding against the tenant based upon non-renewal of lease.



**INSTRUCTIONS TO TENANT**
(Read Owner's and Tenant's Instructions carefully before completing this Renewal Lease Form)

If you wish to accept this offer to renew your lease, you must complete and sign this Renewal Lease Form in the space provided in PART B on the reverse side of this Form, and you must return all copies of the signed Lease Form to the owner in person or by regular mail within 60 days of the date this Form was served upon you. You may wish to make a copy for your own records. *If you are the recipient of a Senior Citizen Rent Increase Exemption, or a Disability Rent Increase Exemption, your monthly rent is listed in item 9 and you must select a one-or two-year lease, or you will lose this exemption.*

Before you complete and sign PART B and return this Renewal Lease Form, be sure to check that all lawful provisions and written agreements have been attached by the owner to this Form. *Please read all attachments carefully.* If such other lawful provisions appear, they are part of this lease renewal offer and renewal lease. If there are any lawful agreements between you and the owner, attached copies must be signed by both parties.

If you question the Legal Regulated Rent or the rental adjustments specified on the front of this Renewal Lease Form, ask the owner for an explanation. Or, you may telephone the NYS Division of Housing and Community Renewal (DHCR), Office of Rent Administration, at (718) 739-6400, before the end of the 60 day period from the date this Form was served upon you.

If the owner agrees to a rent which is lower than the legal regulated rent, this lower amount should be entered in item 5 on the reverse side of this Form, and a signed copy of the agreement should be attached. You may not change the content of this Renewal Lease Form without the owner's written consent. If a "lower rent" amount is listed in item 5 and such rent is a "preferential rent", upon renewal the owner may increase the rent to the legal rent listed in item 2 plus all subsequent lawful adjustments.

Your acceptance of this offer to renew shall constitute a renewal of the present lease for the term of years and rent accepted, subject to any other lawful changes which appear in writing on the attachments to this Form, and subject also to payment of the new rent and additional security, if any. Such additional security shall be deposited by the owner in the manner provided for on initial occupancy.

If you do not sign and return this Renewal Lease Form at the new rent (which appears in column "F" or item 5 on the reverse side of this Form) in accordance with the instruction, and within the prescribed 60 day period, the owner may have grounds to start proceedings to evict you from your apartment.

You may file a complaint with DHCR, if you have not received a copy of the DHCR Lease Rights Rider with this Renewal Lease Form when signed and returned to you by the owner, or if you do not receive a fully executed copy of this Renewal Lease within 30 days from the owner's receipt of a copy of this Form signed by you.

State of New York
Division of Housing and Community Renewal
Office of Rent Administration/Gertz Plaza
92-31 Union Hall Street
Jamaica, New York 11433
Web Site: www.nyshcr.org

RTP-8 (9/14)



State of New York
Division of Housing and Community Renewal
Office of Rent Administration
Gertz Plaza
92-31 Union Hall Street
Jamaica, New York 11433
Web Site: www.nyshcr.org
Email address: rentinfo@nyshcr.org
Revision Date: March 2016

### New York City LEASE Rider For Rent Stabilized Tenants

**FAILURE BY AN OWNER TO ATTACH A COPY OF THIS RIDER TO THE TENANT'S LEASE WITHOUT CAUSE MAY RESULT IN A FINE OR OTHER SANCTIONS**

NOTICE

This Rider, with this Notice, must be attached to all vacancy and renewal leases for rent stabilized apartments. This Rider was prepared pursuant to Section 26-511(d) of the New York City Rent Stabilization Law.

This Rider must be in a print size larger than the print size of the lease to which the Rider is attached. The following language must appear in bold print upon the face of each lease : **"ATTACHED RIDER SETS FORTH RIGHTS AND OBLIGATIONS OF TENANTS AND LANDLORDS UNDER THE RENT STABILIZATION LAW."**

> **Section 1 (If this is a renewal lease, do not complete section 1, go to section 2)**

If Box A is checked, the owner MUST show how the rental amount provided for in such vacancy lease has been computed above the previous legal regulated rent by completing the following chart. The owner is not entitled to a rent which is more than the legal regulated rent. For additional information see DHCR Fact Sheet #5. In addition, the owner MUST complete the Notice To Tenant Disclosure of Bedbug Infestation History, as required by the NYC Housing Maintenance Code Section 27-2018.1, which is required to be served on the tenant with this Lease Rider.

*ANY INCREASE ABOVE THE PREVIOUS LEGAL REGULATED RENT MUST BE IN ACCORDANCE WITH ADJUSTMENTS PERMITTED BY THE RENT GUIDELINES BOARD AND THE RENT STABILIZATION CODE.*

VACANCY LEASE RENT CALCULATION
Status of Apartment and Last Tenant (Owner to Check Appropriate Box - (A), (B), (C), or (D).)

(A) This apartment was rent stabilized when the last tenant moved out. If the last stabilized tenancy was more than 4 years prior to the signing of this lease see RSC 2526.1(a)(3)(iii) or DHCR Fact Sheet # 5 which may entitle the Owner to additional rent guideline increases over the last stabilized tenancy.

Address: _____  Apt.# _____

1. Previous Legal Regulated Rent                                                      $_____

   (i) Additional Rent Guideline increases, applicable only, if the last stabilized
       tenancy was more than 4 years prior to the signing of this lease.              $_____

2. Statutory Vacancy Increase

   (i) Increase based on (1 year) or (2 year) lease or
       (Preferential Rent Vacancy Limitation). Circle one.        (____%)  $_____

   (ii) Increase based on length of time (8 years or more)
       since last vacancy allowance or if no vacancy allowance
       has been taken, the number of years that the apartment
       has been subject to stabilization.        (0.6% x        of years)  $_____

   (iii) Increase based on low rental amount. If applicable
        complete (a) or (b), but not both.

        (a) Previous legal regulated rent was less than $300 -
            additional $100 increase, enter 100                              $_____

        (b) If the previous legal regulated rent was $300 or more
            but less than $500                               (1)  $100
            the sum of (i) and (ii)                          (2) _____
            (1) minus (2). If less than zero, enter zero     (3) _____

                                Amount from line(3)                          $_____

3. Vacancy Allowance, if permitted by NYC Rent Guidelines Board (____%)  $_____

4. *Guidelines Supplementary Adjustment, if permitted by NYC Rent
   Guidelines Board*                                                         $_____

5.   Individual Apartment Improvements (IAI)

Tenant Request for Documentation

☐   Check the box if you want to request at this time, from the owner, copies of documentation (e.g., bills, invoices, cancelled checks, etc.) that clarify and support the individual apartment improvement(s) cost detailed in this rider. If you do not request it now, you have the lawful right to request it within 60 days of the execution of the lease, by certified mail and the owner must then provide the documentation within 30 days either by certified mail or by personal delivery with a signed acknowledgement receipt by tenant. (Refer to Rider Section 3, Provision 4 - Other Rent Increases, Individual Apartment Improvements.)

*Items*

A.   Bathroom Renovation (check all applicable items)

☐   Complete Renovation (if this box is checked you are not required to check Individual Items)
OR
☐   Individual Items
(Check all applicable items)
☐   Sink
☐   Shower Body
☐   Toilet
☐   Tub
☐   Plumbing
☐   Cabinets
☐   Vanity
☐   Floors and/or Wall Tiles
☐   Other (describe) _____        Total Costs for Parts and Labor        _____

                                        *  Total Rent Increase (1/40th  or 1/60th) _____
                                                                                        (A)

B.   Kitchen Renovation (check all applicable items)

☐   Complete Renovation (if this box is checked you are not required to check Individual Items)
OR
☐   Individual Items
(Check all applicable items)
☐   Sink
☐   Stove
☐   Refrigerator
☐   Dishwasher
☐   Cabinets
☐   Plumbing
☐   Floor and/or Wall Tiles
☐   Countertops
☐   Other (describe) _____        Total Costs for Parts and Labor        _____

                                        *  Total Rent Increase (1/40th  or 1/60th) _____
                                                                                        (B)

C.   Other (check all applicable items)

☐   Doors
☐   Windows
☐   Radiators
☐   Light Fixtures
☐   Electrical Work
☐   Sheetrock
☐   Other (describe) _____        Total Costs for Parts and Labor        _____

                                        *  Total Rent Increase (1/40th or 1/60th) _____
                                                                                        (C)

                                        $ _____
                                        Total IAI Rent Increase
                                        Sum of (A)(B) and (C)

*   1/40th if the building has 35 or fewer units.  1/60th if the building is over 35 units.

6. New Legal Regulated Rent $ _____

*6A. Preferential Rent
(if charged) $ _____     $ _____
                                        (enter 6 or 6A)

7. Air Conditioner Surcharges:                           $ _____

8. Appliance Surcharges (Tenant installed washer, dryer, dishwasher)    $ _____

9. Ancillary Services charged (e.g., garage)             $ _____

10. Other (specify _____)            $ _____

11. New Tenant's Total Payment                           $ _____

*If a "preferential rent" is being charged, please read Provision # 20 of this Rider.

☐ (B) This apartment was Rent Controlled at the time the last tenant moved out. This tenant is the first rent stabilized tenant and the rent agreed to and stated in the lease to which this Rider is attached is $ _____. The owner is entitled to charge a market rent to the first rent stabilized tenant. The first rent charged to the first rent stabilized tenant becomes the initial legal regulated rent for the apartment under the rent stabilization system. However, if the tenant has reason to believe that this rent exceeds a "fair market rent", the tenant may file a "Fair Market Rent Appeal" with DHCR. The owner is required to give the tenant notice, on DHCR Form RR-1, of the right to file such an appeal. The notice must be served by certified mail. A tenant only has 90 days, after such notice was mailed to the tenant by the owner by certified mail, to file an appeal. Otherwise, the rent set forth on the registration form becomes the initial legal regulated rent.

☐ (C) The rent for this apartment is an Initial or Restructured Rent pursuant to a Government Program.
(Specify Program _____)     $ _____

-or-

☐ (D) Other _____              $ _____
(Specify - for example, a market or "first" rent after renovation to an individual apartment where the outer dimensions of the apartment have been substantially altered.)

_____
        Section 2 – This section needs to be completed for vacancy and renewal leases
_____

Lease Rider for the housing accommodation:

3305 FOSTER AVENUE 2G

BROOKLYN, NY 11210
(Print Housing Accommodation's Address and Apartment Number)

Lease Start Date: _____     Lease End Date: _____

Lease Dated: _____ January 09, 2019 _____

- - - - - - - - - -

The tenant named in the lease hereby acknowledges the contemporaneous receipt of the above lease rider for the housing accommodation stated above.

LOUIS GACHELIN
Print Name of Tenant(s)

_____
Signature(s) and Date

Subject to penalties provided by law, the owner of the housing accommodation hereby certifies that the above rider is hereby contemporaneously provided to the tenant with the signing of the lease and the information provided by the owner herein is true and accurate based on its records.

Renaissance Equity Holdings LLC D
Print Name of Owner or Owner's Agent

Onacio, Steward   3/1/2019
Signature and Date

RA-LR1 (7/16)

## Section 3 - PROVISIONS

### INTRODUCTION:

This Rider is issued by the New York State Division of Housing and Community Renewal ("DHCR"), pursuant to the Rent Stabilization Law ("RSL"), and Rent Stabilization Code ("RSC"). It generally informs tenants and owners about their basic rights and responsibilities under the RSL.

This Rider does not contain every rule applicable to rent stabilized apartments. It is only informational and its provisions are not part of and do not modify the lease. However, it must be attached as an addendum to the lease. It does not otherwise replace or modify more exact or complete sections of the RSL, the RSC, any order of DHCR, or any order of the New York City Rent Guidelines Board that govern this tenancy.

The Appendix lists organizations which can provide assistance to tenants and owners who have inquiries, complaints or requests relating to subjects covered in this Rider.

Tenants should keep a copy of this Rider and of any lease they sign.

### 1.  GUIDELINES INCREASES FOR RENEWAL LEASES

The owner is entitled to increase the rent when a tenant renews a lease ("renewal lease"). Each year, effective October 1, the New York City Rent Guidelines Board sets the percentage of maximum permissible increase over the immediately preceding September 30th rent for leases which will begin during the year for which the guidelines order is in effect. The date a lease starts determines which guidelines order applies.

Guidelines orders provide increases for Renewal Leases. The renewing tenant has the choice of the length of the lease. Different percentages are set for rent increases for leases of 1 or 2 years. The guidelines order may incorporate additional provisions, such as a supplementary low-rent adjustment. For additional information see DHCR Fact Sheet #26.

