UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- X
Esmerilda M. Creary                                          :   Index No.:
                                                             :
                                    Plaintiffs,              :   **COMPLAINT**
                                                             :   **AND**
                                                             :   **JURY DEMAND**
                  – against –                                :
                                                             :
Kavulich & Associates, P.C.,                                 :
Gary Kavulich, and                                           :
R.P.W. Systems, Ltd.                                         :
                                                             :
                                    Defendants.              :
---------------------------------------------------------------------- X

Plaintiff Esmerilda Creary brings suit against Defendants for, *inter alia*, greatly inflating the amount of the judgment sought to be executed upon, and refusing to return – for nearly a year – previously garnished funds that the state court judge ordered to be returned after the judgment was vacated and the case dismissed. Defendants are debt collection attorney Gary Kavulich and his debt collection law firm Kavulich & Associates, P.C. (collectively "Kavulich") and R.P.W. Systems, Ltd. ("RPW"), a purchaser of charged off consumer debt and a putative judgment creditor. Plaintiff brings suit against Kavulich and RPW for violating the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, N.Y. Gen. Bus. Law § 349 *et seq.,* and for conversion, and against Kavulich for violating N.Y. Jud. § 487.

**JURISDICTION AND VENUE**

1.      The Court has federal question jurisdiction over the lawsuit because the action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA"). Jurisdiction of the Court arises under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331 because this dispute

1

involves predominant issues of federal law under the FDCPA. The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

2. Venue is properly laid within the Southern District of New York because the Defendants regularly transact business in that district and the violations that give rise to these claims happened primarily in Bronx County.

## PARTIES

3. Plaintiff Esmerilda Creary ("Ms. Creary" or "Plaintiff") is an individual who resides in Queens County, New York. She is a "consumer" as defined by 15 U.S.C. §1692a(3) because Ms. Creary was alleged to owe money from the purchase of furniture for household use, which constitutes a "debt" under 15 U.S.C. § 1692a(5).

4. Defendant Kavulich & Associates, P.C. ("the P.C.") is a New York law firm that has its principal place of business in Port Chester, NY 10573.

5. Defendant Gary Kavulich is an individual, who on information and belief, resides in the State of New York. Mr. Kavulich is the principal of the P.C. and personally performed most of the acts and omissions that give rise to the claims in this action.

6. The P.C. and Mr. Kavulich (collectively "Kavulich") are "debt collector[s]" as defined in 15 U.S.C. §1692a(6) as they regularly collect or attempt to collect, directly or indirectly, debts owed, or due or asserted to be due another, and that is their principal purpose. Specifically, Kavulich files thousands of collection lawsuits in civil court and seeks to enforce thousands of putative judgments obtained by other firms.

2

7. Defendant R.P.W. Systems, Ltd. ("RPW") is a domestic business corporation. RPW's principal (indeed sole) purpose is to purchase putative consumer debts after they are in default with the putative original creditor. RPW then collects those debts by filing collection lawsuits on those putative debts, and executing on resulting judgments. RPW is therefore a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).

8. Kavulich was acting as the agent of RPW in its litigation and judgment enforcement practices. Kavulich was acting within the course and scope of his agency. Therefore RPW is jointly and severally liable for the conduct of Kavulich.

## FACTUAL ALLEGATIONS

### Background

9. The state court collection lawsuit and subsequent motions have a long history that is not directly related to the claims asserted in this action. Plaintiff touches on the main points by way of background.

*RPW obtains sewer service default judgment.*

10. Ms. Creary resides at 69-25 Gouverneur Avenue, Arverne, NY 11692. She has lived at this address for approximately 30 years.

11. In the 1990s, Ms. Creary bought furniture from a store across from Kings Plaza Mall. Ms. Creary recalls financing this purchase and making monthly payments until the debt was fully paid. This is the only furniture store purchase Ms. Creary recalls making.

12. On or around July 23, 2007, Jerry S. Leibner, Esq. filed *R.P.W. Systems, Ltd assignee Seaman's Furniture v. Esmerilda Creary*, Index No. CV-56866-07/BX, in Bronx Civil Court. The complaint alleged Ms. Creary owed RPW a principal sum of $3,485.10 and attorneys' fees of

3

$697.02, amounting to a total of $4,182.12.

