UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
LOUIS GACHELIN and DEBORAH ABRAMS,

Plaintiffs

Case No. 25-cv-03127-PKC-LKE

-against-

KAVULICH & ASSOCIATES, P.C.,
GARY KAVULICH,
RENAISSANCE EQUITY HOLDINGS LLC D,
RENAISSANCE EQUITY HOLDINGS LLC,
CLIPPER REALTY, L.P., CLIPPER EQUITY, LLC
CLIPPER REALTY, INC.,
HASHEM HUSSAIN, , and A & F PROCESS
SERVICE, INC. d/b/a ALLIED PROCESS SERVICE

Defendants
-----------------------------------------------------------------X

**DEFENDANTS RENAISSANCE EQUITY HOLDINGS LLC D'S, RENAISSANCE EQUITY HOLDINGS LLC'S, CLIPPER REALTY, INC.'S, CLIPPER REALTY, L.P.'S, AND CLIPPER EQUITY LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS AND TO STRIKE COMPLAINT**

**SCHWARTZ LAW PLLC**
Allen Schwartz, Esq.
150 Broadway, Suite 701
New York, NY 10038
Tel: (347) 460-5379
allen@allenschwartzlaw.com

*Attorneys for the Landlord Defendants*

# TABLE OF CONTENTS

ARGUMENT ....................................................................................................................... 1

I. Plaintiffs cannot pursue a gross negligence claim when the gravamen of their claim arises under a contract, and when they fail to plausibly allege gross negligence .................................... 1

II. Plaintiffs cannot impute Mr. Hussein and Mr. Kavulich's alleged conduct onto the Landlord Defendants ......................................................................................................... 3

III. Plaintiffs' GBL § 349 claims are improperly predicated on a unique contract and a private landlord-tenant dispute ......................................................................................................... 7

IV. Comity supports the dismissal of Plaintiffs' claims, which effectively seek to enforce a state court so-ordered stipulation between them and the Landlord Defendants ............................. 9

V. The punitive damages request should be stricken and dismissed ..................................... 10

CONCLUSION ................................................................................................................ 10

# TABLE OF AUTHORITIES

## CASES

*Bah v City of NY*, 2014 U.S. Dist. LEXIS 60856 (S.D.N.Y. Apr. 30, 2014) ....2

*Baldasarre v. Butler*, 132 N.J. 278, 292 (1993) ....6

*Bockian v Esanu Katsky Korins & Siger*, 124 Misc 2d 607 (N.Y. Co. 984) ....5

*Bowens v Mel S. Harris & Assoc., LLC*, No. 07-CV-459S, 2008 U.S. Dist. LEXIS 16120, (W.D.N.Y. Feb. 28, 2008) ....6

*Bradt v West*, 892 S.W.2d 56 (Tex Ct App 1994) ....6

*Caldwell v Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F Supp 2d 340 (E.D.N.Y. 2010) ....9

*Cerveceria Modelo, S.A. de C.V. v USPA Accessories LLC*, 2008 US Dist LEXIS 28999 (S.D.N.Y. Apr. 10, 2008) ....10

*Chambers v Time Warner, Inc.*, 282 F3d 147 (2d Cir. 2002) ....5

*Collazo v Netherland Prop. Assets LLC*, 35 N.Y.3d 987 (2020) ....8

*Conboy v. AT& T Corp.*, 241 F.3d 242 (2d Cir. 2001) ....9

*Convy v Litow & Pech, P.C.*, No. 4:12-cv-2180 SNLJ, 2013 US Dist LEXIS 36583 (E.D. Mo. Mar. 18, 2013) ....5

*Deleon v 560-568 Audubon Realty, LLC*, 2023 NY Slip Op 34158[U] (N.Y. Co. 2023) ....8

*Fadlevich v JD 34th St. Realty LLC*, 775 F. Supp. 3d 668 (E.D.N.Y. 2025) ....9

*Feldman v. Upton, Cohen & Slamowitz*, 190 Misc. 2d 637, 640 (Nassau County District Court 2022) ....4

