

Allen Schwartz, Esq.
150 Broadway, Suite 701
New York, NY 10038
(347) 682-5075
allen@allenschwartzlaw.com

February 1, 2026

**VIA ECF**
Honorable Lara K. Eshkenazi
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:  *Gachelin et al v. Kavulich & Associates, P.C. et al*, 1:25-cv-03127-PKC-LKE

Dear Judge Eshkenazi:

    This firm represents Renaissance Equity Holdings, LLC D ("Renaissance"), Clipper Equity LLC, Clipper Realty Inc., Clipper Realty L.P., and Renaissance Equity Holdings LLC (with Renaissance, the "Landlord Defendants"). In the event the Court denies the Landlord Defendants' pending motion renewed request for a discovery stay, and in the alternative of that request, the Landlord Defendants respectfully move pursuant to the Court's Part Rule III.B to request an order compelling Plaintiffs to provide discovery as requested by Renaissance. Moreover, as detailed below, information about alleged damages is essential here, including to assess the proportionality of Plaintiffs' own discovery demands. Plaintiffs have refused to provide any such discovery.

    **I.**    **Plaintiffs are Ignoring their Discovery Obligations**

    On November 5, 2025, Plaintiffs served their initial disclosures. *See* **Exhibit 1**. Plaintiffs' initial disclosures did not provide a breakdown of their damages, though such a breakdown is expressly required by Fed. R. Civ. P. 26(a)(1)(A)(iii) (requiring "*a computation* of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under **Rule 34** the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.") (emphasis added). I wrote Plaintiff's counsel on November 5, 2025:

> The computation of damages in Plaintiffs' disclosure omits any breakdown of travel expenses etc. (not to mention the alleged emotional damages). In fact, other than alleged statutory damages, there is no computation provided. Please provide a computation of Plaintiffs' damages, with specific dollar amounts for each computation. Also please provide the documents that support such

computations, including, but not limited to, travel receipts and all other supporting documents as required by Rule 26.

*See* **Exhibit 2**.

During a meet and confer on November 25, 2025 (the first formal discovery meet and confer in the matter that I had with Plaintiff's counsel, the second being a brief call on November 26, 2025), Plaintiff's counsel told me that he would provide a breakdown of damages (other than emotional distress damages) and give me the records, which he asserted would show less than $2000 in expenditures, including travel expenses by Plaintiffs. The "big damages," in his words, were the emotional distress damages, which he refused to quantify or provide supporting evidence for. Plaintiffs provided neither a computation nor supporting evidence of any damages.

On November 30, 2025, Renaissance served its First Request for Production and its First Interrogatories Directed to Plaintiffs. *See* **Exhibits 3-4**. On December 29, 2025, Plaintiffs served their responses to the discovery demands. *See* **Exhibit 5**. The next day, on December 30, 2025, Renaissance served a deficiency letter and requested to meet and confer. The deficiency letter identified numerous deficiencies with Plaintiffs' responses. *See* **Exhibit 6**. No response to the deficiency letter was received. In January 2026, Renaissance again demanded to meet and confer. *See* **Exhibit 7**. That request was again ignored. To date, no documents have been received from Plaintiffs, and no response has been received to the requests to the deficiency letter and requests to meet and confer.

## II.     Plaintiffs' Responses to the Interrogatories and Document Requests are Entirely Deficient

As an initial matter, the interrogatory responses are unsworn and unsigned by Plaintiffs as required by the Federal Rules of Civil Procedure. *See* Fed R. Civ. P. 33. Without being signed, it is unclear if Plaintiffs themselves are even aware of the requests or the responses.

With respect to the first, second and third interrogatories, Plaintiffs merely refer to the initial disclosures, which are themselves deficient, because they, among other things, fail to provide a breakdown of the damages claimed by Plaintiffs, both alleged actual and emotional distress damages, or provide any supporting documentation. The response to the fourth interrogatory does not identify any documents, let alone all documents, and merely states that "Plaintiffs will produce responsive documents under a separate cover."

Plaintiffs omit any response to the fifth interrogatory which requested that they "Identify and state all documents that supports Plaintiffs' claim that they suffered emotional distress as alleged in the Amended Complaint."

Interrogatory NO. 10 asked them to "Identify and state every person, other than their counsel, with whom Plaintiffs have discussed or referenced the emotional distress they allege they suffered in the Amended Complaint." Rather than answer the Interrogatory, Plaintiffs refer Renaissance to the Initial Disclosures, which provides no responsive information. Ex. 5 at Response 9 [sic] ("Please see the Initial Disclosures of Plaintiffs and any amendments

2

thereto."). Plaintiffs improperly refuse to answer Interrogatory 11 which asked them to identify their email addresses (i.e., the sources of potential electronic communications).

