UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------x
LOUIS GACHELIN and DEBORAH ABRAHAMS

        *Plaintiff*                                                                Case No. 25-cv-03127-PKC-LKE

        -against-

KAVULICH & ASSOCIATES, P.C., GARY KAVULICH,
RENAISSANCE EQUITY HOLDINGS LLC D,
HASHEM HUSSAIN, and A & F PROCESS SERVICE,
INC. d/b/a ALLIED PROCESS SERVICE

        *Defendants*
-----------------------------------------------------------------------x

## DEFENDANT RENAISSANCE EQITY HOLDINGS LLC D'S REQUEST FOR PRODUCTION TO PLAINTIFFS

PLEASE TAKE NOTICE that pursuant to the Federal Rules of Civil Procedure (the "Rules"), Defendant Renaissance Equity Holdings LLC D ("Renaissance") hereby requests that each of the Plaintiffs in this action respond to these document requests (the "Document Requests") in writing and produce at the offices of Schwartz Law PLLC, 150 Broadway, Suite 701, New York, New York 10038 within the time required by the Rules, all of the documents described below.

PLEASE TAKE FURTHER NOTICE that this is a continuing demand. Pursuant to the Rules, Plaintiffs are required to amend or supplement any response previously given to this demand promptly upon obtaining information that the previous response was incorrect or incomplete when made, or that the previous response, though current and complete when made, no longer is correct and complete.

1

**DEFINITIONS**

1. Unless otherwise specifically indicated, the terms listed below are intended to have the following meanings in the text of these Document Requests, in the Definitions themselves and in the Instructions:

2. "Action" as used herein means this action captioned Gachelin et. al. v. Kavulich & Associates, P.C., et. al., Case No. 25-cv-03127-PKC-LKE (EDNY).

3. "Amended Complaint" means the Amended Complaint filed in the Action.

4. "Plaintiffs" means Louis Gachelin and Deborah Abrahams, individually and collectively.

5. "Gachelin" means Plaintiff Louis Gachelin.

6. "Abrahams" means Plaintiff Deborah Abrahams.

7. The term "any" and "each" as used herein should be understood to include and encompass "all."

8. The term "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of these Document Requests all responses that might otherwise be construed to be outside of its scope.

9. The term "communication" as used herein means any interchange, oral or written, formal or informal, at any time or place, and under any circumstance, whereby information of any nature was transmitted, recorded, transferred and/or memorialized by any method, including but not limited to electronic mail, text message, or WhatsApp message.

10. The term "concerning" as used herein means, in whole or in part, directly or indirectly, relating to, referring to, describing, evidencing, reflecting, constituting, embodying,

2

connected to, in connection with, comprising, regarding, identifying, stating, analyzing, or containing information concerning and/or in any way pertinent to the subject matter.

11. The term "document" as used herein shall have the broadest scope and meaning permissible under the Rules and shall include, but not be limited to, writings of every kind and nature including, but not limited to, the originals (or any copies when originals are not available), or any non-identical copies or versions (whether different from the originals because of notes made on such copies or otherwise) of writings, or recordings or every kind and description, whether made by hand or by mechanical, electronic, microfilm, photographs, computer, smartphones, or other means, including, but not limited to, letters, "e-mails," text messages, Instant Messages or chats, Slack messages or chats, WhatsApp messages or chats, calculations, spreadsheets, computer files, notes, telegrams, correspondence, reports, proposals, memoranda, agreements, contracts, subcontracts, contract modifications, recordings, any memorialization of telephone conversations, meeting minutes, conference minutes, inter-office and intra-office communications, work papers, attendance records, work records, progress reports, photographs, photographic negatives, sketches, diagrams, computer printouts, ledger books or other accounting records, court pleadings, administrative filings, checks, drafts, statements, telexes, audio or video recordings, schedules, bar charts, logic diagrams, spreadsheets, network analysis, schedule updates, interoffice correspondence and memos, diaries, daily reports, statistics, receipts, returns, summaries, pamphlets, books, notations of any sort of conversations, bulletins, printed matter, teletypes, telefax, worksheets, studies, analyses, tabulations, comments, notices, manuals, instructions, recorded recollections, all drafts, alterations, modifications, changes and amendments of any of the foregoing, or any other written material of any nature whatsoever as well as all graphic or oral records or representations of any kind (including, without limitation, photographs, charts, graphs,

microfiche, microfilm, videotapes, recordings, motion pictures), and any electronic, mechanical, electrical, magnetic, or computer records or representations of any kind (including, without limitation, computer files, audio and video tapes, cassettes, discs, CD's, DVD's, drives, or recordings in computer memories) and any other written, recorded or reproduced material in the possession, custody, or control of, or in the constructive possession, custody, or control of Fairmont, its attorneys, consultants, agents, or representatives, regardless of the source of such documents.

12. The terms "fact" or "facts" include either the singular or plural as the case may be and mean a thing along, something having actual existence, an actual occurrence or event, or any information presented as having objective reality. The word "evidence" shall include facts.