### 2.  VACANCY INCREASES FOR VACANCY LEASES

The owner is entitled to increase the previous legal regulated rent when a new tenant enters into a lease ("vacancy lease"). The legal regulated rent immediately preceding the vacancy may be increased by statutory vacancy increases as follows:

If the vacancy lease is for a term of 2 years, 20% of the previous legal regulated rent; or if the vacancy lease is for a term of 1 year, the increase shall be 20% of the previous legal regulated rent less an amount equal to the difference between:

a) The 2 year renewal lease guideline promulgated by the New York City Rent Guidelines Board ("RGB") applied to the prior legal regulated rent and

b) The 1 year renewal lease guideline promulgated by the RGB applied to the prior legal regulated rent.

The Rent Act of 2015 modified the vacancy allowance that an owner can add to the legal regulated rent when the vacating tenant was paying a preferential rent. If a vacating tenant was paying a preferential rent, the vacancy lease rent increase that can be applied to the vacating tenant's legal rent will be limited to 5% if the last vacancy lease commenced less than two years ago, 10% if less than three years ago, 15% if less than four years ago and 20% if four or more years ago.

Additional increases are available to owners where the legal regulated rent was last increased by a vacancy allowance eight or more years prior to the entering into the subject vacancy lease or if no vacancy allowance has been taken, the number of years that the apartment has been subject to stabilization. Generally, this increase equals 0.6%, multiplied by the prior legal regulated rent, multiplied by the number of years since the last vacancy increase.

If the prior legal regulated rent was less than $300, the total vacancy increase shall be as calculated above, plus an additional $100. If the prior legal regulated rent was at least $300, and no more than $500, in no event shall the total vacancy increase be less than $100.

A RGB order may authorize an additional vacancy "allowance," which is separate from the statutory vacancy increase which an owner may charge. The tenant has the choice of whether the vacancy lease will be for a term of 1 or 2 years.  For additional information, see DHCR Fact Sheets #5 and 26.

Pursuant to the Rent Act of 2011, effective June 24, 2011, owners can charge and collect no more than one (1) vacancy lease rent increase in a calendar year (January 1st through December 31st).

### 3.  SECURITY DEPOSITS

An owner may collect a security deposit no greater than one month's rent. However, if the present tenant moved into the apartment prior to the date the apartment first became rent stabilized, and the owner collected more than one month's rent as security, the owner may continue to retain a security deposit of up to two months' rent for that tenant only. When the rent is increased, the owner may charge an additional amount to bring the security deposit up to the full amount of the increased rent to which the owner is entitled.

A security deposit must be deposited in an interest bearing trust account in a banking organization in New York State. The tenant has the option of applying the interest to the rent, leaving the interest in the bank or receiving the interest annually.  For additional information see DHCR Fact Sheet #9.

## 4. OTHER RENT INCREASES

In addition to guidelines and statutory vacancy increases, the rent may be permanently increased based upon the following:

(A) Individual Apartment Improvements ("IAI") - Where an owner installs a new appliance in, or makes an improvement to an apartment, the owner may be entitled to increase the rent of that apartment for the new appliance or improvement. If an apartment has a tenant in occupancy, the owner can only receive a rent increase for the individual apartment improvement if the tenant consents in writing to pay an increase for the improvement (s). However, if the apartment is vacant, tenant consent is not required.

Pursuant to the Rent Act of 2011, effective September 24, 2011, in buildings that contain more than 35 apartments, the owner can collect a permanent rent increase equal to 1/60th of the cost of the Individual Apartment Improvement (IAI). In buildings that contain 35 apartments or less, the owner can collect a permanent rent increase equal to 1/40th of the cost of the IAI, as had previously been allowed.

For example, if a new dishwasher is installed in a vacant apartment, in a 100-unit building, and the cost is $900, the rent can be increased by $15 (1/60th of $900). The same installation in a 20-unit building would result in a $22.50 rent increase (1/40th of $900). The increase, if taking place on a vacancy, is added to the legal rent after the application of the statutory vacancy increase, not before. (See Fact Sheet # 12 for additional information.)

The Rent Code Amendments of 2014 require that the DHCR Lease Rider offered to vacancy lease tenants contain notification to the tenant of the right to request from the owner by certified mail Individual Apartment Improvements (IAI's) supporting documentation at the time the lease is offered or within 60 days of the execution of the lease. The owner shall provide such documentation within 30 days of that request in person or by certified mail. A tenant who is not provided with that documentation upon demand may file form RA-90 "Tenant's Complaint of Owner's Failure to Renew Lease and/or Failure to Furnish a copy of a Signed Lease" to receive a DHCR Order that directs the furnishing of the IAI supporting documentation. (Refer to Rider Section 1, Individual Apartment Improvements.)

(B) Major Capital Improvements ("MCI") - An owner is permitted a rental increase for building-wide major capital improvements, such as the replacement of a boiler, or new plumbing. The owner must receive approval from DHCR. The Rent Act of 2015 requires DHCR to compute the rent increase based upon an eight-year period of amortization for buildings with 35 or fewer apartments and a nine-year period for buildings with more than 35 apartments. The owner is not required to obtain tenant consent. Tenants are served with a notice of the owner's application and have a right to challenge the MCI application on certain grounds. For additional information see DHCR Fact Sheet #24.

(C) Hardship - An owner may apply to increase the rents of all rent stabilized apartments based on hardship when:
  1. the rents are not sufficient to enable the owner to maintain approximately the same average annual net income for a current three-year period as compared with the annual net income which prevailed on the average over the period 1968 through 1970, or for the first three years of operation if the building was completed since 1968, or for the first three years the owner owned the building if the owner cannot obtain records for the years 1968-1970; or
  2. where the annual gross rental income does not exceed the annual operating expenses by a sum equal to at least 5% of such gross income.

If an application for a rent increase based on a major capital improvement or hardship is granted, the owner may charge the increase during the term of an existing lease only if the lease contains a clause specifically authorizing the owner to do so.

An increase based on a major capital improvement or hardship may not exceed 6% in any 12 month period. Any increase authorized by DHCR which exceeds these annual limitations may be collected in future years.

## 5. RENT REGISTRATION

(A) Initial
An owner must register an apartment's rent and services with DHCR within 90 days from when the apartment first becomes subject to the RSL. To complete the rent registration process, the owner must serve the tenant's copy of the registration statement upon the tenant. The tenant may challenge the correctness of the rental as stated in the registration statement within 90 days of the certified mailing to the tenant of the tenant's copy of the registration statement.

(B) Annual
The annual update to the initial registration must be filed with DHCR by July 31st with information as of April 1st of each year. At the time of such filing, the owner must provide each tenant with the tenant's copy. The rental amounts registered annually are challengeable by the filing with DHCR of a "Tenant's Complaint of Rent Overcharge and/or Excess Security Deposit" (DHCR Form RA-89). In general, the rental history that precedes the 4 year period prior to the filing of the complaint will not be examined. The Rent Code Amendments of 2014 do however, provide for certain exceptions, including histories involving preferential rents.

(C) Penalties
Failure to register shall bar an owner from applying for or collecting any rent increases until such registration has occurred, except for those rent increases which were allowable before the failure to register. However, treble damages will not be imposed against an owner who collects a rent increase, but has not registered where the overcharge results solely because of such owner's failure to file a timely or proper initial or annual registration statement. Where the owner files a late registration statement, any rent increase collected prior to the late registration that would have been lawful except for the failure to timely and properly register will not be found to be an overcharge.

## 6.    RENEWAL LEASES

A tenant has a right to a renewal lease, with certain exceptions (see provision 10 of this Rider, "When An Owner May Refuse To Renew A Lease").

At least 90 days and not more than 150 days before the expiration of a lease, the owner is required to notify the tenant in writing that the lease will soon expire. That notice must also offer the tenant the choice of a 1 or 2 year lease at the permissible guidelines increase. After receiving the notice, the tenant always has 60 days to accept the owner's offer, whether or not the offer is made within the above time period, or even beyond the expiration of the lease term.

Any renewal lease, except for the amount of rent and duration of its term, is required to be on the same terms *and conditions as the expired lease, and a fully executed copy of the same must be provided to the tenant within 30 days from the owner's receipt of the renewal lease or renewal form signed by the tenant.* If the owner does not return a copy of such fully executed Renewal Lease Form to the tenant within 30 days of receiving the signed *renewal lease from the tenant, the tenant is responsible for payment of the new lease rent and may file a "Tenant's Complaint of Owner's Failure to Renew Lease and/or Failure to Furnish a Copy of a Signed Lease"* (DHCR Form RA-90). DHCR shall order the owner to furnish the copy of the renewal lease or form. If the owner does not comply within 20 days of such order, the owner shall not be entitled to collect a rent guidelines increase until the lease or form is provided.

If a tenant wishes to remain in occupancy beyond the expiration of the lease, the tenant may not refuse to sign a proper renewal lease. If the tenant does refuse to sign a proper renewal lease, he or she may be subject to an eviction proceeding.

An owner may add to a renewal lease the following clauses even if such clauses were not included in the tenant's prior lease:

(A)  the rent may be adjusted by the owner on the basis of Rent Guidelines Board or DHCR Orders;

(B)  if the owner or the lease grants permission to sublet or assign, the owner may charge a sublet allowance for a sub-tenant or assignee, provided the prime lease is a renewal lease. However, this sublet allowance may be charged even if such clause is not added to the renewal lease. (Subletting is discussed in provision 9 of this Rider);

(C)  (1) if the building in which the apartment is located is receiving tax benefits pursuant to Section 421-a of the Real Property Tax Law, a clause may be added providing for an annual or other periodic rent increase over the initial rent at an average rate of not more than 2.2 % of the amount of such initial rent per annum not to exceed nine 2.2 percent increases. Such charge shall not become part of the legal regulated rent; however, the cumulative 2.2 percent increases charged prior to the termination of tax benefits may continue to be collected as a separate charge;

(2) provisions for rent increases if authorized under Section 423 of the Real Property Tax Law: a clause may be added to provide for an annual or other periodic rent increase over the legal regulated rent if authorized by Section 423 of the Real Property Tax Law;

(D)  if the Attorney General, pursuant to Section 352-eeee of the General Business Law, has accepted for filing an Eviction Plan to convert the building to cooperative or condominium ownership, a clause may be added providing that the lease may be cancelled upon expiration of a 3-year period after the Plan is declared effective. (The owner must give the tenant at least 90 days notice that the 3-year *period has expired or will be expiring.)*

(E)  if a proceeding based on an Owner's Petition for Decontrol ("OPD") is pending, a clause may be *added providing that the lease will no longer be in effect as of 60 days from the issuance of a DHCR Decontrol Order, or if a Petition for Administrative Review ("PAR") is filed against such order,* 60 days from the issuance of a DHCR order dismissing or denying the PAR, (see provision 17 of this Rider, "Renewal Leases Offered During Pendency of High Income Deregulation Proceedings").

## 7.    RENEWAL LEASE SUCCESSION RIGHTS

In the event that the tenant has permanently vacated the apartment at the time of the renewal lease offer, *family members who have lived with the tenant in the apartment as a primary residence for at least two years immediately prior to such permanent vacating (one year for family members who are senior citizens and disabled* persons), or from the inception of the tenancy or commencement of the relationship, if for less than such periods, are entitled to a renewal lease.

"Family Member" includes the spouse, son, daughter, stepson, stepdaughter, father, mother, stepfather, stepmother, brother, sister, grandfather, grandmother, grandson, granddaughter, father-in-law, mother-in-law, son-in-law or daughter-in-law of the tenant.

"Family member" may also include any other person living with the tenant in the apartment as a primary residence who can prove emotional and financial commitment and interdependence between such person and *the tenant. Examples of evidence which is considered in determining whether such emotional and financial commitment and interdependence existed are set forth in the Rent Stabilization Code.* Renewal lease succession rights are also discussed in detail in DHCR Fact Sheet #30.

8.  SERVICES

Written notification to the owner or managing agent should be given but is NOT required, before filing a decrease in service complaint with DHCR. Owners who have not received prior written notification from the tenant will however, be given additional time to respond to a complaint filed with DHCR. Applications based on a lack of heat or hot water must be accompanied by a report from the appropriate city agency.

All Emergency conditions, do not require prior written notification. These include but are not limited to: vacate order (5 day notification), fire (5 day notification), no water apartment wide, no operable toilet, collapsed or collapsing ceiling or walls, collapsing floor, no heat/hot water apartment wide (violation required), broken or inoperative apartment front door lock, all elevators inoperable, no electricity apartment wide, window to fire escape (does not open), water leak (cascading water, soaking electrical fixtures), window-glass broken (not cracked), broken/unusable fire escapes, air conditioner broken (summer season). Complaints to DHCR on the appropriate DHCR form that cite any of these emergency conditions will be treated as a first priority and will be processed as quickly as possible. It is recommended that tenants use a separate DHCR form for any problematic conditions that are not on this emergency condition list.