13. Ms. Creary was never served with a copy of the summons and complaint because service occurred at an address where Ms. Creary never lived.

14. In spite of living in Queens County and the alleged transaction occurring in Kings County, Ms. Creary was sued in Bronx County, at least an hour and a half away from her home in Arverne, Queens. Ms. Creary walks with a cane and often has severe pain when walking, much less traveling one and a half hours.

15. Because Ms. Creary did not have any notice of this lawsuit, she did not appear in court and RPW obtained a default judgment against her in the amount of $3,588.74.

### *RPW, through Kavulich, seeks to collect full amount of judgment that was largely satisfied.*

16. Kavulich was not the attorney in the underlying collection lawsuit. Sometime after default, RPW retained Kavulich & Associates, P.C. to enforce the default judgment. Mr. Kavulich or one of his employees, on behalf of Kavulich & Associates, P.C., signed most of the pleadings and executions at issue in this case, virtually all of which were filed after the default judgment was entered.

17. On April 23, 2010, New York City Marshal Ronald Moses collected (no less than) $2,976.30 from Ms. Creary via a property execution on her Bank of America account.

18. Three years later, on or around November 5, 2013, Kavulich served an information subpoena and restraining notice on Citibank.

19. On or around November 2013, Ms. Creary received a letter from Citibank informing her that Citibank had received a garnishment order for $7,177.48, an amount representing two times the full judgment amount of $3,588.74. Kavulich was attempting to collect the full judgment amount,

4

despite the fact that Defendants had already collected the majority of the judgment amount – $2,976.30 – via the execution on Ms. Creary's Bank of America account. Had Kavulich not inflated the amount allegedly due, Ms. Creary would have had access to the majority of her money in the account. But because Kavulich froze the entire judgment amount, Ms. Creary was deprived of $5,800.82 for approximately one month and charged a $125.00 bank fee.

20. On December 5, 2013, Ms. Creary signed an exemption claim form explaining, under penalty of perjury, that funds in the Citibank account were exempt because they were Social Security Disability and child support.

21. Kavulich restrained Ms. Creary's account again in January 2014. Kavulich again sought to enforce the full amount of the judgment, even though most of it had been paid. This inflation of the amount owed deprived Ms. Creary of of $4,490.10 for roughly another month and Ms. Creary was charged with another $125.00 bank fee.

22. In response to Ms. Creary's exemption claim form, Kavulich filed a motion for post-possession money enforcement, asking the court to order Citibank to release any of Ms. Creary's non-exempt funds. Kavulich's motion made no mention of the fact that the majority of the judgment amount had already been collected via the execution on Ms. Creary's Bank of America account.

23. The court granted RPW's motion on default, directing Citibank to release any non-exempt funds in order to satisfy the $3,588.74 judgment. In other words, Kavulich asked for and received permission to take $3,588.74 from Ms. Creary even though thousands less were really owed.

24. In April 2015, Kavulich attempted to restrain another of Ms. Creary's bank accounts, this time with JPMorgan Chase. It is not clear if Kavulich's execution documents sought the full judgment amount or the amount of money Kavulich froze or attempted to freeze in Ms. Creary's account.

5

25. On or around April 21, 2015, Ms. Creary executed and sent to Kavulich an exemption claim form, explaining that funds in her Chase account were exempt because they were Social Security Disability payments and FEMA funds paid as a result of damage from Hurricane Sandy.

26. On May 19, 2015, New York City Marshal Stephen Biegel collected $1,168.05 via a property execution on Ms. Creary's Chase account.

**Kavulich and RPW violate the FDCPA, GBL § 349, and commit conversion, and Kavulich violates Judiciary Law § 487**

27. In October 2015, Ms. Creary sought out the free limited scope legal assistance of Civil Legal Advice and Referral Office ("CLARO"). The volunteers at CLARO helped Ms. Cleary file a *pro se* order to show cause to vacate the judgment and dismiss the complaint for lack of personal jurisdiction.