*Finch v Slochowsky & Slochowsky, LLP*, No. 19-CV-6273 (RPK), 2020 U.S. Dist. LEXIS 181698 (E.D.N.Y. Sep. 30, 2020). ....8

*Freeman v ABC Legal Servs., Inc.*, 827 F Supp. 2d 1065 (N.D. Cal. 2011) ....3

*Gentile v Am. Express Co.*, No. 21-cv-7210 (LDH) (LB) 2024 U.S. Dist. LEXIS 177685 (E.D.N.Y. Sep. 30, 2024) ....4

*Haygood v Prince Holdings 2012 LLC*, 186 A.D.3d 1157 (1st Dep't 2020) ....8

*Herbert v Sanfeliz*, No. 22-CV-4299 (KMK), 2025 U.S. Dist. LEXIS 54182 (S.D.N.Y. Mar. 21, 2025)

.......................................................................................................................3

*Horwitz v Holabird & Root*, 816 N.E.2d 272 (2004) .......................................................................................................................6

*In re Germain*, 249 B.R. 47 (Bankr W.D.N.Y. 2000) .......................................................................................................................6

*Kleeman v Rheingold*, 81 N.Y.2d 270 (1993) .......................................................................................................................4, 7

*Ladenburg Thalmann & Co. v Imaging Diagnostic Sys.*, 176 F. Supp. 2d 199 (S.D.N.Y. 2001)..... .......................................................................................................................10

*Lautman v 2800 Coyle St. Owners Corp.*, No. 13-CV-967 (ARR)(VVP), 2014 U.S. Dist. LEXIS 72703 (E.D.N.Y. May 23, 2014) .......................................................................................................................9

*Lavanant v General Accident Ins. Co.,* 212 A.D.2d 4501st Dep't 1995) .......................................................................................................................10

*Lynn v Superior Ct.*, 180 Cal App 3d 346 (1986) .......................................................................................................................6

*Mangano v Mantell*, 2009 NY Slip Op 33061[U] (N.Y. Co. 2009) .......................................................................................................................5

*Nartove v 137 Rivington, LLC*, No. 159588/20192021, N.Y. Misc. LEXIS 6841 (N.Y. Co. Oct. 25, 2021).......................................................................................................................8

*Neala Communications LLC v Xerox Corp.*, 747 F Supp 3d 625 (W.D.N.Y. 2024) .......................................................................................................................2

*Nick's Garage, Inc. v Progressive Cas. Ins. Co.*, 875 F3d 107 (2d Cir. 2017) .......................................................................................................................9

*O'Rourke v Palisades Acquisition XVI, LLC*, 635 F3d 938 (7th Cir. 2011) .......................................................................................................................9

*Onfroy v The Law Offs. of Geoffrey T. Mott, P.C.*, 751 F Supp 3d 195 (E.D.N.Y. 2024) .......................................................................................................................2

*Oswego Laborers' Local 214 Pension Fund v Mar. Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995) .......................................................................................................................8

*Page v Forster & Garbus, LLP*, , No. 18-CV-3611 (SJF), (ARL), 2019 U.S. Dist LEXIS 101832, (E.D.N.Y. June 17, 2019) .......................................................................................................................7

*Ransmeier v Mariani*, 718 F.3d 64, 71 (2d Cir. 2013) .......................................................................................................................6

*Resolution Ggy Oy v. Mixon*, 1997 N.Y.L.J. LEXIS 9553 (Civ. Ct. Kings Co. June 11, 1997) .......................................................................................................................10

*Sanchez v Abderrahman*, No. 10 CV 3641 (CBA)(LB), 2013 U.S. Dist LEXIS 186537 (E.D.N.Y. July 24, 2013) .......................................................................................................................4

*Sanchez v. Ehrlich*, No. 16-cv-8677 (LAP), 2018 U.S. Dist. LEXIS 69849 (S.D.N.Y. Mar. 29, 2018) .......................................................................................................................1, 2, 7