In addition, Plaintiffs refuse to provide the medical information requested in Interrogatories 6-8. In their amended complaint, Plaintiffs allege that "the stress of the lawsuit also contributed to Mr. Gachelin's gaining twenty pounds," "Ms. Abrahams, who is diabetic, experienced blood sugar spikes and troughs as a result of the stress and the associated change of her appetite," "[a]s a result of the stress, Ms. Abrahams was frequently tired and had little desire to eat, altering her eating habits significantly," and "Ms. Abrahams lost about twenty pounds due to the stress, changes in her appetite, and increased walking, which Ms. Abrahams does in response to the stress." ECF 44 at ¶¶ 47-57. These allegations of medical illnesses place Plaintiffs' medical condition in controversy and Renaissance is entitled to this information in its defense of Plaintiffs' claim for emotional distress damages unless Defendants affirmatively disavow these allegations. *See e.g.*, *Lyon v Paramount Glob.*, 22-CV-9229 (JGLC), 2023 WL 6664554, at *1 (S.D.N.Y. Oct. 12, 2023) (where plaintiff made allegations about her medical conditions in connection with alleged emotional distress, in complaint, defendants would have been entitled to medical records but for the fact that the plaintiff subsequently "decided to change course" and formally disavow those claims). These demands are proportionate to the needs of the case because the central damages claim asserted by Plaintiffs is that they suffered alleged emotional distress, including claims of that this was exacerbated by, or otherwise affected, medical conditions.

The responses to the document demands are similarly deficient, failing to address, and omitting, demands 18-26 entirely.

Plaintiffs' objection to Request No. 10 as vague and overbroad is meritless as the demand quotes Plaintiffs' own allegation that they "are living on fixed income" and " do not have much money" and seeks the documents that support that allegation. Moreover, it is relevant because it is an allegation in the Amended Complaint which Plaintiffs rely upon to show the emotional impact of a lawsuit seeking to collect approximately $20,000. Their financial condition is thus directly relevant. Similarly, Request Nos. 10-11 seek information that would corroborate or contradict Plaintiffs' own allegation in the Amended Complaint that they "do not have much money." The discovery is proportional because it goes directly to the claims in their own pleading and the credibility of their claims about their alleged emotional distress.

Request No. 12 seeks information and communications regarding monies received by Plaintiffs from Renaissance in connection with prior settlements between them and Renaissance. Plaintiffs' communications relating to any prior settlements between them and Renaissance are a likely source of relevant information about Plaintiffs' relationship to Renaissance, including their motives for this suit based on any prior success in obtaining settlements from Renaissance.

Plaintiffs' objection that Request No. 15 is vague and overbroad is again meritless because the request seeks the documents that support Plaintiffs' own specific allegation in the Amended Complaint and quotes the specific allegations. Plaintiffs cannot make allegations and then not produce their evidence for the allegation.

3

Finally, even where Plaintiffs assert they will produce "responsive documents," they omit the word "all," leaving it unclear whether they will produce all documents responsive to the request in their possession, custody, and control

In sum, Plaintiffs have failed to provide adequate responses to Renaissance's demands. Moreover, they have failed to produce any documents, most egregiously on the issue of damages, when the Landlord Defendants have made it clear to Plaintiffs' counsel that they would use such information to assist settlement and resolution.

### III. Plaintiff's Counsel's Refusal to Provide Discovery is Even More Egregious Considering his Opposition to a Settlement Conference

As Renaissance has made clear from its very first appearance before the Court, it has been looking to resolve this case. Unfortunately, a review of other cases reveals that Plaintiff's counsel has a modus operandi where Plaintiff's counsel has similarly refused to provide damages information, has similarly refused to make settlement demands, has similarly ignored settlement offers, and has similarly objected to settlement conferences with the Magistrate Judge. *See e.g.*, *Samms v Abrams*, 198 F Supp. 3d 311, 319 (S.D.N.Y. 2016); *Francois v. Spartan Auto Group*, LLC, et. al., Civ- No. 1:22-cv-4447 (JSR), ECF 88-1, Affirmation of H. Nicholas Goodman, also attached as **Exhibit 8** (describing similar pattern); *Cf. Kulig v Midland Funding, LLC*, 13-CV-4715 PKC, 2014 WL 6769741, at *1 (S.D.N.Y. Nov. 20, 2014) (failed to inform client of settlement offer). The Landlord Defendants believe that without a settlement conference with the Court—with clients present—settlement with Plaintiffs will be, and become, impossible despite the Landlord Defendants' good-faith efforts. A settlement conference will also ensure that Plaintiffs are fully informed of these offers.

Moreover, it is impossible to ascertain the proportionality of Plaintiffs' own discovery demands without basic damages information that Plaintiffs were, and are, required to provide.