13. The term "including" as used herein means including but not limited to.

14. The term "person" or "persons" includes, without limitation, all natural persons or any governmental or regulatory agency or institution, corporation, firm, partnership, proprietorship, association, or any other organization or entity in which natural persons combine for business or other purposes.

15. The terms "relate to" or "relating to" as used herein mean all information or documentation which is relevant in any way to the subject matter, including, without limitation, all information or documentation which constitutes, records, reflects, summarizes, evaluates, comments upon, concerns, transmits, or discusses the subject matter of any of the Document Requests.

16. The term "representative" as used herein with regard to a person means and includes and shall include each and every present and former director, officer, partner (general, limited or otherwise), principal, executive, associate, employee, servant, agent, independent

4

consultant, expert, and other person (including attorneys) acting or purporting to act on behalf or at the direction of, or in concert with such person or entity.

17. The terms "you," and "your" means the recipient of these Requests, and any their agents, representatives, employees, attorneys, consultants, or any person acting or purporting to act on behalf of or in concert with or who is subject to the direction or control of any of the foregoing.

18. Without limiting the foregoing, reference to any natural person shall include the person, his or her present and former agents, relatives, servants, employees, representatives, attorneys, assistants, partners, all persons or entities acting or purporting to act on behalf of or in concert with such person, and all persons or entities under or subject to the person's direction or control.

19. Without limiting the foregoing, reference to any entity other than a natural person includes the entity; each of its predecessors and successors; each of its present and former agents, servants, employees, representatives, attorneys, assistants, advisors, subsidiaries, affiliates, divisions, joint ventures, partners, officers, directors, trustees or administrators; all persons or entities acting or purporting to act on behalf of or in concert with the entity; and all persons or entities under or subject to the entity's direction or control.

20. Unless otherwise defined, all words and phrases used herein shall be accorded their usual meaning and shall be interpreted in their common and ordinary sense.

## **INSTRUCTIONS**

1. You shall organize the documents and label them to correspond with the categories in these Document Requests.

2. You shall produce all drafts and copies that are not identical to the original in any material respect.

3. If copies are produced, the reverse side of a document shall be produced, unless it is completely blank.

4. Each Document Request contemplates production of all documents in their entirety, without abbreviation or expurgation.

5. Each paragraph or subparagraph herein shall be construed independently and without reference to any other paragraph or subparagraph for the purpose of limiting its scope.

6. If any specific Document Request cannot be complied with in full, then it shall be complied with to the extent possible and an explanation shall be given as to why full compliance is not possible.

7. As to any document withheld from production due to a claim of privilege, state: (a) the author(s) of the document; (b) each person to whom the original or a copy of the document was sent; (c) the date of the document; (d) the subject matter of the document; and (e) the basis for the claim of privilege.

8. In the event that any document requested herein is not in your possession, custody or control, identify each document by its date, author, addressee, and title and identify each person who was or is in possession, custody or control of the original or a copy of the document.

9. All responsive documents should be produced in exactly the same form as they are kept in the ordinary course of business, i.e., documents attached to each other should not be separated and any produced photocopies should be bound in the same manner as the originals. Any document requested herein that is attached to a document by staple, clip, or otherwise shall also be produced, regardless of whether production of that document is requested herein.

10. All electronically stored information ("ESI") shall be produced in accordance with the following specifications: all documents are to be produced in bates-stamped, multi-page PDF (.pdf) images with accompanying load file identifying document breaks, and document level text or OCR for documents without extractable text. Further, the load files containing the following metadata:

11. For e-mails, the following fields: To, From, Subject, CC, BCC, Date (Sent and Received), and Time (Sent and Received).

12. For e-mail attachments and other documents with families or embedded documents or links, the following fields: BegDoc, EndDoc, BegAttach, End Attach, and GroupID.

13. For non-e-mail documents: Custodian, File Type, File Name, Author, Company, Date/Time Created, and Date/Time Last Modified.

14. For all e-mails and documents, the following should also be produced: MD5Hash, Doc Extension, and File Name.

15. For Excel documents: All non-redacted Excel documents shall be produced in native format in addition in addition to multi-page PDF (.pdf) images.

16. The metadata should be produced together with the corresponding documents.

17. If any document requested herein was at one time in existence, but has been lost, discarded or destroyed, identify each such document and provide the following information in the written response designating the documents which cannot be produced:

    a. the date or approximate date it was lost, discarded or destroyed;

    b. the circumstances and manner in which it was lost, discarded or destroyed;

    c. the reason for the disposal of the documents (if discarded or destroyed);

    d. the identity of all persons authorizing or having knowledge of the circumstances surrounding the disposal of the documents;

    e. the identity of the person(s) who lost, discarded, or destroyed the documents; and

    f. the identity of the person(s) having knowledge of the contents thereof.

18. These Document Requests are continuing and require further and supplemental production of all responsive documents and ESI obtained after the date of initial production in accordance with the Rules.

19. All requests set forth herein refer to events, documents, communications and things occurring or created from January 1, 2021 to the present, unless otherwise specified.