Certain conditions, examples of which are set forth in the Rent Stabilization Code, which have only a minimal impact on tenants, do not affect the use and enjoyment of the premises, and may exist despite regular maintenance of services. These conditions do not rise to the level of a failure to maintain required services. The passage of time during which a disputed service was not provided without complaint may be considered in determining whether a condition is de minimis. For this purpose, the passage of 4 years or more will be considered presumptive evidence that the condition is de minimis.

The amount of any rent reduction ordered by DHCR shall be reduced by any credit, abatement or offset in rent which the tenant has received pursuant to Sec. 235-b of the Real Property Law ("Warranty of Habitability") that relates to one or more conditions covered by the DHCR Order. For additional information see DHCR Fact Sheets #3, #14 and #37.

9.  SUBLETTING AND ASSIGNMENT

A tenant has the right to sublet his/her apartment, even if subletting is prohibited in the lease, provided that the tenant complies strictly with the provisions of Real Property Law Section 226-b. Tenants who do not comply with these requirements may be subject to eviction proceedings. Compliance with Section 226-b is not determined by DHCR, but by a court of competent jurisdiction. If a tenant in occupancy under a renewal lease sublets his/her apartment, the owner may charge the tenant, the sublet allowance provided by the NYC Rent Guidelines Board. This charge may be passed on to the sub-tenant. However, upon termination of the sublease, the Legal Regulated Rent shall revert to the Legal Regulated Rent without the sublet allowance. The rent increase is the allowance provided by the NYC Rent Guidelines Board available when the tenant's renewal lease commenced, and it takes effect when the subletting takes place. If a tenant in occupancy under a vacancy lease sublets, the owner is not entitled to any rent increase during the subletting.

A tenant who sublets his/her apartment is entitled to charge the sub-tenant the rent permitted under the Rent Stabilization Law, and may charge a 10% surcharge payable to the tenant only if the apartment sublet is fully furnished with the tenant's furniture. Where the tenant charges the sub-tenant any additional rent above such surcharge and sublet allowance, if applicable, the tenant shall be required to pay to the sub-tenant a penalty of three times the rent overcharge, and may also be required to pay interest and attorney's fees. The tenant may also be subject to an eviction proceeding.

Assignment of Leases

In an assignment, a tenant transfers the entire remainder of his or her lease to another person (the assignee), and gives up all of his/her rights to reoccupy the apartment.

Pursuant to the provisions of Real Property Law Section 226-b, a tenant may not assign his/her lease without the written consent of the owner, unless the lease expressly provides otherwise. If the owner consents to the assignment of the lease, the owner may charge the assignee, a vacancy allowance, the rent the owner could have charged had the renewal lease been a vacancy lease. Such vacancy allowance shall remain part of the Legal Regulated Rent for any subsequent renewal lease. The rent increase is the vacancy allowance available when the tenant's renewal lease commenced and it takes effect when the assignment takes place.

An owner is not required to have reasonable grounds to refuse to consent to the assignment. However, if the owner unreasonably refuses consent, the owner must release the tenant from the remainder of the lease, if the tenant, upon 30 days notice to the owner, requests to be released.

If the owner refuses to consent to an assignment and does have reasonable grounds for withholding consent, the tenant cannot assign and the owner is not required to release the tenant from the lease. For additional information see, DHCR Fact Sheet #7.

10.  WHEN AN OWNER MAY REFUSE TO RENEW A LEASE

As long as a tenant pays the lawful rent to which the owner is entitled, the tenant, except for the specific grounds in the Rent Stabilization Law and Rent Stabilization Code, is entitled to remain in the apartment. An owner may not harass a tenant by engaging in an intentional course of conduct intended to make the tenant move from his/her apartment.

Below are listed some but not all grounds for eviction:

Without DHCR consent, the owner may refuse to renew a lease and bring an eviction action in Civil Court at the expiration of the lease on any of the following grounds:

(A)  the tenant refuses to sign a proper renewal lease offered by the owner;

RA LR1 (3747)

(B) the owner seeks the apartment in good faith for personal use or for the personal use of members of the owner's immediate family;

(C) the building is owned by a hospital, convent, monastery, asylum, public institution, college, school, dormitory or any institution operated exclusively for charitable or educational purposes and the institution requires the apartment for residential or nonresidential use pursuant to its charitable or educational purposes; or

(D) the tenant does not occupy the apartment as his or her primary residence. The owner must notify the tenant in writing at least 90 and not more than 150 days prior to the expiration of the lease term of the owner's intention not to renew the lease.

With DHCR consent, the owner may refuse to renew a lease upon any of the following grounds:

(A) the owner seeks in good faith to recover possession of the apartment for the purpose of demolishing the building and constructing a new building; or

(B) the owner requires the apartment or the land for the owner's own use in connection with a business *which the owner owns and operates.*

A tenant will be served with a copy of the owner's application and has a right to object. If the owner's *application is granted,* the owner may bring an eviction action in Civil Court.

## 11.   EVICTION WHILE THE LEASE IS IN EFFECT

The owner may bring an action in Civil Court to evict a tenant during the term of the lease for the grounds stated in the Rent Stabilization Law and Rent Stabilization Code.

Below are listed some but not all grounds for eviction:

(A) does not pay rent;

(B) is violating a substantial obligation of the tenancy;

(C) is committing or permitting a nuisance;

(D) is illegally using or occupying the apartment;

(E) has unreasonably refused the owner access to the apartment for the purpose of making necessary repairs or improvements required by law or authorized by DHCR, or for the purpose of inspection or showing. The tenant must be given at least 5 days notice of any such inspection or showing, to be arranged at the mutual convenience of the tenant and owner, so to enable the tenant to be present at the inspection or showing. A tenant cannot be required to permit access for inspection or showing if such requirement would be contrary to the lease; or

(F) is occupying an apartment located in a cooperative or condominium pursuant to an Eviction Plan. *(See subdivision (D) of provision 7 of this Rider, "Renewal Leases".)* A non-purchasing tenant pursuant to a Non-Eviction Plan may not be evicted, except on the grounds set forth in (A) - (E) above.

Tenants are cautioned that causing violations of health, safety, or sanitation standards of housing maintenance laws, or permitting such violations by a member of the family or of the household or by a guest, may be the basis for a court action by the owner.

## 12.   COOPERATIVE AND CONDOMINIUM CONVERSION

Tenants who do not purchase their apartments under a Non-Eviction Conversion Plan continue to be protected by Rent Stabilization. Conversions are regulated by the New York State Attorney General. Any cooperative or condominium conversion plan accepted for filing by the New York State Attorney General's Office will include specific information about tenant rights and protections. An informational booklet about the general subject of conversion is available from the New York State Attorney General's Office.

A *Senior Citizen or a Disabled Person* in a building which is being converted to cooperative or condominium ownership pursuant to an Eviction Plan is eligible for exemption from the requirement to purchase his/her apartment to remain in occupancy. This exemption is available to Senior Citizens, or to Disabled Persons with impairments expected to be permanent, which prevent them from engaging in any substantial employment. A Conversion Plan accepted for filing by the New York State Attorney General's Office must contain specific information regarding this exemption.

## 13.   SENIOR CITIZENS AND DISABILITY RENT INCREASE EXEMPTION PROGRAM

Tenants or their spouses who are 62 years of age, or older, or are persons with a disability, and whose household income level does not exceed the established income level may qualify for an exemption from Guidelines rent increases, hardship rent increases, major capital improvement rent increases and rent reductions for DHCR approved electrical sub-metering conversions and High-Rent High-Income deregulation. This *exemption will only be for a portion of the increase which causes the tenant's rent to exceed* one-third of the "net" household income, and is not available for increases based on new services or equipment within the apartment. Questions concerning the Senior Citizen Rent Increase Exemption (SCRIE) program and the Disability Rent Increase Exemption (DRIE) program can be addressed to the New York City Department of Finance.

RA-LR1 (3/16)

When a senior citizen or person with a disability is granted a rent increase exemption, the owner may obtain a real estate tax credit from New York City equal to the amount of the tenant's exemption. Notwithstanding any of the above, a senior citizen or person with a disability who receives a rent increase exemption is still required to pay a full month's rent as a security deposit. For additional information see DHCR Fact Sheet # 20 and # 21.

## 14.  SPECIAL CASES AND EXCEPTIONS

Some special rules relating to stabilized rents and required services may apply to newly constructed buildings which receive tax abatement or exemption, and to buildings rehabilitated under certain New York City, New York State, or federal financing or mortgage insurance programs. The rules mentioned in this Rider do not necessarily apply to rent stabilized apartments located in hotels. A separate Hotel Rights Notice informing permanent hotel tenants and owners of their basic rights and responsibilities under the Rent Stabilization Law is available from DHCR.

## 15.  HIGH INCOME RENT DEREGULATION

The Rent Act of 2015 modified the Deregulation Rent Threshold (DRT) for both High-Rent Vacancy Deregulation and High-Rent High-Income Deregulation. The DRT for both kinds of deregulation was increased to $2,700 and will be increased on January 1, 2016 and each January 1st thereafter by the one year renewal lease guideline percentage issued the prior year by the rent guidelines board for the locality.

Upon the issuance of an Order by DHCR, apartments which: (1) are occupied by persons who have a total annual income in excess of $200,000 per annum for each of the two preceding calendar years and (2) have a legal regulated rent at the DRT, shall no longer be subject to rent regulation ("High Income Rent Deregulation"). The Rent Stabilization Law permits an owner to file a Petition for High Income Rent Deregulation on an annual basis. As part of the process, the tenant will be required to identify all persons who occupy the apartment as their primary residence on other than a temporary basis, excluding bona fide employees of the tenant(s) and sub-tenants, and certify whether the total annual income was in excess of $200,000 in each of the two preceding calendar years. If the tenant fails to provide the requested information to DHCR, an order of deregulation will be issued. If the tenant provides the requested information and certifies that the total annual income was not in excess of $200,000, the NYS Department of Taxation and Finance will review whether the apartment is occupied by persons who have a total annual income in excess of $200,000 in each of the two preceding calendar years. Owners cannot serve the Income Certification Forms and/or Petition for High Income Rent Deregulation on an apartment where the tenant is the recipient of a Senior Citizen Rent Increase Exemption (SCRIE) or a Disability Rent Increase Exemption (DRIE).

## 16.  HIGH RENT VACANCY DEREGULATION

The Rent Act of 2015 modified the Deregulation Rent Threshold (DRT) for both High-Rent Vacancy Deregulation and High-Rent High-Income Deregulation. The DRT for both kinds of deregulation was increased to $2,700 and will be increased on January 1, 2016 and each January 1st thereafter by the one year renewal lease guideline percentage issued the prior year by the rent guidelines board for the locality.

When a tenant moves into a vacant apartment and the rent has lawfully reached the Deregulation Rent Threshold, such apartment qualifies for permanent deregulation, and therefore for removal from all rent regulation.

Pursuant to the Rent Code Amendments of 2014, the first tenant of the apartment after it becomes deregulated is required to be served by the owner with a DHCR Notice (HRVD-N). The notice is required to contain the reason for deregulation, the last regulated rent and the calculation of the new rent that qualified for deregulation. In addition, the owner is required to serve the tenant with a copy of a registration statement filed with DHCR indicating the deregulated status and the last legal regulated rent.

## 17.  RENEWAL LEASES OFFERED DURING PENDENCY OF HIGH INCOME DEREGULATION PROCEEDINGS

Where a High Income Deregulation Proceeding is pending before DHCR and the owner is required to offer a renewal lease to the tenant, a separate rider may be attached to and served with the Rent Stabilization Law "Renewal Lease Form" (RTP-8). If so, attached and served, it shall become part of and modify the Notice and Renewal Lease. The text of the rider is set forth below and may not be modified or altered without approval of DHCR

## NOTICE TO TENANT

Pursuant to Section 5-a of the Emergency Tenant Protection Act, or Section 26-504.3 of the Rent Stabilization Law, the owner has commenced a proceeding before DHCR for deregulation of your apartment by filing a Petition by Owner for High Income Rent Deregulation on _____, 20____.
                                                                                        (Date)

That proceeding is now pending before DHCR. If DHCR grants the petition for deregulation, this renewal lease shall be cancelled and shall terminate after 60 days from the date of issuance of an order granting such petition. In the event that you file a Petition for Administrative Review (PAR), the order of deregulation, or if you have already filed such PAR and it is pending before DHCR at the time you receive this Notice, and the PAR is subsequently dismissed or denied, this renewal lease shall be cancelled and shall terminate after 60 days from the issuance by DHCR of an order dismissing or denying the PAR.

Upon such termination of this renewal lease, the liability of the parties for the further performance of the terms, covenants and conditions of this renewal lease shall immediately cease.