28. On November 5, 2015, Ms. Creary's order to show cause was granted on default, and Defendants were ordered to return the money forthwith.

29. On January 22, 2016, Ms. Creary moved the court to compel RPW to comply with the court's November 5, 2015 order and return the money collected from her.

30. In February 2016, Kavulich filed an order to show cause to vacate the November 5, 2015 order. The order to show cause did not request a stay of the November 5, 2015 order to return Ms. Creary's money "forthwith." In his affirmation in support of the order to show cause, Gary Kavulich swore the judgment was satisfied but asked the court to restore the case to the calendar and enter another judgment in the amount of $3,588.74.

31. In a Decision & Order entered on July 15, 2016, the court granted RPW's order to show cause, vacating RPW's November 5, 2015 default and restoring the case to the calendar. Ms.

6

Creary's motion for an order compelling RPW to comply with the November 5, 2015 order was denied as moot.

32. Defendants refusal to return Ms. Creary's money from November 5, 2015 through July 15, 2016 constitutes conversion, a violation of GBL § 349, and for Kavulich, a violation of Judiciary Law § 487. Kavulich has a pattern and practice of not complying with orders to return money. *See* Plaintiffs' motions for summary judgment and declarations in support in Case No. 1:16-cv-01627-CBA-RLM, *Prage v. Kavulich & Associates, P.C. et al* (ED NY), and Case No. 1:16-cv-02134-ALC-JLC. *Morales v. Kavulich & Associates, P.C. et al* (SD NY).

### *RPW and Kavulich refuse for nearly one year to comply with a second court order to return Ms. Creary's money.*

33. On February 8, 2017, Ms. Creary filed with CLARO's assistance a *pro se* order to show to vacate the judgment, alleging lack of personal jurisdiction and asserting a statute of limitations defense. *See* Exhibit A.

34. Ms. Creary's order to show cause was granted on default on March 16, 2017. Specifically, the court discontinued the case with prejudice upon finding that the statute of limitations had expired at the time the lawsuit was filed. As part of the order, the court directed that all restraints were vacated and any money or fees taken were to be returned to Ms. Creary. *See* Exhibit B.

35. After the issuance of the order Kavulich did not return the money as directed by the court.

36. Instead, on or around March 30, 2017, Kavulich filed an order to show cause to vacate the March 16, 2017 order and restore the case to the calendar. *See* Exhibit C. The court denied RPW's order to show cause in April 2017, finding no basis for overturning or vacating the March 16, 2017 decision. *See* Exhibit D. Kavulich's motion did not include a stay of the March 16, 2017 order's requirement to return the money nor did Kavulich actually return the money.

7

37.	Even after his motion was denied, Kavulich continued to contest the vacatur, and on August 11, 2017, almost five months after being ordered to return Ms. Creary's money, Kavulich filed another motion, this time to reargue its order to show cause to vacate the March 16, 2017 order and restore the case to the calendar. *See* Exhibit E. Like the prior motion, there was no stay requested in the motion. In spite of there being no stay, and being directed by the court to return Ms. Creary's money, Kavulich kept Ms. Creary's money.

38.	As part of his argument in support of his order to show cause, Kavulich made the shocking claim that RPW "continues to suffer financial harm from Defendant's breach while Defendant continues to reap the benefits of not paying for goods and services delivered by" RPW. *See* Exhibit E (¶57). This claim was made even though Ms. Creary never owed RPW the money alleged in the lawsuit and Defendants held thousands of dollars in Ms. Creary's money while they unlawfully ignored a months old court's order to return it. Defendants were essentially demanding more money on a judgment that in fact had already been satisfied.

39.	In late August 2017, Ms. Creary retained CAMBA Legal Services, a non-profit legal services provider, to represent her in her state court case. CAMBA Legal Services promptly submitted opposition to RPW's motion to reargue. *See* Exhibit F. Ms. Creary's opposition was served on the court and Defendants on September 11, 2017. Unfortunately, by the time the opposition was received by the court, a decision had already been drafted and Ms. Creary's opposition was not considered as part of the court's decision. But even though the opposition was not considered, it was still received by the Defendants and put them on notice in detail of their repeated failure to return Ms. Creary's money.