*Scarola v Verizon Communications, Inc.*, 146 A.D.3d 692, 693 (1st Dep't 2017) .......................................................................................................................8

*Schrader v Lichter Real Estate No. One, LLC*, 2020 NY Slip Op 32501[U] (N.Y. Co. 2020)

.......................................................................................................................8
*Vangorden v. Second Round, Limited P'ship*, 897 F.3d 433 (2d Cir. 2018)
.......................................................................................................................1
*Worth v Tamarack Am.*, 47 F Supp. 2d 1087 (S.D. Ind. 1999)
.......................................................................................................................4
*Yalkowsky v Century Apts. Assoc.*, 215 A.D.2d 214 (1st Dep't 1995)
.......................................................................................................................6

**STATUTES**

Fed. R. Civ. P. 9
.......................................................................................................................1
Fed. R. Civ. P. 12(b)
.......................................................................................................................1
GBL § 349
.....................................................................................................................6, 8
GBL § 601(8)
.......................................................................................................................8

Defendants Renaissance Equity Holdings LLC D, Renaissance Equity Holdings LLC, Clipper Realty, L.P., Clipper Equity, LLC and Clipper Realty, Inc. (the "Landlord Defendants"), by and through their undersigned counsel, submit the following reply memorandum of law in further support of their motion pursuant to Fed. R. Civ. P. 12(b) and Fed. R. Civ. P. 9.[1]

## ARGUMENT

### I. Plaintiffs cannot pursue a gross negligence claim when the gravamen of their claim arises under a contract, and when they fail to plausibly allege gross negligence

Plaintiffs contend that they can assert a gross negligence claim for what amounts to an alleged breach of a settlement agreement and cite to two cases which they claim offer support. Memo in Opp. at 15-17. Neither case does. In *Vangorden v. Second Round, Limited P'ship*, 897 F.3d 433 (2d Cir. 2018), the plaintiff did not assert a gross negligence claim, but a claim against a debt collector under the Fair Debt Collection Practices Act ("FDCPA"), which is a "strict liability statute" under federal law. *Id.* at 437. *Vangorden* is inapposite to Plaintiffs' state law gross negligence claim. And in *Sanchez v. Ehrlich*, No. 16-cv-8677 (LAP), 2018 U.S. Dist. LEXIS 69849 (S.D.N.Y. Mar. 29, 2018), the court stated, in dicta, that there could be a statutory duty under GBL § 349 that might support a gross negligence claim. *Id.* at *20. But *Sanchez* has been distinguished because "*Sanchez* addresses the use of a statutory violation in the context of a noncontractual negligence claim. It does not stand for the proposition that a statutory violation

[1] This motion was originally directed to Plaintiffs' initial complaint. ECF 1. While the motion was pending, Plaintiffs amended their complaint to add affiliates of Renaissance Equity Holdings LLC D as defendants, who are alleged to act as a single enterprise. ECF 44; *See also* ECF 48. The Court granted the Landlord Defendants' request to apply this motion to all the newly named Landlord Defendants. *See* Dec. 15, 2025 Docket Order.

may create an independent duty in tort separate from a defendant's contractual duties." *Neala Communications LLC v Xerox Corp.*, 747 F Supp 3d 625, 642 (W.D.N.Y. 2024) (distinguishing between gross negligence claim in connection with a contract and one not in connection with a contract).

Moreover, *Sanchez*'s holding, even if interpreted to extend to claims arising from contractual duties, still presumes that Plaintiffs have in fact pleaded such a GBL § 349 claim. *Id.* ("Neala's claims under those statutes are not cognizable."). Moreover, *Sanchez* itself supports the dismissal of Plaintiffs' gross negligence claim here, because the court dismissed the claim there even though the plaintiffs there had alleged that the landlord had regularly sued tenants for amounts not owed and the Court there allowed a GBL § 349 to proceed. *Sanchez*, 2018 U.S. Dist LEXIS 69849, at *21. Despite the allegation that the landlord had a practice of collecting unowed arrears, *Sanchez* still found that there was no plausible allegation that the landlord had acted with "a degree of neglect demonstrating a reckless indifference to the safety of human life or an intentional failure to perform a manifest duty to the public." *Id.* at *21. Here, the gross negligence claim is dramatically weaker than the dismissed gross negligence claim in *Sanchez*, because here Plaintiffs do not allege that the Landlord Defendants have ever sued anyone other than Plaintiffs for amounts not owed.