Notably, Plaintiffs have now countered in a letter to the Court that, in their view, the outer range for garden variety of emotional distress damages in FDCPA cases is $125,000.00. In fact, none of these cases show that $35,000.00 would not represent far beyond the outermost range of emotional distress damages for cases with facts like this one. Indeed, cases in this district support $5000 as the outermost range. "Generally, awards for actual damages in FDCPA cases range from one hundred dollars ($100.00) to five thousand dollars ($5,000.00)." *Burke v Transworld Sys. Inc.*, 16-CV-6415(SJF)(GRB), 2017 WL 11930854, at *10 (E.D.N.Y. Oct. 25, 2017); *Mira v Maximum Recovery Sols., Inc.*, CV 11-1009 ADS GRB, 2012 WL 4511623, at *3 (E.D.N.Y. Aug. 31, 2012), report and recommendation adopted, 11-CV-1009 ADS GRB, 2012 WL 4581590 (E.D.N.Y. Sept. 29, 2012) (awarding $1000 in emotional distress damages in FDCPA action); *Milton v Rosicki, Rosicki & Assoc., P.C.*, 02 CV 3052 (NG), 2007 WL 2262893, at *5 (E.D.N.Y. Aug. 3, 2007) ("courts generally award actual damages ranging from $100.00 to $5000.00 to debtors whose creditors violated the FDCPA ."); *See also Crum v United Fin. Services LLC,* 14-CV-148-JTC, 2014 WL 5500666, at *3 (W.D.N.Y. Oct. 30, 2014) (in FDCPA action, rejecting request for award of emotional distress damages on a default judgment); *Levy v Law Offices of J. Henry Nierman*, 17 CIV. 4022 (NSR)(JCM), 2024 WL 3813754, at *5 (S.D.N.Y. July 3, 2024), report and recommendation adopted, 17-CV-4022

(NSR), 2024 WL 4275569 (S.D.N.Y. Sept. 24, 2024) ("an award of $5,000.00 in emotional damages is commensurate with the evidence presented in this case, and is in line with similar cases in this circuit.").

Plaintiffs cite to *Abel v Town Sports Intern., LLC*, 09 CIV. 10388 DF, 2012 WL 6720919, at *1 (S.D.N.Y. Dec. 18, 2012), a dissimilar hostile-work environment case, where "the plaintiff testified "to being called vulgar names that were racially and/or ethnically charged, such as "nigger" (*id.*348:22), "stupid Haitian" (*id.* 165:20–176:4), "monkey" (*id.* 327:13), "fucking Negro" (*id.* 110:20–23), and "voodoo man with HIV" (*id.* 384:5–9), on a daily basis." *Abel v Town Sports Intern., LLC*, 09 CIV. 10388 DF, 2012 WL 6720919, at *1 (S.D.N.Y. Dec. 18, 2012). In that case, there was medical testimony corroborating the alleged emotional distress. *Id.* at *6 ("The psychiatrist whom Plaintiff eventually saw for treatment, Dr. Marthe Abraham, also testified that Plaintiff "seemed very hurt, very ashamed" when discussing the names he had been called during his employment, and that those names made Plaintiff feel "bad" and "very low."). "The jury awarded Plaintiff $300,000 in compensation for emotional distress on his hostile-work-environment claims," (*id.* at *2), which the court lowered to $100,000, and, in doing so, stated, "[e]ven an award of $125,000–the high-end of the range of damages that have recently been upheld for garden-variety emotional distress-would be somewhat excessive here, especially given that Plaintiff's compensable distress does not include any distress arising from his termination." *Id.* at *17.

The other case cited by Plaintiffs, an FDCPA case in which Plaintiff's counsel represented the plaintiff, ultimately led to an award by the jury after trial of "$5,795 in economic damages and $1,000 in damages for physical injuries and/or emotional distress. " *Samms*, 198 F Supp 3d at 315. The court then awarded $1000 in treble damages under th GBL, putting the ultimate award slightly over the offer of judgment of $7,001 that had been offered before the trial by defendants, (*id.* at 323) and thereby entitled plaintiff's counsel to recover attorney's fees for the case, including the trial, of $146,744.00. *Id.* In the earlier decision cited by Plaintiffs, the Court had rejected the Defendants claim that the $7,001 offer of judgment had mooted the action because, in dicta, it noted up to $100,000.00 was possible. *Samms v Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP*, 15-CV-2741 JSR, 2015 WL 6437493, at *1 (S.D.N.Y. Oct. 21, 2015). But the Court did not cite any FDCPA case issuing such an award, but only to an employment discrimination case in which the plaintiff was subjected to longstanding discrimination by the City, retaliation, and even threats of criminal prosecution. *Id.* (citing *See Lore v. City of Syracuse,* 670 F.3d 127, 177–78 (2d Cir.2012)).

The offer of judgment should have at least formed the basis for good faith settlement discussions, not the outright refusal that Plaintiffs are insisting on while shirking their discovery obligations. If the Court does not stay discovery pending the resolution of the fully submitted motion to dismiss or a settlement conference or both, the Landlord Defendants respectfully request that the Court compel Plaintiffs to comply with their obligations.

Sincerely,
/s/ Allen Schwartz, Esq.