20. If any request contained herein is claimed to be objectionable, then (a) the portion of such document production request claimed to be objectionable shall be identified, and the nature and basis of the objection shall be stated with sufficient particularity and in sufficient detail to permit the Court to rule on the validity of the objection; (b) any document withheld from production pursuant to such objection shall be identified with sufficient particularity and in sufficient detail to permit the Court to determine that such document falls within the scope of such objection; and (c) documents shall be produced in response to any portion of such document production request that is not claimed to be objectionable.

21. If you contend that any documents responsive to these requests are not reasonably accessible or would be unduly burdensome to locate and/or produce, identify such documents by category and source and provide detailed information regarding the burden or cost you claim is associated with the search for or production of such documents.

22. If you intend to identify potentially responsive documents using search terms, date restrictions, file types, or other filtering methods, any such proposed methodology shall be disclosed in advance of any such search and shall be subject to review and approval by Renaissance.

## DOCUMENT REQUESTS

1. All documents and communications that support or contradict Plaintiffs' claim that they suffered emotional distress as alleged in paragraphs 47-57 of the Amended Complaint.

2. All documents and communications that evidence the emotional distress alleged in paragraphs 47-57 of the Amended Complaint.

3. All documents and communications in which Plaintiffs discuss the lawsuit that was filed on behalf of Renaissance on June 6, 2023 in Kings County Civil Court that is referenced in paragraph 31 of the Amended Complaint.

4. All documents and communications that evidence the damages allegedly suffered by Plaintiffs as a result of the conduct Plaintiffs allege in the Amended Complaint.

5. All documents and communications that Plaintiffs intend to rely upon at trial to support the claim that they suffered emotional distress as alleged in paragraphs 47-57 of the Amended Complaint.

6. All documents and communications evidencing Plaintiffs' expenses incurred in connection with traveling as referenced in paragraph 41 of the Amended Complaint.

7. All documents and communications showing that Plaintiffs "purchased tickets to fly from their home in Florida to New York to appear at the June 26 hearing" as alleged in paragraph 40 of the Amended Complaint.

8. All documents and communications showing that Plaintiffs purchased "airfare from Florida to New York and back" as alleged in paragraph 41 of the Amended Complaint, and the dates and amounts for any such purchase.

9. All documents that support the claim in paragraph 40 of the Amended Complaint that Plaintiffs are "living on a fixed income" and that they "do not have much money."

10. All documents evidencing the net worth for Gachelin, including but not limited to all of his monthly bank statements, brokerage statements and retirement account statements.

11. All documents evidencing the net worth for Abrahams, including but not limited to all of her monthly bank statements, brokerage statements and retirement account statements.

12. All documents relating to any monies Gachelin or Abrahams received in connection with any settlement between either of them and Renaissance.

13. All documents and communications supporting the claim in paragraph 49 of the Amended Complaint that "the stress of the lawsuit also contributed to Mr. Gachelin's gaining twenty pounds."

14. All documents supporting the claim in paragraph 50 of the Amended Complaint that "Ms. Abrahams, who is diabetic, experienced blood sugar spikes and troughs as a result of the stress and the associated change of her appetite."

15. All documents and communications supporting the claim in paragraph 50 of the Amended Complaint that "[a]s a result of the stress, Ms. Abrahams was frequently tired and had little desire to eat, altering her eating habits significantly."

16. All documents and communications supporting the claim in paragraph 51 of the Amended Complaint that "Ms. Abrahams lost about twenty pounds due to the stress, changes in her appetite, and increased walking, which Ms. Abrahams does in response to the stress."

17. All documents and communication supporting the claim in paragraph 52 of the Amended Complaint that, "Due to the stress, Ms. Abrahams was crying on a weekly basis, and her emotional state was worsened because she did not want Mr. Gachelin to know how stressed she was."

18. All of Plaintiffs' medical records, including but not limited to all medical records relating to the diabetes alleged in paragraph 50 of the Amended Complaint, and Plaintiffs' emotional distress alleged in the Amended Complaint.

19. All documents and communications between Plaintiffs and Gary Kavulich, Esq. or any attorney employed by, or working on behalf of, the law firm Kavulich & Associates, P.C.

20. All documents and communications between any of the Plaintiffs and any attorney employed by, or working on behalf of, the law firm Kavulich & Associates, P.C.

21. All documents and communications between any of the Plaintiffs and any employee or agent of Renaissance, Clipper Realty L.P., Clipper Equity LLC, or Clipper Realty Inc.

22. All documents and communications between Plaintiffs and any other person in which Plaintiffs discuss the Action or the claims asserted in the Amended Complaint.

23. All documents and communications evidencing any claims for damages made by Plaintiffs in any other action or proceeding.

24. All documents and communications that support or contradict Plaintiffs' allegations in the Amended Complaint.

25. All documents that Plaintiffs receive or received from any other party or non-party in the course of discovery in this Action.

26. All documents that Plaintiffs intend to rely upon at trial in this action.

Renaissance reserves the right to serve additional demands during the course of discovery.

11

Dated: New York, New York
November 30, 2025

      SCHWARTZ LAW PLLC
      By:_/s/_____
      Allen Schwartz, Esq.
      150 Broadway, Suite 701
      New York, New York
      allen@allenschwartzlaw.com

*Counsel for Defendant Renaissance Equity Holdings D LLC*