## 18. AIR CONDITIONER SURCHARGES

Owners are authorized to collect surcharges from rent stabilized tenants for the use of air conditioners. DHCR issues an annual update to an Operational Bulletin in which the lawful surcharges are established for the year. One surcharge amount is established for tenants in buildings where electricity is included in the rent. Another surcharge is established for tenants who pay for their own electricity. Such surcharges shall not become part of the legal regulated rent. (See Operational Bulletin 84-4 and Fact Sheet # 27).

## 19. SURCHARGES FOR TENANT INSTALLED WASHING MACHINES, DRYERS AND DISHWASHERS

Unless a lease provides otherwise, owners are not required to allow tenants to install washing machines, dryers or dishwashers. Where a tenant requests permission from the owner to install such appliance or appliances, whether permanently installed or portable, and the owner consents, the owner may collect a surcharge or surcharges. DHCR issues periodic updates to an Operational Bulletin that sets forth surcharges for washing machines, dryers and dishwashers. One set of surcharges is established for tenants in buildings where electricity is included in the rent. Another set of surcharges is established for tenants who pay their own electricity. Such surcharges shall not become part of the rent. (See Operational Bulletin 2005-1).

## 20. PREFERENTIAL RENT

A preferential rent is a rent which an owner agrees to charge that is lower than the legal regulated rent that the owner could lawfully collect. The legal regulated rent is required to be written into the vacancy lease and all subsequent renewal leases. The terms of the lease may affect the owner's right to terminate a preferential rent. If the lease agreement contains a clause that the preferential rent shall continue for the term of the tenancy, not just the specific lease term, then the preferential rent cannot be terminated for that tenancy. The preferential rent continues to be the basis for future rent increases. However, if the lease is silent and did not contain a clause that clarified whether the preferential rent was for the "term of the lease" or "the entire term of the tenancy", then the owner may terminate the preferential rent at the time of the lease renewal. Ordinarily, the rental history preceding the 4 year period to the filing of an overcharge complaint will not be examined. However, the Rent Code Amendments of 2014 do provide that when an owner claims that the rent being charged is "preferential", DHCR will examine the lease and rent history immediately preceding such preferential rent, even if it is before 4 years, to assure that the higher "legal" rent is correctly calculated and lawful. (See Fact Sheet # 40.)

The Rent Act of 2015 modified the vacancy allowance that an owner can add to the legal regulated rent when the vacating tenant was paying a preferential rent. If a vacating tenant was paying a preferential rent, the vacancy lease rent increase that can be applied to the vacating tenant's legal rent will be limited to 5% if the last vacancy lease occurred need less than two years ago, 10% if less than three years ago, 15% if less than four years ago and 20% if four or more years ago.

## 21. LANGUAGE ACCESS

Copies of the Rider are available for informational purposes only, in languages required by DHCR's Language Access Plan and can be viewed at www.nyshcr.org. However, the Rider is required to be offered and executed in English only, at the issuance of a vacancy lease or renewal lease. The DHCR RTP-8 Renewal Lease Form is also required to be offered and executed in English only.

Copias de la Cláusula están disponibles con fines informativos en los idiomas requeridos por el Plan de Acceso Lingüístico de la DHCR y se pueden ver en www.nyshcr.org. Sin embargo, se requiere que la Cláusula se ofrezca y ejecute en inglés solamente, en la emisión de un contrato de arrendamiento por desocupación o contrato de renovación de arrendamiento. El Formulario del Contrato de Renovación de Arrendamiento RTP-8 de la DHCR también se debe ofrecer y ejecutar en inglés solamente.

Kopi Dokiman Siplemantè a disponib pou bay enfòmasyon sèlman, nan lang ki obligatwa dapre Plan Aksè nan Lang DHCR epi ou kapab wè yo sou sitwèb www.nyshcr.org. Men, yo fèt pou bay ak egzekite Dokiman Siplemantè a nan lang Anglè sèlman, lè y ap bay yon nouvo kontra lwaye oswa yon renouvèlman kontra lwaye. Pwopriyetè kayla gen obligasyon tou pou bay ak egzekite Fòm Renouvèlman Kontra Lwaye DHCR RTP-8 nan lang Anglè sèlman.

Copie della postilla sono disponibili per finalità esclusivamente informative nelle lingue previste dal Piano di assistenza linguistica (Language Access Plan) del DHCR e sono consultabili sul sito www.nyshcr.org. La postilla, tuttavia, va presentata e resa esecutiva solo in lingua inglese, alla stipula di un contratto di locazione di immobile libero o al rinnovo. Anche il modulo del contratto di rinnovo RTP-8 del DHCR va presentato e perfezionato solo in lingua inglese.

附上條款副本之供參考，其語言格式以 DHCR 「語言服務計畫」之規定為準，且可於 www.nyshcr.org 在看。不過，於交付空房租約或續期租約時，本租加條款之版本與履行效力仍以英文版為主。另吏亦須提供英文版的「DHCR RTP-8 續期租約表」，且展行效力同樣以英文版為主。

본 (박사와 사본은 DHCR의 언어 엑세스 계획(Language Access Plan)에서 요구하는 언어로 정보 제공의 목적 으로만 여러 언어로, www.nyshcr.org에서 볼 수 있습니다. 하지만 본 특약서는 공실 임대 계약서 또는 갱신 임대 계약서 발행 시에만 영어로만 제공 및 관공해야 합니다. DHCR RTP-8 갱신 임대 계약서(Renewal Lease Form)도 영어로만 제 공 및 실행해야 합니다.

Копии данного Приложения доступны исключительно в информационных целях на языках, предусмотренных Программой языкового доступа (Language Access Plan) Жилищно-коммунальной администрации на сайте www.nyshcr.org. Однако настоящее Приложение должно быть предложено и подписано исключительно на английском языке при подписании вновь заключенного договора аренды или договора о продлении срока аренды. Форма продления срока аренды RTP-8 Жилищно-коммунальной

RA-LRC 7s

## Appendix

### Some agencies which can provide assistance

New York State Division of Housing and Community Renewal (DHCR)

DHCR is a state agency empowered to administer and enforce the Rent Laws. Tenants can contact DHCR at our website www.nyshcr.org or by visiting one of our Public Information Offices listed below for assistance.

Queens
92-31 Union Hall Street
Jamaica, NY 11433

Bronx
2400 Halsey Street
Bronx, NY 10461

Lower Manhattan
25 Beaver Street
New York, NY 10004

Brooklyn
55 Hanson Place
Brooklyn, NY 11217

Upper Manhattan
163 West 125th Street
New York, NY 10027

Attorney General of the State of New York  -  www.ag.ny.gov
170 Broadway, New York, NY 10271

Consumer Frauds and Protection Bureau

- investigates and enjoins illegal or fraudulent business practices, including the overcharging of rent and mishandling of rent security deposits by owners.

Real Estate Financing Bureau

- administers and enforces the laws governing cooperative and condominium conversions. Investigates complaints from tenants in buildings undergoing cooperative or condominium conversion concerning allegations of improper disclosure, harassment, and misleading information.

New York City Department of Housing Preservation and Development (HPD):  - www.nyc.gov/hpd

Division of Code Enforcement
Principal Office
100 Gold Street, New York, N.Y. 10038

- enforcement of housing maintenance standards.

New York City Central Complaint Bureau
213 West 125th Street, New York. N.Y. 10027

- receives telephone complaints relating to physical maintenance, health, safety and sanitation standards, including emergency heat and hot water service. This service is available 24 hours per day. However, complaints as to emergency heat service are received only between October 1st and May 31st of each year.

New York City Department of Finance  - www.nyc.gov/finance

SCRIE/DRIE Exemption
59 Maiden Lane, 19th Floor, New York, New York, 10038

administers the Senior Citizen Rent Increase Exemption program and Disability Rent Increase Exemption program.

Mayor's Office for People with Disabilities  -  www.nyc.gov/mopd

- 100 Gold Street, 2nd Floor, New York, NY 10038

New York City Rent Guidelines Board (RGB):  - www.housingnyc.com
51 Chambers Street, Room 202, New York, N.Y. 10007

promulgates annual percentage of rent increases for rent stabilized apartments and provides information on guidelines orders.

Copies of New York State and New York City rent laws are available in the business section of some public libraries or NYS.gov. A person should call or write to a public library to determine the exact library which has such legal material.

DHCR has approved this form and font size as in compliance with RSC section 2522.5(c).

# EXHIBIT 5

## Resident Ledger



Date: 06/03/2024

| Code | t0002895 | Property | fg30_d | Lease From | 05/01/2019 |
|---|---|---|---|---|---|
| Name | LOUIS GACHELIN | Unit | 2G | Lease To | 04/30/2021 |
| Address | 3305 FOSTER AVENUE 2G | Status | Past | Move In | 05/01/2005 |
| | | Rent | 1680.87 | Move Out | 09/14/2022 |
| City | BROOKLYN, NY 11210 | Phone (H) | (718) 941-8315 | Phone (W) | |

| Date | Chg Code | Description | Charge | Payment | Balance | Chg/Rec |
|---|---|---|---|---|---|---|
| 11/20/2015 | secdep | | 1,181.55 | | 1,181.55 | 17092 |
| 11/20/2015 | | | | 1,181.55 | 0.00 | 14029 |
| 12/31/2015 | accharge | OPENING TRNSFR ADJ BAL FROM PDS 12/31/15 :Write Off by Charge Ctrl# 1095709 | 5,697.02 | | 5,697.02 | 26297 |
| 01/01/2016 | prefrent | Preferential Rent Adjustment (01/2016) | (316.23) | | 5,380.79 | 29103 |
| 01/01/2016 | rentresl | Rent- Residential (01/2016) | 1,716.23 | | 7,097.02 | 29104 |
| 01/11/2016 | | chk# 620 | | 1,400.00 | 5,697.02 | 23701 |
| 02/01/2016 | prefrent | Preferential Rent Adjustment (02/2016) | (316.23) | | 5,380.79 | 38269 |
| 02/01/2016 | rentresl | Rent- Residential (02/2016) | 1,716.23 | | 7,097.02 | 38270 |
| 02/07/2016 | | chk# 623 | | 1,400.00 | 5,697.02 | 31155 |
| 03/01/2016 | prefrent | Preferential Rent Adjustment (03/2016) | (316.23) | | 5,380.79 | 48241 |
| 03/01/2016 | rentresl | Rent- Residential (03/2016) | 1,716.23 | | 7,097.02 | 48242 |
| 03/07/2016 | | chk# 198 | | 1,400.00 | 5,697.02 | 40981 |
| 04/01/2016 | prefrent | Preferential Rent Adjustment (04/2016) | (316.23) | | 5,380.79 | 70415 |
| 04/01/2016 | rentresl | Rent- Residential (04/2016) | 1,716.23 | | 7,097.02 | 70416 |
| 04/08/2016 | | chk# 199 | | 1,400.00 | 5,697.02 | 50637 |
| 05/01/2016 | rentresl | Rent- Residential (05/2016) | 1,716.23 | | 7,413.25 | 84639 |
| 05/10/2016 | | chk# 720 NSFed by ctrl# 68399 Returned NSF | | 1,400.00 | 6,013.25 | 60135 |
| 05/16/2016 | rng | Returned check charge | 40.00 | | 6,053.25 | 88004 |
| 05/16/2016 | | chk# 720 NSF receipt Ctrl# 60135 | | (1,400.00) | 7,453.25 | 68399 |
| 06/01/2016 | rentresl | Rent- Residential (06/2016) | 1,716.23 | | 9,169.48 | 93632 |
| 06/15/2016 | | chk# 722 CPR-06152016-904 NSFed by ctrl# 232559 reverse misapplication to AC | | 1,400.00 | 7,769.48 | 77970 |
| 06/15/2016 | | chk# 722 NSF receipt Ctrl# 77970 | | (1,400.00) | 9,169.48 | 232559 |
| 06/15/2016 | | chk# 722 | | 1,400.00 | 7,769.48 | 232567 |
| 07/01/2016 | rentresl | Rent- Residential (07/2016) | 1,716.23 | | 9,485.71 | 106943 |
| 07/20/2016 | accharge | Air Conditioner | 694.60 | | 10,180.31 | 113689 |
| 08/01/2016 | rentresl | Rent- Residential (08/2016) | 1,716.23 | | 11,896.54 | 122387 |
| 09/01/2016 | rentresl | Rent- Residential (09/2016) | 1,716.23 | | 13,612.77 | 133965 |
| 10/01/2016 | rentresl | Rent- Residential (10/2016) | 1,716.23 | | 15,329.00 | 144961 |
| 11/01/2016 | rentresl | Rent- Residential (11/2016) | 1,716.23 | | 17,045.23 | 152430 |
| 11/01/2016 | | chk# 721_6136811 ClickPay - Lockbox ACH - L161031_RL8WO7/1 | | 1,400.00 | 15,645.23 | 148643 |
| 11/01/2016 | | chk# 732_6136812 ClickPay - Lockbox ACH - L161031_YS7GY4/1 | | 1,400.00 | 14,245.23 | 148645 |
| 11/01/2016 | | chk# 734_6136813 ClickPay - Lockbox ACH - L161031_FT1PF2/1 | | 1,400.00 | 12,845.23 | 148649 |
| 11/01/2016 | | chk# 731_6143067 ClickPay - Lockbox ACH - L161031_DG8PH5/1 | | 1,400.00 | 11,445.23 | 148655 |
| 11/01/2016 | | chk# 733_6143066 ClickPay - Lockbox ACH - L161031_XO0HV5/1 | | 1,400.00 | 10,045.23 | 148658 |
| 12/01/2016 | rentresl | Rent- Residential (12/2016) | 1,716.23 | | 11,761.46 | 163907 |
| 01/01/2017 | rentresl | Rent- Residential (01/2017) | 1,716.23 | | 13,477.69 | 175463 |
| 02/01/2017 | rentresl | Rent- Residential (02/2017) | 1,716.23 | | 15,193.92 | 189547 |
| 03/01/2017 | rentresl | Rent- Residential (03/2017) | 1,716.23 | | 16,910.15 | 200367 |
| 03/13/2017 | | chk# 741 Rent Payment for 4 months LOUIS GACHELIN | | 5,600.00 | 11,310.15 | 215313 |
| 03/14/2017 | | chk# 742_8635108 https://www.clickpay.com/viewcheck.aspx?tId=L170313_HN4EZ2 | | 1,716.23 | 9,593.92 | 215141 |
| 04/01/2017 | rentresl | Rent- Residential (04/2017) | 1,716.23 | | 11,310.15 | 206476 |