40.	In a decision entered September 14, 2017, the court denied RPW's August 2017 motion to reargue. *See* Exhibit G.

8

41. For almost one year Kavulich did not return any of the money collected from Ms. Creary, in clear violation of the March 16, 2017 order. In response to a demand letter, Defendants finally returned approximately $4,000 just days before the filing of this FDCPA suit.

42. Kavulich's misrepresentations to banks and consumers as to the amount still due on the judgment is not unique to this case. From 2007 through at least 2015, whenever there was an execution involved in any of its cases, Kavulich did not keep track of the amount that was still owed on a judgment. Rather, Kavulich relied on the marshal to keep track of the payments made and the interest accruing and to inform Kavulich of when a judgment was satisfied. However, Kavulich has used at least three different marshals since 2007. If, as here, Kavulich used more than one marshal for one case and did not themselves keep track of the amount currently due, then the two marshals could both attempt to collect the full judgment amount, essentially doubling the amount to which Kavulich is entitled.

43. When issuing information subpoenas, Kavulich's computer automatically entered the amount due as the full judgment amount without crediting the debtor for any payments already received. As a result, as was the case here, both the bank and the consumer were misinformed as to the amount due and the bank was instructed to restrain more than the amount to which Kavulich was entitled.

44. This is precisely what happened here; Kavulich sent Citibank a restraint based on the full amount of the judgment, $3,588.47, even though the majority of this money had already been collected.

45. Kavulich was aware of this fault in his document processing system and knew that the computer-generated amount entered on information subpoenas would not reflect any payments made on the judgment. However, he chose not to correct his computer system to accurately

9

calculate and credit consumers for the amount already paid because he would have to pay for someone to set up the software to keep track of the balance and he did not want to pay the cost of doing so.

46. In other words, Kavulich made the conscious decision that he would make more money issuing restraints and executions falsely stating that the full amount of the judgment (and interest) was due than to have his office keep track of all of the payments and the balance.

47. These misrepresentations are deceptive to any consumer – least sophisticated or otherwise – because it gives Kavulich leverage to try to collect on the full balance of the judgment (plus the interest on the full balance) from the consumer.

48. Ms. Creary is precisely the type of vulnerable consumer the FDCPA was designed to protect and her life has been severely affected by Defendants' actions.

49. Defendants' conduct caused Ms. Creary to sustain actual damages including monies improperly frozen, bank fees, out-of-pocket expenses to investigate her case and travel back and forth to CLARO, Bronx Civil Court, and meetings and consultation with attorneys.

50. Defendants' conduct has also caused Ms. Creary to experience severe physical pain. Defendants sued Ms. Creary for a debt she did not owe in a venue that was both improper and as inconvenient as possible for Ms. Creary. The trip from Ms. Creary's residence to Bronx Civil Court can take up to two hours and Ms. Creary would routinely wake up around 4:00 a.m. to make sure she arrived in time to speak with a volunteer attorney at the courthouse prior to her court appearances. Such a long trip was especially difficult for Ms. Creary, who suffers from severe back and leg problems and walks with a cane. Ms. Creary suffered physical pain as a result of these numerous trips to the Bronx and would experience even greater suffering when the subway elevator was not working and she had to climb the stairs. The physical toll these trips took on Ms. Creary

10

was so severe that she was often bedridden and forced to take muscle relaxers for several days after her trips to the Bronx.

51. Moreover, the mental anguish and stress Ms. Creary has experienced as a result of this lawsuit has plagued her for years and continues to this day. Ms. Creary is stressed and confused, unable to understand why any of this has happened to her. She recalls paying off the furniture she purchased and does not believe she owes anyone any money. She cannot understand why she was sued and why she had to defend her case in a courthouse that is so far from where she lives or from where she made any purchases. Ms. Creary's stress also stems from the fact that the Defendants deprived her of a primary source of income. Ms. Creary relies on her monthly social security disability check, and she worried about how she would afford to live when Defendants took this money from her. As a result of these stresses, Ms. Creary cries frequently and has a hard time focusing on her everyday life. Sometimes she has no desire to see or speak with anyone. During one of her court appearances, Ms. Creary became so upset and was in so much physical pain that she could not stop crying and was sent home.