And as the Landlord Defendants pointed out in their opening brief, Plaintiffs cannot bring a gross negligence claim to the extent predicated on alleged intentional conduct. *Onfroy v The Law Offs. of Geoffrey T. Mott, P.C.*, 751 F Supp 3d 195, 205 (E.D.N.Y. 2024). "Under New York law, harm predicated on an intentional act may not give rise to a claim of negligence." *Bah v City of NY*, 2014 U.S. Dist. LEXIS 60856, at *35 (S.D.N.Y. Apr. 30, 2014) (citing New York cases). Plaintiffs claim that *Onfroy* was wrongly decided and that alleged intentional wrongdoing

supports a gross negligence claim, (Memo in Opp. at 18-19), but courts in this circuit have rightly followed *Onfroy*. *See e.g.*, *Herbert v Sanfeliz*, No. 22-CV-4299 (KMK), 2025 U.S. Dist. LEXIS 54182, at *15 (S.D.N.Y. Mar. 21, 2025) ("Courts view allegations of intentional conduct, such as Plaintiff alleges here, as precluding a negligence claim.") (citing *Onfroy* and other cases).

## II. Plaintiffs cannot impute Mr. Hussein and Mr. Kavulich's alleged conduct onto the Landlord Defendants

Plaintiffs concede that they are not seeking to impose liability against the Landlord Defendants for the "negligent hiring or supervision of Kavulich" or that the Landlord Defendants can be held liable under the FDCPA, including for vicarious liability, since they are not "debt collectors." Memo in Opp. at 17. That is, while "courts have held that vicarious liability may obtain [under the FDCPA] where both parties are debt collectors . . . [t]he rationale" for that rule "is that if an entity is a debt collector and hence subject to the FDCPA, it should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf." *Freeman v ABC Legal Servs., Inc.*, 827 F Supp. 2d 1065, 1076 (N.D. Cal. 2011). Here, Plaintiffs concede that the Landlord Defendants are not FDCPA debt collectors. Memo in Opp. at 17.

Nonetheless, Plaintiffs argue that the Landlord Defendants should be held vicariously liable on Plaintiffs' *state law* claims for the actions of Mr. Kavulich and the process server retained by the process servicing agency he hired. Plaintiffs accuse the process server, Hashem Hussein, of improper process service in thousands of cases for multiple plaintiffs, such as Capital One, NA and Bethpage Federal Credit Union (*see* ECF 44-7), as well as his services in this case and other cases in which the Landlord Defendants retained Mr. Kavulich. ECF 44 at ¶¶ 59-73. Plaintiffs assert that "general principles of agency law hold litigants vicariously liable for the acts of their attorneys when the attorneys act within the scope of their authority . . ." Memo in Opp at 17; *id.* at 22 ("In the case at bar, Landlord Defendants are liable, as parties to the suit and

vicariously liable, for, inter alia, widespread sewer service in collecting on collecting on [sic] alleged rental arrears in civil court."). Plaintiffs are mistaken.

First, Plaintiffs do not plausibly allege that Mr. Kavulich himself can be held vicariously liable to third parties *under state law* for the actions of Mr. Hussein and the agency who, in turn, hired him. *Sanchez v Abderrahman*, No. 10 CV 3641 (CBA)(LB), 2013 U.S. Dist LEXIS 186537, at *23, n 14 (E.D.N.Y. July 24, 2013) (noting that even if attorney may be held liable for a process server's conduct under FDCPA, that is not necessarily the case under state law); *Gentile v Am. Express Co.*, No. 21-cv-7210 (LDH) (LB) 2024 U.S. Dist. LEXIS 177685, at *9 (E.D.N.Y. Sep. 30, 2024) (in FDCPA action, dismissing the state law claims against attorney for alleged fraudulent service by process server).