| Date | Type | Description | Charge | Payment | Balance | Ref |
|---|---|---|---|---|---|---|
| | | tld=L170412_A22CL7 | | 1,716.23 | 8,593.92 | 225832 |
| 05/01/2017 | rentresi | Rent- Residential (05/2017) | 1,716.23 | | 11,310.15 | 222829 |
| 05/19/2017 | secdep | Additional Security Deposit | 458.33 | | 11,768.48 | 226248 |
| 05/25/2017 | | chk# 624_9983530 https://www.clickpay.com/viewcheck.aspx?tld=L170524_EZ4EW5 | | 1,422.89 | 10,345.59 | 242160 |
| 05/30/2017 | prefrent | 5/2016-4/2017 Pref per Stip | (3,794.76) | | 6,550.83 | 236429 |
| 05/30/2017 | rentresi | 5/2017 Rent Adj per Stip | (76.34) | | 6,474.49 | 236430 |
| 06/01/2017 | rentresi | Rent- Residential (06/2017) | 1,639.88 | | 8,114.37 | 233883 |
| 06/22/2017 | | chk# 625_10632507 https://www.clickpay.com/viewcheck.aspx?tld=L170621_NX5BG6 | | 1,639.88 | 6,474.49 | 251611 |
| 07/01/2017 | rentresi | Rent- Residential (07/2017) | 1,639.88 | | 8,114.37 | 245463 |
| 07/17/2017 | | chk# 626_11344155 https://www.clickpay.com/viewcheck.aspx?tld=L170714_AQ3HE8 | | 1,639.88 | 6,474.49 | 264595 |
| 08/01/2017 | rentresi | Rent- Residential (08/2017) | 1,639.88 | | 8,114.37 | 255719 |
| 08/01/2017 | accharge | Air conditioner charge (08/2017) | 26.65 | | 8,141.02 | 255765 |
| 08/11/2017 | | chk# 627_12035147 https://www.clickpay.com/viewcheck.aspx?tld=L170810_WM4MN7 | | 1,639.88 | 6,501.14 | 276019 |
| 09/01/2017 | rentresi | Rent- Residential (09/2017) | 1,639.88 | | 8,141.02 | 271701 |
| 09/01/2017 | accharge | Air conditioner charge (09/2017) | 26.65 | | 8,167.67 | 271748 |
| 09/01/2017 | accharge | Air conditioner charge (09/2017) | 26.65 | | 8,194.32 | 271749 |
| 09/12/2017 | | chk# 628_12877713 https://www.clickpay.com/viewcheck.aspx?tld=L170911_NG8QG2 | | 1,639.88 | 6,554.44 | 287261 |
| 10/01/2017 | rentresi | Rent- Residential (10/2017) | 1,639.88 | | 8,194.32 | 279223 |
| 10/01/2017 | accharge | Air conditioner charge (10/2017) | 26.65 | | 8,220.97 | 279269 |
| 10/01/2017 | accharge | Air conditioner charge (10/2017) | 26.65 | | 8,247.62 | 279270 |
| 10/13/2017 | | chk# 630_13814830 https://www.clickpay.com/viewcheck.aspx?tld=L171012_VC7OL2 | | 1,639.88 | 6,607.74 | 301217 |
| 11/01/2017 | rentresi | Rent- Residential (11/2017) | 1,639.88 | | 8,247.62 | 293849 |
| 11/01/2017 | accharge | Air conditioner charge (11/2017) | 26.65 | | 8,274.27 | 293894 |
| 11/01/2017 | accharge | Air conditioner charge (11/2017) | 26.65 | | 8,300.92 | 293895 |
| 11/09/2017 | | chk# 631_14663783 https://www.clickpay.com/viewcheck.aspx?tld=L171108_SA8QC2 | | 1,639.88 | 6,661.04 | 313117 |
| 12/01/2017 | rentresi | Rent- Residential (12/2017) | 1,639.88 | | 8,300.92 | 306626 |
| 12/01/2017 | accharge | Air conditioner charge (12/2017) | 26.65 | | 8,327.57 | 306672 |
| 12/01/2017 | accharge | Air conditioner charge (12/2017) | 26.65 | | 8,354.22 | 306673 |
| 12/07/2017 | | chk# 632_15555178 https://www.clickpay.com/viewcheck.aspx?tld=L171206_WH1CI1 | | 1,639.88 | 6,714.34 | 325281 |
| 01/01/2018 | rentresi | Rent- Residential (01/2018) | 1,639.88 | | 8,354.22 | 316961 |
| 01/01/2018 | accharge | Air conditioner charge (01/2018) | 26.65 | | 8,380.87 | 317008 |
| 01/01/2018 | accharge | Air conditioner charge (01/2018) | 26.65 | | 8,407.52 | 317009 |
| 01/16/2018 | | chk# 633_16833382 https://www.clickpay.com/viewcheck.aspx?tld=L180112_ER9VC6 | | 1,639.88 | 6,767.64 | 340067 |
| 02/01/2018 | rentresi | Rent- Residential (02/2018) | 1,639.88 | | 8,407.52 | 331736 |
| 02/01/2018 | accharge | Air conditioner charge (02/2018) | 26.65 | | 8,434.17 | 331782 |
| 02/01/2018 | accharge | Air conditioner charge (02/2018) | 26.65 | | 8,460.82 | 331783 |
| 02/13/2018 | | chk# 634_17894556 https://www.clickpay.com/viewcheck.aspx?tld=L180212_SX4ON2 | | 1,639.88 | 6,820.94 | 355987 |
| 03/01/2018 | rentresi | Rent- Residential (03/2018) | 1,639.88 | | 8,460.82 | 344172 |
| 03/01/2018 | accharge | Air conditioner charge (03/2018) | 26.65 | | 8,487.47 | 344218 |
| 03/01/2018 | accharge | Air conditioner charge (03/2018) | 26.65 | | 8,514.12 | 344219 |
| 03/13/2018 | | chk# 636_18994206 https://www.clickpay.com/viewcheck.aspx?tld=L180312_ER9ME5 | | 1,639.88 | 6,874.24 | 371244 |
| 04/01/2018 | rentresi | Rent- Residential (04/2018) | 1,639.88 | | 8,514.12 | 357014 |
| 04/01/2018 | accharge | Air conditioner charge (04/2018) | 26.65 | | 8,540.77 | 357061 |
| 04/01/2018 | accharge | Air conditioner charge (04/2018) | 26.65 | | 8,567.42 | 357062 |
| 04/12/2018 | | chk# 637_20171605 https://www.clickpay.com/viewcheck.aspx?tld=L180411_MI9UG8 | | 1,639.88 | 6,927.54 | 384715 |
| 05/01/2018 | rentresi | Rent- Residential (05/2018) | 1,639.88 | | 8,567.42 | 369658 |
| 05/01/2018 | accharge | Air conditioner charge (05/2018) | 26.65 | | 8,594.07 | 369705 |
| 05/01/2018 | accharge | Air conditioner charge (05/2018) | 26.65 | | 8,620.72 | 369706 |
| 05/10/2018 | | chk# 638_21268590 https://www.clickpay.com/viewcheck.aspx?tld=L180509_OI2MC4 | | 1,639.88 | 6,980.84 | 396204 |
| 06/01/2018 | rentresi | Rent- Residential (06/2018) | 1,639.88 | | 8,620.72 | 382443 |