52. Plaintiff also claims as actual damages the reasonable value of her attorneys' time and labor to investigate the circumstances surrounding the levies on her accounts and obtain a favorable resolution.

**FIRST CLAIM FOR RELIEF**
**VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**(AS TO KAVULICH AND RPW)**

53. Plaintiff repeats and realleges each and every allegation set forth in the above paragraphs of this complaint as if fully set forth herein.

54. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt

11

collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692 (e); *see also Hamilton v. United Healthcare of La., Inc.* 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

55. Congress designed the FDCPA to be enforced primarily through private parties – such as Plaintiff – acting as "private attorneys general." See S. Rep. No. 382, 95th Con,. 1st Sess. 5, ("[t]he committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); and *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 91 (2d Cir. 2008) ("[i]n this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated Counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

56. The actions of Defendants enumerated above constitute attempts to collect a debt or were taken in connection with an attempt to collect a debt within the meaning of the FDCPA.

57. Defendants violated the following sections of the FDCPA: 15 U.S.C. §§ 1692e and 1692f. By way of example and not limitation Defendants violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; misrepresenting the services rendered or compensation which may be lawfully received; the false representation or implication that any

12

individual is an attorney or that any communication is from an attorney; threatening to take and actually taking an action prohibited by law; communicating or threatening to communicate to any person credit information which is known or which should be known to be false; using any false, deceptive or misleading representations or means; using unfair or unconscionable means; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law. Defendants also engaged in unfair or unconscionable litigation in violation of 15 U.S.C. § 1692f by unduly prolonging the legal proceedings in bad faith and requiring Plaintiff to appear at unnecessary hearings. *Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP*, 875 F.3d 128, 138 (2d Cir. 2017).

## SECOND CLAIM FOR RELIEF
## CONVERSION
## (AS TO KAVULICH AND RPW)

58. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

59. The elements of conversion in New York State include: 1) having a possessory interest in property; and 2) having the possessory interest taken or interfered with by another in a manner that is contrary to the possessor's rights.

60. Property subject to conversion includes readily identifiable funds from a bank account.

61. Defendants intentionally and without authority, assumed and exercised control over Ms. Creary's money, interfering with her right to possession of the same, by: a) causing Ms. Creary's bank accounts to be restrained; b) by causing money to be withdrawn from Ms. Creary's bank accounts for garnishment and for bank fees.

13

62. Defendants' improper restraint of Ms. Creary's money, which harmfully interfered with her right to control her own property, constitutes conversion.

63. For the reasons stated in the statement of facts, and under the aforementioned Counts, Defendants' conduct is gross, wanton or deliberate and demonstrates a high degree of moral culpability. The conduct demonstrates malice, insult, and/or willful or reckless disregard of Ms. Creary's rights, or other aggravated acts. Defendants' conduct evidences a high degree of moral culpability, or is so flagrant as to transcend mere carelessness, or constitutes willful or wanton negligence or recklessness to justify a punitive damage award.

64. For these reasons, Plaintiff is entitled to exemplary and punitive damages, in addition to actual damages. Actual damages are outlined in the above statement of facts, and incorporated by reference.

## THIRD CLAIM FOR RELIEF
## NEW YORK GENERAL BUSINESS LAW SECTION 349 *ET SEQ.*
## (AS TO KAVULICH AND RPW)

65. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

66. New York General Business Law §349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state…"

67. An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such action." N.Y. Gen. Bus. Law § 349(h). An individual may also be awarded punitive damages.