New York courts have held that an attorney will not be liable to third persons for the acts of process servers they hire, unless the attorney "deliberately hired a disreputable server." *Mangano v Mantell*, 2009 NY Slip Op 33061[U], *13 (N.Y. Co. 2009).[2] Here, Plaintiffs do not allege that there were any records or complaints of unreliability regarding Mr. Hussein, a

---

[2] *Feldman v. Upton, Cohen & Slamowitz*, 190 Misc. 2d 637, 640 (Nassau County District Court 2022) (general rule is that "an attorney cannot be held vicariously liable for the alleged malfeasance of a process server.") (citing *Bockian v Esanu Katsky Korins & Siger*, 124 Misc 2d 607, 611 (N.Y. Co. 1984) ("this view, if adopted, would have a 'chilling effect' on attempts by citizens, through their lawyers, to place disputes into the legal process for disposition. Without question, such a policy should not be favored."); *Cf. Convy v Litow & Pech, P.C.*, No. 4:12-cv-2180 SNLJ, 2013 U.S. Dist. LEXIS 36583, at *13 (E.D. Mo. Mar. 18, 2013) (dismissing claims against attorney for acts of process server because no allegation that lawyer controlled the details of process server's work); *Cf. Kleeman v Rheingold*, 81 N.Y.2d 270, 277 (1993) ("We do not decide here the entirely separate question of an attorney's liability for the wrongs that a retained process server may commit against a potential defendant or another third party."). In contrast, the New York Court of Appeals expressly held that the attorney could be liable *to the client* for the process server's actions if the process server did not properly effectuate service. *Kleeman*, 81 N.Y.2d at 277. "One of the most fundamental duties an attorney owes to his or her client is loosening the litigation from its moorings and effectuating proper service of process." *Worth v Tamarack Am.*, 47 F Supp. 2d 1087, 1097 (S.D. Ind. 1999).

licensed process server, before he was retained, let alone that Mr. Kavulich deliberately retained a disreputable server; indeed, they allege only that Mr. Hussein's "pattern should have raised suspicion and prompted a[n] [internal] review of Mr. Hussein's service *by Allied*," (ECF 44 at ¶ 73) (emphasis added), the process serving agency who employed Mr. Hussein and thus had access to his full service records in 2023. There is no allegation that his service records were available to others before 2025 or of complaints made against him. Indeed, Plaintiffs attach to the Amended Complaint only a recent May 26, 2025 subpoena for a traverse hearing in a case in Queens County Civil Court captioned *Capital One, N.A. v. Watkins*, CV- 5138-23/QU (Civ. Co. Queens Co.) brought by Capital One, N.A., from which proceeding they allege they themselves discovered Mr. Hussein's records, and which form the basis of the alleged information that underpins their allegations against Mr. Hussein. ECF 44 at ¶¶ 59-73. And according to the Amended Complaint, this is the first time his servicing records were revealed in a proceeding. *Id.*[3] The 2025 traverse hearing, and the records that were purportedly revealed during the hearing, does not support imputing Mr. Hussein's conduct onto Mr. Kavulich, let alone imputing it in turn onto the Landlord Defendants.

Second, even if the complaint plausibly alleges that Mr. Kavluich can be held liable *under state law* to third parties for the actions of the process server, the Landlord Defendants should not be held vicariously liable in turn. A claim that an attorney deliberately and knowingly

[3] The Court should also respectfully take judicial notice that the filings in this proceeding are still not publicly available on the New York State Court electronic filing system. *Chambers v Time Warner, Inc.*, 282 F3d 147, 153 (2d Cir. 2002). Notably, while the Amended Complaint hyperlinks to other state court documents that are available on publicly available docket, (ECF 44 at ¶¶ 33, 46) (and gives legal significance to such public availability), it does not hyperlink for the records in the *Capital One* action. This is because the attached e-courts printouts show that filed papers are not available on ecourts, (Schwartz Decl. Ex. 1), and the "show motions" tab on ecourts further shows that 2 motions were filed in the case but there are no electronic links to the filings. Schwartz Decl. Ex. 2. Thus, these records are still not available on the electronic docket.