| Date | Code | Description | Charge | Payment | Balance | Ref# |
|---|---|---|---|---|---|---|
| 06/01/2018 | accharge | Air conditioner charge (06/2018) | 26.65 | | 8,674.02 | 382489 |
| 06/07/2018 | | chk# 640_22328093 https://www.clickpay.com/viewcheck.aspx? tid=L180606_YE0RQ8 | | 1,639.88 | 7,034.14 | 408963 |
| 07/01/2018 | rentresi | Rent- Residential (07/2018) | 1,639.88 | | 8,674.02 | 393085 |
| 07/01/2018 | accharge | Air conditioner charge (07/2018) | 26.65 | | 8,700.67 | 393133 |
| 07/01/2018 | accharge | Air conditioner charge (07/2018) | 26.65 | | 8,727.32 | 393134 |
| 07/16/2018 | | chk# 642_23758397 https://www.clickpay.com/viewcheck.aspx? tid=L180713_SU8TN1 | | 1,639.88 | 7,087.44 | 425091 |
| 08/01/2018 | rentresi | Rent- Residential (08/2018) | 1,639.88 | | 8,727.32 | 408336 |
| 08/01/2018 | accharge | Air conditioner charge (08/2018) | 26.65 | | 8,753.97 | 408383 |
| 08/01/2018 | accharge | Air conditioner charge (08/2018) | 26.65 | | 8,780.62 | 408384 |
| 08/13/2018 | | chk# 644_24945644 https://www.clickpay.com/viewcheck.aspx? tid=L180810_YR2IJ9 | | 1,639.88 | 7,140.74 | 437926 |
| 08/16/2018 | accharge | Credit for 2018 AC Charge | (1.26) | | 7,139.48 | 416189 |
| 09/01/2018 | rentresi | Rent- Residential (09/2018) | 1,639.88 | | 8,779.36 | 421769 |
| 09/01/2018 | accharge | Air conditioner charge (09/2018) | 52.04 | | 8,831.40 | 421815 |
| 09/11/2018 | | chk# 645_26216253 https://www.clickpay.com/viewcheck.aspx? tid=L180910_PU5LX0 | | 1,639.88 | 7,191.52 | 450473 |
| 10/01/2018 | rentresi | Rent- Residential (10/2018) | 1,639.88 | | 8,831.40 | 431815 |
| 10/01/2018 | accharge | Air conditioner charge (10/2018) | 52.04 | | 8,883.44 | 431861 |
| 10/10/2018 | | chk# 646_27558042 https://www.clickpay.com/viewcheck.aspx? tid=L181009_AU7HC1 | | 1,639.88 | 7,243.56 | 462616 |
| 11/01/2018 | rentresi | Rent- Residential (11/2018) | 1,639.88 | | 8,883.44 | 449116 |
| 11/01/2018 | accharge | Air conditioner charge (11/2018) | 52.04 | | 8,935.48 | 449163 |
| 11/16/2018 | | chk# 745_29127184 https://www.clickpay.com/viewcheck.aspx? tid=L181115_QN7BG7 | | 1,639.88 | 7,295.60 | 480987 |
| 12/01/2018 | rentresi | Rent- Residential (12/2018) | 1,639.88 | | 8,935.48 | 459819 |
| 12/01/2018 | accharge | Air conditioner charge (12/2018) | 52.04 | | 8,987.52 | 459866 |
| 12/04/2018 | | chk# 747_29874292 https://www.clickpay.com/viewcheck.aspx? tid=L181203_QW1OD7 | | 1,639.88 | 7,347.64 | 488869 |
| 01/01/2019 | rentresi | Rent- Residential (01/2019) | 1,639.88 | | 8,987.52 | 470598 |
| 01/01/2019 | accharge | Air conditioner charge (01/2019) | 52.04 | | 9,039.56 | 470644 |
| 01/14/2019 | | chk# 749_31992873 https://www.clickpay.com/viewcheck.aspx? tid=L190111_GT1UB3 | | 1,639.88 | 7,399.68 | 507299 |
| 02/01/2019 | rentresi | Rent- Residential (02/2019) | 1,639.88 | | 9,039.56 | 485749 |
| 02/01/2019 | accharge | Air conditioner charge (02/2019) | 52.04 | | 9,091.60 | 485795 |
| 02/12/2019 | | chk# 751_33534727 https://www.clickpay.com/viewcheck.aspx? tid=L190211_RP2GE5 | | 1,639.88 | 7,451.72 | 520892 |
| 03/01/2019 | rentresi | Rent- Residential (03/2019) | 1,639.88 | | 9,091.60 | 496287 |
| 03/01/2019 | accharge | Air conditioner charge (03/2019) | 52.04 | | 9,143.64 | 496332 |
| 03/01/2019 | secdep | Additional Security Deposit | 40.99 | | 9,184.63 | 505498 |
| 03/12/2019 | | chk# 753_35062726 https://www.clickpay.com/viewcheck.aspx? tid=L190311_DO6KM4 | | 1,639.88 | 7,544.75 | 535220 |
| 04/01/2019 | rentresi | Rent- Residential (04/2019) | 1,639.88 | | 9,184.63 | 512100 |
| 04/01/2019 | accharge | Air conditioner charge (04/2019) | 52.04 | | 9,236.67 | 512144 |
| 04/09/2019 | | chk# 755_36596229 https://www.clickpay.com/viewcheck.aspx? tid=L190408_MJ1TM7 | | 1,639.88 | 7,596.79 | 548253 |
| 05/01/2019 | rentresi | Rent- Residential (05/2019) | 1,680.87 | | 9,277.66 | 524961 |
| 05/01/2019 | accharge | Air conditioner charge (05/2019) | 52.04 | | 9,329.70 | 525006 |
| 05/09/2019 | | chk# 757_38207165 https://www.clickpay.com/viewcheck.aspx? tid=L190508_EG7QY2 | | 1,680.87 | 7,648.83 | 562389 |
| 06/01/2019 | rentresi | Rent- Residential (06/2019) | 1,680.87 | | 9,329.70 | 535774 |
| 06/01/2019 | accharge | Air conditioner charge (06/2019) | 52.04 | | 9,381.74 | 535818 |
| 06/10/2019 | | chk# 760_39794447 https://www.clickpay.com/viewcheck.aspx? tid=L190607_MW4HD3 | | 1,680.87 | 7,700.87 | 577143 |
| 07/01/2019 | rentresi | Rent- Residential (07/2019) | 1,680.87 | | 9,381.74 | 548611 |
| 07/01/2019 | accharge | Air conditioner charge (07/2019) | 52.04 | | 9,433.78 | 548655 |
| 07/12/2019 | | chk# 759_41670592 https://www.clickpay.com/viewcheck.aspx? tid=L190711_VL5FW6 | | 1,680.87 | 7,752.91 | 591971 |
| 08/01/2019 | rentresi | Rent- Residential (08/2019) | 1,680.87 | | 9,433.78 | 562286 |
| 08/13/2019 | | chk# 763_43465930 https://www.clickpay.com/viewcheck.aspx? tid=L190812_GF3QL4 | | 1,680.87 | 7,752.91 | 607421 |
| 09/01/2019 | rentresi | Rent- Residential (09/2019) | 1,680.87 | | 9,433.78 | 575490 |

| Date | Code | Description | | | | |
|---|---|---|---|---|---|---|
| | | tld=L190924_OH9NQ1 | | 1,680.92 | 9,453.26 | 626927 |
| 10/01/2019 | rentresi | Rent- Residential (10/2019) | 1,680.87 | | 9,434.13 | 589354 |
| 10/08/2019 | | chk# 766_46961307 https://www.clickpay.com/viewcheck.aspx?tld=L191007_IR4CS5 | | 1,680.87 | 7,753.26 | 633043 |
| 11/01/2019 | rentresi | Rent- Residential (11/2019) | 1,680.87 | | 9,434.13 | 602437 |
| 11/18/2019 | | chk# 770_49223759 https://www.clickpay.com/viewcheck.aspx?tld=L191115_GS0RA7 | | 1,680.87 | 7,753.26 | 649924 |
| 12/01/2019 | rentresi | Rent- Residential (12/2019) | 1,680.87 | | 9,434.13 | 616603 |
| 12/16/2019 | | chk# 771_51117816 https://www.clickpay.com/viewcheck.aspx?tld=L191213_TI5VY6 | | 1,680.87 | 7,753.26 | 663232 |
| 01/01/2020 | rentresi | Rent- Residential (01/2020) | 1,680.87 | | 9,434.13 | 630521 |
| 01/09/2020 | | chk# 775_53103578 https://www.clickpay.com/viewcheck.aspx?tld=L200108_UH8NA9 | | 1,680.87 | 7,753.26 | 675177 |
| 02/01/2020 | rentresi | Rent- Residential (02/2020) | 1,680.87 | | 9,434.13 | 641954 |
| 02/11/2020 | | chk# 772_55452737 https://www.clickpay.com/viewcheck.aspx?tld=L200210_BI1CS4 | | 1,680.87 | 7,753.26 | 689779 |
| 03/01/2020 | rentresi | Rent- Residential (03/2020) | 1,680.87 | | 9,434.13 | 658502 |
| 03/09/2020 | | chk# 779_57393033 https://www.clickpay.com/viewcheck.aspx?tld=L200306_YH0XF7 | | 1,680.87 | 7,753.26 | 703084 |
| 04/01/2020 | rentresi | Rent- Residential (04/2020) | 1,680.87 | | 9,434.13 | 668165 |
| 05/01/2020 | rentresi | Rent- Residential (05/2020) | 1,680.87 | | 11,115.00 | 683616 |
| 05/18/2020 | | chk# 784_62252673 https://www.clickpay.com/viewcheck.aspx?tld=L200515_TZ8JR1 | | 1,680.87 | 9,434.13 | 730390 |
| 06/01/2020 | rentresi | Rent- Residential (06/2020) | 1,680.87 | | 11,115.00 | 693330 |
| 06/08/2020 | | chk# 786_63932181 https://www.clickpay.com/viewcheck.aspx?tld=L200605_WE3QL1 | | 1,680.87 | 9,434.13 | 740361 |
| 07/01/2020 | rentresi | Rent- Residential (07/2020) | 1,680.87 | | 11,115.00 | 706284 |
| 07/14/2020 | | chk# 789_66823658 https://www.clickpay.com/viewcheck.aspx?tld=L200713_MW8HY3 | | 1,680.87 | 9,434.13 | 755722 |
| 08/01/2020 | rentresi | Rent- Residential (08/2020) | 1,680.87 | | 11,115.00 | 725259 |
| 08/12/2020 | | chk# 790_68952603 https://www.clickpay.com/viewcheck.aspx?tld=L200811_PL5QM9 | | 1,680.87 | 9,434.13 | 768463 |
| 09/01/2020 | rentresi | Rent- Residential (09/2020) | 1,680.87 | | 11,115.00 | 738563 |
| 10/01/2020 | rentresi | Rent- Residential (10/2020) | 1,680.87 | | 12,795.87 | 746352 |
| 11/01/2020 | rentresi | Rent- Residential (11/2020) | 1,680.87 | | 14,476.74 | 759923 |
| 12/01/2020 | rentresi | Rent- Residential (12/2020) | 1,680.87 | | 16,157.61 | 773849 |
| 01/01/2021 | rentresi | Rent- Residential (01/2021) | 1,680.87 | | 17,838.48 | 786064 |
| 02/01/2021 | rentresi | Rent- Residential (02/2021) | 1,680.87 | | 19,519.35 | 798878 |
| 03/01/2021 | rentresi | Rent- Residential (03/2021) | 1,680.87 | | 21,200.22 | 814181 |
| 04/01/2021 | rentresi | Rent- Residential (04/2021) | 1,680.87 | | 22,881.09 | 824490 |
| 05/01/2021 | rentresi | Rent- Residential (05/2021) | 1,680.87 | | 24,561.96 | 838073 |
| 06/01/2021 | rentresi | Rent- Residential (06/2021) | 1,680.87 | | 26,242.83 | 850463 |
| 07/01/2021 | rentresi | Rent- Residential (07/2021) | 1,680.87 | | 27,923.70 | 862416 |
| 08/01/2021 | rentresi | Rent- Residential (08/2021) | 1,680.87 | | 29,604.57 | 877180 |
| 08/01/2021 | accharge | Air conditioner charge (08/2021) | 25.31 | | 29,629.88 | 885932 |
| 09/01/2021 | rentresi | Rent- Residential (09/2021) | 1,680.87 | | 31,310.75 | 890898 |
| 09/01/2021 | accharge | Air conditioner charge (09/2021) | 25.31 | | 31,336.06 | 890937 |
| 10/01/2021 | rentresi | Rent- Residential (10/2021) | 1,680.87 | | 33,016.93 | 904472 |
| 10/01/2021 | accharge | Air conditioner charge (10/2021) | 25.31 | | 33,042.24 | 904512 |
| 11/01/2021 | rentresi | Rent- Residential (11/2021) | 1,680.87 | | 34,723.11 | 917451 |
| 11/01/2021 | accharge | Air conditioner charge (11/2021) | 25.31 | | 34,748.42 | 917491 |
| 12/01/2021 | rentresi | Rent- Residential (12/2021) | 1,680.87 | | 36,429.29 | 928751 |
| 12/01/2021 | accharge | Air conditioner charge (12/2021) | 25.31 | | 36,454.60 | 928790 |
| 01/01/2022 | rentresi | Rent- Residential (01/2022) | 1,680.87 | | 38,135.47 | 940952 |
| 01/01/2022 | accharge | Air conditioner charge (01/2022) | 25.31 | | 38,160.78 | 940994 |
| 02/01/2022 | rentresi | Rent- Residential (02/2022) | 1,680.87 | | 39,841.65 | 954319 |
| 02/01/2022 | accharge | Air conditioner charge (02/2022) | 25.31 | | 39,866.96 | 954361 |
| 03/01/2022 | rentresi | Rent- Residential (03/2022) | 1,680.87 | | 41,547.83 | 967820 |
| 03/01/2022 | accharge | Air conditioner charge (03/2022) | 25.31 | | 41,573.14 | 967862 |
| 04/01/2022 | rentresi | Rent- Residential (04/2022) | 1,680.87 | | 43,254.01 | 984373 |
| 04/01/2022 | accharge | Air conditioner charge (04/2022) | 25.31 | | 43,279.32 | 984417 |
| 05/01/2022 | rentresi | Rent- Residential (05/2022) | 1,680.87 | | 44,960.19 | 997041 |

| Date | Code | Description | | | | |
|---|---|---|---|---|---|---|
| 06/01/2022 | rentresi | Rent- Residential (06/2022) | 1,680.87 | | 46,666.37 | 1011285 |
| 06/01/2022 | accharge | Air conditioner charge (06/2022) | 25.31 | | 46,691.68 | 1011327 |
| 07/01/2022 | rentresi | Rent- Residential (07/2022) | 1,680.87 | | 48,372.55 | 1028825 |
| 07/01/2022 | accharge | Air conditioner charge (07/2022) | 25.31 | | 48,397.86 | 1028869 |
| 08/01/2022 | rentresi | Rent- Residential (08/2022) | 1,680.87 | | 50,078.73 | 1043052 |
| 08/01/2022 | accharge | Air conditioner charge (08/2022) | 27.16 | | 50,105.89 | 1043093 |
| 09/01/2022 | rentresi | Rent- Residential (09/2022) | 1,680.87 | | 51,786.76 | 1057791 |
| 09/01/2022 | accharge | Air conditioner charge (09/2022) | 27.16 | | 51,813.92 | 1057844 |
| 11/01/2022 | baddebt | :Write Off Charge Ctrl#26297 Writeoff opening balance prior to 12/2015 | (5,697.02) | | 46,116.90 | 1095709 |
| 11/02/2022 | damage | cleaning and sofa removal upon move out | 585.75 | | 46,702.65 | 1094383 |
| 11/21/2022 | secdep | :Security Deposit credit | (1,680.87) | | 45,021.78 | 1096024 |
| 11/21/2022 | rentresi | Rent- Residential (09/2022) Credit 16 days | (896.46) | | 44,125.32 | 1096025 |
| 11/21/2022 | accharge | Air conditioner charge (09/2022) Credit 16 days | (14.49) | | 44,110.83 | 1096026 |
| 01/12/2023 | | chk# LRAP APPL #WWR6B LRAP APPL #WWR6B | | 20,170.44 | 23,940.39 | 1162832 |

# EXHIBIT 6

From:     New York State ERAP
To:       AR
Subject:  LRAP Application Approval
Date:     Wednesday, January 11, 2023 11:18:20 AM

96





## NYS Emergency Rental Assistance Program (ERAP)

Office of Temporary and Disability Assistance (OTDA)

**Attention: LRAP Application Approval**

**You have received an important message from the New York State Landlord Rental Assistance Program (LRAP).**

**RENAISSANCE EQUITY HOLDINGS LLC D**
4611 12th Avenue Suite 1L
Brooklyn, NY 11219
WWR6B

Payment Date: 01/11/2023

Dear **RENAISSANCE EQUITY HOLDINGS LLC D,**

This notification is to inform you that the Landlord Rental Assistance Program Application **WWR6B** for **LOUIS GACHELIN** at **3305 FOSTER AVENUE 2G Brooklyn, NY 11210** is approved and a rental payment has been scheduled. Payment will be made through direct deposit. If a payment cannot be made through direct deposit, then a payment by check is issued to the address provided on the W-9.