14

68. As enumerated above, Defendants violated N.Y. Gen. Bus. Law § 349 *et seq.* by using deceptive acts and practices in the conduct of their business that have broad impacts on consumers at large. This includes a pattern and practice of misrepresenting to financial institutions and consumers the amount owed and actively concealing the amount that has already been paid on a judgment. Kavulich engages in this pattern and practice because it is profitable and because it would be more costly for Kavulich to create a computer system that can track any payments that should be credited to an account. The result is that consumers are led to believe that they owe more than they do and banks are instructed to restrain more than what is owed on the judgment. Consumers such as Ms. Creary may be executed upon even when prior executions already satisfied or largely satisfied the judgment. This is especially an issue if Kavulich used more than one marshal, as here, because one marshal is not crediting garnishments received by a different marshal.

69. Kavulich was acting as the agent of RPW in seeking to collect the putative debt, and was acting within the course and scope of that agency.

70. For these reasons and for the other reasons stated in the statement of facts, Kavulich's conduct evidences a high degree of moral culpability, or is so flagrant as to transcend mere carelessness, or constitutes willful or wanton negligence or recklessness to justify a punitive damages award. Defendant's wrongful and deceptive acts caused injury and damages to Plaintiff.

71. As a direct and proximate result of those violations of N.Y. Gen. Bus. Law § 349 *et seq*, Ms. Creary suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual, treble, exemplary, and punitive damages, together with costs and attorneys' fees.

15

## FOURTH CLAIM FOR RELIEF
## JUDICIARY LAW § 487
## (AS TO KAVULICH)

72. Plaintiff repeats and realleges each and every allegation set forth above as if reasserted and realleged herein.

73. New York Judiciary Law § 487 creates a private right of action against an attorney or counselor who, *inter alia*, "[i]s guilty of any deceit or collusion, or consents to any deceit or collusion, with intent to deceive the court or any party."

74. Kavulich violated § 487 by, *inter alia*, omitting from its court filings the amount that had already been collected from Plaintiff and misrepresenting to the court and Plaintiff the amount that remained due on the judgment; proceeding with litigation and requesting that the case be restored to the calendar without informing the court that the judgment had already been satisfied; signing as an officer of the court execution documents that untruthfully represented to banks and subsequently to Plaintiff that the full judgment amount remained due; and disobeying a court order by failing to return the funds collected from Plaintiff.

75. Plaintiff is entitled to actual damages, treble damages, and attorneys' fees and costs for the violations of N.Y. Judiciary Law § 487 by Defendant Kavulich.

## JURY DEMAND.

76. Plaintiff demands a trial by jury.

## PRAYER

77. WHEREFORE, Plaintiff requests the following relief:

16

a. A declaration that Defendants have committed the violations of law alleged in this action;

c. Actual damages, treble, exemplary, and punitive damages;

d. Statutory damages under 15 U.S.C. § 1692k and GBL § 349;

e. An order awarding disbursements, costs, and attorneys' fees under 15 U.S.C. § 1692k, GBL § 349 and Judiciary Law § 487;

f. Prejudgment and post judgment interest as allowed by law;

g. An order enjoining and directing Defendants to cease violating G.B.L. § 349 *et seq.*;

h. All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

DATED: Brooklyn, New York
March 14, 2018

        Respectfully submitted,

        By: *Melissa Koven*

        CAMBA LEGAL SERVICES, INC.
        Melissa Koven, Of Counsel (MK-5512)
        Elizabeth Miller, General Counsel
        885 Flatbush Ave. 2nd Fl.
        Brooklyn, NY 11226
        Phone: (718) 940-6311
        MelissaK@camba.org

        By: *Matthew Schedler*

        CAMBA LEGAL SERVICES, INC.
        Matthew Schedler, Of Counsel (MS-3774)

Elizabeth Miller, General Counsel
885 Flatbush Ave. 2nd Fl.
Brooklyn, NY 11226
Phone: (718) 940-6311
MatthewSc@camba.org

By: *Ahmad Keshavarz*

Ahmad Keshavarz
One of Plaintiffs' Attorneys
The Law Office of Ahmad Keshavarz
16 Court St., 26th Floor
Brooklyn, NY 11241-1026
Phone: (718) 522-7900
Fax:    (877) 496-7809
Email: ahmad@NewYorkConsumerAttorney.com

18