hired a disreputable process server process who engaged in rampant improper service is fundamentally a claim for abuse of process.[4] Abuse of process is outside the scope of an attorney retention and agency because attorney retentions do not include abuse of process. *In re Germain*, 249 B.R. 47, 51 (Bankr W.D.N.Y. 2000) (abuse of process outside scope of attorney's actual authority and client is not vicariously liable).[5]

Further, Plaintiffs' allegations are wholly lacking in any allegation that the Landlord Defendants exercised control over Mr. Kavulich, other than a conclusory and generic claim in their amended complaint that "all clients" have such control. ECF 44 at ¶ 22 ("*As with all clients*, the Landlord Defendants had control or a right to control the Kavulich Defendants.") (emphasis added).[6] As the New York Court of Appeals has acknowledged, clients rely on counsel to effectuate proper service of process and are typically unaware of who is even serving process. *Kleeman*, 81 N.Y.2d at 277 ("While it may be a common practice among attorneys to retain outside agencies . . . to assist them in effecting service, that custom is not necessarily one of

---

4 *Bowens v Mel S. Harris & Assoc., LLC*, No. 07-CV-459S, 2008 U.S. Dist. LEXIS 16120, at *5 (W.D.N.Y. Feb. 28, 2008) (claim of sewer service is claim of abuse of process).

5 *Cf. Bradt v West*, 892 S.W.2d 56, 76 (Tex Ct App 1994) ("Our agreement ends, however, at the point where the appellants argue that, merely because such an agency relationship existed in this case, the client-appellees are automatically liable for any tortious conduct on the part of their attorneys. The mere existence of an agency relationship is not enough to visit tort liability on a principal."); *cf. Baldasarre v. Butler*, 132 N.J. 278, 292, 625 A.2d 458 (1993) (client not liable for misdeeds of attorney); *cf. Horwitz v Holabird & Root*, 816 N.E.2d 272, 278 (2004) ("when, as here, an attorney acts pursuant to the exercise of independent professional judgment, he or she acts presumptively as an independent contractor whose intentional misconduct may generally not be imputed to the client, subject to factual exceptions."); *cf. Yalkowsky v Century Apts. Assoc.*, 215 A.D.2d 214, 215 (1st Dep't 1995) (clients cannot be sued under Judiciary Law § 487 when their counsel acts "with intent to deceive the court or any party."); *cf. Ransmeier v Mariani*, 718 F.3d 64, 71 (2d Cir. 2013) ("A client should not be punished when an attorney, without the client's approval, exercises that responsibility unwisely."); *cf. Lynn v Superior Ct.*, 180 Cal App 3d 346, 349 (1986).

6 *Page v Forster & Garbus, LLP*, No. 18-CV-3611 (SJF) (ARL)), 2019 U.S. Dist LEXIS 101832, at *20 (E.D.N.Y. June 17, 2019) (must allege exercise of control over attorney).

which the general public is aware."). Plaintiffs do not allege that the Landlord Defendants were even aware of who was hired to serve process, let alone that they exercised any kind of control. *Page v Forster & Garbus, LLP*, No. 18-CV-3611 (SJF), (ARL), 2019 U.S. Dist LEXIS 101832, at *20-21 (E.D.N.Y. June 17, 2019) (dismissing complaint predicated on vicarious liability because no allegation of any action taken to control the alleged agent). Further, Plaintiffs have disclaimed any assertion of negligent hiring or negligent supervision by the Landlord Defendants over Mr. Kavulich. Memo in Opp at 17.