The total rental amount to be paid to **RENAISSANCE EQUITY HOLDINGS LLC D** for the rental address **3305 FOSTER AVENUE 2G Brooklyn, NY 11210** is: **$20,170.44**

The following is the total amount of rental arrears (back rent) to be paid per month:
April 2020 - $1,680.87
*September 2020 - $1,680.87*
October 2020 - $1,680.87

November 2020 - $1,680.87
December 2020 - $1,680.87
January 2021 - $1,680.87
February 2021 - $1,680.87
March 2021 - $1,680.87
April 2021 - $1,680.87
May 2021 - $1,680.87
June 2021 - $1,680.87
July 2021 - $1,680.87

IMPORTANT NOTE: The total LRAP arrears payment is the maximum arrears payment that you are eligible for but would not be more than the total arrears due as documented by you, the Landlord/Property Owner (up to a maximum of 12 months).

If you think this decision is wrong, you can appeal to have the decision reviewed.

How To Appeal: You Can Appeal By Phone or Online
If you want to appeal, you must do this within thirty (30) days of the date on this notification. You can appeal by phone or online.

To appeal by phone, please call 844-NY1-RENT (844-691-7368). For individuals who are hearing impaired, you may call the TTY number at 1-833-843-8829. When you call, please ask to appeal and tell us why you think the decision was wrong. A call center agent will help you to request an appeal. To appeal online, please click HERE to complete the online form or or go to https://otda.ny.gov/programs/landlord-rental-assistance/appeals and click the link on that page to fill out the form.

If you want to provide additional documentation about why you think the decision is wrong, please go to https://nysrenthelp.otda.ny.gov/en/ to upload the documents. Instructions to upload your required documentation: Once you have followed the link, please log in to your Owner Account. Then navigate to the Landlord/Owner section, and under the Landlord/Owner Menu on the right-hand side of the page, click on "Upload Documents." Next, you will select your Owner Number/Legal Entity from the first dropdown menu. Then select the ERAP Application Number from the list of applications attached to your previously selected Owner Number/Legal Entity. Next, select "Appeal" from the Document Type dropdown menu. Now you will select the appropriate document by clicking the "Select File" button below the Document Type dropdown menu. Select the appropriate file from the pop-up window and click "Open." The file's title will appear below the "Select File" button. Lastly, complete a Captcha Validation by clicking the box next to "I am not a robot" and clicking the purple "Upload Documents" button to finalize the document upload. Please upload and submit documents one at a time.

If you need assistance uploading documents, please contact us through any of the following methods:

• Contact us by phone:
  o 844-NY1RENT (844-691-7368)
  o For the hearing impaired, TTY phone number: 1-833-843-8829.

• Contact us by Webchat: Chat with a representative
• Contact a CBO: https://otda.ny.gov/programs/emergency-rental-assistance/help-applying/

**By accepting this payment, I, the property owner, acknowledge and accept the following terms:**

1. I am the property owner (or authorized agent for the owner) of the above referenced property and I am authorized to receive payments.
2. I agree that the arrears covered by this payment are satisfied. If the tenant for whom I am receiving a payment continues to reside in the unit, I agree not to pursue eviction based on rent amounts reimbursed by these funds and agree to discontinue any pending eviction case that is based on or seeks to recover the reimbursed arrears. Additionally:

   • I agree to waive any late fees due on any rental arrears paid pursuant to this program.
   • If the tenant for whom I am receiving a payment continues to reside in the unit, I agree not to increase the monthly rent to an amount greater than the amount due at the time of the application for this program for a period of one year after the LRAP rental assistance payment is received.
   • If the tenant for whom I am receiving a payment continues to reside in the unit, I agree not to evict for reason of expired lease or holdover tenancy any household on behalf of whom rental assistance is received for 12 months after the LRAP rental assistance payment is received.
   • If the tenant resides in a building with 4 or fewer units, I may decline to extend the lease or tenancy if I or an immediate family member intend to occupy the unit as a primary residence.
   • If the tenant for whom I am receiving a payment continues to reside in the unit, I agree to notify the tenant of the protections listed in this section.
3. I understand that LRAP funds are to be used only for expenses that are not paid by other sources. In the event that I am provided with duplicative assistance, I agree to repay any duplicative assistance as directed by the NYS Landlord Rental Assistance Program.

**We Attempted to Notify the Tenant/Former Tenant of This Decision**
A notification was also sent to **LOUIS GACHELIN** at **3305 FOSTER AVENUE 2G, Brooklyn, NY 11210** to let them know the LRAP Application WWR6B was approved and a rental payment is scheduled. A copy of that notification is provided below.

**For More Information on Appeals and Other Questions**
If you want more information on the appeals process, please visit the LRAP website online: https://otda.ny.gov/programs/landlord-rental-assistance/appeals. If you have any other questions, you may reach us through any of the following methods:

• Contact us by phone:
  o 844-NY1RENT (844-691-7368)
  o For the hearing impaired, TTY phone number: 1-833-843-8829.
• Contact us by Webchat: Chat with a representative

May 2021 - $1,680.87
June 2021 - $1,680.87
July 2021 - $1,680.87

**IMPORTANT NOTE:** If a Landlord / Property Owner participates in the program and provides a cumulative record of arrears (back rent), the months that appear on this notice may not match the landlord's monthly record. The LRAP payment shall be applied to reduce the total arrears due. The total LRAP payment is the maximum that you are eligible for, but would not be more than the total arrears due as documented by the Landlord / Property Owner (up to a maximum of 12 months).

After the landlord receives this money, they must:
 • *Apply the money to the past-due rent*
 • Waive any late fees on the past-due rent

*If you are still residing in the unit for which rental assistance was received, your landlord must:*
 • Not raise the rent for 1 year after the first rental arrears payment is received
 • Not evict you for reasons of expired lease or holdover tenancy for 1 year after the first payment is received
 • Notify you of the protections listed above

## We Notified the Landlord/Owner of This Decision
A notification was also sent to **RENAISSANCE EQUITY HOLDINGS LLC D** to let them know their LRAP Application **WWR6B** was approved and a rental payment is scheduled.

Please note that the Tenant Safe Harbor Act may prohibit a court from evicting you for not paying your rent during the COVID-19 covered period, which began on March 7, 2020 and continued until January 15, 2022, if you suffered a financial hardship during that same COVID-19 covered period.

If you think you are at risk of eviction, funding is available to provide legal services or attorney's fees for tenants. These services — intended to help tenants maintain housing stability — may include legal advice, representation in housing court, tenant/landlord mediation, and linkages to additional assistance and resources.

If you live outside of New York City and your income is 80% or less of Area Median Income (AMI) you may be eligible for help with legal services. Please go to Free Legal Services | Emergency Rental Assistance Program: https://otda.ny.gov/programs/emergency-rental-assistance/legal-providers/ for information about accessing these services.

If you live in New York City, please go to Legal Services for Tenants: https://www1.nyc.gov/site/hra/help/legal-services-for-tenants.page for information about accessing legal services.

## Do You Have Questions?
*If you have any questions, you may reach us through any of the following methods:*

- Contact us by phone:
  - o 844-NY1RENT (844-691-7368)
  - o For the hearing impaired, TTY phone number: 1-833-843-8829.
- Contact us by Webchat: Chat with a representative
- *Contact a CBO: https://otda.ny.gov/programs/emergency-rental-assistance/help-applying/*

*Thank you,*
*NYS Landlord Rental Assistance Program*

*This is a no-reply email address and is not actively monitored. Please do not respond to this message.*

## NYS EMERGENCY RENTAL ASSISTANCE PROGRAM (ERAP)
Office of Temporary and Disability Assistance (OTDA)

 844-NY1-RENT

 8:00am - 7:00pm, Monday - Saturday

https://nysrenthelp.otda.ny.gov

The Office of Temporary and Disability Assistance (OTDA) is responsible for supervising programs that provide assistance and support to eligible families and individuals.
If you received this email by error, please contact us at 844-NY1-RENT

# EXHIBIT 7

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS
-----------------------------------------------------------------X
RENAISSANCE EQUITY HOLDINGS LLC D,

                                        Plaintiff,

        -against-

LOUIS GACHELIN,
DEBORAH H. ABRAHAMS,

                                        Defendants.
-----------------------------------------------------------------X

Index No. 10080\23
File No. 31113

**SUMMONS**

10080

Place of Venue is
Designated as Plaintiff's
Place of Business:

3305 Foster Avenue
Brooklyn, NY 11210

To the above-named Defendants:

You are hereby summoned to appear in the Civil Court of the City of New York, County of Kings, at the office of the Clerk of the said Court at 141 Livingston Street, in the County of Kings, City and State of New York, 11201 within the time provided by law as noted below and to file your answer to the Summons and Endorsed Complaint with the Clerk: upon your failure to answer, judgment will be taken against you by default for the sum $23,940.39 plus interest from August 1, 2020, together with the costs and disbursements of this action.

Dated: June 9, 2023
        Port Chester, NY

Kavulich & Associates, P.C.
By: Gary Kavulich, Esq.
Attorneys for Plaintiff
181 Westchester Ave., Suite 500C
Port Chester, NY 10573
(914) 355-2074

FILED

JUN 2 1 2023

CIVIL COURT
KINGS COUNTY

Defendants' Addresses:
Louis Gachelin
1655 Flatbush Avenue, Apt. C111
Brooklyn, NY 11210

Deborah H. Abrahams
1655 Flatbush Avenue, Apt. C111
Brooklyn, NY 11210

**Note**: The law provides that: (a) If this summons is served by its delivery to you personally within the City of New York, you must appear and answer within TWENTY days after such service; or (b) If this summons is served by delivery to any person other than you personally, or is served outside the City of New York, or by publication, or by any means other than personal delivery to you within the City of New York, you are allowed THIRTY days after the proof of service thereof is filed with the Clerk of this Court within which to appear and answer.

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS

------------------------------------------------------------X

RENAISSANCE EQUITY HOLDINGS LLC D,

                   Plaintiff,

-against-

LOUIS GACHELIN,
DEBORAH H. ABRAHAMS,

                   Defendants.

------------------------------------------------------------X

Index No.
File No. 31113

**ENDORSED COMPLAINT**

Plaintiff, Renaissance Equity Holdings LLC D, by and through its attorneys,

Kavulich & Associates, P.C., as and for its endorsed complaint against Defendants Louis

Gachelin and Deborah H. Abrahams, alleges, upon information and belief, as follows:

## AS AND FOR THE FIRST CAUSE OF ACTION
(Breach of Lease Agreement)

1.      Plaintiff seeks to recover damages from Defendants Louis Gachelin and

Deborah H. Abrahams for breach of lease agreement in the sum of $1,304.67 plus interest

from August 1, 2020, representing their non-payment of rent for the month of August, 2020

balance of $1,304.67, for the premises known as and located at 3305 Foster Avenue, Apt.

2G, Brooklyn, NY 11210.