**III. Plaintiffs' GBL § 349 claims are improperly predicated on a unique contract and a private landlord-tenant dispute**

Plaintiffs' GBL § 349 claim should be dismissed. There is no allegation that the Landlord Defendants engaged in "a pattern and practice of . . . commencing . . . proceedings [against their tenants] for rent they do not owe . . ." *Sanchez*, 2018 U.S. Dist. LEXIS 69849, at *21 (sustaining GBL § 349 claim only because there was allegations of a larger pattern of landlord attempting to collect unowed arrears). Unlike in *Sanchez*, which they cite as support, Plaintiffs allege no other alleged instance of, let alone pattern by, the Landlord Defendants of seeking to collect unowed arrears.

Rather than address this point, Plaintiffs' opposition focuses on whether there is a *per se* bar on Section 349 claims in the context of landlords and tenants and therefore misses the larger point. Plaintiffs cannot dispute that "Courts have rejected tenants' attempts to bring Section 349 claims against their landlords arising out of private and unique landlord-tenant transactions." *Finch v Slochowsky & Slochowsky, LLP*, No. 19-CV-6273 (RPK), 2020 U.S. Dist. LEXIS 181698, at *17 (E.D.N.Y. Sep. 30, 2020). And here, not only do Plaintiffs' claims arise out of a unique and private landlord-tenant transaction but also a unique and private contract, and it is fundamental that "[p]rivate contract disputes, unique to the parties . . . [do] not fall within the

ambit of the statute." *Oswego Laborers' Local 214 Pension Fund v Mar. Midland Bank, N.A.*, 85 N.Y.2d 20, 25 (1995). Plaintiffs cannot "transform a private dispute," arising out of their unique contract with the Landlord Defendants, into a GBL § 349 claim. *Scarola v Verizon Communications, Inc.*, 146 A.D.3d 692, 693 (1st Dep't 2017). Fundamentally, this is "a private dispute between one landlord and one tenant . . . " *Haygood v Prince Holdings 2012 LLC*, 186 A.D.3d 1157, 1158 (1st Dep't 2020) (no GBL § 349 claim for private landlord tenant dispute).[7]

Moreover, Plaintiffs do not plausibly allege materially deceptive conduct by the Landlord Defendants within the meaning of GBL § 349. "For an alleged act to be misleading under NYGBL Section 349, it must be likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fadlevich v JD 34th St. Realty LLC*, 775 F. Supp. 3d 668, 685 (E.D.N.Y. 2025) (citations and quotations omitted); *see also id.* at 685 (noting that GBL § 349 provides a more stringent standard for what qualifies as deceptive conduct than the FDCPA). To the extent that Plaintiffs' claims are predicated on the Landlord Defendants' filing suit or taking actions "in the civil court litigation" despite the contractual release "that allegation is not

---

[7] And even on Plaintiffs broader contention that landlords and tenants *can be* subject to GBL § 349, that broader issue very much remains a live one. *Collazo v Netherland Prop. Assets LLC*, 35 N.Y.3d 987, 990-991 (2020) (stating that while "[f]or purposes of this appeal, we assume without deciding that a claim may lie under General Business Law § 349 based upon a landlord's alleged misrepresentation to the public that an apartment was exempt from rent regulation," nonetheless, even on that assumption, the plaintiffs failed to allege "any affirmative conduct that would tend to deceive consumers."); *See also id.* at 991 (Rivera J, dissenting) (stating in dissent that New York Court of Appeals should reject what he viewed as the "erroneous understanding that conduct between a landlord and tenant is inherently 'private' rather than consumer-oriented in nature" because in his view the "blanket approach espoused [by the court] below is contrary to General Business Law § 349 and not supported by our caselaw."). After *Collazo*, New York courts have continued to hold that "Section 349 of the GBL does not apply to private landlord-tenant disputes." *Schrader v Lichter Real Estate No. One, LLC*, 2020 NY Slip Op 32501[U], *15 (N.Y. Co. 2020); *Nartove v 137 Rivington, LLC*, No. 159588/20192021, N.Y. Misc. LEXIS 6841, at *19 (N.Y. Co. Oct. 25, 2021); *Deleon v 560-568 Audubon Realty, LLC*, 2023 NY Slip Op 34158[U], *3 (N.Y. Co. 2023); *Ruggerino v Prince Holdings 2012, LLC*, 2022 NY Slip Op 32892[U], *4 (N.Y. Co. 2022).