## AS AND FOR THE SECOND CAUSE OF ACTION
(Use and Occupancy)

2.      Plaintiff seeks to recover damages from Defendants Louis Gachelin and

Deborah H. Abrahams in the sum of $22,635.72 plus interest from August 1, 2021,

representing their non-payment of use and occupancy for the months of August, 2021

through August, 2022 at the monthly rate of $1,680.87, and for the first fourteen (14) days

of September, 2022 prorated balance of $784.41, for the premises known as and located at

3305 Foster Avenue, Apt. 2G, Brooklyn, NY 11210.

WHEREFORE, Plaintiff demands judgment against the Defendants, as follows:

A. On the First Cause of Action, in the sum of $1,304.67 plus interest from August 1, 2020;

B. On the Second Cause of Action, in the sum of $22,635.72 plus interest from August 1, 2021;

C. Together with costs and disbursements of this action; and

D. For such other and further relief as the Court deems just and proper.

Dated: June 9, 2023
Port Chester, NY

Kavulich & Associates, P.C.
By: Gary M. Kavulich, Esq.
Attorneys for Plaintiff
181 Westchester Ave., Suite 500C
Port Chester, NY 10573
(914) 355-2074

**This is an attempt to collect a debt. Any information obtained will be used for that purpose. This communication is from a debt collector.**

# EXHIBIT 8

31113

CIVIL COURT OF THE CITY OF NEW YORK
County of KINGS

Index number and date of filing
appeared on summons and complaint when served.

| | |
|---|---|
| RENAISSANCE EQUITY HOLDINGS LLC D | |
| | **Plaintiff/Petitioner** |
| - against - | |
| LOUIS GACHELIN DEBORAH H ABRAHAMS () | |
| | **Defendant/Respondent** |

Index # 10080/23
Filing Date: 6/21/2023

KAVULICH & ASSOCIATES PC
181 Westchester Ave #500C
Port Chester, NY 10573
(176061)

STATE OF NEW YORK: COUNTY OF SUFFOLK: ss:

HASHEM HUSSEIN #2104147 , BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION AND IS OVER THE AGE OF EIGHTEEN YEARS AND RESIDES IN THE STATE OF NEW YORK.

That on 7/19/2023 AT 6:48 AM at 1655 FLATBUSH AVE APT C111 BROOKLYN 11210, N.Y. deponent served the within SUMMONS & COMPLAINT on DEBORAH H ABRAHAMS defendant/respondent named.

*SUITABLE AGE PERSON*
Deponent could not accomplish personal service and delivered a true copy and left it with KENYATIS GACHELIN a person of suitable age and discretion at 1655 FLATBUSH AVE APT C111 BROOKLYN 11210, N.Y. - defendant's/respondent's usual place of abode.

Deponent completed service by mailing a copy of the SUMMONS & COMPLAINT in a stamped addressed envelope in an official depository under the care of the United States Post Office in New York State on 7/28/2023 at defendant's/respondent's last known residence in an envelope marked 'Personal & Confidential' not disclosing the sender's identity.

A description of the person served is as follows:

Approx. Age: 26    Approx. Weight: 170    Approx. Height: 6'0"    Sex: Male    Skin: Black    Hair: Black

OTHER: CO-TENANT
**CANNOT ASCERTAIN PLACE OF BUSINESS**

AUG 04 2023

Sworn to before me this 7/29/2023

Frances T. Mondrone #4835596
Notary Public, State of New York
Suffolk County, Commission Expires 5/31/2027

_____
Notary Public

_____
HASHEM HUSSEIN #2104147

Index number and date of filing appeared on summons and complaint when served.

CIVIL COURT OF THE CITY OF NEW YORK

County of KINGS

RENAISSANCE EQUITY HOLDINGS LLC D

**Plaintiff/Petitioner**

- against -

LOUIS GACHELIN DEBORAH H ABRAHAMS ()

**Defendant/Respondent**

Index # 10080/23
Filing Date: 6/21/2023

KAVULICH & ASSOCIATES PC
181 Westchester Ave #500C
Port Chester, NY 10573
(176080)

STATE OF NEW YORK: COUNTY OF SUFFOLK: ss:

HASHEM HUSSEIN #2104147 , BEING DULY SWORN DEPOSES AND SAYS DEPONENT IS NOT A PARTY TO THIS ACTION AND IS OVER THE AGE OF EIGHTEEN YEARS AND RESIDES IN THE STATE OF NEW YORK.

That on 7/19/2023 AT 6:49 AM at 1655 FLATBUSH AVE APT C111 BROOKLYN 11210, N.Y. deponent served the within SUMMONS & COMPLAINT on LOUIS GACHELIN defendant/respondent named.

SUITABLE AGE PERSON
Deponent could not accomplish personal service and delivered a true copy and left it with KENYATIS GACHELIN a person of suitable age and discretion at 1655 FLATBUSH AVE APT C111 BROOKLYN 11210, N.Y. - defendant's/respondent's usual place of abode.

Deponent completed service by mailing a copy of the SUMMONS & COMPLAINT in a stamped addressed envelope in an official depository under the care of the United States Post Office in New York State on 7/28/2023 at defendant's/respondent's last known residence in an envelope marked 'Personal & Confidential' not disclosing the sender's identity.

A description of the person served is as follows:

Approx. Age: 26    Approx. Weight: 170    Approx. Height: 6'0"    Sex: Male    Skin: Black    Hair: Black

OTHER: RELATIVE
CANNOT ASCERTAIN PLACE OF BUSINESS

Sworn to before me this 7/29/2023

Frances T. Mondrone #4835596
Notary Public, State of New York
Suffolk County, Commission Expires 5/31/2027

Notary Public

HASHEM HUSSEIN #2104147

# EXHIBIT 9

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS: PART 34

Index No. 10080/23
File No. 31113

----------------------------------------------------------X
RENAISSANCE EQUITY HOLDINGS LLC D,

                                        Plaintiff,

            -against-

LOUIS GACHELIN
DEBORAH H. ABRAHAMS,

                                        Defendant.
----------------------------------------------------------X

**AFFIRMATION
OF MAILING
OF ADDITIONAL
NOTICE OF SUIT**

Peter J. Oliveri, Esq., an attorney duly admitted to practice law before the Courts of the State of New York, hereby affirms the following under the penalty of perjury:

On August 10, 2023, I mailed a copy of the Summons and Endorsed Complaint in the above-entitled action to Louis Gachelin ("Defendant") by depositing an envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. Said mailing was by first-class mail in a post-paid envelope, properly addressed to the Defendant, the envelope bore the legend "PERSONAL & CONFIDENTIAL" and there was no indication on the outside of the envelope that the communication was from an attorney or concerned an alleged debt.

The mailing was properly addressed to Defendant at his place of residence located at 1655 Flatbush Avenue, Apt. C111, Brooklyn, New York 11210. Said mailing was not returned as undeliverable by the post office.

Kavulich & Associates, P.C.
By: Peter J. Oliveri, Esq.
Attorneys for Plaintiff
181 Westchester Ave., Suite 500C
Port Chester, NY 10573
(914) 355-2074

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS: PART 34

-------------------------------------------------------------X

RENAISSANCE EQUITY HOLDINGS LLC D,

                                        Plaintiff,

        -against-

LOUIS GACHELIN
DEBORAH H. ABRAHAMS,

                                        Defendant.

-------------------------------------------------------------X

Index No. 10080/23
File No. 31113

**AFFIRMATION
OF MAILING
OF ADDITIONAL
NOTICE OF SUIT**

        Peter J. Oliveri, Esq., an attorney duly admitted to practice law before the Courts of the State of New York, hereby affirms the following under the penalty of perjury:

        On August 10, 2023, I mailed a copy of the Summons and Endorsed Complaint in the above-entitled action to Deborah H. Abrahams ("Defendant") by depositing an envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. Said mailing was by first-class mail in a post-paid envelope, properly addressed to the Defendant, the envelope bore the legend "PERSONAL & CONFIDENTIAL" and there was no indication on the outside of the envelope that the communication was from an attorney or concerned an alleged debt.

        The mailing was properly addressed to Defendant at her place of residence located at 1655 Flatbush Avenue, Apt. C111, Brooklyn, New York 11210. Said mailing was not returned as undeliverable by the post office.

                                        Kavulich & Associates, P.C.
                                        By: Peter J. Oliveri, Esq.
                                        Attorneys for Plaintiff
                                        181 Westchester Ave., Suite 500C
                                        Port Chester, NY 10573
                                        (914) 355-2074

# EXHIBIT 10

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS: PART 34
------------------------------------------------------------X
RENAISSANCE EQUITY HOLDINGS LLC D,

Index No. 10080/23
File No. 31113

                              Plaintiff,

- against -

LOUIS GACHELIN
DEBORAH H. ABRAHAMS,

                              Defendant.
------------------------------------------------------------X

**AFFIRMATION**
**OF INVESTIGATOR**

STATE OF NEW YORK
                                    ) SS
COUNTY OF WESTCHESTER    )

Peter J. Oliveri, Esq., being duly sworn, deposes and says:

1.      I have been requested by Kavulich & Associates, P.C. to make an investigation to ascertain if Louis Gachelin ("Defendant") is at the present time in military service for the purpose of entry of judgment.

2.      On June 4, 2024, I, Peter J. Oliveri, Esq., contacted the Defense Manpower Data Center concerning the Defendant's military status.

3.      I inputted the Defendant's name and social security number into the Defense Manpower Data Center.

4.      Under the Defendant's social security number, I received an affidavit from the Defense Manpower Data Center stating that said Defendant is not currently in the military service of the United States and the State of New York (National Guard).

Kavulich & Associates, P.C.
By: Peter J. Oliveri, Esq.
Attorneys for Plaintiff
181 Westchester Ave., Suite 500C
Port Chester, NY 10573
(914) 355-2074

Department of Defense Manpower Data Center

Results as of : Jun-04-2024 06:52:46 PM

SCRA 5.20



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

| | |
|---|---|
| SSN: | XXX-XX-5023 |
| Birth Date: | |
| Last Name: | GACHELIN |
| First Name: | LOUIS |
| Middle Name: | |
| Status As Of: | Jun-04-2024 |
| Certificate ID: | 7FSSV01JTFTTJ19 |

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, Space Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Sam Yousefzadeh*

Sam Yousefzadeh, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Alexandria, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More Information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS: PART 34

-------------------------------------------------------------X

RENAISSANCE EQUITY HOLDINGS LLC D,

                                Plaintiff,

- against -

LOUIS GACHELIN
DEBORAH H. ABRAHAMS,

                                Defendant.

-------------------------------------------------------------X

Index No. 10080/23
File No. 31113

**AFFIRMATION
OF INVESTIGATOR**

STATE OF NEW YORK

                       ) SS

COUNTY OF WESTCHESTER   )

Peter J. Oliveri, Esq., being duly sworn, deposes and says:

1. I have been requested by Kavulich & Associates, P.C. to make an investigation to ascertain if Deborah H. Abrahams ("Defendant") is at the present time in military service for the purpose of entry of judgment.

2. On June 4, 2024, I, Peter J. Oliveri, Esq., contacted the Defense Manpower Data Center concerning the Defendant's military status.

3. I inputted the Defendant's name and social security number into the Defense Manpower Data Center.

4. Under the Defendant's social security number, I received an affidavit from the Defense Manpower Data Center stating that said Defendant is not currently in the military service of the United States and the State of New York (National Guard).

Kavulich & Associates, P.C.
By: Peter J. Oliveri, Esq.
Attorneys for Plaintiff
181 Westchester Ave., Suite 500C
Port Chester, NY 10573
(914) 355-2074

Department of Defense Manpower Data Center

Results as of: Jun-04-2024 08:50:16 PM

SCRA 5.20



**Status Report**
**Pursuant to Servicemembers Civil Relief Act**

SSN: XXX-XX-0315
Birth Date:
Last Name: ABRAHAMS
First Name: DEBORAH
Middle Name: H
Status As Of: Jun-04-2024
Certificate ID: Z168NH1NKV613BS

| On Active Duty On Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individual's active duty status based on the Active Duty Status Date | | | |

| Left Active Duty Within 367 Days of Active Duty Status Date | | | |
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date | | | |

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date | | | |
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty | | | |

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, Space Force, NOAA, Public Health, and Coast Guard). This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Sam Yousefzadeh*

Sam Yousefzadeh, Director
Department of Defense - Manpower Data Center
4800 Mark Center Drive, Suite 04E25
Alexandria, VA 22350

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DoD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information: (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More Information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1). Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available. In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds. All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support. This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs). Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA Is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate. SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction. The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected.

WARNING: This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester. Providing erroneous information will cause an erroneous certificate to be provided.

INDEX NO. 10080/23

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF KINGS: PART 34

RENAISSANCE EQUITY HOLDINGS LLC D,

                                    Plaintiff,
      - against -

LOUIS GACHELIN
DEBORAH H. ABRAHAMS,

                                    Defendants.

## MOTION
## FOR DEFAULT JUDGMENT

Signature Rule 130-1.1-a


Print Name Beneath -                              Peter J. Oliveri, Esq.

Kavulich & Associates, P.C.
Attorneys for Plaintiff
181 Westchester Ave., Suite 500C
Port Chester, NY 10573
(914) 355-2074