the deceptive, consumer-oriented conduct that § 349 is intended to address." *Caldwell v Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F Supp 2d 340, 355 (E.D.N.Y. 2010); *Lautman v 2800 Coyle St. Owners Corp.*, No. 13-CV-967 (ARR)(VVP), 2014 U.S. Dist. LEXIS 72703, at *26-27 (E.D.N.Y. May 23, 2014) (false statements made to housing court are not actionable under GBL § 349); *cf. O'Rourke v Palisades Acquisition XVI, LLC*, 635 F3d 938, 944 (7th Cir. 2011) (holding that FDCPA itself does not extend to misleading statements made to courts).[8]

## IV. Comity supports the dismissal of Plaintiffs' claims, which effectively seek to enforce a state court so-ordered stipulation between them and the Landlord Defendants

As the Landlord Defendants explained in their opening brief, principles of comity further support the dismissal of Plaintiffs' state law claims against the Landlord Defendants. Mot. to Dismiss at 8. In opposition, Plaintiffs argue that their claims should not be dismissed because they seek "monetary and emotional distress damages" that cannot be awarded by the state court in connection with the enforcement of its order. Memo in Opp. at 23. But damages, including emotional distress damages, may be awarded by a state court enforcing an alleged breach of its order. *See e.g.*, *Resolution Ggy Oy v. Mixon*, 1997 N.Y.L.J. LEXIS 9553, *8 (Civ. Ct. Kings Co. June 11, 1997). Since Plaintiffs allege that the Landlord Defendants sued them in violation of a state court order, the appropriate forum for them to seek redress was before the state court that issued the order.

---

[8] Plaintiffs assert that the Landlord Defendants reading of *Conboy v. AT& T Corp.*, 241 F.3d 242 (2d Cir. 2001), has been "resoundingly rejected." Memo in Opp. at 22-23. But the Landlord Defendants expressly cited to the Second Circuit holding in *Nick's Garage, Inc. v Progressive Cas. Ins. Co.*, 875 F3d 107, 127 (2d Cir. 2017), which affirmed that Conboy's holding applies where there is no plausible allegation, as is the case here, of "inherently deceptive conduct." *Id.*

### V. The Punitive Damages Request Should be Stricken and Dismissed

Plaintiffs argue that the motion to strike the punitive damages claim is "procedurally premature." Memo in Opp. at 24. But courts in this circuit strike punitive damages requests where the complaint does not allege facts that "give rise to the 'high moral culpability' described by New York and federal courts in this Circuit" sufficient to warrant punitive damages. *Cerveceria Modelo, S.A. de C.V. v USPA Accessories LLC*, 2008 US Dist LEXIS 28999, at *18 (S.D.N.Y. Apr. 10, 2008); *Ladenburg Thalmann & Co. v Imaging Diagnostic Sys.*, 176 F. Supp. 2d 199, 207 (S.D.N.Y. 2001) (same). Plaintiffs do not even argue that the facts alleged in the Amended Complaint plausibly "imply criminal indifference [by the Landlord Defendants] to civil obligations which is aimed at the public, generally." *Lavanant v General Accident Ins. Co.,* 212 A.D.2d 450, 450 (1st Dep't 1995).

## CONCLUSION

For the foregoing reasons, the Court should dismiss the action as against the Landlord Defendants and grant such other and further relief the Court deems just and proper.

Dated: December 26, 2025
New York, New York

SCHWARTZ LAW PLLC

/s/____________________________

Allen Schwartz
150 Broadway, Suite 701
New York, NY 10038
Tel: (347) 460-5379
allen@allenschwartzlaw.com
*Attorneys for the Landlord Defendants*