**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
**FARAH JEAN FRANCOIS,**

                                **Plaintiff,**          **Case No. 1:22-cv-4447**

        **- against -**                         **(Hon. Jed S. Rakoff)**

**SPARTAN AUTO GROUP LLC d/b/a VICTORY**
**MITSUBISHI, STAVROS ORSARIS, YESSICA**
**VELLEJO, and DAVID PEREZ,**

                              **Defendants.**
-------------------------------------------------------------------X


## MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

H. Nicholas Goodman
Patrick L. Selvey
NICHOLAS GOODMAN & ASSOCIATES, PLLC
*Attorneys for Defendants*
**SPARTAN AUTO GROUP LLC**
**d/b/a VICTORY MITSUBISHI,**
**STAVROS ORSARIS, YESSICA VELLEJO,**
**and DAVID PEREZ**
333 Park Avenue South, Suite 3A
New York, New York 10010
(212) 227-9003

# TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... ii
TABLE OF AUTHORITIES ................................................................................................ iii
PRELIMINARY STATEMENT ........................................................................................... 1
ARGUMENT ......................................................................................................................... 2
    I.       THE LEGAL STANDARD ..................................................................... 2
THE JOHNSON FACTORS DICTATE A SIGNIFICANT REDUCTION IN KESHAVARZ' ATTORNEY FEES ................................................................................................ 2
      A.      The Amount Involved and Results Obtained ................................... 2
      B.      The Novelty and Difficulty of the Questions Presented ................. 3
      C.      Whether the Fee is Fixed or Contingent ......................................... 3
      D.      The Preclusion of Other Employment ............................................. 3
      E.      The Experience, Reputation, and Ability of the Attorneys ............. 4
      F.      Reasonableness of Hourly Rates ..................................................... 5
      G.      Total Legitimate Time and Labor Involved, Discretionary Reductions, Settlement Attempts, and Lodestar Sought ................... 6
    II.      KESHAVARZ SYSTEMATICALLY OVERWORKED AND OVERBILLED THIS STRAIGHTFORWARD CASE FOR MINIMAL DAMAGES USING HIS STATUTORY ENTITLEMENT TO FEES AS A CUDGEL ................................................. 7
      A.      Plaintiff Refused to Negotiate in Good Faith From Day One ......... 7
      B.      Plaintiff's Frivolous Complaint ..................................................... 14
      C.      Plaintiff's Frivolous Opposition To Defendants' Summary Judgment Motion 15
      D.      Plaintiff's Vexatious and Disingenuous Litigation ....................... 15
      Plaintiff's Demand for Additional Insurance Information ........................... 16
      Plaintiff's Demand for Supplemental Discovery Production ...................... 16
      Deposition Order Dispute ............................................................................ 17
      Plaintiff's Frivolous Request to Amend the Complaint ............................... 18
    III.      THE OUTCOME OF THIS CASE RESULTED FROM DEFENSE COUNSEL'S ANTICIPATED TRIAL COSTS AND LIKELY DISRUPTION OF DEFENDANTS' BUSINESS, NOT THE MERITS OF PLAINTIFF'S CASE ................................................. 18
    IV.      CALCULATION OF REASONABLE FEES ...................................... 20
      A.      Plaintiff's Opposition to Defendants' Summary Judgment Motion ............... 21
      B.      Excessive and Harassing Depositions ........................................... 21
      C.      Analysis of Reasonable Fee Cut-Offs ........................................... 22
CONCLUSION .................................................................................................................... 23

## **TABLE OF AUTHORITIES**

Cases

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections*, 522 F.3d 182 (2d Cir. 2008)................................................................ 2

*Farrar v. Hobby*, 506 U.S. 103 (1992) ................................................................ 20

*Hensley v. Eckerhart*, 461 U.S. 424 (1983) ......................................................... 20

*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ........................... 2

*Palsgraf v. Long Is. R.R. Co.*, 248 N.Y. 339 (1928) ................................................. 3

*Samms v. Abrams*, 198 F. Supp. 3d 311 (S.D.N.Y. 2016) ..................................... 8, 13

*Sands v. Runyon*, 28 F.3d 1323 (2d Cir. 1994) .................................................... 14

## PRELIMINARY STATEMENT

Before this Court is the application of the Law Firm of Ahmad Keshavarz (the Law Firm of Ahmad Keshavarz and Ahmad Keshavarz individually hereinafter referred to collectively as "Keshavarz"), counsel of record for Plaintiff herein, for attorney fees in the amount of $402,006.59 for nearly 1,000 hours of billing and an additional $21,571.26 in expenses all alleged expended in prosecuting this action that settled before trial for $120,000.00. The numerous declarations, certifications, and billing records submitted not only fail to justify the patently excessive billing sought, they demonstrate the extent to which Keshavarz multiplied proceedings for the purpose of generating a massive fee request. Further, the $400,000.00 plus in requested fees is wildly disproportionate to the simple liability issues in this FCRA case and the admittedly minimal damages Plaintiff sustained.

This Court will recall Plaintiff's failure to produce admissible evidence of any economic harm attributable to the alleged conduct of any Defendant herein, resulting in Your Honor dismissing Plaintiff's negligence cause of action altogether and leaving Plaintiff with only her emotional distress claim on her FCRA cause of action. And as to that, the record is clear that Plaintiff's emotional trauma was proximately caused not by an allegedly impermissible credit pull, but by the verbal abuse and harassment of Plaintiff's brother-in-law, a convicted criminal who admitted perpetrating the crime of stealing Plaintiff's identity.

Against this backdrop, the over-litigation and bad-faith refusal to negotiate towards amicable resolution of this low-value claim demonstrates Keshavarz' strategy: refuse to negotiate, and fight tooth and nail over every perceptible disagreement until the fees expand to the point he walks away a winner even if his client obtains only a nominal award. Ultimately, Defendants were able to stop this circus train just short of trial, but Plaintiff's counsel should not now be rewarded for his gamesmanship the last two and a half years.

## ARGUMENT

### I.     THE LEGAL STANDARD

This Court is surely familiar with the standard for determining a fee application within the parameters of the Second Circuit's guidance. To wit, an award of fees must be "reasonable" and proportionate to the outcome achieved and should not compensate an attorney for excessive billing and frivolous undertaking and should be reduced by a parties failure to achieve success on the majority of their claims. As set forth below, all those principles are in play herein.

### THE JOHNSON FACTORS DICTATE A SIGNIFICANT REDUCTION IN KESHAVARZ' ATTORNEY FEES

In a nutshell, Defendants contend that Keshavarz litigated this case to a point far exceeding anything "reasonable" under the facts and circumstances, especially considering the minimal degree of damages that Keshavarz now admits were in issue. That warrants significant reduction. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany & Albany Cnty. Bd. of Elections, 522 F.3d 182 (2d Cir. 2008)*.

Certain of the twelve factors expounded in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), bear on Defendants' contention:

#### A.     The Amount Involved and Results Obtained

Plaintiff's recoverable damages were minimal. This Court's dismissal of Plaintiff's negligence cause of action and Order precluding her from offering evidence of economic damages at all, (Doc. No. 60), left Plaintiff with her emotional distress claim and, theoretically, punitive damages. But as Keshavarz now acknowledges, emotional distress claims such as Plaintiff's rarely warrant six-figure awards. And that is without considering the reality here most, if not all, of Plaintiff's alleged emotional distress resulted not of allegedly improper credit pulls but from the abuse and threats her brother-in-law, Emmanual LaForest ("LaForest), subjected her to.

2

While the settlement herein may be considered a "favorable result," it did not rest on the threat of a substantial jury award but rather a pragmatic determination to stem the bleeding of attorney fees and disruption of Defendants' business enterprise presented by the potential of a two-seek trial. See Section "IV," below.

### B.      The Novelty and Difficulty of the Questions Presented

As Keshavarz himself notes, no court has held that an impermissible credit pull proximately caused a resulting fraudulent loan and resulting emotional distress. But contrary to Keshavarz' conclusion, that straightforward question of proximate causation, resting on principles as old as *Palsgraf v. Long Is. R.R. Co.*, 248 N.Y. 339 (1928), hardly required years of litigation including tens of hours of depositions and wildly excessive trial preparation, especially given the minimal damages at stake. That Keshavarz successfully made a mountain of a mole hill in order to generate absurd legal fees hardly speaks to the "novelty and difficulty of the legal issue."

This factor weighs in favor of a reduced fee award.

### C.      Whether the Fee is Fixed or Contingent

Keshavarz has not provided defense counsel or this Court with his Retainer Agreement herein leaving Defendants unable to address this issue. While he claims that he took this case on contingency basis, the record speaks to his fixation on a maximizing statutory fee recovery. Regardless, without Plaintiff's Retainer Agreement, this Court should not consider this factor.

### D.      The Preclusion of Other Employment

The extent to which Keshavarz could not work on matters other than this case cannot justify his multiplication of proceedings herein. Between May 30, 2022, when Plaintiff commenced this

action and today, Keshavarz filed no fewer than thirteen (13) lawsuits in the SDNY and EDNY.[1] And that does not include the many pending matters in which Keshavarz was already engaged, or matters that required time and attention but did not result in litigation. Certainly then, despite the ostensible time expended on frivolous pursuits and disputes herein, handling this case did preclude Keshavarz from successfully pursuing other employment.

Further, Keshavarz' retention of trial counsel some two weeks before trial, and the consequent effect on Mr. Milz, (Doc. No. 85-4, ¶ 34), is irrelevant. Keshavarz' questionable decision to retain "lead" trial counsel a mere two weeks before the trial date should not be borne by Defendants. To wit, Keshavarz cannot credibly claim that in October 2024 he still expected to try the case, not after Defendants August 8, 2024, Offer of Judgment for $100,100.00 *plus* attorney fees incurred to that date – Plaintiff settled for $120,000.00 plus attorney fees before trial less than two months later. Thus, this Court should not consider Milz' purported forbearance of other work for this case in its consideration.

## E.     The Experience, Reputation, and Ability of the Attorneys

Keshavarz and the attorneys supporting his application herein characterize him and his law partner Emma Caterine, Esq. ("Caterine") as highly skilled and experienced litigators. Doc.  No. 87, at 14; Doc. No. 85-7; Doc. No. 85-8; Doc. No. 85-9; Doc. No. 85-11; Doc. No. 85-12. That characterization hardly withstands scrutiny considering their assertion of non-existent and time

---

[1] *See Aranias v. SMG Automotive Holdings LLC*, 1:22-cv-04510, (E.D.N.Y); *Crespo v. Gutman, Mintz, Baker & Sonnenfeldt*, LLP, 1:22-cv-06599, (S.D.N.Y.); *Williams v. Tromberg, Morris, & Poulin, PLLC*, 1:22-cv-05866, (E.D.N.Y); *Luciano v. M&T Bank*, 1:23-cv-02233, (E.D.N.Y); *Ramirez v. Smith, Carroad, Levy, Wan & Parikh, P.C.*, 1:23-cv-04355, (S.D.N.Y.); *Tavano v. HK Recovery Group, Inc.*, 1:23-cv-08835, (S.D.N.Y.); *Carlo v. Abrams Fensterman, LLP*, 1:24-cv-03643, (E.D.N.Y); *Wilson v. Selip & Stylianou, LLP*, 1:24-cv-04108, (S.D.N.Y.); *Nunez v. Jay Zed LLC*, 1:24-cv-03949, (E.D.N.Y.); *Rutledge v. Schwartz Sladkus Reich Greenberg Atlas LLP*, 1:24-cv-04188, (E.D.N.Y); *Iacovo v. Magguilli Law Firm, PLLC*, 2:24-cv-04372, (E.D.N.Y.); *Rivera v. Experian Information Solutions, Inc.*, 1:24-cv-04684, (S.D.N.Y.); *Edwards v. Stern & Stern, P.C.*, 1:24-cv-08137, (E.D.N.Y.).

4

barred causes of action in Plaintiff's initial and abandoned Complaint, the barrage of unnecessary subpoenas and the repeated applications Your Honor summarily disposed of in Defendants' favor, not to mention Keshavarz' persistent refusal even to engage in settlement negotiation (all discussed in greater detail below). Further, his late retention of trial counsel (were it more than a play to generate greater fees) speaks to Keshavarz' ultimate lack of ability to see this case through to conclusion.

On the other hand, one might accept that Keshavarz is highly skilled, but skilled primarily in the art of multiplying proceedings to generate an exorbitant fee demand.

Meanwhile, Caterine rang up 318.13 hours for a claimed $111,345.50 in billings, nearly one-third of Keshavarz' total fee request herein, all before she left Keshavarz in the summer of 2024. Her primary contribution in this litigation was to prolong depositions, intentionally or through a lack of ability.[2] Either way, should this Court reach detailed analysis of her billing, this Court should very substantially reduce it.

As to trial counsel, as stated, Keshavarz' decision to retain trial counsel two weeks in advance of a trial that was never going to proceed should not be borne by Defendants, and thus the experience, reputation, and ability of Milz should not be a factor in this court's determination of the lodestar herein.

### F.    Reasonableness of Hourly Rates

Ahmad Keshavarz $550/hour rate might be warranted were he the skilled litigator he and his curated cheering section make him out to be, and had he utilized his talents economically in

---

[2] For example, see the deposition transcript of Defendant Jessica Vallejo, a needlessly grueling 7 plus hour event. Document 53-2. This Court is of course familiar with the basic facts at issue in this case such that even a cursory review of that transcript reveals the extent of wasteful and consistently inartful questioning to which Ms. Caterine subjected Ms. Vallejo.

the service of his client. The record herein says otherwise. Further, the allegedly skilled trial counsel engaged on the eve of trial billed at the rate of $375/hour. Keshavarz cannot justify billing $175/hour more than "lead trial counsel." This Court should reduce Keshavarz' rate to $400.00/hour at most.

Caterine's rate of $350/hour is certainly not warranted given her junior status – she was admitted to practice in 2019, meaning she had been admitted only two years when she began handling this matter, and three years when she participated in the bulk of the depositions herein. A review of the transcripts herein demonstrates her lack of experience and legal acumen. Also, the billing records submitted reveal that Ahmad Keshavarz sat in on most depositions at which Caterine questioned or defended. Further, the record does not support a billing rate for Caterine only $25/less than purportedly highly skilled "lead trial counsel" Milz. A more appropriate rate for any time this Court may credit to her is $225/hour.

### G. *Total Legitimate Time and Labor Involved, Discretionary Reductions, Settlement Attempts, and Lodestar Sought*

As set forth below, Defendants believe that any fee award to Keshavarz should not exceed $18,975.00, the amount of fees incurred to the date of Defendants' first Rule 68 Offer of Judgment. Failing that, the absolute highest lodestar amount that could remotely be considered reasonable would be $150,440.00, equal to the total amount of fees incurred as of the date of Defendants February 3, 2023, settlement offer which Keshavarz did not even convey to his client. See Section III(A), below. This amount, of course, must be further reduced by 50% to account for the degree of wasteful and frivolous billing entries that comprise it, as discussed in Section III(B)-(D), below.

6

## II.   KESHAVARZ SYSTEMATICALLY OVERWORKED AND OVERBILLED THIS STRAIGHTFORWARD CASE FOR MINIMAL DAMAGES USING HIS STATUTORY ENTITLEMENT TO FEES AS A CUDGEL

Throughout the course of this litigation, Keshavarz engaged in blatant, transparent – and consistent – conduct designed to pad his fees, highlighted by the persistent refusal to engage in good faith settlement negotiations from inception to the literal eve of trial. Along the way, Keshavarz asserted patently frivolous claims and causes of action later abandoned, insisted upon countless wasteful telephonic conferences with this Court over indefensible demands, and forced unnecessary motion practice, all in the service of his mission to turn a claim he now admits was questionable in the first place, and in any event of minimal monetary value, into a brutal slog with the statutory entitlement to attorney fees a perceived pot of gold at the end of his ethically dubious rainbow.

### A.   Plaintiff Refused to Negotiate in Good Faith From Day One

Upon retention and investigation of this claim, defense counsel spoke with Keshavarz, questioned the validity of Plaintiff's claims, and requested that Plaintiff state a settlement demand so as to avoid the time and expense of litigation. Affirmation of H. Nicholas Goodman ("Goodman Aff."), ¶ 2. Keshavarz refused to state a demand. *Id.*

On July 12, 2022, the undersigned reiterated Defendants' request for a settlement demand by email. Exhibit "1." Plaintiff's counsel did not acknowledge that request, responding only with a proposed discovery schedule as though settlement negotiation had not even been suggested. Goodman Aff., ¶ 3; Exhibit "1."

Only ten days later, defense counsel continued good faith settlement efforts. Given the already apparent low value of Plaintiff's provable damages,[3] on July 20, 2022, Defendants

---

[3]A fact that Plaintiff's counsel now gleefully admits in his fee application while patting himself on the back for his "high degree of success." Doc. No. 87, at 21-25.

conveyed a FRCP Rule 68 Offer of Judgment in the amount of $5,010.00 *plus* Plaintiff's reasonable attorneys' fees incurred to that date. Doc. No. 85-18. If nothing else, that offer could have, and should have, led to negotiation to resolve Plaintiff's admittedly minimal claim before full-blown litigation ensued.

Keshavarz again responded with silence,[4] followed by the issuance of a barrage of discovery demands and subpoenas two days later. Goodman Aff., ¶ 4. When pressed for a settlement demand during a subsequent telephone conference, Keshavarz demurred, stating the need to further assess the settlement value of Plaintiff's claim. Goodman Aff., ¶ 5. This conduct appears typical of Keshavarz' practice, a seemingly recurring strategy to leverage statutory fee shifting to generate legal fees orders of magnitude beyond the value of his clients' actual damages. *See, e.g.*, *Samms v. Abrams*, 198 F. Supp. 3d 311, 319 (S.D.N.Y. 2016).

Again, on August 10, 2022, defense counsel reiterated their desire to engage in good faith settlement discussions. Exhibit "2." But Plaintiff's counsel refused to engage, replying only to raise purported discovery issues and demanding the first of many wasteful telephonic conferences with this Court. Exhibit "2."

On September 6, 2022, Plaintiff's counsel for the first time expressed a willingness to consider settlement, but only in the form of mediation before his hand-picked mediator and only under that mediator's unique conditions including that Plaintiff should not state a settlement demand until one week before the mediation. Goodman Aff., ¶ 8; Exhibit "3." After reviewing that mediator's *bona fides* and noting his potential bias given his history of mediating cases with Keshavarz, defense counsel requested that Keshavarz (a) follow well established practice by

---

[4] It is not clear from Keshavarz' billing records or otherwise that he ever conveyed the terms of this settlement offer to his client for consideration.

stating a settlement demand so as to allow Defendants to determine the potential efficacy of mediation and an adequate time to respond, and (b) consider mediating at an established mediation forum such as NAM or JAMS. Goodman Aff., ¶ 8.

Also on September 6, 2022, this Court conducted a telephonic conference that included discussion of Defendants' then-pending first Motion to Dismiss and Plaintiff's Amended Complaint. Thereat, the undersigned urgently requested that Your Honor refer this action to a Magistrate Judge for the purpose of conducting a settlement conference. Goodman Aff. ¶ 9. But counsel were advised that Your Honor would only do so with the consent of all parties and Keshavarz refused to consent. *Id.*

On September 9, 2022, Caterine advised that settlement analysis was ongoing and promised to communicate an appropriate settlement range by the end of day September 12, 2022. Goodman Aff., ¶ 10. However, when defense counsel followed up on September 12, 2022, Caterine initially denied agreeing to state a settlement range, but ultimately agreed to provide an "analysis of the value of this case" the following day. Exhibit "4."

Incredibly, on September 13, 2022, Caterine retracted all previous agreements to state a demand, insisting instead that Defendants agree to schedule mediation before Plaintiff's chosen mediator, Joseph DiBenedetto, and that Plaintiff would agree to exchange a settlement demand only *after* Defendants had committed to participating in, *and paying for*, the mediation session. Exhibit "4." Defense counsel responded by repeating the simple request Plaintiff state a settlement demand, whatever it might be, allowing negotiations to ensue. *Id.*

On September 19, 2022, the parties appeared telephonically for a discovery conference. Thereat, the undersigned again conveyed frustration with Keshavarz' refusal to state a settlement demand, and again requested that the Court refer the matter to a Magistrate Judge for a settlement

conference, or, barring that, that Your Honor conduct a settlement conference. Goodman Aff., ¶ 12. But Keshavarz yet again refused to consent, and this Court denied Defendants' request. *Id.*

Recognizing that Keshavarz had no interest in good faith negotiation toward an amicable resolution of this case, and having received no assistance from this Court, Defendants proceeded with discovery, including numerous long and wasteful party depositions. *See* Section III(E), above, and Section V(B), below

On February 3, 2023, with discovery complete and dispositive motions due in a matter of weeks, but still having not received a settlement demand, Defendants conveyed a settlement offer of $45,000.00, hoping that Keshavarz would at least counter that offer and those open further discussions towards settlement and the avoidance of motion practice. Doc. No. 85-17.

Keshavarz February 8, 2023, response underscored his intent to multiply proceedings rather than working toward an amicable resolution. To wit, instead of countering Defendants' offer, Keshavarz served an improper, untimely Third Amended Initial Disclosures purporting to identify a host of previously undisclosed fact witnesses and attempting to add previously unasserted, and entirely unsubstantiated, damage claims.[5] Goodman Aff. ¶ 17; Exhibit "6."

On February 9, 2023, Keshavarz did formally reject Defendants' offer and reasserted his willingness to mediate before the only mediator he would accept, Joseph DiBenedetto. Doc. No. 85-16, p. 4. Disregarding all professional custom and practice, Plaintiff's counsel again refused to counter Defendants' offer. And notably, while Keshavarz asserted that "[o]ur client has rejected your offer of settlement of February 3, 2023," Keshavarz' billing records now before this Court show only a vague billing entry on February 3, 2023, for 0.5 hours for "[r]esearch on settlement

---

[5] Defendants' rejected this untimely assertion of new theories of damages, which rejection this Court affirmed in its decision precluding Plaintiff from relying on those assertions in opposition to Defendant's motion for summary judgment. Doc. No. 60, p. 8-10.

issue," Doc. No. 85-2, at 16, but no time entry for communicating with his client at any time from receipt of Defendants' February 3, 2023, offer until March 3, 2023. Doc. No. 85-2, at 16-17. Thus, Keshavarz apparently rejected Defendants' $45,000.00 offer without conveying it to his client. Doc. No. 85-2, at 16.

Absent coercive pressure or self-interested advice from her counsel, one would reasonably expect Plaintiff to have accepted Defendants' $45,000.00 offer, or, at a minimum, to have engaged in discussion with her counsel about the value of her case, and conveyed an amount she would accept.

On February 10, 2023, Defendant's counsel responded to Keshavarz with yet another entreaty to state a settlement demand and to consider an alternative mediator. Exhibit "7." On February 22, 2023, Plaintiff's counsel responded, again completely ignoring the substance of Defendants' previous correspondence and reasserting his disingenuous "request for mediation" before Joseph DiBenedetto, Doc. No. 85-16, at 6, ignoring Defendants' request to consider an alternate mediator. *Id*.

It was not until nearly one year later, on February 5, 2024, after Defendants achieved near total success on their motion for summary judgment, having eliminated Plaintiff's negligence cause of action entirely and removed from consideration all of Plaintiff's claims for economic damages under her FCRA claim, that Plaintiff's counsel finally deigned to consider mediation with someone other than Joseph DiBenedetto. *See* February 5, 2024, Request for Mediation, Doc. No. 85-16, p. 8.

11

After repeated delays, on June 13, 2024, the parties finally participated in an all-day mediation session with Paul Radvany, Esq.[6] Goodman Affirmation, ¶ 7. That lengthy effort failed to produce a settlement or for that matter a significant narrowing of the gulf between the parties' positions. *Id*.

On July 24, 2024, Defendants made another Rule 68 Offer of Judgment in the amount of $50,100.00 *plus* Plaintiff's reasonable attorneys' fees incurred to that date. Exhibit "8." As of that Offer, Keshavarz' claimed legal fees had reached an absurd $252,000.50. Doc. No. 85-2. The total value of that offer, even after a 50% reduction of Plaintiff's legal fees due to the frivolous and wasteful nature of Keshavarz' conduct herein, (see Section V, below), still comes to $176,100.25. At that point, a reasonable attorney would have considered the game won, having obtained a result far above Plaintiff's likely recovery at trial (as Keshavarz now admits), and well within the range of Plaintiff's best-case scenario. *See* Doc. No. 87, at 21-25. But rather than respond, Plaintiff allowed that Offer of Judgment to expire.

Meanwhile, Keshavarz continued to churn the file, incurring some $75,000.00 in claimed fees, most of which were attributable to "trial preparation," between July 24 and November 5, 2024, when the case actually settled. Doc. No. 85-2, at 22-28.

As if that were not enough, on August 9, 2024, Defendants conveyed yet another Rule 68 Offer, this time in the amount of $100,100.00 *plus* Plaintiff's reasonable attorney fees incurred to that date. Exhibit "9." The total value of this offer, even after a 50% reduction in Keshavarz claimed fees, would have been $228,670.25. *See* Doc. No. 85-2. But Keshavarz also allowed this Offer of Judgment to expire and continued overblown preparation for a trial he knew would not

---

[6] Indeed, Plaintiff stated her first demand, seeking a whopping $720,000.00, on May 30, 2024, two weeks before the scheduled mediation.

12

proceed. And again, notably, Keshavarz' billing records do not reflect any communication with the firm's client between August 9, 2024, and September 9, 2024, suggesting that the August 9 Offer of Judgment was likewise not communicated to his client prior to its expiration. Doc. No. 85-2, at 22.

Finally, after more torturous and contentious months, the parties ultimately agreed to settle the case on November 5, 2024. Goodman Aff., ¶ 22. During this time, Plaintiff's counsel continued to delay proceedings while furiously billing for trial preparation in advance of a trial he knew full well would never happen.[7] *Id*.; Doc. No. 85-2.

As stated, this case is not the first time Keshavarz has employed a strategy of refusing to negotiate while building up outsized fees, and indeed, not even the first time that Plaintiff's counsel has engaged in this process before Your Honor. In *Samms v. Abrams*, 198 F. Supp. 3d 311 (S.D.N.Y. 2016), Keshavarz used nearly identical tactics while litigating a similarly low-value claim, ultimately seeking nearly $200,000.00 in fees after obtaining less than $8,000.00 in relief for his client following a jury trial. A copy of the Memorandum of Law submitted by the *Samms* Defendants in opposition to Plaintiff's fee application is annexed hereto as Exhibit "10." Just as in this case, Keshavarz repeatedly ignored settlement offers and refused to state a settlement demand or otherwise engage in meaningful negotiations until he had generated legal fees dwarfing the true value of his client's claims. Exhibit "10," at 25.

This questionable conduct alone warrants a significant reduction in any fee award to Keshavarz. Here, Keshavarz managed to stretch a case that should have settled at or near its outset,

---

[7] Keshavarz now acknowledges that Plaintiff's odds of success at trial were low, and Defendants settlement offers made clear that settlement on the high end of Plaintiff's potential trial recovery would be easily obtained, thus rendering all of counsel's billing in "preparation" for trial a farce for which he should not be permitted to recover at all.

and certainly by February 2023 after the close of discovery, into a multi-year battle so that Keshavarz' claimed fees now approach an unseemly half million dollars. The Second Circuit has held that attorney misconduct that results in artificially elongating litigation is rightly considered on a fee application. *Sands v. Runyon*, 28 F.3d 1323, 1334 (2d Cir. 1994) (approving of district court's consideration of settlement negotiations, including delays caused by plaintiff's counsel, in awarding attorneys' fees). Accordingly, this Court should take into account Keshavarz' manipulation of the statutory protections afforded to consumers under the FCRA when rendering an award herein.

### B.    *Plaintiff's Frivolous Complaint*

While Keshavarz claims great expertise in his area of practice, Plaintiff's initial Complaint demonstrated no such expertise. That Complaint asserted a cause of action sounding in defamation fatally devoid of alleged special damages, and that was in any event time-barred. Doc. No. 1, ¶¶ 152-161. Further, Plaintiff also asserted a purported cause of action for Invasion of Privacy/False Light, theories not recognized under New York law at all. Doc. No. 1, ¶¶ 170-173.[8]

Defendants immediately moved to dismiss these frivolous causes of action along with Plaintiff's poorly pleaded negligence cause of action.[9] Keshavarz first opposed Defendants' motion, racking up legal fees in the process, but then rendered large portions of the motion moot by serving and filing an Amended Complaint without the defamation and invasion of privacy causes of action.

Beyond those unsustainable claims, Plaintiff persisted in her utterly baseless assertion that Defendants had harmed her credit or credit score all the way up until February 8, 2023, when she

---

[8] Amazingly, Keshavarz billed an outlandish $10,680 for drafting the defective original Complaint with all its frivolous deficiencies. *See* Doc. No. 85-2, at 4-8.
[9] This Court later dismissed Plaintiff's negligence cause of action in its entirety. Doc. No. 60.

finally withdrew those claims via her untimely 3rd Amended Rule 26(a)(1) Disclosures. Exhibit "6," at 8. This despite ample evidence, all of which was in Plaintiff's possession since before the commencement of litigation, that Plaintiff's credit score was not negatively impacted whatsoever by any of Defendants' alleged conduct.

### C.    *Plaintiff's Frivolous Opposition To Defendants' Summary Judgment Motion*

By their correspondence dated February 3, 2023, that conveyed their $45,000.00 settlement offer, Defendants detailed why Plaintiff's action against named Defendants Victory Auto Group, LLC d/b/a Victory Mitsubishi ("Victory") and Phillip Argyropoulos ("Phillip") individually lacked any merit. Doc. No. 85-17. Anticipating their motion for summary judgment, Defendants requested that Plaintiff discontinue those claims forthwith. Keshavarz refused.

On February 24, 2023, Defendants moved for summary judgment. Given Keshavarz' refusal to drop Plaintiff's claims against Victory and Phillip, Defendants were compelled to draft argument seeking their dismissal. Indeed, Defendants' Memorandum of Law cited their February 3 correspondence and asked this Court to consider sanctions against Keshavarz should he persist with claims against Victory and Phillip.

True to form, only after compelling defense counsel to expend time and energy to seek summary judgment for Victory and Phillip, in opposition Keshavarz conceded that Plaintiff had no case against Phillip, and offered virtually no opposition to Defendants' motion on behalf of Victory. This Court granted summary judgment to Victory and Phillip, as well as to Diane Argyropoulos individually.

### D.    *Plaintiff's Vexatious and Disingenuous Litigation*

A review of this Court's docket will give but a taste of the degree to which Keshavarz engaged in unnecessary, vexatious litigation, repeatedly demanding discovery and concessions to which Plaintiff was not entitled, often requiring this Court intervention before backing down.

15

Specifically, Plaintiff demanded telephonic conferences with the Court regarding the following issues, each of which resulted in the denial of the relief Keshavarz sought, but only after wasting defense counsel's time while contributing to Keshavarz ever-growing attorney fee claim:

Plaintiff's Demand for Additional Insurance Information

On or about August 24, 2022, Keshavarz asserted a laundry list of objections to Defendants' response to Plaintiff's first set of discovery demands, complaining in particular that Defendants' production of a redacted insurance agreement. Keshavarz demanded the identity and contact information for Defendant's insurance carrier despite having been repeatedly advised, and having had ample opportunity to establish from a review of the policy language itself that Defendants would not be afforded coverage for this case. Goodman Aff., ¶ 7 Nevertheless, Plaintiff's counsel insisted on taking this issue to this Court.

During an August 26, 2022, telephonic conference, this Court denied Keshavarz' request in its entirety.

Plaintiff's Demand for Supplemental Discovery Production

On or about September 16, 2022, Plaintiff's counsel raised various additional objections to Defendants' discovery production and demanded that Defendants supplement their discovery production by providing employee records, "pattern-and-practice" information concerning unauthorized sales of vehicles or credit report inquiries, and all financing agreements that might have governed the sale of the vehicle in question along with additional records concerning Plaintiff. Goodman Aff., ¶ 12. Despite defense counsel's assurance that a supplemental document production was forthcoming, Plaintiff's counsel insisted on seeking relief from this Court. *Id.*

On September 19, 2022, this Court conducted a telephonic conference wherein this Court denied Plaintiff's request for an Order that Defendants supplement their production.[10]

Deposition Order Dispute

In October 2022, the parties reached an impasse on an issue ordinarily easily resolved without judicial intervention: the order of party depositions. Goodman Aff., ¶ 14.

On October 28, 2022, Defendants proposed a deposition schedule in the order of the caption, beginning with Plaintiff's deposition. *Id.*

On October 31, 2022, Keshavarz demanded that Defendants produce each of their five party witnesses before Plaintiff. *Id.* Keshavarz did not even acknowledge Defendants' previously proposed schedule, or provide a basis for objecting to same. *Id.* When pressed, Plaintiff's counsel asserted that Defendants should be deposed before Plaintiff "to prevent Defendants from fabricating testimony" based on Plaintiff's testimony. *Id.*; Exhibit "5."

Keshavarz ultimately asked this Court to So-Order his proposed dates, refusing entirely to compromise. In so doing, Plaintiff's counsel ignored the Individual Rules of this court regarding pre-motion conference requests and telephonic communication, including drafting and emailing the Court a letter motion prior seeking a telephone conference in direct contravention of Section 2(b) of this Court's Individual Rules.

This Court conducted yet another telephonic conference on November 15, 2022, that produced a resolution: a compromise defense counsel proposed that Plaintiff's counsel refused to accept until this Court insisted upon it. Pursuing this dispute, including the drafting and submission of an unauthorized letter motion requesting that the court order depositions prior to convening a

---

[10] Defense counsel also reiterated their request that this Court refer this case for a settlement conference which request this Court denied.

telephonic conference under this Court's Individual Rules, is yet other example of Plaintiff's strategy to maximize billing at the expense of judicial economy and reason.

<u>Plaintiff's Frivolous Request to Amend the Complaint</u>

In late 2022, Keshavarz manufactured a further dispute concerning a non-party who had been furloughed by Defendant Spartan and was not at the dealership on any relevant date. On December 20, 2022, following a telephonic conference, this Court denied Plaintiff's application to add that non-party as a party Defendant.

Then, at a January 9, 2023, telephonic conference, this Court declined to allow Keshavarz to submit an Order To Show Cause to compel the non-party to appear for deposition despite defense counsel's agreement to stipulate that the non-party was furloughed on the dates at issue.

## III. THE OUTCOME OF THIS CASE RESULTED FROM DEFENSE COUNSEL'S ANTICIPATED TRIAL COSTS AND LIKELY DISRUPTION OF DEFENDANTS' BUSINESS, NOT THE MERITS OF PLAINTIFF'S CASE

Plaintiff's ultimate recovery herein was not a consequence of the merits of her case or the quality of Keshavarz' legal work. Rather, Defendants simply estimated the amount of legal fees they would incur trying this case,[11] along with the legal fees to which Plaintiff would seek recovery after trial, while also considering the disruption to their business operations caused by a potential two-week trial key management personnel would be required to attend at a critical time of year.

As Keshavarz now freely admits, Plaintiff's alleged economic damages were *de minimis;* yet even now, despite this Court's finding to the contrary, he continues to insist that Plaintiff suffered economic damages, those being the supposed "costs of postage for a few dispute letters; some storage and moving expenses; and some lost wages due to time taken off work to deal with the fallout of the theft of her identity." Doc. No. 87, p. 22. In reality, Plaintiff failed to establish

---

[11] Again, in the absence of applicable insurance coverage, Defendants' herein were responsible for paying their legal fees out of pocket.

her entitlement to *any* economic damages, as demonstrated by this Court's July 13, 2023, Order dismissing Plaintiff's negligence claim, holding *inter alia* that Plaintiff "has introduced no evidence that she suffered any economic harm" and thus she "may not seek economic damages as to her FCRA claim at trial." Document No. 60, p. 23.

As to her only remaining claim, for emotional distress, Keshavarz now acknowledges that Plaintiff faced a "substantial risk" that a jury might award little or nothing for this claim, particularly given that whatever emotional distress Plaintiff may have suffered came entirely at the hands of her brother-in-law LaForest. Doc. No. 87, p. 24. And the same goes for Plaintiff's claim for punitive damages; with LaForest's complete lack of credibility as a convicted criminal who openly admitted to defrauding Plaintiff, she faced what Keshavarz himself deemed a "high" risk of not recovering punitive damages at trial. Doc. No. 87, p. 25.

These realities were known to Plaintiff's counsel at the inception of this litigation and became more and more obvious throughout. From the outset, Defendants sought to resolve Plaintiff's claims so as to avoid the cost and expense of litigation (see Section III(A), above). In the end, after years of dealing with Keshavarz' refusal to negotiate in good faith, and faced with more expense and more lost time, Defendants settled for virtually the same amount of their August 9, 2024, Offer of Judgment.

At the June 2024 mediation, Defendants repeatedly, and unsuccessfully, implored the mediator to bring Plaintiff's counsel in line with reason and settle the case outright, but Keshavarz resisted, and here we are.

In sum, while Keshavarz and his coterie of purported admirers crow over the outcome, their collective admission of the dubious nature of Plaintiff's case and the minimal damages she hoped to recover only underscore the manipulation of the statutory protections enacted to protect

19

consumers, not to line counsel's pockets. This Court should not countenance this sort of exploitation of the statutory protections intended to encourage consumers in resolving meritorious but low value claims.

Put simply, this case did not remotely warrant the expenditure of $423,000.00 of legal fees and disbursements. Those claimed expenditures do not bear a reasonable, or even rational, relationship to the merits of Plaintiff's case and especially to her alleged damages. *Farrar v. Hobby*, 506 U.S. 103 (1992).

Further, as set forth above, Plaintiff failed on multiple aspects of her claim, starting with the original Complaint, the claimed negative effect on her credit rating to this Court's dismissal of her negligence claim and her economic damages claim. These failures warrant significant reductions in any fee award herein. *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983).

## IV. CALCULATION OF REASONABLE FEES

Based on the foregoing, Defendants respectfully request that this Court find that the statutory protections afforded by the fee-shifting provisions of the FCRA are meant as a shield to protect consumers and not, as Mr. Keshavarz has employed them, as a sword to extort businesses. To that end, Defendants request that the Court reduce Plaintiff's fee award to $18,975.00, that being the amount of fees incurred from inception to the date that Keshavarz discussed Defendants' July 20, 2022, Offer of Judgment with Ms. Francois on August 3, 2022. *See* Doc. No. 85-2. Had Plaintiff's counsel acted reasonably and in good faith instead of litigating this matter out of all proportion, this matter should have been resolved then and there.

Should this Court see fit to award Plaintiff with fees beyond this point, Defendants seek a 50% reduction in any such award to reflect both the excessive rate for what has consistently been shown to be sub-standard work (see Sections III(B)-(D), above) as well as the clearly frivolous

and excessive billing undertaken asserting and defending frivolous claims. *Id*. For more specific examples of Plaintiff's excessive billing, consider the following:

### A.    Plaintiff's Opposition to Defendants' Summary Judgment Motion

Keshavarz generated an astounding $67,260.50 in fees opposing Defendant's Motion for Summary Judgment, and only reduced his fee request by a single entry of $1,100 for duplicative preparation for oral argument. Doc. No. 85-2, at 16-19. In so doing, Keshavarz vehemently defended both Plaintiff's doomed negligence cause of action (despite having offered zero evidence of any economic damages) as well as the completely meritless claims asserted against Philip & Diane Argyropoulos and Victory Auto Group LLC. Given the wealth of undisputed evidence against these claims, Defendants seek a reduction of Plaintiff's fees for not voluntarily conceding these points. Further, Plaintiff generated a truly egregious Rule 56.1 statement, clearly in violation of court rules and common practice. *See* Doc. No. 54.[12] Thus, while the billing entries are not specific enough to parse the drafting/research that went into defending Plaintiff's frivolous claims and the more excessive, unsupported portions of Plaintiff's Rule 56.1 statement, Defendants request a 50% reduction across the board for Plaintiff's opposition to Defendants' summary judgment motion, or $33,000.00 in this category alone.

### B.    Excessive and Harassing Depositions

At $64,625.00, reduced from a mind numbing $80,220.00 after Plaintiff's voluntary reductions, this category of billing is the most questionable given Keshavarz' wasteful behavior at the party depositions herein. As mentioned above, Keshavarz/Caterine blundered through  entire days pursuing duplicative and unnecessary deposition testimony, often not reaching a relevant

---

[12] Plaintiff's 43 page, 247 paragraph Rule 56.1 statement contained extensive argumentation in a clear attempt to evade this Court's briefing limitations and was yet another exercise in over-litigation from Plaintiff's counsel.

question for many, many hours of questioning. *See* Doc. Nos. 52-9, 52-12, 53-1, 53-2. 53-3, and 53-4. It is not so much a question of whether any individual deposition was unreasonable, but the degree to which Plaintiff's counsel doggedly pursued irrelevant and duplicative lines of questioning with hours-long background inquiry intended both to wear down the witness and to inflate legal fees on both sides. Again, Defendants respectfully submit that Plaintiff's expended at least twice as much time as a reasonable, experienced attorney would have done in pursuing these depositions, even after Plaintiff's voluntary reductions.

### C. *Analysis of Reasonable Fee Cut-Offs*

Based on the foregoing examples, as well as the well-established strategy of refusing to engage in good-faith negotiation while pursuing every available frivolous argument throughout the course of litigation, Defendants would request that any fee award be reduced by, at minimum, 50%.

Should this Court see fit to award Plaintiff with her fees beyond the date of Defendants initial FRCP Rule 68 Offer of Judgment, the latest point at which Plaintiff's counsel's conduct could, in any rational world, be considered "reasonable" should fairly be marked at February 3, 2023, the date of Defendants' $45,000.00 settlement offer. At that point, Plaintiff's counsel had generated a claimed $150,440.00 in legal fees, but instead of communicating Defendants' very reasonable offer to his client, he chose instead to unilaterally reject it. Reducing the fees generated to this point by 50% results in an award of $75,220.00. Any legal fees generated thereafter cannot be considered "reasonable" as a matter of law.

As an absolute backstop, $252,00.50 is the amount of claimed fees generated from inception to Defendants' July 24, 2023, Offer of Judgment for $50,100.00 plus Plaintiff's reasonable attorney fees to date. Reducing that figure by 50% yields $126,000.25. No reasonable fees after this point should be considered under any circumstances, and Plaintiff's counsel should

certainly not be rewarded for the continued flurry of "trial preparation" activity by which he generated nearly $100,000.00 in additional fees despite the fact that settlement was clearly on the table.

## **CONCLUSION**

For all the reasons set forth above, Defendants request that this Court enter an Order denying Plaintiff's application and reducing Plaintiff's fee award from $423,577.80 to $18,975.00, or to the alternative amounts set forth above, together with such other and further relief as this Court deems just and proper.

Dated: New York, New York
February 24, 2025

BY: _____
H. Nicholas Goodman
Patrick L. Selvey

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

FARAH JEAN FRANCOIS,

                              **Plaintiff,**             **Case No. 1:22-cv-4447**

    - against -                                 **(Hon. Jed S. Rakoff)**

SPARTAN AUTO GROUP LLC d/b/a           <u>**AFFIRMATION IN OPPOSITION**</u>
VICTORY MITSUBISHI, STAVROS ORSARIS,
YESSICA VELLEJO, and DAVID PEREZ,

                         **Defendants.**

-----------------------------------------------------------------X

       **H. NICHOLAS GOODMAN,** an attorney duly admitted to practice law before the United

States District Court for the Southern District of New York, affirms the following to be true under

penalty of perjury:

<u>**PROCEDURAL HISTORY**</u>

       1.     I am the principal of the law firm Nicholas Goodman & Associates, PLLC,

attorneys for Defendants **SPARTAN AUTO GROUP LLC d/b/a VICTORY MITSUBISHI**

("Spartan") **STAVROS ORSARIS** ("Orsaris"), **YESSICA VALLEJO** ("Vallejo"), and **DAVID**

**PEREZ** ("Perez") (sometimes collectively "Defendants") in the above captioned action. As such,

I am familiar with the facts and circumstances of this action, and with the prior proceedings had

herein. I submit this Affirmation in Opposition to Plaintiff's Defendants' motion for attorneys'

fees and costs.

       2.     In or around July 2022, the undersigned communicated with Plaintiff's counsel

Ahmad Keshavarz ("Keshavarz") regarding Defendant's position as to the validity of Plaintiff's

claims and requested that Plaintiff state a settlement demand in the interest of resolving Plaintiff's

action early to avoid the time and expense of protracted litigation. At that time, Plaintiff's counsel

refused to state a demand.

3. On July 12, 2022, the undersigned reiterated Defendants' request for a settlement demand by email addressed to Keshavarz and Emma Caterine ("Caterine"), a true and correct copy of which is submitted herewith as **Exhibit "1."** Caterine replied to that email later the same afternoon with a proposed scheduling order, but refused to respond Defendants request for a settlement demand or otherwise acknowledge Defendants request to engage in settlement negotiations. *Id.*

4. On July 20, 2022, Defendants conveyed an Offer of Judgement pursuant to FRCP Rule 68. Doc. No. 85-18. Plaintiff's counsel never so much as acknowledged this Offer of Judgment, instead proceeding to serve various discovery demands and non-party subpoenas two days later as though no attempt at settlement had been made.

5. I later spoke with Plaintiff's counsel and reiterated Defendants' request for a settlement demand, but Plaintiff's counsel asserted the need to assess the value of Plaintiff's case prior to asserting a demand. On August 10, 2022, in the midst of discussing a dispute as to the relevance and discoverability of certain insurance policies, I again reiterated Defendants desire to pursue the amicable resolution of Plaintiff's claims. A true and correct copy of that email, together with the response from Plaintiff's counsel discussed below, is submitted herewith as **Exhibit "2."**

6. On August 15, 2022, Caterine responded to the above email, but only to address the disputed discovery issues and request a telephone conference regarding same. Exhibit "2." No further discussion regarding settlement was had.

7. On or about August 24, 2022, Plaintiff's counsel raised a laundry list of objections to Defendants' response to Plaintiff's first set of discovery demands, complaining in particular that Defendants' production of a redacted insurance agreement, demanding the identity and contact information for Defendant's insurance carrier despite having been repeatedly advised, and having

2

had ample opportunity to establish from a review of the policy language itself that Defendants would not be afforded no coverage for this case. Nevertheless, Plaintiff's counsel insisted on taking this issue to this Court.

8.      On September 6, 2022, Caterine responded to Defendants' repeated requests for settlement negotiations for the first time, by recommended mediation before Joseph DiBenedetto. A true and correct copy of this email is submitted herewith as **Exhibit "3."** After reviewing that mediator's *bona fides* and noting his potential bias given his history of mediating cases with Keshavarz, defense counsel requested that Plaintiff's counsel (a) follow well established practice by stating a settlement demand so as to allow Defendants to determine the potential efficacy of mediation and an adequate time to respond, and (b) consider mediating at an established mediation forum such as NAM or JAMS.

9.      Also on September 6, 2022, this Court conducted a telephonic conference that included discussion of Defendants' then-pending first Motion to Dismiss and Plaintiff's Amended Complaint. Threat, the undersigned urgently requested that Your Honor refer this action to a Magistrate Judge for the purpose of conducting a settlement conference. But counsel was advised that Your Honor would only do so with the consent of all parties and Keshavarz refused to consent.

10.      On September 9, 2022, Patrick Selvey ("Selvey"), a partner at this firm, communicated with Caterine via telephone regarding Defendants' longstanding request for a settlement demand. Caterine advised that settlement analysis was still ongoing, but that she would provide a demand by end of day the following Monday, September 12, 2022. However, when Mr. Selvey followed up on Monday, Caterine denied ever making such a promise. However, she did agree that she would "endeavor to get you our analysis of the value of this case by tomorrow." A

true and correct copy of the foregoing email correspondence, including Plaintiff's response discussed below, is submitted herewith as **Exhibit "4."**

11.      On September 13, 2022, Caterine retracted all previous agreements to state a demand, insisting instead that Defendants agree to schedule mediation before Plaintiff's chosen mediator, Joseph DiBenedetto, and that Plaintiff would agree to exchange a settlement demand only *after* Defendants had committed to participating in, *and paying for*, the mediation session. Exhibit "4." Mr. Selvey responded to this email reasserting Defendants clear desire to engage in meaningful negotiations towards the resolution of this action, but reiterating that Plaintiff's counsel were flouting convention and reason by refusing to state a demand or consider mediation before anyone other than their unilaterally chosen mediator, and expressing frustration at Plaintiff's habit of ignoring Defendants' repeated good faith efforts to engage in a meaningful discussion. Exhibit "4."

12.      On or about September 15, 2022, Plaintiff's counsel raised various additional objections to Defendants' discovery production and demanded that Defendants supplement their discovery production and provide employee records, "pattern-and-practice" information concerning unauthorized sales of vehicles or credit report inquiries, and all financing agreements that might have governed the sale of the vehicle in question along with additional records concerning Plaintiff. Despite defense counsel's assurance that a supplemental document production was forthcoming, Plaintiff's counsel insisted on seeking relief from the court, requesting that this Court specifically order the production of the foregoing documents specifically.

13.      On September 19, 2022, the parties appeared telephonically for a discovery conference before Your Honor's former Law Clerk, Harry Larson. Thereat, the undersigned again

4

conveyed frustration with Keshavarz's refusal to state a demand, and again requested that the Court refer the matter to a Magistrate Judge for a settlement conference, or, barring that, that Your Honor yourself conduct a settlement conference. But Keshavarz yet again refused to consent, and this Court denied Defendants' request.

14.    In October 2022, the parties reached an impasse on an issue ordinarily easily resolved without judicial intervention: the order of party depositions. On October 28, 2022, Defendants proposed a deposition schedule in the order of the caption, beginning with Plaintiff's deposition. On October 31, 2022, Keshavarz demanded that Defendants produce each of their five party witnesses before Plaintiff. Keshavarz did not even acknowledge Defendants' previously proposed schedule, or a basis for objecting to same. When pressed, Plaintiff's counsel asserted that Defendants should be deposed before Plaintiff "to prevent Defendants from fabricating testimony" based on Plaintiff's testimony. A true and correct copy of the email exchanged set forth above is submitted here with as **Exhibit "5."**

15.    Keshavarz ultimately asked this Court to So-Order his proposed dates, refusing entirely to compromise. In so doing, Plaintiff's counsel ignored the Individual Rules of this court regarding pre-motion conference requests and telephonic communication, including drafting and emailing the Court a letter motion prior seeking a telephone conference in direct contravention of Section 2(b) of this Court's Individual Rules.

16.    On February 3, 2023, with discovery complete and dispositive motions due in a matter of weeks, but still having not received a settlement demand, Defendants conveyed a settlement offer of $45,000.00, hoping that were Plaintiff to reject that offer, Keshavarz would at least convey his view of the value of the case and counter the offer leading to further negotiation and the avoidance of motion practice. Doc. No. 85-17.

17.    On February 8, 2023, Keshavarz underscored his intent to multiply proceedings rather than working toward an amicable resolution. To wit, instead of acknowledging or responding to Defendants' offer, Keshavarz served improper, untimely Third Amended Initial Disclosures purporting to identify a host of previously undisclosed fact witnesses and attempting to add previously unasserted, and entirely unsubstantiated, damage claims. A true and correct copy of this email correspondence, together with the improper discovery document attached thereto, is submitted herewith as **Exhibit "6."**

18.    On February 10, 2023, after Plaintiff's counsel formally rejected the foregoing offer,  Defendant's counsel responded to Keshavarz with yet another entreaty to state a settlement demand and consider an alternative mediator. A true and correct copy of this email correspondence is submitted herewith as **Exhibit "7."**

19.    Following the close of discovery and dispositive motions, although Plaintiff continued to refuse to state a demand, Defendants nevertheless agreed to participate in mediation in good faith.[1] On June 13, 2024, after repeated delays, the parties finally participated in an all-day mediation session with Paul Radvany, Esq. That lengthy effort failed to produce a settlement or for that matter to bring the parties remotely close to settlement

20.    On July 24, 2024, Defendants made another Rule 68 Offer of Judgment in the amount of $50,100.00 *plus* Plaintiff's reasonable attorneys' fees incurred to that date, a true and correct copy of which is submitted herewith as **Exhibit "8."** Plaintiff's counsel did not respond to this offer and let it expire.

---

[1] Indeed, Plaintiff stated her first demand, seeking a whopping $720,000.00, on May 30, 2024, two weeks before the scheduled mediation.

6

21.     On August 9, 2024, having received no response from Plaintiff's counsel, Defendants' conveyed yet another Rule 68 Offer in the amount of $100,100.00 *plus* Plaintiff's reasonable attorney fees incurred to that date, a true and correct copy of which is submitted herewith as **Exhibit "9."** Plaintiff's counsel did not respond to this offer either, again letting it expire unanswered.

22.     Finally, after a tortured and contentious period of months, the parties ultimately agreed to settle the case on November 5, 2024. During this time, Plaintiff's counsel continued to delay proceedings while furiously billing for trial preparation in advance of a trial he knew full well would never happen.

23.     A true and correct copy of Defendant Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, & Wolf, LLP's Memorandum of Law in Opposition to Plaintiff's Motion for Attorney's Fees in the matter of *Samms v. Abrams*, 198 F. Supp. 3d 311, 319 (S.D.N.Y. 2016), is submitted herewith as **Exhibit "10."**

## CONCLUSION

For all the reasons set forth above, Defendants request that this Court enter an Order, denying Plaintiff's application and reducing Plaintiff's fee and costs from $423,577.85 to $18,975.00, or to the alternative amounts set forth therein Defendants' Memorandum of Law in Opposition filed herewith, together with such other and further relief as this Court deems just and proper.

Dated:  New York, New York
        February 24, 2025

                                        BY: _H. Nicholas Goodman_____
                                             H. Nicholas Goodman

7

**Patrick Selvey**

| | |
|---|---|
| **From:** | Emma Caterine <emma@newyorkconsumerattorney.com> |
| **Sent:** | Tuesday, July 12, 2022 2:36 PM |
| **To:** | Nicholas Goodman |
| **Cc:** | Ahmad Keshavarz; Patrick Selvey |
| **Subject:** | RE: Farah Jean Francois - proposed scheduling order |
| **Attachments:** | 2022-07-12 proposed scheduling order.pdf |

Counsel,

Please see attached, revised as you suggested. However, I know Nicholas and I talked about this on the phone but in case you do not have experience with Judge Rakoff, Patrick, we should be prepared for deadlines to be set shorter than what we are asking for, particularly because Judge Rakoff is asking for us to be trial ready by December 12, 2022. With that understanding, we can file today if you consent.

Emma Caterine, Esq.
Partner



**The Law Office of Ahmad Keshavarz**
**NOTE OUR ADDRESS HAS CHANGED BACK TO:**
16 Court St., Suite 2600, Brooklyn, NY 11241-1026
Cell: (917) 945-9848  Fax: (877) 496-7809
Website: www.NewYorkConsumerAttorney.com
Email: emma@newyorkconsumerattorney.com

**From:** Nicholas Goodman <Ngoodman@ngoodmanlaw.com>
**Sent:** Tuesday, July 12, 2022 12:44 PM
**To:** Emma Caterine <emma@newyorkconsumerattorney.com>
**Cc:** Ahmad Keshavarz <ahmad@newyorkconsumerattorney.com>; Patrick Selvey <Pselvey@ngoodmanlaw.com>
**Subject:** RE: Farah Jean Francois - proposed scheduling order

## FRE 408/SETTLEMENT COMMUNICATION/ALL RIGHTS RESERVE/WITHOUT LIMITATION

Counsel,

First, I have confirmed the facts that I mentioned in our phone call last week, that Mr. Laforest appeared at the dealership with a female accomplice who represented herself to be your client and who reasonably looked like the picture on the driver's license presented, although the accomplice was wearing a face mask – the transaction took place during the heart of COVID restrictions as you will recall. Thus the dealership was as much a victim of Laforest as your client. Accordingly, none of Plaintiff's causes of action, FCRA included, has any factual basis.

Second, aside from FCRA statutory damages it appears the damages pleaded in the Complaint are essentially your client's emotional distress. As you may know, New York does not permit recovery for the negligent infliction of emotional distress absent physical impact/injury. Plaintiff does not of course allege physical impact.

Third, even putting all that and other issues aside, there exists no viable theory for individual liability against Philip Argyropoulos and all claims against him are subject to dismissal forthwith.

I ask you to consider these realities and reiterate my request that you state a minimal settlement demand now, before my client incurs the cost of commencing immediate motion practice addressing some or all of the above points, without limitation.

To the extent we must file a proposed Civil Case Management Plan today, the dates you propose are very tight and from my perspective unworkable. In particular, the proposed summary judgment motion deadlines have reply papers due the day after Thanksgiving. That is untenable.

I therefore suggest that we move each of the dates stated in the proposed Plan forward by ten (10) days, or to business days approximately 10 days after the dates proposed.

Thank you for your attention to this matter. I look forward to hearing from you, but note that I am on vacation in Europe, 6 hours ahead of NYC time and I may not be able to respond quickly. As such, I have copied my associate Patrick Selvey on this email in case of an urgent issue that must be addressed in my absence.

Regards,

Nicholas Goodman

*H. Nicholas Goodman*
Nicholas Goodman & Associates, PLLC
333 Park Avenue South, Suite 3A
New York, N.Y. 10010
Office Main (212) 227-9003
Direct Dial   (917) 386-2701
Cell            (917) 470-7805
ngoodman@ngoodmanlaw.com
www.ngoodmanlaw.com

This electronic mail and any attachments are STRICTLY CONFIDENTIAL and may be protected by the ATTORNEY-CLIENT PRIVILEGE. This content is solely for the use of the intended recipient herein. If you are not the intended recipient, any use, disclosure, copying, or distribution of this electronic mail is UNAUTHORIZED. If you have received this electronic mail in error, please notify the sender immediately by calling (212) 227-9003, and please immediately delete this email.
Thank you.

**From:** Emma Caterine <emma@newyorkconsumerattorney.com>
**Sent:** Tuesday, July 12, 2022 9:31 AM
**To:** Nicholas Goodman <Ngoodman@ngoodmanlaw.com>

**Cc:** Ahmad Keshavarz <ahmad@newyorkconsumerattorney.com>
**Subject:** RE: Farah Jean Francois - proposed scheduling order

Counsel,

I believe this needs to be filed with the Court today, so please let me know what changes if any you would like to make.

Emma Caterine, Esq.
Partner



FDCPA Attorneys: Protecting consumers from
deceptive and unfair debt collection
**The Law Office of Ahmad Keshavarz**
**NOTE OUR ADDRESS HAS CHANGED BACK TO:**
16 Court St., Suite 2600, Brooklyn, NY 11241-1026
Cell: (917) 945-9848  Fax: (877) 496-7809
Website: www.NewYorkConsumerAttorney.com
Email: emma@newyorkconsumerattorney.com

---

**From:** Emma Caterine
**Sent:** Tuesday, July 5, 2022 5:55 PM
**To:** 'ngoodman@ngoodmanlaw.com' <ngoodman@ngoodmanlaw.com>
**Cc:** Ahmad Keshavarz <ahmad@newyorkconsumerattorney.com>
**Subject:** Farah Jean Francois - proposed scheduling order

Counsel,

Nice speaking with you. My law partner Ahmad is cc'ed. Please see attached for the proposed scheduling order.

Emma Caterine, Esq.
Partner



FDCPA Attorneys: Protecting consumers from
deceptive and unfair debt collection
**The Law Office of Ahmad Keshavarz**
**NOTE OUR ADDRESS HAS CHANGED BACK TO:**
16 Court St., Suite 2600, Brooklyn, NY 11241-1026
Cell: (917) 945-9848  Fax: (877) 496-7809
Website: www.NewYorkConsumerAttorney.com
Email: emma@newyorkconsumerattorney.com

**Patrick Selvey**

| | |
|---|---|
| **From:** | Emma Caterine <emma@newyorkconsumerattorney.com> |
| **Sent:** | Monday, August 15, 2022 4:18 PM |
| **To:** | Nicholas  Goodman; Ahmad Keshavarz |
| **Cc:** | Patrick Selvey |
| **Subject:** | RE: Farah Jean Francois - Letter on Insurance Disclosure |

Nicholas,

I just left you a voicemail. I'd like to chat about this and also about our notice of deposition and identifying persons with knowledge. I hope we can work out these issues but if not I'd like to make an application to the Court, so please be prepared to call chambers. Please see below for the relevant portion of Judge Rakoff's Individual Rules:

(c) If counsel for any party seeks to convene a call to Chambers, counsel for all other affected parties are expected to make themselves available for such a call within 24 hours of the request. If, after successive attempts, counsel for any affected party is unavailable for the call, the initiating party may then send Chambers and all affected counsel an email or a letter, not to exceed two double-spaced pages, describing the efforts made to convene a conference call and briefly describing the proposed motion or application.

Emma Caterine, Esq.
Partner



FDCPA Attorneys: Protecting consumers from
deceptive and unfair debt collection
**The Law Office of Ahmad Keshavarz**
**NOTE OUR ADDRESS HAS CHANGED BACK TO:**
16 Court St., Suite 2600, Brooklyn, NY 11241-1026
Cell: (917) 945-9848  Fax: (877) 496-7809
Website: www.NewYorkConsumerAttorney.com
Email: emma@newyorkconsumerattorney.com

**From:** Nicholas Goodman <Ngoodman@ngoodmanlaw.com>
**Sent:** Wednesday, August 10, 2022 5:56 PM
**To:** Emma Caterine <emma@newyorkconsumerattorney.com>; Ahmad Keshavarz <ahmad@newyorkconsumerattorney.com>
**Cc:** Patrick Selvey <Pselvey@ngoodmanlaw.com>
**Subject:** RE: Farah Jean Francois - Letter on Insurance Disclosure

Mr. Keshavarz,

I write in response to your August 4, 2022, correspondence concerning Defendants' Initial Disclosures in this matter. Please be advised as follows:

Spartan Auto Group, LLC ("Spartan"), the only Defendant subject to the entry of a judgment against it in this action, made a business decision not to tender this matter to its insurance carrier. Among other things, the only insurance policy potentially implicated by Plaintiff's Complaint contains an iron-clad exclusion of any injury arising out of the disclosure of any person's personal or confidential information from that policy's definition of "personal and advertising injury." A copy of the entire Exclusion is attached for your consideration. Because all of Plaintiff's claimed injuries arise from an alleged disclosure that is specifically excluded from coverage under the policy, Spartan's tender of Plaintiff's claim to its carrier would be futile and would in fact damage Spartan due to the ratings change and premium increase that would inevitably follow, even from a denied claim.

I trust you will agree that the referenced Exclusion would also render futile any effort by Plaintiff to tender her claim to Spartan's carrier, assuming that Plaintiff could properly invoke Spartan's policy in the first place. In that regard, as relevant herein, Spartan's policy covers only "personal injury," and Plaintiff's rights under New York Insurance Law 3420 are similarly limited to claims for "personal injury." While Plaintiff's state law claims under Complaint Counts II, III, and IV might on their face trigger personal injury coverage, not only is insurance coverage for those Counts subject to the above referenced Exclusion, those Counts are also all subject to dismissal under Defendants' pending motion to dismiss returnable September 15, 2022, and are unlikely to survive in this action.

For all of these reasons, there does not exist an "insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment" within the meaning of Rule 26(1)(a)(iv). We trust this assists you in making a realistic appraisal of this case based on knowledge, not speculation.

Given that you invoked the need to assess settlement potential, please be advised that, despite Plaintiff's failure to accept Defendants' now expired Offer of Judgment, Spartan remains open to negotiating an amicable, realistic resolution of this action, including by way of mediation in a mutually agreeable forum if appropriate.

Please be guided accordingly.

Regards,

Nicholas Goodman

*H. Nicholas Goodman*
Nicholas Goodman & Associates, PLLC
333 Park Avenue South, Suite 3A
New York, N.Y. 10010
Office Main (212) 227-9003
Direct Dial   (917) 386-2701

Cell          (917) 470-7805
ngoodman@ngoodmanlaw.com
www.ngoodmanlaw.com
_____
This electronic mail and any attachments are STRICTLY CONFIDENTIAL and may be protected by the ATTORNEY-CLIENT PRIVILEGE. This content is solely for the use of the intended recipient herein. If you are not the intended recipient, any use, disclosure, copying, or distribution of this electronic mail is UNAUTHORIZED. If you have received this electronic mail in error, please notify the sender immediately by calling (212) 227-9003, and please immediately delete this email.
Thank you.
_____

---

**From:** Emma Caterine <emma@newyorkconsumerattorney.com>
**Sent:** Thursday, August 4, 2022 11:30 AM
**To:** Nicholas Goodman <Ngoodman@ngoodmanlaw.com>; Patrick Selvey <Pselvey@ngoodmanlaw.com>
**Cc:** Ahmad Keshavarz <ahmad@newyorkconsumerattorney.com>
**Subject:** Farah Jean Francois - Letter on Insurance Disclosure

Counsel,

Please see attached.

Emma Caterine, Esq.
Partner



THE LAW OFFICE OF
AHMAD KESHAVARZ

FDCPA Attorneys: Protecting consumers from
deceptive and unfair debt collection

**The Law Office of Ahmad Keshavarz**
**NOTE OUR ADDRESS HAS CHANGED BACK TO:**
16 Court St., Suite 2600, Brooklyn, NY 11241-1026
Cell: (917) 945-9848  Fax: (877) 496-7809
Website: www.NewYorkConsumerAttorney.com
Email: emma@newyorkconsumerattorney.com

## Patrick Selvey

| | |
|---|---|
| **From:** | Emma Caterine <emma@newyorkconsumerattorney.com> |
| **Sent:** | Tuesday, September 6, 2022 2:42 PM |
| **To:** | Nicholas Goodman; Patrick Selvey |
| **Cc:** | Ahmad Keshavarz |
| **Subject:** | Farah Jean Francois - depositions, revised scheduling order, verifications, waivers of service, mediation |
| **Attachments:** | 2022-09-06 waiver Yessica Vallejo.pdf; 2022-09-06 waiver Stavros Orsaris.pdf; 2022-09-06 waiver David Perez.pdf; 2022-09-06 waiver Diane Argyropoulos.pdf; 2022-09-02 third notice of depositions.pdf; 2022-09-06 proposed revised scheduling order.pdf |

Counsel,

Please let us know if, in light of the new briefing schedule for the motion to dismiss and new discovery deadline, you would like to take Plaintiff's deposition on a different date than the currently set date of September 22. And please let us know if there are any objections to the dates noticed for defendants' depositions and the topics noticed for the corporate representatives.

Please see attached for the proposed revised scheduling order.

While it does appear that in-house counsel can verify interrogatory responses on behalf of a corporate defendant, only Spartan has verified the responses. Please provide verifications for the remainder of the Defendants by September 9, 2022 at 5 PM.

Please see attached for waivers of service for the new Defendants. Please execute and return by September 9, 2022 at 5 PM, or if you will not be representing Mr. Perez, please provide his last known contact information, specifically his mailing address, phone, and email address.

In regards to mediation, we recommend Joseph DiBenedetto, please see this link for his website. A number of our recent cases were resolved with his help, including a recent case where the Defendants made him presiding a condition of them going to mediation.

Emma Caterine, Esq.
Partner



FDCPA Attorneys: Protecting consumers from
deceptive and unfair debt collection

**The Law Office of Ahmad Keshavarz**
**NOTE OUR ADDRESS HAS CHANGED BACK TO:**
16 Court St., Suite 2600, Brooklyn, NY 11241-1026
Cell: (917) 945-9848  Fax: (877) 496-7809
Website: www.NewYorkConsumerAttorney.com
Email: emma@newyorkconsumerattorney.com

**Patrick Selvey**

| | |
|---|---|
| **From:** | Patrick Selvey |
| **Sent:** | Tuesday, September 13, 2022 6:21 PM |
| **To:** | Emma Caterine; Nicholas  Goodman |
| **Cc:** | Ahmad Keshavarz |
| **Subject:** | RE: Farah Jean Francois - request for one week extension to answer discovery to September 19 |

Emma,

We spoke at length last week regarding Defendant's requirement that you provide a settlement demand before we can commit to engaging in mediation, a position we confirmed again by email yesterday, in response to which you promised to "endeavor" to do so by the close of business today. I thought we had come to an understanding on this point, as partially reflected in our email exchanges, but it seems I was mistaken. Allow me to clarify:

- Defendants do not, and will not, agree to mediation before Mr. DiBenedetto, period.
- Defendants do not, and will not, commit to or schedule mediation in the absence of a good faith settlement demand from Plaintiff.
- Assuming our clients find Plaintiff's demand sufficiently reasonable to allow for potentially productive mediation, we will respond with proposed alternative neutrals forthwith.

You have not remotely "been trying to arrange this mediation;" to the contrary, you have ignored our repeated good faith efforts, both orally and by email, to engage with you in a meaningful discussion as a necessary precursor to mediation. Neither I nor Mr. Goodman have ever, in our many combined decades of civil litigation, been met with such an obstinate refusal on the part of a plaintiff to simply state a settlement demand coupled with such an adamant insistence on dictating the terms of mediation.  The bottom line is that in the absence of a demand there exists no basis for further discussion.

This is not complicated. We do not need your comprehensive evaluation of your client's case. We just need a settlement demand, a dollar figure, so that we and our clients can gauge the utility of mediation. If you and your client really are interested in mediation, then state a demand by close of business tomorrow. If you do not, we will assume that you are no longer interested in the amicable resolution of this case, and we will continue to litigate in accordance with the civil case management plan.

Regards,

Patrick L. Selvey Jr.
Nicholas Goodman & Associates, PLLC
333 Park Avenue South, Suite 3A
New York, New York 10010
Office:  (212) 227-9003
Direct:  (917) 386-2705
pselvey@ngoodmanlaw.com

---

**From:** Emma Caterine <emma@newyorkconsumerattorney.com>
**Sent:** Tuesday, September 13, 2022 5:35 PM
**To:** Patrick Selvey <Pselvey@ngoodmanlaw.com>; Nicholas Goodman <Ngoodman@ngoodmanlaw.com>

**Cc:** Ahmad Keshavarz <ahmad@newyorkconsumerattorney.com>
**Subject:** RE: Farah Jean Francois - request for one week extension to answer discovery to September 19

You have not provided the alternative mediators.

Here is our bottom line – I spoke with Mr. DiBenedetto today and he is available October 7, 12, and 14, 2022. We are also available on those dates. We propose mediating on one of those three dates and exchanging settlement demands per Mr. DiBenedetto's mediation rules a week prior to the mediation.

This is not an invitation to further negotiation on the terms of mediation. We have been trying to arrange this mediation and we are not interested in continuing to go back and forth on this. You have until 5 PM on September 15, 2022 to respond, at which point this offer expires.

Emma Caterine, Esq.
Partner



FDCPA Attorneys: Protecting consumers from deceptive and unfair debt collection
**The Law Office of Ahmad Keshavarz**
**NOTE OUR ADDRESS HAS CHANGED BACK TO:**
16 Court St., Suite 2600, Brooklyn, NY 11241-1026
Cell: (917) 945-9848  Fax: (877) 496-7809
Website: www.NewYorkConsumerAttorney.com
Email: emma@newyorkconsumerattorney.com

---

**From:** Patrick Selvey <Pselvey@ngoodmanlaw.com>
**Sent:** Tuesday, September 13, 2022 5:19 PM
**To:** Emma Caterine <emma@newyorkconsumerattorney.com>; Nicholas Goodman <Ngoodman@ngoodmanlaw.com>
**Cc:** Ahmad Keshavarz <ahmad@newyorkconsumerattorney.com>
**Subject:** RE: Farah Jean Francois - request for one week extension to answer discovery to September 19

Hi Emma,

Will you be providing your demand/evaluation today as previously discussed?

Regards,

Patrick L. Selvey Jr.
Nicholas Goodman & Associates, PLLC
333 Park Avenue South, Suite 3A
New York, New York 10010
Office:  (212) 227-9003
Direct:  (917) 386-2705
pselvey@ngoodmanlaw.com

---

**From:** Emma Caterine <emma@newyorkconsumerattorney.com>
**Sent:** Monday, September 12, 2022 5:07 PM

**To:** Patrick Selvey <Pselvey@ngoodmanlaw.com>; Nicholas Goodman <Ngoodman@ngoodmanlaw.com>
**Cc:** Ahmad Keshavarz <ahmad@newyorkconsumerattorney.com>
**Subject:** RE: Farah Jean Francois - request for one week extension to answer discovery to September 19

Counsel,

Please see ECF text below. This was not an intermediate deadline in the scheduling order, it was an order by the Court to Defendants. And I thought my email made it clear that an extension to you was not warranted, but to avoid any ambiguity we do not consent to such an extension.

**Docket Text:**
**Minute Entry for proceedings held before Judge Jed S. Rakoff:, a telephone conference was held 9-6-2022 without transcription or recording. Ahmad Keshavarz and Emma Caterine of the Law Office of Ahmad Keshavarz for plaintiff and Henry Nicholas Goodman of Nicholas Goodman & Associates, PLLC for defendants were present. In light of the filing of an amended complaint, Defendants are granted leave to withdraw their current motion to dismiss (Dkt. 24) and to file a new motion to dismiss no later than September 30. Answering papers are dule 10/14/22, and any reply papers by 10/21/22. Argument shall be on Thursday, 10/27/22 at 4:45 PM. The close of discovery is extended until 12/9/22. The parties are directed to file a new case management plan reflecting these dates, as well as the revised dates set for summary judgment briefing discussed on the call. A final pretrial conference is set for Monday, 1/23/23 at 4:00 PM. Defendants request for referral to a magistrate judge is denied. Defendants are instructed to complete their revised production of documents by end of day on 9/14/22.( Final Pretrial Conference set for 1/23/2023 at 04:00 PM before Judge Jed S. Rakoff., Oral Argument set for 10/27/2022 at 04:45 PM before Judge Jed S. Rakoff.). (Kotowski, Linda)**

Emma Caterine, Esq.
Partner



FDCPA Attorneys: Protecting consumers from
deceptive and unfair debt collection
**The Law Office of Ahmad Keshavarz**
**NOTE OUR ADDRESS HAS CHANGED BACK TO:**
16 Court St., Suite 2600, Brooklyn, NY 11241-1026
Cell: (917) 945-9848  Fax: (877) 496-7809
Website: www.NewYorkConsumerAttorney.com
Email: emma@newyorkconsumerattorney.com

**From:** Patrick Selvey <Pselvey@ngoodmanlaw.com>
**Sent:** Monday, September 12, 2022 5:04 PM
**To:** Emma Caterine <emma@newyorkconsumerattorney.com>; Nicholas Goodman <Ngoodman@ngoodmanlaw.com>
**Cc:** Ahmad Keshavarz <ahmad@newyorkconsumerattorney.com>
**Subject:** RE: Farah Jean Francois - request for one week extension to answer discovery to September 19

Emma,

You did make your position clear that, at the very the least, you would provide a settlement demand range by the end of today.

That said, assuming our clients find that Plaintiff's settlement demand warrants undertaking the time and expense of mediation, we will provide alternative suggested mediators forthwith.

As to discovery deadlines, Mr. Larson explicitly advised the parties that, while Judge Rakoff would not adjourn the discovery end-date again, the parties were free to negotiate any of the intermediate deadlines on consent without need for court involvement. If you are unwilling to extend the courtesy of a reciprocal adjournment then simply come out and say so, but don't hide behind the Court's order.

Pending your response, we will continue to consider your extension request.

Regards,

Patrick L. Selvey Jr.
Nicholas Goodman & Associates, PLLC
333 Park Avenue South, Suite 3A
New York, New York 10010
Office:  (212) 227-9003
Direct:  (917) 386-2705
pselvey@ngoodmanlaw.com

---

**From:** Emma Caterine <emma@newyorkconsumerattorney.com>
**Sent:** Monday, September 12, 2022 4:27 PM
**To:** Patrick Selvey <Pselvey@ngoodmanlaw.com>; Nicholas Goodman <Ngoodman@ngoodmanlaw.com>
**Cc:** Ahmad Keshavarz <ahmad@newyorkconsumerattorney.com>
**Subject:** RE: Farah Jean Francois - request for one week extension to answer discovery to September 19

Counsel,

I made our position on making a settlement demand clear to you when we spoke on Friday. However, I will endeavor to get you our analysis of the value of this case by tomorrow. Will you be providing alternative mediators to Joseph DiBenedetto as you stated during the same phone call?

You have been ordered by the Court to provide supplemental documents by Wednesday. We do not have the power to grant you an extension even if we deemed one proper, which we do not considering your responses were due 3 weeks ago.

Emma Caterine, Esq.
Partner



FDCPA Attorneys: Protecting consumers from
deceptive and unfair debt collection

**The Law Office of Ahmad Keshavarz**
**NOTE OUR ADDRESS HAS CHANGED BACK TO:**

16 Court St., Suite 2600, Brooklyn, NY 11241-1026
Cell: (917) 945-9848 Fax: (877) 496-7809
Website: www.NewYorkConsumerAttorney.com
Email: emma@newyorkconsumerattorney.com

**From:** Patrick Selvey <Pselvey@ngoodmanlaw.com>
**Sent:** Monday, September 12, 2022 4:13 PM
**To:** Emma Caterine <emma@newyorkconsumerattorney.com>; Nicholas Goodman <Ngoodman@ngoodmanlaw.com>
**Cc:** Ahmad Keshavarz <ahmad@newyorkconsumerattorney.com>
**Subject:** RE: Farah Jean Francois - request for one week extension to answer discovery to September 19

Hi Emma,

Can we still expect Plaintiff's settlement demand by end of the day today as you indicated on Friday?

Meanwhile, further to our discussion Friday, I can now confirm that we will accept service on behalf of all the Defendants in newly named in Plaintiff's Amended Complaint.

As to your extension request, Defendants consent to extending Plaintiff's deadline to September 19 provided that Plaintiff reciprocally extends Defendants' deadline to supplement their responses to Plaintiff's Request for Production of Documents to September 19th as well.

Regards,

Patrick L. Selvey Jr.
Nicholas Goodman & Associates, PLLC
333 Park Avenue South, Suite 3A
New York, New York 10010
Office:  (212) 227-9003
Direct:  (917) 386-2705
pselvey@ngoodmanlaw.com

**From:** Emma Caterine <emma@newyorkconsumerattorney.com>
**Sent:** Monday, September 12, 2022 10:31 AM
**To:** Nicholas Goodman <Ngoodman@ngoodmanlaw.com>; Patrick Selvey <Pselvey@ngoodmanlaw.com>
**Cc:** Ahmad Keshavarz <ahmad@newyorkconsumerattorney.com>
**Subject:** Farah Jean Francois - request for one week extension to answer discovery to September 19

Good morning,

Based on pressing matters in other cases, we request a one week extension to answer your discovery requests, from the current deadline of today, September 12 to September 19, 2022. Please let us know if you agree to this extension.

Emma Caterine, Esq.
Partner



FDCPA Attorneys: Protecting consumers from
deceptive and unfair debt collection

**The Law Office of Ahmad Keshavarz**
**NOTE OUR ADDRESS HAS CHANGED BACK TO:**
16 Court St., Suite 2600, Brooklyn, NY 11241-1026
Cell: (917) 945-9848  Fax: (877) 496-7809
Website: www.NewYorkConsumerAttorney.com
Email: emma@newyorkconsumerattorney.com

## Patrick Selvey

| | |
|---|---|
| **From:** | Emma Caterine <emma@newyorkconsumerattorney.com> |
| **Sent:** | Monday, October 31, 2022 3:41 PM |
| **To:** | Patrick Selvey; Nicholas  Goodman |
| **Cc:** | Ahmad Keshavarz |
| **Subject:** | RE: Farah Jean Francois - deposition dates |
| **Attachments:** | 2022-10-31 seventh notice of depositions.pdf |

Counsel,

We are available any time after 10 AM tomorrow.

You may have noted that our proposed dates are the very same dates you proposed, with only adjustments to the order of depositions, so your assertion that they were proposed "without regard to the other parties or counsel herein" is entirely unwarranted. Notably your proposed dates gave a single date for Phillip and Diane Argyropoulos, which has never been previously raised and which Plaintiff is absolutely not going to consent to – we are entitled to separate full depositions of both parties. We are trying to compromise with your schedule, whereas you are trying to unilaterally determine not just the dates of deposition but the order in which they occur.

As we have previously stated to both the Court and to you, we are insisting on deposing the Defendants prior to Plaintiff (and Mr. Momplaisir) to prevent Defendants from fabricating testimony based on those accounts. The testimony of Emmanuel Laforest in addition to what our client and Mr. Momplaisir have told us provides more than sufficient basis to suspect that your clients would do so, given that they have already misrepresented that a woman was with Mr. Laforest when he came to the dealership and that Mr. Laforest and this unidentified woman were present in the dealership on June 29, which apparently they were not.

The Court's extension of the discovery deadline was in part because Mr. Larson agreed that it was reasonable for Plaintiff to want time to propound follow up discovery based on the depositions. Accordingly, it makes the most sense to have those depositions earlier than the depositions of Plaintiff and a third party witness.

As you admitted during the conference with the Court today Mr. Selvey, you have no legal basis for insisting that the Plaintiff be deposed first. And you fail to state whether Mr. Perez, Ms. Vallejo, and Mr. Argyropoulos are unavailable on those dates.

You should probably take the Court's admonishment of you today seriously and start conferring with us in good faith, which at minimum means determining conclusively whether Mr. Perez is available on November 21, Ms. Vallejo is available on November 22, and Mr. Argyropoulos is available on November 28. Please be guided accordingly.

Emma Caterine, Esq.
Partner



**The Law Office of Ahmad Keshavarz**
**NOTE OUR ADDRESS HAS CHANGED BACK TO:**

16 Court St., Suite 2600, Brooklyn, NY 11241-1026
Cell: (917) 945-9848  Fax: (877) 496-7809
Website: www.NewYorkConsumerAttorney.com
Email: emma@newyorkconsumerattorney.com

**From:** Patrick Selvey <Pselvey@ngoodmanlaw.com>
**Sent:** Monday, October 31, 2022 1:33 PM
**To:** Emma Caterine <emma@newyorkconsumerattorney.com>; Nicholas Goodman <Ngoodman@ngoodmanlaw.com>
**Cc:** Ahmad Keshavarz <ahmad@newyorkconsumerattorney.com>
**Subject:** RE: Farah Jean Francois - deposition dates

Counsel,

If we are to have a useful dialogue regarding dates, Mr. Goodman will need to participate in same. However, Mr. Goodman is not available at present, so that call will have to happen tomorrow.

In the meantime, Defendants proposed dates on Friday (see below), to which you have presented no basis for objection nor provided any justification for the alternative dates you now propose. Rather than merely asserting your desired schedule without regard to the other parties or counsel herein, as is your wont, please respond to Defendants' proposed deposition schedule (reproduced below for your convenience), so that tomorrow's discussion can be a productive one.

Defendants proposed the following deposition schedule:

November 21: Farah Jean Francois
November 22: Papito Momplaisir
November 23: Stavros Orsaris
November 28: David Perez
November 29: Philip and Diane Argyropoulos
November 30: Yessica Vellejo

Regards,

Patrick L. Selvey Jr.
Nicholas Goodman & Associates, PLLC
333 Park Avenue South, Suite 3A
New York, New York 10010
Office:  (212) 227-9003
Direct:  (917) 386-2705
pselvey@ngoodmanlaw.com

**From:** Emma Caterine <emma@newyorkconsumerattorney.com>
**Sent:** Monday, October 31, 2022 12:56 PM
**To:** Patrick Selvey <Pselvey@ngoodmanlaw.com>; Nicholas Goodman <Ngoodman@ngoodmanlaw.com>
**Cc:** Ahmad Keshavarz <ahmad@newyorkconsumerattorney.com>
**Subject:** Farah Jean Francois - deposition dates

Counsel,

We propose the following dates for depositions in light of the Court's order. Let's confer and confirm dates at 1:30 PM by phone:

11/21/2022: David Perez

11/22/2022: Yessica Vallejo
11/23/2022: Stavros Orsaris/Spartan Auto
11/28/2022: Philip Argyropoulos/Victory Auto
11/29/2022: Diane Argyropoulos
11/30/2022: Farah Jean Francois
12/01/2022: Papito Momplaisir


Emma Caterine, Esq.
Partner



FDCPA Attorneys: Protecting consumers from
deceptive and unfair debt collection

**The Law Office of Ahmad Keshavarz**
**NOTE OUR ADDRESS HAS CHANGED BACK TO:**
16 Court St., Suite 2600, Brooklyn, NY 11241-1026
Cell: (917) 945-9848  Fax: (877) 496-7809
Website: www.NewYorkConsumerAttorney.com
Email: emma@newyorkconsumerattorney.com

# Patrick Selvey

| | |
|---|---|
| **From:** | Ahmad Keshavarz <ahmad@newyorkconsumerattorney.com> |
| **Sent:** | Wednesday, February 8, 2023 2:52 PM |
| **To:** | Patrick Selvey |
| **Cc:** | Emma Caterine; Nicholas Goodman |
| **Subject:** | Francois v. Victory, et al 1:22-cv-4447 - Plaintiff's Third Amended Initial Disclosures |
| **Attachments:** | 2023-02-08 Our Third Amended Initial Disclosures-SERVED.pdf |

Please see attached. Please note in particular that Ms. Francois withdraws claims for damage to credit or credit score.



FDCPA Attorneys: Protecting consumers from
deceptive and unfair debt collection

**The Law Office of Ahmad Keshavarz**

**NOTE OUR ADDRESS HAS CHANGED BACK TO:**
16 Court St., Suite 2600, Brooklyn, NY 11241-1026
Cell: (347) 308-4859    Fax: (877) 496-7809
Website: www.NewYorkConsumerAttorney.com   Email: ahmad@NewYorkConsumerAttorney.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

FARAH JEAN FRANCOIS,

               Case No.: 1:22-cv-4447-JSR

         Plaintiff,

   -against-

VICTORY AUTO GROUP LLC d/b/a
VICTORY MITSUBISHI,
SPARTAN AUTO GROUP LLC d/b/a
VICTORY MITSUBISHI,
STAVROS ORSARIS,
YESSICA VALLEJO,
DAVID PEREZ,
DIANE ARGYROPOULOS, and
PHILIP ARGYROPOULOS,

         Defendants.

-------------------------------------------------------------------X

### PLAINTIFF'S THIRD AMENDED RULE 26(a)(1) DISCLOSURES

   Plaintiff serves the above referenced discovery instrument to the above referenced parties by and through said party's counsel as indicated in the certificate of service below.

        Respectfully submitted,
        /s/
        Emma Caterine
        The Law Office of Ahmad Keshavarz
        Brooklyn, NY 11241
        Tel: (718) 522-7900
        Fax: (877) 496-7809
        Email: emma@newyorkconsumerattorney.com


### CERTIFICATE OF SERVICE
   I hereby certify that on this day I served the above referenced document to the parties listed below via email:

Henry Nicholas Goodman
Nicholas Goodman & Associates, PLLC
333 Park Avenue South, Suite 3A
New York, NY 10010
Tel: (212) 227-9003
Fax: (212) 937-2112
Email: ngoodman@ngoodmanlaw.com

*Attorneys for Defendants*

Date: <u>February 8, 2023</u>
          Brooklyn, NY
/s/
Ahmad Keshavarz
*Counsel for Plaintiff*

1. **The name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment.**

   a. Plaintiff, whose contact information is c/o Ahmad Keshavarz, The Law Office of Ahmad Keshavarz, 16 Court Street, # 2600, Brooklyn, NY 11241, phone: 718-522-7900. The subject of said person's discoverable information is disclosed in Plaintiff's live pleadings.

   b. Plaintiff's brother-in-law Emmanuel Laforest. The subject of said person's discoverable information is the fraud, Defendants' facilitation of the fraud, and Plaintiff's emotional distress damages.

   c. Plaintiff's uncle Papito Momplaisir, 145 West 111th Street, Apt. 8, New York, NY 10026, (917) 865-2542. The subject of said person's discoverable information is the fraud and Plaintiff's emotional distress damages.

   d. Valadmir Montina. (347) 898-4404. 40 Quail St. Stratford CT 06614. Cousin. The subject of said person's discoverable information is the fraud and Plaintiff's emotional distress damages.

   e. Angel Plonquet. (203) 424-7006. 40 Quail St. Stratford CT 06614. Spouse of cousin. The subject of said person's discoverable information is the fraud and Plaintiff's emotional distress damages.

   f. Hilda Perez, the Assistant Manager at TD Bank where Plaintiff worked. 3798 Broadway, New York, NY 10032. (212) 543-2003. The subject of said person's discoverable information is the fraud and Plaintiff's emotional distress damages.

   g. Defendants have knowledge of their own misconduct that resulted in the bringing of this action.

   h. Darline Dumel (862) 400-0797. 19 Montrose St, South Orange, NJ 07079. The subject of said person's discoverable information is Ms. Francois' location on May 30, 2020.

   i. Jami Singer. (347) 401-4158. 2672 Ford St., Brooklyn, NY 11235. The subject of said person's discoverable information is the fraud and Emmanuel Laforest's intent.

   j. A corporate representative for each corporate defendant, and any servicing agents for the same. The subject of said persons' discoverable information is disclosed in Plaintiff's live pleadings.

   k. The owners and corporate officers for each corporate defendant. The subject of said persons' discoverable information is the policies and practices of each corporate defendant as applicable to the instant matter.

l.  Persons identified in the Complaint and exhibits thereto. This includes, inter alia the following, including the employees, corporate representatives, and business records custodians for the same:

    a.  Police officers at the 70th precinct of the New York Police Department.

    b.  The New York City Department of Finance, Parking Violations.

    c.  New York City Department of Finance, School Zone Camera Unit.

    d.  MTA Bridges and Tunnels

    e.  Port Authority NY/NJ

    f.  Progressive Max Insurance Company

    g.  Capital One Auto Finance

    h.  Credit Collection Services

    i.  Transworld Systems Inc.

    j.  Equifax

    k.  TransUnion

    l.  BB&T Dealer Finance (now Truist Retail Lending)

    m.  JPMCB Auto Finance

    n.  PenFed Credit Union

    o.  The parties and those disclosed in discovery as having knowledge of relevant facts in *Jean-Baptiste, et al. v. Capital One, N.A., et al.,* Case No. 1:20-cv-08006-ALC-JLC (S.D.N.Y.).

    p.  The John Does referenced in the complaint, including the employees and agents of the Victory Defendants who were involved in the sale and attempted financing for the subject vehicle.

    q.  The persons identified in the document production of any party or in the document production of any third party.

m.  Corporate representative or public records/business records certifier for Defendants. The subject of said persons' discoverable information are the documents of Defendants relevant to the instant matter.

n. Persons unknown to Plaintiff who have knowledge of Defendants' income, assets, and net worth.

o. Each creditor, prospective credit grantor, furnisher, or other person who viewed Plaintiff's credit report with the false and derogatory information.  The identities of these persons are disclosed on the credit report itself. The subject of said persons' discoverable information is the actual disclosure of the false and derogatory information and consequences thereof.

p. The persons whose names appear in the document production of any party.

q. Any persons listed by Defendants.

r. Persons identified in the documents produced by third-parties.

s. Yosmaily Ventura

t. Chris Orsaris

u. The persons identified in the depositions of the parties.

v. The persons identified in the First Amended Complaint ("FAC"), and the complaints and lawsuits referenced in Plaintiff's FAC. This includes, without limitation:

    a. The persons referenced in the lawsuit *Utnicki, et al. v. JP Morgan Chase Bank, N.A., et al.*, Case 1:21-cv-06108-ARR-RER. Exhibit II to the FAC, and in the FAC ¶¶ 150 – 153.

    b. The persons referenced in the lawsuit *Sharon Buddoo and Matthew Rushie v. Spartan Auto Group, LLC, et al.*  Exhibit HH to the FAC, and in the FAC ¶¶ 145 – 149.

    c. The persons identified in the New Attorney General Lawsuit and filings in the same, including, *inter alia*, Exhibits Y though AA, and in the FAC ¶¶ 135 – 140.

w. Stavros Orsaris

x. Yessica Vallejo

y. David Perez

z. There persons referenced the document production Capital One in response to Plaintiff's subpoena, especially as to complaints.

aa. The persons referenced in the lawsuits produced by Plaintiff in this action against some

or all of the defendants in the FAC, including, *inter alia*.

    a. *Natalie Marrero v. Victory Auto Group et al*, Case 1:14-cv-04241-LGS, Southern District of New York.

    b. *Credrid Lopez v Spartan Auto Group, LLC, et al*, Index No., 803084/2021E, Bronx County Supreme Court.

    c. Anthony B. Nelson v. DIANE ARGYROPOULOUS et al, Southern District of New York.

bb. Credit Collection Services

cc. Progressive Max Insurance Company

dd. Nicole Gonzalez, assistant business development center manager at Victory Mitsubishi

ee. "Milano Banik," name used in applications to Victory with Mr. Laforest's email, Mr. Laforest did not recognize the name but said it may have been one of his brother's using a fake name.

ff. Vena "Bibi" Singh, BDC manager at Victory Mitsubishi

gg. Chris Orsaris Jr., son of Chris Orsaris, brother of Stavros Orsaris, sales manager at Victory Mitsubishi

hh. Joe Grabino, finance manager at Victory Mitsubishi

ii. David Daniel, compliance manager at Credit Bureau Connection

jj. Edwin Feables, former finance manager at Victory Mitsubishi

kk. Ken McGhee, representative of Capital One, Capital One liaison with Victory Mitsubishi

ll. Allan Disberg, accountant who files K-1 forms for Victory Mitsuibshi

mm.    Areefa Khan, title clerk at Victory Mitsubishi

nn. Maria Sores, comptroller at Victory Mitsubishi

oo. Andris Guzman, finance manager at Victory Mitsubishi

pp. Tae Kim, finance manager at Victory Mitsubishi

qq. Walter Mesa, finance manager at Victory Mitsubishi

rr. Dealersocket, software provider of DealerSocket software used by Victory Mitsubishi

ss. Tameka Richards, business development center agent at Victory Mitsubishi

**2. A copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment.**

     a. Documents related to the identity theft, including but not limited to sales documents for the Vehicle, collection letters, and police reports.

     b. Documents related to Plaintiff's applications and denials for credit.

     c. Documents attached to and referenced in the Complaint in this action.

     d. Any document produced by Defendants or by third parties in response to subpoenas.

     e. Documents concerning other instances where Defendants have engaged in deceptive conduct involving unauthorized purchases and applications for financing.

     f. Additional documents to be identified in response to a pre-trial order.

**3. A computation of each category of damages claimed by the disclosing party—who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material, unless privileged or protected from disclosure, on which each computation is based, including materials bearing on the nature and extent of injuries suffered.**

**MS. FRANCOIS WITHDRAWS CLAIMS FOR DAMAGE TO CREDIT OR TO CREDIT SCORE.**

As a result of Defendants' conduct, Plaintiff has suffered actual damagesand out-of-pocket expenses including, but not limited to, postage for dispute letters, costs of copies, costs for credit monitoring, credit scores, and credit reports, and other related costs, all of which will continue into the future. Plaintiff has suffered actual damages, and Plaintiff will continue to suffer the same for an indefinite time in the future.

These damages include the $977.96 of outstanding violations accrued by the fraudulently sold Vehicle and $13.62 costs of making disputes to debt collectors, insurance companies, government agencies, and credit reporting agencies regarding the violations by the Vehicles and the unauthorized pulls published on Ms. Francois' credit reports.

Statutory, exemplary and punitive damages under the Fair Credit Reporting Act. Exemplary and punitive damages for other causes of action. The factors to be considered in the award of punitive damages are the assets of the defendants; the degree to which the actions were negligent, willful, intentional or reckless; the attempts to prevent the actions that gave rise to the punitive damage claim; and the nature and extent of non-compliance; the degree to which defendant has previously engaged in such conduct; and other factors. Plaintiff does not know the dollar amount of these damages, and leaves its determination to the jury.

Plaintiff also suffered garden variety emotional distress in an amount to be determined by the trier of fact. These actual damages are not liquidated and do not lend themselves to a statement of calculation but may be subject to an award of damages. *See, Williams v. Trader Pub. Co.*, 218 F.3d 481, 486-487 (5th Cir. 2000); *Morrison Knudsen Corp., v. Fireman'sFund Ins. Co.*, 175 F.3d 1221 (10th Cir. 1999); *Burrell v. Crown Central Petroleum, Inc.*, 177 F.R.D. 376, 386 (E.D.Tex.1997). This includes damages for anger, frustration, anxiety, and other emotional distress. This emotional distress was caused by the publication of inaccurate credit information to, among others, Premium Credit Bureau LLC, Comenity Capital, Capital One Bank USA, N.A., Synchrony Bank, Wallethub, T-Mobile, Synchrony Bank, Bank of America, Geico, Radius Global Solutions, ARS National Services, Capital One, Web Bank Avant LLC, Allstate, TD Bank, Klarna, Monevo Inc., Peerform Credit, Ally Financial, Apple Cardgs Bank, Comenity Bank, American Express, Paypal, Inc., Mercedez-Benz Financial Services, and Penfed Credit Union.

The basis for Plaintiff's emotional distress damages is outlined in the Complaint and as follows: When Ms. Francois learned about the identity theft against her which Defendants facilitated, she could not stop crying. Ms. Francois came to this country for a better life and has tried to do everything right, with the goal of saving her money to buy a house. Because of Defendants' misconduct Ms. Francois now believes she won't be able to buy a home. Ms. Francois was afraid that she was going to be arrested because the Vehicle was in her name and she could be held responsible for anything done with the Vehicle. This fear persists to this day. Ms. Francois had to take time off from work when discovered the identity theft in order to fight it. Even when she did go into work, she could not focus. The stress caused her to eat less, and she lost as much as 25 pounds. She could not sleep and got black bags under her eyes from the lack of sleep. Because the identity theft was done by her brother-in-law, in conjunction with Defendants, it has caused major family discord and she no longer lives with her husband. She had to put her stuff in storage due to the sudden strain on her marriage and family life.

Ms. Francois learned that her driver's license was suspended due to the fees and fines incurred by Emmanuel Laforest when she was pulled over by the police while driving on the highway to get to work. The police told her to go to the DMV to deal with the identity theft. She was afraid that she was going to get arrested for driving on a suspended license. She works in Queens and there's no train close to her job because it is a private nursing home, so she needs to drive to get to work. She had to take an Uber to get to work. Sometimes it would cost as much as $86, especially because of the $10 toll.

Ms. Francois was also worried about losing her job because she was having to spend so much time dealing with the identity theft and her boss was getting frustrated by it because at the time she worked in customer service and needed to be focused while working.

**4. For inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment.**

Plaintiff has no such insurance policy.

On information and belief, Defendants have such policies.

**Patrick Selvey**

| | |
|---|---|
| **From:** | Nicholas  Goodman |
| **Sent:** | Friday, February 10, 2023 12:25 PM |
| **To:** | Ahmad Keshavarz; Patrick Selvey |
| **Cc:** | Emma Caterine |
| **Subject:** | RE: Francois v. Victory, et al 1:22-cv-4447 - Letter regarding mediation |

Counselor,

Your client is in no position to accept or reject Defendants' settlement offer made February 3, 2023, which offer expired by its terms automatically at close of business February 6.

Further, as we previously advised you in no uncertain terms, we will not undertake mediation in the absence of a settlement demand. We also flatly rejected mediation before Mr. DiBenedetto. Our position on both those points has not changed, particularly given your continued failure to present even a hint at good faith negotiation.

Indeed, your invocation of the concept of "frank discussion" is frankly absurd given your refusal even to state a counter to Defendants' offer. It is now more clear than ever that you are not interested in a resolution to benefit your client but are rather intent only on harassing my clients by, among other things, continuing to pursue frivolous damage claims and further multiplying these already tortured proceedings.

Finally, only the Court can alter the motion briefing schedule and Mr. Larson advised there would be no further adjournments.

We made a serious attempt to negotiate with you. You did not respond in kind. We are therefore proceeding with our summary judgment motion. Should Ms. Francois wish to discuss settlement directly with my clients without the participation of attorneys on either side please let me know and I will seek to arrange for same.

Please be guided accordingly.

*H. Nicholas Goodman*

Nicholas Goodman & Associates, PLLC
333 Park Avenue South, Suite 3A
New York, N.Y. 10010
Office Main (212) 227-9003
Direct Dial   (917) 386-2701
Cell             (917) 470-7805
ngoodman@ngoodmanlaw.com
www.ngoodmanlaw.com

_____

This electronic mail and any attachments are STRICTLY CONFIDENTIAL and may be protected by the ATTORNEY-CLIENT PRIVILEGE. This content is solely for the use of the intended recipient herein. If you are not the intended recipient, any use, disclosure, copying, or distribution of this electronic mail is UNAUTHORIZED. If you have received this electronic mail in error, please notify the sender immediately by calling (212) 227-9003, and please immediately delete this email.

Thank you.

_____

**From:** Ahmad Keshavarz <ahmad@newyorkconsumerattorney.com>
**Sent:** Thursday, February 9, 2023 4:35 PM
**To:** Patrick Selvey <Pselvey@ngoodmanlaw.com>
**Cc:** Emma Caterine <emma@newyorkconsumerattorney.com>; Nicholas Goodman <Ngoodman@ngoodmanlaw.com>
**Subject:** RE: Francois v. Victory, et al 1:22-cv-4447 - Letter regarding mediation

Please see attached.



**The Law Office of Ahmad Keshavarz**

**NOTE OUR ADDRESS HAS CHANGED BACK TO:**
16 Court St., Suite 2600, Brooklyn, NY 11241-1026
Cell: (347) 308-4859    Fax: (877) 496-7809
Website: www.NewYorkConsumerAttorney.com    Email: ahmad@NewYorkConsumerAttorney.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------X

**FARAH JEAN FRANCOIS,**

**Case No. 1:22-cv-4447-JSR**

**Plaintiff,**

**- against -**

**OFFER OF JUDGMENT**

**VICTORY AUTO GROUP LLC d/b/a**
**VICTORY MITSUBISHI, SPARTAN**
**AUTO GROUP LLC d/b/a VICTORY**
**MITSUBISHI, STAVROS ORSARIS,**
**YESSICA VALLEJO, DAVID PEREZ,**
**DIANE ARGYROPOULOS, and**
**PHILIP ARGYROPOULOS,**

**Defendants.**
------------------------------------------------------------------X

Pursuant to Rule 68 of the Federal Rules of Civil Procedure Defendant **SPARTAN AUTO GROUP LLC** hereby offers to allow Plaintiff **FARAH JEAN FRANCOIS** to take judgment against it in this action for the total sum of One Hundred Thousand and One Hundred Dollars ($100,100.00), and, in addition, Plaintiff's costs and reasonable attorney fees incurred in this action prior to the date of this offer (the "Offer"), the amount of Plaintiff's reasonable attorneys' fees to be determined at a fee hearing conducted by the Court if necessary.

A Judgment entered pursuant to this Offer shall be in full satisfaction of all federal and state law claims or rights that Plaintiff may have to recover damages and/or to any other form of relief from any or all the Defendants named in her Amended Complaint in the above captioned action, arising out of the acts and/or omissions Plaintiff alleges against all those Defendants, including all of Defendants' officers, employees, or agents, past or present.

This Offer will remain open only for fourteen (14) days hereof and may only be accepted in writing. This Offer shall not be filed with the Court unless a) accepted, or b) if necessary, in a proceeding to determine any costs Plaintiff may claim herein.

This Offer is made for the purposes specified in F.R.C.P. Rule 68 and shall not be construed as an admission of liability by any Defendant, or by any Defendant's officer, employee or agent, nor does this Offer constitute an admission that the Plaintiff suffered any damages as alleged, or that she is entitled to any of the relief prayed for in her Amended Complaint.

Acceptance of the Offer will act to release and discharge each and every Defendant named in Plaintiff's Amended Complaint, their successors or assigns and all of their past and present officers, employees, and agents from any and all claims that were or could have been alleged by Plaintiff against them.

Acceptance of this Offer will also operate to waive Plaintiff's rights to any claim for interest on the amount of a Judgment entered hereto.

A Judgment entered pursuant to this Offer shall contain and recite the terms and conditions set forth herein.

Dated: New York, New York
August 9, 2024

Yours, etc.
NICHOLAS GOODMAN & ASSOCIATES, PLLC

BY: _____
H. Nicholas Goodman
*Attorneys for Defendants*
**VICTORY AUTO GROUP LLC
d/b/a VICTORY MITSUBISHI,
SPARTAN AUTO GROUP LLC
d/b/a VICTORY MITSUBISHI,
STAVROS ORSARIS,
YESSICA VALLEJO, DAVID PEREZ,
DIANE ARGYROPOULOS and
PHILIP ARGYROPOULOS**
333 Park Avenue South, Suite 3A
New York, New York 10010
(212) 227-9003
ngoodman@ngoodmanlaw.com

TO:     Ahmad Keshavarz
         THE LAW OFFICE OF
           AHMAD KESHAVARZ
         *Attorney for Plaintiff*
         **FARAH JEAN FRANCOIS**
         16 Court Street, Suite 2600
         Brooklyn, New York 11241
         (917) 945-9848
         ahmad@newyorkconsumerattorney.com
         emma@newyorkconsumerattorney.com

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X

**FARAH JEAN FRANCOIS,**

Case No. 1:22-cv-4447-JSR

          **Plaintiff,**

    **- against -**

**OFFER OF JUDGMENT**

**VICTORY AUTO GROUP LLC d/b/a**
**VICTORY MITSUBISHI, SPARTAN**
**AUTO GROUP LLC d/b/a VICTORY**
**MITSUBISHI, STAVROS ORSARIS,**
**YESSICA VALLEJO, DAVID PEREZ,**
**DIANE ARGYROPOULOS, and**
**PHILIP ARGYROPOULOS,**

          **Defendants.**
-------------------------------------------------------------------X

      Pursuant to Rule 68 of the Federal Rules of Civil Procedure **SPARTAN AUTO GROUP**

**LLC** hereby offers to allow Plaintiff **FARAH JEAN FRANCOIS** to take judgment against it in

this action for the total sum of Fifty Thousand and One Hundred Dollars ($50,100.00), and, in

addition, Plaintiff's costs and reasonable attorney fees incurred in this action prior to the date of

this offer (the "Offer"), with the amount of Plaintiff's reasonable attorneys' fees to be determined

at a fee hearing conducted by the Court if necessary.

      A Judgment entered pursuant to this Offer shall be in full satisfaction of all federal and state

law claims or rights that Plaintiff may have to recover damages and/or to any other form of relief

arising out of the acts and/or omissions Plaintiff alleges against all Defendants in her Amended

Complaint in the above captioned action, including all of Defendants' officers, employees, or agents,

either past or present.

      This Offer will remain open only for fourteen (14) days hereof and may only be accepted in

writing. This Offer shall not be filed with the Court unless a) accepted, or b) if necessary, in a

proceeding to determine any costs Plaintiff may claim herein.

This Offer is made for the purposes specified in F.R.C.P. Rule 68 and shall not be construed as an admission of liability by any Defendant, or by any Defendant's officer, employee or agent, nor does this Offer constitute an admission that the Plaintiff suffered any damages as alleged, or that she is entitled to any of the relief prayed for in her Complaint.

Acceptance of the Offer will act to release and discharge each and every named Defendant, their successors or assigns and all of their past and present officers, employees and agents from any and all claims that were or could have been alleged by Plaintiff against them.

Acceptance of this Offer will also operate to waive Plaintiff's rights to any claim for interest on the amount of a Judgment entered hereto.

A Judgment entered pursuant to this Offer shall contain and recite the terms and conditions set forth herein.

Dated: New York, New York
   July 24, 2024

         Yours, etc.
         NICHOLAS GOODMAN & ASSOCIATES, PLLC

    BY: _____
         H. Nicholas Goodman
         *Attorneys for Defendants*
         **VICTORY AUTO GROUP LLC**
         **d/b/a VICTORY MITSUBISHI,**
         **SPARTAN AUTO GROUP LLC**
         **d/b/a VICTORY MITSUBISHI,**
         **STAVROS ORSARIS,**
         **YESSICA VALLEJO, DAVID PEREZ,**
         **DIANE ARGYROPOULOS and**
         **PHILIP ARGYROPOULOS**
         333 Park Avenue South, Suite 3A
         New York, New York 10010
         (212) 227-9003
         ngoodman@ngoodmanlaw.com

TO:    Ahmad Keshavarz
        THE LAW OFFICE OF
         AHMAD KESHAVARZ
        *Attorney for Plaintiff*
        **FARAH JEAN FRANCOIS**
        16 Court Street, Suite 2600
        Brooklyn, New York 11241
        (917) 945-9848
        ahmad@newyorkconsumerattorney.com
        emma@newyorkconsumerattorney.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

————————————————————————

LARRY SAMMS,

                                Plaintiff,               15-cv-02741 (JR)

      V.

ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN,
FORMATO, FERRARA, & WOLF, LLP

                              Defendant.

————————————————————————

DEFENDANT ABRAMS, FENSTERMAN, FENSTERMAN, EISMAN, FORMATO,
FERRARA, & WOLF, LLP's MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S
MOTION FOR ATTORNEY'S FEES

Anthony J. Genovesi, Jr. Esq.
On the Brief

Dated: June 1, 2016

*s/ Anthony J. Genovesi, Jr.*
Anthony J. Genovesi, Jr., Esq.
Abrams, Fensterman, Fensterman, Eisman
Formato, Ferrara & Wolf, LLP
Attorneys for Defendant
Abrams Fensterman, Fensterman, Eisman
Formato, Ferrara & Wolf, LLP
1111 Marcus Avenue
Lake Success, New York 11042
Telephone:  (516) 368-9426
Facsimile:  (516) 368-9579
agenovesi@abramslaw.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. III

INTRODUCTION ................................................................................................................ 1

PRELIMINARY STATEMENT ............................................................................................... 1

      I.      THE STANDARD FOR RECOVERY OF ATTORNEY'S FEES ...................................... 3

      II.     PLAINTIFF'S APPLICATION SEEKS TO RECOVER FOR VAGUE, EXCESSIVE AND IMPROPER ITEMS ................................................................................. 5

            a.     *Plaintiff's time records are vague* .......................................... 5

            b.     *Plaintiff's invoices include excessive and duplicative entries which are not recoverable* ....................................... 10

            c.     *Plaintiff's time includes subject matter not properly recoverable* ....................................................................... 12

            d.     *Plaintiff's time entries appear not to have been contemporaneously created* ............................................. 17

      III.    THE HOURLY RATE PLAINTIFF'S ATTORNEY SEEKS IS EXCESSIVE ................... 19

            a.     ████████████████████████████████████ ████████████████████████████████████ ████████ ............................................................. 20

            b.     *Plaintiff's hourly rate should be adjusted based upon his conduct* .................................................................... 24

            c.     *Plaintiff's attorney's work on this case has not precluded him from accepting other employment or from billing time on other existing cases* ............................................. 31

CONCLUSION .................................................................................................................. 32

## TABLE OF AUTHORITIES

**Cases**

*ACE Ltd. v. CIGNA Corp.,*
    No. 00–9423, 2001 WL 1286247, at *4 (S.D.N.Y. Oct. 22, 2001) .................................. 5

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,*
    522 F.3d 182, 183, 189-90 (2d Cir. 2008) ................................................................... 3, 4

*Cabala v. Crowley,*
    736 F.3d 226, 230-31 (2d Cir. 2013) ............................................................................. 26

*De La Paz v. Rubin & Rothman, LLC,*
    2013 WL 6184425, at *6 (S.D.N.Y.,2013) .................................................................... 19

*Design Strategy, Inc. v. Davis,*
    469 F3d 284, 295-96 (2d Cir. 2006) ............................................................................. 29

*Emanuel v. American Credit Exch.,*
    870 F.2d 805, 809 (2d Cir. 1989) .................................................................................... 3

*Fennell v. TLB Kent Co.,*
    865 F.2d 498, 501 (C.A.2 (N.Y.), 1989) ...................................................................... 22

*Fink v. City of New York,*
    154 F.Supp.2d 403, 412–13 (E.D.N.Y.2001) ............................................................... 12

*Flores v. Fergiss Inc.,*
    2014 WL 1123638, at *2 (D.Or., 2014) ........................................................................ 11

*Hensley v. Eckerhart,*
    , 461 U.S. 424, 440 (U.S.S.C., 1983) ........................................................................... 14

*Hensley v. Eckerhart,*
    461 U.S. 424, 433 n. 7 (1983) ......................................................................................... 4

*Hoffman v. Constr. Protective Services, Inc.,*
    541 F.3d 1175, 1179 (9th Cir. 2008), *as amended* (Sept. 16, 2008) .............................. 29

*In re Arbration Between Okyere and Houslanger & Associates, PLLC,*
    2015 WL 4366865, at *24 (S.D.N.Y.,2015) ................................................................. 12

*In re E. Sugar Antitrust Litig.,*
    697 F.2d 524, 533 (3d Cir. 1982) .................................................................................. 27

*Johnson v. Georgia Highway Exp., Inc.,*
    488 F.2d at 714 (5th Circ. 1974) ..................................................................................... 3

*Kay v. Ehrler,*
  499 U.S. 432, 435 (1991) ................................................................................ 22

*Kirsch v. Fleet St., Ltd.,*
  148 F.3d 149, 173 (2d Cir. 1998) ....................................................................... 5

*Kulig v. Midland Funding, LLC,*
  2014 WL 5017817, at *6 (S.D.N.Y.,2014) ......................................................... 26

*Larsen v. JBC Legal Group, P.C.,*
  588 F.Supp.2d 360, 364-65 (E.D.N.Y.,2008) ....................................................... 5

*Lewis v. Coughlin,*
  801 F.2d 570, 577 (2d Cir. 1986) ....................................................................... 5

*Leyse v Corp. Collection Services, Inc.,*
  545 F. Supp. 2d 334, 336 (S.D.N.Y. 2008), *report and recommendation adopted,* 557 F.
  Supp. 2d 442 (S.D.N.Y. 2008) ............................................................... 3, 10, 20

*Liang Huo v. Go Sushi Go 9th Ave.,*
  2014 WL 1413532, at *8 (S.D.N.Y.,2014) ........................................................... 4

*Louima v. City of New York,*
  2004 WL 2359943 (E.D.N.Y.,2004) .................................................................. 26

*Luessenhop v. Clinton Cnty.,*
  *N.Y.,* 558 F.Supp.2d 247, 270–71 (N.D.N.Y.2008), aff'd, 324 F. App'x 125 (2d Cir.2009)
  ........................................................................................................ 12

*Marisol A. ex rel. Forbes v. Giuliani,*
  *111 F.Supp.2d 381, 397 (S.D.N.Y.,2000)* ............................................................ 5

*Millea v. Metro-North R.R. Co.,*
  658 F.3d 154, 166 (2d Cir. 2011) ....................................................................... 3

*Muise v. Allied Interstate, Inc.,*
  No. 12 Civ. 1317(TPG), 2012 WL 4044699, at *1 (S.D.N.Y. Sept. 12, 2012) ............... 20

*Murray v. Mills,*
  354 F.Supp.2d 231, 241 (E.D.N.Y.2005) ............................................................ 12

*New York Association for Retarded Children, Inc. v. Carey,*
  711 F.2d 1136, 1147–48 (2d Cir. 1983) ............................................................... 5

New York State Ass'n for Retarded Children, Inc. v. Carey,
  711 F.2d 1136, 1148 , 1147 (2d Cir.1983) .......................................................... 17

*Newman and Cahn, LLP. v. Sharp,*
  388 F.Supp.2d 115, 119 (E.D.N.Y.,2005) ............................................................ 22

*Obenauf v. Frontier Financial Group, Inc.,*
    785 F. Supp. 2d 1188 (D.N.M. 2011) ............................................................... 10

*Pipiles v. Credit Bureau of Lockport, Inc.,*
    886 F.2d 22, 28 (2d Cir.1989).......................................................................... 3

*Pub. Interest Research Group of New Jersey, Inc. v Windall,*
    51 F3d 1179, 1188 (3d Cir. 1995)..................................................................... 4

*Quaratino v. Tiffany & Co.,*
    166 F.3d 422, 425 (2d Cir.1997)....................................................................... 4

*Resolution Trust Corp. v. 12A Assoc.,*
    782 F. Supp. 270, 272 (S.D.N.Y. 1992)........................................................... 9

*Rodriguez v. Disner,*
    688 F.3d 645, 654-55 (9th Cir. 2012) ............................................................ 27

*Rodriguez v. Pressler & Pressler, L.L.P.,*
    No. 06 Civ. 5103(BMC)(JO), 2009 WL 689056, at *1 (E.D.N.Y. Mar. 16, 2009).......... 20

*Rozell v. Ross-Holst,*
    576 F Supp. 2d 527, 540 (S.D.N.Y. 2008).................................................... 4, 9

*Ruiz v. Maidenbaum & Associates P.L.L.C.,*
    2013 WL 3957742, at *5 (S.D.N.Y., 2013) ................................................... 19

*Ryan v. Allied Interstate, Inc.,*
    882 F.Supp.2d 628 at 630 (S.D.N.Y.,2012).................................................. 19

*Sands v. Runyon,*
    28 F.3d 1323, 1334 (2d Cir. 1994) ................................................................ 26

*Savino v. Computer Credit,*
    164 F.3d 81, 87 (2d Cir.1998)..................................................................... 3, 12

*Simmons v. N.Y.C. Transit Auth.,*
    575 F.3d 170, 174 (2d Cir.2009).................................................................... 19

*Solomon v. Allied Interstate, LLC,*
    2013 WL 5629640, at 2 (S.D.N.Y.,2013) ...................................................... 19

*United States v. Beebe,*
    180 U.S. 343, 352 (1901)................................................................................ 22

**Statutes**

GBL §349...................................................................................................................... 19

**Rules**

Fed. R. Civ. P. 26(a)(1)(A)(iii) ..................................................................................... 13

<u>INTRODUCTION</u>

Defendant Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP ("Abrams") submits this memorandum of law in opposition to Plaintiff's application for fees and costs.  (Dkt. No. 95.)

<u>PRELIMINARY STATEMENT</u>

In this application, Plaintiff's counsel seeks recovery of attorneys' fees in the amount of $186,520 for nearly 500 hours of billing and $2,803.09 in expenses. Despite the billing records, affirmations, and other evidence put forth by Mr. Kashvarez in his papers, Plaintiff's counsel fails to justify the vague, improper, and excessive nature of his billing to warrant the requested attorneys' fees in this action. The near $200,000 that Plaintiff's counsel is requesting in attorneys' fees is absolutely disproportionate considering the simplicity of this FDCPA case.

As the Court is aware, this case did not involve any dispute as to the underlying facts. There was no question that the wherefore clause in the state court action included a request for attorney's fees, and there was no dispute that the case was filed in Westchester County. Indeed, this case consisted of straightforward factual contentions making it unnecessary or an attorney with expertise of 15 years and over 85 consumer protection lawsuits for the enforcement of the Fair Debt Collection Practices Act ("FDCPA"), to spend almost 500 hours and $200,000 worth of billing. Mr. Kashvarez, however, despite his purported expertise, drafted and filed four Complaints and brought a Motion to Amend on this case that did not actually involve any factual disputes outside of the issue of damages.

Moreover, Plaintiff Larry Samms (hereinafter "Mr. Samms" or "Plaintiff") had virtually no damages as a result of the claimed violations.  The only damage that Plaintiff could allege with

certainty – the economic damages in the form of attorneys' fees to change venue – he failed to disclose in disregard of the Federal Rules.

There can be no question that the jury rejected Plaintiff's claim of emotional damages because they were entirely exaggerated.  It was Plaintiff's attempt to obtain these exaggerated damages that resulted in a trial whereby the jury rejected this claim that now serves as a basis for a substantial reduction in Plaintiff's attorney's fees.  Furthermore, Plaintiff had every reason to expect that the jury would render the verdict that they did but insisted on going to trial nonetheless. Mr. Samms' entire emotional damage claim hinged on his knowledge of the request for attorney's fees in the state court action, and his one car ride to court in Westchester.   But there was no dispute that Mr. Samms did not even know that a request for attorney fees had been made in the state court action.  In addition, Mr. Samms' solitary car ride to Westchester County was not the cause of any emotional distress especially where he did not even leave his car and which the car ride would have been made in any case to the Bronx had the action been brought there instead.  Plaintiff went to trial with no evidence and, as a result, the jury correctly rejected the issue of emotional injury when rendering its verdict on damages.

Although Abrams acknowledges that Plaintiff's counsel is entitled to some reasonable amount of attorney's fee, the $186,520 requested by Mr. Kashvarez is disproportionate to the degree of success he obtained for his client in the amount of $7,795.00. In fact, Abrams' offer of $7,001 in attorneys' fees to Plaintiff's counsel on July 24, 2015 was unreasonably rejected by Mr. Kashvarez who now argues that he should be compensated for spending nearly 500 hours in the prosecution of this case to achieve virtually identical results as contained in Abram's Offer of Judgment.

I.     THE STANDARD FOR RECOVERY OF ATTORNEY'S FEES

"Where a plaintiff prevails, whether or not he is entitled to an award of actual or statutory

damages, he should be awarded costs and reasonable attorneys' fees in amounts to be fixed in the

discretion of the court." *Savino v. Computer Credit,* 164 F.3d 81, 87 (2d Cir.1998) (*citing Pipiles

v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 28 (2d Cir.1989); *Emanuel v. American Credit

Exch.,* 870 F.2d 805, 809 (2d Cir. 1989)). The amount of attorneys' fees and costs are determined

at the discretion of the Court. *Leyse v Corp. Collection Services, Inc.*, 545 F. Supp. 2d 334, 336

(S.D.N.Y. 2008), *report and recommendation adopted,* 557 F. Supp. 2d 442 (S.D.N.Y. 2008).

In the Second Circuit, the appropriate method of calculating reasonable attorneys' fees

consists of the court's consideration of all variables, including multiplying the reasonable number

of hours that the case requires by the reasonable hourly rates. *Arbor Hill Concerned Citizens

Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183, 189-90 (2d Cir. 2008); *accord

Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011).  In *Arbor Hill*, the Second

Circuit explicitly instructed that district courts should "[B]ear in mind all of the case-specific

variables that [the Second Circuit] and other courts have identified as relevant to the

reasonableness of attorneys' fees in setting a reasonable hourly rate. The reasonable hourly rate is

the rate a paying client would be willing to pay. In determining what rate a paying client would

be willing to pay, the district court should consider, among others, the *Johnson*[1] factors." *Arbor*,

522 F.3d at 190. By analyzing these factors, the reasonable hourly rate calculated by the district

court would reflect "the rate a paying client would be willing to pay . . . bear[ing] in mind that a

---

[1] The *Johnson* factors include (1) the time and labor required; (2) the novelty and difficulty of the question; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson v. Georgia Highway Exp., Inc.,* 488 F.2d at 714, 717-19 (5th Circ. 1974) *overruled on other grounds by Blanchard v. Bergeron,* 489 U.S. 87 (1989).

reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190.

One of the case-specific variables to be considered by the district court is the "degree of success obtained" in the underlying action in order to avoid granting a windfall of attorneys' fees where a plaintiff only received nominal damages. *Hensley v. Eckerhart,* 461 U.S. at 436 n. 12 (1983)). "If . . . a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount. This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." Id.

Additionally, in determining the proper number of hours for which a defendant should be compensated, the district court should exclude "excessive, redundant, or otherwise unnecessary hours, as well as hours dedicated to severable unsuccessful claims*." Liang Huo v. Go Sushi Go 9th Ave.*, 2014 WL 1413532, at *8 (S.D.N.Y., 2014) (*quoting Quaratino v. Tiffany & Co.*, 166 F.3d 422, 425 (2d Cir.1997)). Moreover, under fee-shifting statutes, attorneys "may not be compensated at their regular hourly rates for time spent performing clerical tasks. Rather, they should be compensated at the rate for clerical employees, or, if the task at issue is the type included in overhead, they should not be compensated at all." *Rozell v. Ross-Holst*, 576 F Supp. 2d 527, 540 (S.D.N.Y. 2008). Hours that would not generally be billed to one's own client are not properly billed to an adversary. *Pub. Interest Research Group of New Jersey, Inc. v Windall*, 51 F3d 1179, 1188 (3d Cir. 1995).

When applying for fee awards, counsel should include contemporaneously created time records that specify the date, the hours expended, and the nature of the work done to justify the purported reasonableness of the fees being sought. *Kirsch v. Fleet St., Ltd.,* 148 F.3d 149, 173 (2d

Cir. 1998) (*citing Hensley v. Eckerhart,* 461 U.S. 424, 437 n. 12 (1983)); *Lewis v. Coughlin,* 801

F.2d 570, 577 (2d Cir. 1986); *New York Association for Retarded Children, Inc. v. Carey,* 711

F.2d 1136, 1147–48 (2d Cir. 1983)).

II.    PLAINTIFF'S APPLICATION SEEKS TO RECOVER FOR VAGUE, EXCESSIVE AND IMPROPER
       ITEMS

   *a.  Plaintiff's time records are vague*

Where billing records are vague, a reduction in fees is appropriate. *See ACE Ltd. v. CIGNA*

*Corp.,* No. 00–9423, 2001 WL 1286247, at *4 (S.D.N.Y. Oct. 22, 2001); *Marisol A. ex rel. Forbes*

*v. Giuliani, 111 F.Supp.2d 381, 397 (S.D.N.Y.,2000)* ("Although counsel is not 'required to record

in great detail how each minute of his time was expended . . . counsel should [at a minimum]

identify the general subject matter of his time expenditures.'"). *See also Larsen v. JBC Legal*

*Group, P.C.*, 588 F.Supp.2d 360, 364-65 (E.D.N.Y. 2008).

Plaintiff's billing entries in numerous instances do not sufficiently describe the nature of

the tasks performed by Plaintiff's counsel to allow the Court to determine whether the time

expended on the task is reasonable. Instead, Plaintiff's billing records consist of a vague list of

performed tasks and the hours worked.   The following table includes several, but not all, instances

of vague or insufficient entries submitted by Plaintiff's counsel:

| Date | Duration | Notes |
|---|---|---|
| 3/16/2015 | 7.20 | Worked on complaint. |
| 4/7/2015 | 3.30 | Revised complaint. |
| 5/18/2015 | 4.00 | Drafted our first set of discovery on Defendant and served. |
| 6/4/2015 | 0.60 | Revised First Amended Complaint. Made minor revisions. Filed Second Amended Complaint. |
| 6/17/2015 | 2.40 | Continued working on opposition to MJP. |
| 6/18/2015 | 3.20 | Worked on opposition to MJP. |
| 6/19/2015 | 8.00 | Completed motion and filed. |
| 7/30/2015 | 0.90 | Research on consumer oriented requirements in order to file amended complaint. |
| 7/30/2015 | 4.00 | Worked on amended complaint. Review documents to create |

| | | additional factual basis. Filed. |
|---|---|---|
| 8/18/2015 | 3.00 | Worked on motion to amend. Pulled additional cases finding FDCPA violations to state violations of GBL, especially in the context of debt collection litigation. |
| 8/19/2015 | 7.20 | Worked on motion to amend. |
| 8/20/2015 | 4.60 | Continued to work on motion to amend. |
| 8/21/2015 | 3.00 | Completed motion to amend and filed. |
| 9/2/2015 | 4.80 | Worked on opposition to their MTD. |
| 9/3/2015 | 3.40 | Worked on opposition to their motion to dismiss. |
| 9/4/2015 | 16.00 | Completed motion to dismissal for lack of jurisdiction and filed. |
| 9/14/2015 | 3.50 | Worked on reply in support of motion to amend, and filed. |
| 9/21/2015 | 3.30 | Reviewed their Reply in support of motion to dismiss for lack of jurisdiction. Began drafting sur-reply. |
| 9/22/2015 | 8.00 | Continued working on Sur-Reply opposing their motion to dismiss for lack of jurisdiction. Completed and (sic) |
| 10/26/2015 | 3.50 | Worked on settlement demand letter. |
| 10/28/2015 | 1.60 | Continued working on settlement demand. Served. |
| 12/6/2015 | 6.00 | Worked on our MSJ. |
| 12/9/2015 | 7.00 | Worked on our MSJ. Filed. |
| 12/11/2015 | 2.50 | Worked on opposition to their MSJ. |
| 12/14/2015 | 5.00 | Worked on opposition to their MSJ. |
| 12/15/2015 | 13.30 | Worked on MSJ opposition. |
| 12/16/2015 | 15.40 | Continued working on opposition to their MSJ. Filed. |
| 12/21/2015 | 7.00 | Worked on our Reply. |
| 12/22/2015 | 8.00 | Worked on reply to their opposition to our MSJ. |
| 12/23/2015 | 1.30 | Completed reply and filed. |
| 1/13/2016 | 5.50 | Letter to court about discrepancies. |
| 1/14/2016 | 9.00 | Prepared for MSJ oral argument and oral argument itself. |
| 1/22/2016 | 2.50 | Worked on letter for calculation of errata sheet deadline in support of letter to court and drafted letter. |
| 4/2/2016 | 8.00 | Lengthy meeting with client and with client's son regarding trial preparation, case status. Traveled to rehabilitation center in the Bronx. |
| 4/4/2016 | 8.00 | Continued working on objection to their pretrial witnesses and worked on motion in limine. |
| 4/7/2016 | 2.60 | Worked on jury charge. |
| 4/8/2016 | 4.50 | Worked on jury charge. |
| 4/10/2016 | 6.00 | Worked on jury charge and joint order. |
| 4/11/2016 | 15.00 | Continued working on jury charge and joint pretrial order, filed. |
| 4/13/2016 | 5.00 | Drafted and filed voire dire. Reviewed their proposed voire dire. |
| 4/14/2016 | 11.00 | Drafted letter to court outlining Plaintiff's argument. Research for tomorrow's hearing. Outlining of (sic) |
| 4/16/2016 | 10.20 | Trial preparation. Witness interviews. Typing outline of questions. |
| 4/17/2016 | 14.00 | Trial preparation. |

| 4/30/2016 | 8.00 | Worked on letter brief on injunctive relief. |
| 5/1/2016 | 8.00 | Continued working on letter brief for injunctive relief. |
| 5/2/2016 | 13.00 | Worked on brief regarding injunctive relief. |
| 5/3/2016 | 9.00 | Worked on briefing on injunctive relief. |
| 5/3/2016 | 6.30 | Completed our opposition to their letter motion on treble damages and filed. |
| 5/11/2016 | 6.00 | Worked on fee petition. |
| 5/12/2016 | 8.00 | Worked on fee petition. |
| 5/13/2016 | 7.00 | Worked on fee petition. |
| 5/14/2016 | 5.00 | Worked on fee petition. |
| 5/15/2016 | 5.50 | Worked on fee petition. |
| 5/16/2016 | 9.00 | Worked on fee petition. |
| 5/17/2016 | 6.00 | Worked on fee petition. |

In these entries, Plaintiff's counsel neglects to include enough information to justify the purported reasonableness of his billed hours. Specifically, Plaintiff's counsel does not provide a breakdown of the alleged tasks performed but instead includes descriptions like "worked on complaint," "worked on MSJ opposition," and "worked on fee petition," which simply does not provide this Court with enough probative information to ascertain if the alleged work and time spent was actually reasonable particularly given that in this case Abrams claims the fee award should not include any fees for the GBL §349 claim. Plaintiff's records make it impossible for the Court to discern to which claims Plaintiff's counsel's bill entries relate. Instead, Plaintiff's counsel merely presents a lump sum of hours next to a broad description of performed tasks and expects this Court to accept these numbers at face value. *Hensley,* 461 U.S. 424, 437 n. 12.

Plaintiff's counsel also does not specify the work conducted by Mr. Keshavarz as opposed to work performed by one of his associates, or clerical staff but instead provides a broad summary of the tasks executed. Although Mr. Keshavarz had two associates (Michael Pereira and Lauren Parnes) who assisted him on this case, there is no indication at all in the billing records that anyone other than Mr. Keshavarz worked on this case. Specifically, the records do not identify the attorney who performed the work conducted but simply proffer already vague entries and presumably

expects the Court to accept that Mr. Keshavarz personally performed all of the listed work. Plaintiff's counsel fails to reference *anywhere* in his Declaration and accompanying Memorandum of Law that he even had any associate assist him in preparation of this case. Neither of his associates are as much as mentioned. ████████████████████████████ ███████████████████████████████████████████████████ (See retainer agreement attached to Genovesi Declaration as "Exhibit H")

Since an associate would call for a much lower hourly rate than the $400 hourly rate sought by Mr. Keshavarz, Plaintiff's counsel should then not be compensated at his requested hourly rate for the hours spent by his associates on this case. Plaintiff's counsel's associates, Michael Pereira and Lauren Parnes appeared at conferences at trial and on virtually all emails, but neither have recorded a single time entry and plaintiff's billing records do not indicate the identity of who performed the particular tasks.  Moreover, upon information and belief, Mr. Keshavarz has no clerical staff in his office which means either that there was no clerical staff, no clerical work or tasks performed on this case, or that Mr. Keshavarz's billing incorporates time for all of the tasks that could have been performed by clerical staff or one his associates but is billed at a much more substantial hourly rate.  Vast portions of Mr. Keshavarz's billing records involve the processing of paper in connection with discovery and motions (which are likely similar or identical to the discovery and motions filed in the numerous other nearly identical cases brought by Mr. Keshavarz) and could have and should have been performed by clerical staff or one of his associates.

Plaintiff's counsel's billing records reveal numerous clerical tasks:

| 5/18/2015 | 4.00 | Drafted our first set of discovery on Defendant and *served*. |
| 6/19/2015 | 8.00 | Completed motion and *filed*. |
| 7/30/2015 | 4.00 | Worked on amended complaint. Review documents to create |

| | | additional factual basis. *Filed.* |
|---|---|---|
| 8/21/2015 | 3.00 | Completed motion to amend and *filed.* |
| 9/4/2015 | 16.00 | Completed motion to dismissal for lack of jurisdiction and *filed.* |
| 9/14/2015 | 3.50 | Worked on reply in support of motion to amend, and *filed.* |
| 10/28/2015 | 1.60 | Continued working on settlement demand. *Served.* |
| 12/9/2015 | 7.00 | Worked on our MSJ. *Filed.* |
| 12/16/2015 | 15.40 | Continued working on opposition to their MSJ. *Filed.* |
| 12/23/2015 | 1.30 | Completed reply and *filed.* |
| 4/11/2016 | 15.00 | Continued working on jury charge and joint pretrial order, *filed.* |
| 5/3/2016 | 6.30 | Completed our opposition to their letter motion on treble damages and *filed.* |

(Emphasis added).

Since Plaintiff's counsel does not differentiate between the amount of time spent performing legal work and time spent performing clerical work, this Court can only speculate as to how much time Plaintiff's counsel actually spent conducting clerical tasks. Regardless of whether it was Mr. Keshavarz himself or a secretary performing these tasks, Plaintiff's counsel should not be compensated at his requested hourly rates, or should not be compensated at all for time spent performing clerical tasks. *Rozell*, 576 F. Supp. 2d at 540.

Likewise because the proffered billing entries are silent on which attorney performed the listed tasks, the Court is also left to speculate as to who performed the work and the Court has no basis to assess the reasonable hourly rate for work that was – or could have been – performed by Mr. Keshavarz's associate. Without providing more specific time sheets or similar documentation of the exact hours spent on this case by each individual from Plaintiff's counsel's office, there is no way for this Court to ensure that there was no padding or double billing of services for these disproportionate hours alleged to have been expended by Plaintiff's counsel. *See Resolution Trust Corp. v. 12A Assoc.*, 782 F. Supp. 270, 272 (S.D.N.Y. 1992) (Request for attorneys' fees were stricken altogether where counsel double-billed for the same service).

It follows that Plaintiff's counsel's cursory estimation of the hours spent without proper

justification or description is simply not enough to meet the legal standard and as such, Plaintiff's counsel should not be compensated for any of his billing entries as they are all vague as to what work was done and by whom.

**b. Plaintiff's invoices include excessive and duplicative entries which are not recoverable**

The $186,520.00 in attorneys' fees requested by the Plaintiff is also excessive in light of the circumstances of this case. Specifically, this request is excessive given the "degree of success obtained" in the amount of $7,795. *Hensley*, 461 US 424, 436. Thus, downward adjustment of attorneys' fees is warranted based on this nominal amount of recovery. *See Obenauf v. Frontier Financial Group, Inc.*, 785 F. Supp. 2d 1188 (D.N.M. 2011) (Downward adjustment was warranted where Plaintiff obtained less than one-fortieth of the reward he sought under the Fair Debt Collection Practices Act and facts that his lawsuit, which established at most a technical violation of the FDCPA, did not resolve a significant issue and served little if any public purpose).

Here, Plaintiff's counsel is requesting compensation for an *astonishing* number of hours billed without providing enough information to rationalize the hours purportedly expended. Similar to *Leyse v Corp. Collection Services, Inc.*, 545 F Supp. 2d 334, 337, the time entries made by Plaintiff's counsel here are "excessive, vague, and seemingly unnecessary." In *Leyse*, the Defendant argued that "6.5 hours billed to 'background research' with no further explanation is vague, that 3.9 hours billed to researching settlement issues seems improper as no settlement discussions were ever initiated by Plaintiff's counsel at any point during the case, and that 7.5 hours billed for brief court conferences seems excessive." *Leyse*, 545 F. Supp. 2d 334, 337. Here, Plaintiff's counsel requests payment for excessive billing such as 16 hours of "complet[ing] motion to dismissal for lack of jurisdiction and filed" and 15.4 hours of "continu[ing] working on opposition to their MSJ. Filed" with no further explanation or justification of the hours spent.

Mr. Kesharavz is also seeking fees for 16.1 hours of time in connection with his intake of this matter and for drafting of the Complaint. (Dkt. No. 1) Plaintiff's individual claims, however, were straightforward and would have required little time to draft – especially for an attorney who purportedly has great experience and expertise in litigating FDCPA claims where the majority of the additional allegations in the Complaint consisted of boilerplate assertions. Despite this expertise, Mr. Keshavarz's submission states that it took him 10.5 hours to draft just the first of many Complaints in this case.

Additionally, Plaintiff's counsel seeks compensation for 26.7 hours spent on drafting the Motion to Amend. (Keshavarz Memorandum [Dkt. 96] at p. 9). In total Plaintiff filed six complaints in this action – [Dkts. 1, 11, 13, 18, 22, 44] (The Third Amended Complaint was filed twice – once before leave and once after leave) Plaintiff's counsel arguably should have gotten the Complaint right the first time around instead of the *sixth* time he filed the Complaint. Likewise, Plaintiff filed five Rule 26 automatic disclosures even though his billing records indicate he had been billing Mr. Samms for work since December 11, 2014 – four months prior to filing the Complaint in this action on April 9, 2015.

Although Plaintiff's counsel drafted six complaints, he should be limited to a reasonable bill for a single complaint. *See, e.g., Flores v. Fergiss Inc., 2014 WL 1123638, at \*2 (D.Or., 2014)* ("[I] find the time excessive. I grant attorney fees for the time counsel spent researching (2 hours) and grant 30 minutes per page for drafting the Complaints (a total of 5 hours)."); <u>Turner</u>, 405 F. Supp. 2d at 931

Mr. Keshavarz also seeks fees for approximately 37.7 hours of "discovery." Again, the time claimed for discovery is excessive, both generally and in light of the fact that this Court directed the exchange of discovery on a strict schedule and on a timely manner.

As noted above, Plaintiff's attorney seeks more than 46.5 hours in fees to draft his fee application.  (Dkt. Nos. 97-1 at p. 6)  Even apart from the fact that Mr. Keshavarz has made this exact motion in prior cases, those sums are unjustifiable.  Although Plaintiff is entitled to some compensation for the application, an award for the hours he seeks is excessive. *See In re Arbration Between Okyere and Houslanger & Associates, PLLC*, 2015 WL 4366865, at *24 (S.D.N.Y.,2015) (reducing hours on Mr. Keshavarz' fee application to 25 hours); *Luessenhop v. Clinton Cnty., N.Y.,* 558 F.Supp.2d 247, 270–71 (N.D.N.Y.2008), aff'd, 324 F. App'x 125 (2d Cir.2009) (reducing hours on application to 30 hours); *See Murray v. Mills,* 354 F.Supp.2d 231, 241 (E.D.N.Y.2005) (citations omitted) (noting awards range from five to fifteen hours for fee applications in routine cases); *See Savino v. Computer Credit, Inc.,* 71 F.Supp.2d 173 (E.D.N.Y.1999) (reducing the number of compensable hours from the claimed amount of forty to a total of five in a FDCPA case). *See Fink v. City of New York,* 154 F.Supp.2d 403, 412–13 (E.D.N.Y.2001) (awarded a generous thirty hours for the motion for attorney's fees after a six-day jury trial, eight depositions, and 17,000 pages of documents).

Since Plaintiff's counsel cannot justify the excessive and duplicative nature of his submitted entries, it follows that this Court should drastically reduce the requested amount of attorney's fees in the instant application.

### c. *Plaintiff's time includes subject matter not properly recoverable*

Mr. Keshavarz's billing records include categories of items billed which are either entirely unrelated to the prosecution of this action or for which Plaintiff should not be entitled to recover. For instance, Mr. Keshavarz has submitted five billing entries totaling 1.1 hours concerning the state court action which are not properly billed in this case. [12/15/14-.20, 12/30/14-.50, 1/2/15-.20, 1/3/15-.10, 5/15/15-.10, 5/20/15-.10]. Mr. Keshavarz also improperly billed .8 hours for time

to obtain a state court attorney for Mr. Samms [Plaintiff's "Exhibit 1" at 12/11/14 .10] and again on January 24, 2015 [.70] which costs are not properly billable to this case.

In addition, Mr. Keshavarz should not be permitted to recover any fees concerning the General Business Law §349 claim. First, because Plaintiff cannot as a matter of law establish the necessary requirement that he was a "prevailing party." The statute explicitly provides that "[t]he court may award reasonable attorney's fees to a prevailing plaintiff." Deceptive Acts and Practices Unlawful, NY Gen Bus § 349. Here based on the interrogatory to which Plaintiff did not object to be presented to the jury, Plaintiff cannot establish that he qualifies as a prevailing plaintiff. Here, the interrogatory presented to the jury was as follows "we the jury find that Plaintiff is entitled to the following damages proximately caused by Defendant's misconduct: $_____, in economic damages, if any; $_____, in physical and psychological damages, if any." It is entirely speculative for the Court to assume Plaintiff prevailed on the GBL §349 claim for the purpose of an award attorney's fees pursuant to GBL §349 based on the interrogatory returned by the jury. The interrogatory presented to the jury was fashioned in such a way that the Court can only speculate as to whether the jury found injury as required by GBL §349.

To have found injury the jury must have reached the conclusion that the inclusion of the request for fees in the wherefore clause of the state court complaint resulted in actual injury. However, the evidence proffered on this issue at trial in the form of Mr. Samms' deposition testimony demonstrated that Mr. Samms *was not even aware* of a request for attorney's fees in the state court complaint.

Abrams requested separate interrogatories for the attorneys' fee request and distant forum claims for precisely this reason and specifically objected to the single interrogatory presented to the jury. By contrast, Plaintiff's counsel did not object and has since sought treble damages, injunctive relief, and now attorney's fees based on the assumption that the jury found actual

damages stemming from the request for attorney's fees of which Mr. Samms testified he was not aware of.  It is respectfully submitted that if all of these various forms of relief were so important to Plaintiff then Plaintiff should have requested interrogatories tailored to the separate causes of action he was pursuing.  Not having done so, it is respectfully submitted, it is not unfair for any of these applications to be determined based on the assumption that the jury found a violation of GBL § 349 but that such request has been waived.

Where, as here, "plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee." *Hensley v. Eckerhart*, 461 U.S. 424, 440 (U.S.S.C. 1983) Plaintiff's unsuccessful prosecution of the GBL claim entailed discovery and proof of issues such as the consumer oriented nature of the challenged conduct and willfulness which were entirely unrelated to the FDCPA issues in this case.  Although the FDCPA and GBL claims both have as their basis Abrams' request for attorney's fees, the Court determined that the request for fees constituted a violation in deciding Abrams' motion for judgment on the pleadings. Plaintiff then engaged in substantial billing in discovery and motion practice which was entirely unrelated to the FDCPA claim, which is the only claim on which it can be said that Plaintiff has prevailed.

Plaintiff billing records include substantial hours for work on the GBL §349 claim including the drafting of Plaintiff's Original Complaint, [Dkt. 1], and Plaintiff's First Amended Complaint [Dkt. 11], and Plaintiff's Second Amended Complaint [Dkt. 13].  The 349 claim was then dismissed on Defendant's motion for judgment on the pleadings, [Dkt. 21], and again drafted back into Plaintiff's Third Amended Complaint [Dkt. 22] which was filed without leave of Court. At the court conference conducted on August 7, 2015 and Plaintiff requested and received leave to move for leave to amend his Complaint yet again. [Dkt.24].  Plaintiff's motion was granted which resulted in Plaintiff's filing of a Third Amended Complaint [Dkt. 44] on October 26, 2014

which was for the sole purpose of asserting the GBL claim. Plaintiff then expended substantial time pursuing unrelated complaints filed by Abrams – to prove the "consumer oriented" nature of Abrams conduct and to establish willfulness.    Plaintiff then moved for and opposed summary judgment on the GBL 349 claim. Plaintiff then tried the GBL 349 claim and submitted two post-trial briefs on damages only available to prevailing parties on GBL §349 claims.

Thus a substantial, if not the majority of time expended by Plaintiff in this action concerned the GBL §349 claim – all of which culminated in Plaintiff's decision not to specifically ask the jury whether any injury arose as a under this claim as result of the request for attorney's fees. Therefore, none of this time is properly compensable.

Moreover, by failing to include details in his time entries regarding the specific aspects of the case on which Mr. Keshavarz worked, counsel has made it impossible for this Court to know what hours of his billing relate directly to the GBL claim. The list below details billing entries which relate only to the GBL 349 claim – but do not include the time billed for Plaintiff's motion for summary judgment on GBL §349, for opposing Defendant's motion for summary judgment on GBL 349, for opposing Defendant's motion for judgment on the pleadings or for any combined discovery items like depositions which could easily amount to an additional 100 hours.

| 7/30/2015 | .90 | Research on consumer oriented requirements in order to file amended complaint. |
|-----------|------|-----------------------------------------------------------------------|
| 7/31/2015 | 4.00 | Worked on Amended Complaint. Review Documents to create addition factual basis. Filed. |
| 8/18/2015 | 3.00 | Worked on motion to amend. Pulled additional cases finding FDCA violations to state violations of GBL. |
| 8/7/2015 | .40 | Call with opposing counsel and court regarding discovery and amended complaint (2.0 for discovery) Follow up call with court regarding the same, and preparation for said hearing. [Abrams Note 2.0 for discovery was omitted] |
| 8/19/2015 | 7.20 | Worked on motion to amend. |
| 8/20/2015 | 4.60 | Continued to work on motion to amend. |
| 10/28/2015 | 2.00 | Calls with opposition counsel regarding consumers still not disclosed who were sued seeking fees but where fee were not allowed. Correspondence regarding the same. Review of court files and their |

| | | discovery responses in preparation for calls. Call to court regarding scheduling. |
|---|---|---|
| 9/14/2015 | 3.50 | Worked on reply in support of motion to amend, and filed. |
| 10/28/2015 | 1.60 | Continued working on settlement demand. Served. |
| 11/30/2015 | .20 | Call from opposing counsel regarding their failure to comply with court orders to produce information. |
| 12/6/2015 | 1.00 | Compared Defendants amended discovery answers with their original answers and the court files we pulled. Noted that they had not disclosed four consumers on either list, and an additional consumer only on one list. Emailed opposing counsel with attachment of court files, explained the discrepancies, asked to set up time to speak with each other and with the court. |
| 1/13/2016 | 1.00 | Call with opposing counsel and chambers regarding failure to completely disclose the consumers who Defendant sued demanding attorney's fees when not authorized by law, but who Defendant still have not disclosed, despite being ordered by the court. |
| 1/13/2016 | 5.50 | Letter to Court about discrepancies. |
| 4/25/2016 | .20 | Email to opposing counsel again asking to jointly call court regarding injunctive relief. Call with opposing counsel, and then two call to chambers regarding whether the court wanted briefing on the issue of (sic). |
| 4/25/16 | 1.50 | Worked from home. Review of their GBL 349 letter and research beginning with the cases they cited and proceeding from there. |
| 4/27/2016 | .20 | Correspondence with opposing counsel regarding consent to re-set deadline to file response to their letter regarding treble damages, and our letter for injunctive relief. Joint call to court and obtained consent for (sic) |
| 4/28/2016 | 5.00 | Research on issue of treble damages under GBL 349 in response to their letter brief. |
| 4/28/2016 | 3.00 | Research on injunctive relief issue for our trial brief. |
| 4/30/2016 | 8.00 | Worked on letter brief on injunctive relief. |
| 5/1/2016 | 8.00 | Continued working on letter brief for injunctive relief. |
| 5/2/2016 | 13.00 | Worked on brief regarding injunctive relif. |
| 5/3/2016 | 9.00 | Worked on briefing on injunctive relief. |
| 5/3/2016 | 6.30 | Completed our opposition to their letter motion on treble damages and filed. |
| TOTAL | 89.1 | |

Again, the 89.1 hours recited above does <u>not</u> include time billed by Plaintiffs' counsel opposing Defendant's Motion for Judgment on the Pleadings, Defendant's Motion to Dismiss for Lack of Jurisdiction, Plaintiff's Motion for Summary Judgment or opposing Defendant's Motion

for Summary Judgment. Yet, Mr. Keshavarz's application claims he billed 133.5 hours for these motions. (Dkt. 96, Keshavarz Memorandum at p. 9)

Thus nearly half of all of Plaintiff's attorney's billing concerning the GBL 349 claim only culminated in Plaintiff's counsel electing to not even ask the jury whether they found Plaintiff had any injury as a result of the request for attorney's fee under this claim. On these facts it follows that any hours Plaintiff's counsel billed in direct relation to the GBL claim should not be compensated.

### d. Plaintiff's time entries appear not to have been contemporaneously created

The Second Circuit requires that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136, 1148, 1147 (2d Cir.1983) The failure to submit contemporaneous time records as required by *Carey* must result in denial of the motion for fees.

The billing records submitted in support of this application appear not to have been created contemporaneously with the recorded entries. The first indication of non-contemporaneous recordkeeping was as a result of Plaintiff's counsel's telephone call to Abrams on May 9, 2016 inquiring about settlement after moments earlier the Court set a briefing schedule for the fee application. Mr. Keshavarz wanted to discuss settlement and in his own words, he stated that his hours were "outrageous" and that they totaled $220,000. Mr. Keshavarz inquired whether Abrams was interested in making an offer. In response, Abrams requested Mr. Keshavarz provide his billing records so than an offer could be contemplated. Mr. Keshavarz refused and requested that Abrams instead make an offer against the $220,000 without any documentary evidence.

17

Although Plaintiff's counsel represented that his fees amounted to $220,000 *prior* to submitting his fee application, Mr. Keshavarz papers now claim that his fee amounts to $197,640 before exercising "billing judgment" which reduces the total amount sought to $186,520. Nowhere in his Declaration and accompanying Memorandum of Law does Plaintiff's counsel explain why on May 9, 2016 he represented his fees amounted to $220,000 yet on this motion they are $197,640(which amount does not include the reduction for "billing judgment"). That is more than a $20,000 difference which at $400 an hour amounts to 50 hours. Even worse, on May 9th Mr. Keshavarz had not yet commenced work on his fee application for which he billed an additional 46.5 hours – which means on May 9, 2016 Mr. Keshavarz bill amounted to $179,040 – yet he represented to Abrams that his bill was for $40,960 more. I submit Plaintiff's counsel did not lose 50 hours of time between May 9, 2016 and May 14, 2016. In addition, if defies reason that Plaintiff's counsel would refuse to produce his billing records to Abrams on May 9, 2016 when just a few days later on May 14, 2016 the records would be attached to his application as an exhibit.

Additional indications that Plaintiff's attorney's records are not contemporaneous include the absence of any time entries for either of Mr. Keshavarz's two associates; a circumstance which implies several deficiencies, but in this instance calls into question how billing records could be contemporaneous if they fail to record any of Plaintiff's counsel's associates' time. Mr. Keshavarz billing records also misstate the date the trial concluded as April 21, when in fact the trial ended on April 20, 2016

Additionally, the vagueness and repeated, large round time entries found in the billing records lend further credence to the argument that the proffered records appear not to be contemporaneously documented. For instance, Mr. Keshavarz's billing records contain 149 entries – 55 of which are for whole hours (i.e., 1.00, 3.00, 4.00, 8.00. 16.00, 15.00, 14.00). It is submitted that where more than one-third of all Plaintiff's billing entries follow such a pattern they

18

are a product of block-billing or after-the-fact approximation of time; neither of which satisfy Plaintiff's obligation on this motion.

III.   THE HOURLY RATE PLAINTIFF'S ATTORNEY SEEKS IS EXCESSIVE

The "forum rule" requires courts in the Second Circuit to "use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir.2009)

Plaintiff's attorney's papers state: "[i]n the case at bar, Mr. Keshavarz has fifteen years of experience is seeking a $375 hourly rate." (Keshavarz Memorandum at p. 16). Then one page later Mr. Keshavarz refers to attached declarations which were "submitted supporting $400 hourly rate sought by the undersigned." (Keshavarz Memorandum at p. 17). Both of the hourly rates sought in Plaintiff's attorney's application are at the high end of rates awarded for FDCPA work in this district and in neighboring districts as well. In *De La Paz v. Rubin & Rothman, LLC*, 2013 WL 6184425, at *6 (S.D.N.Y.,2013) the court deemed $400 an hour an appropriate rate for a Yale graduate with thirty-years of experience. In *Ruiz v. Maidenbaum & Associates P.L.L.C.*, 2013 WL 3957742, at *5 (S.D.N.Y., 2013) (deeming reasonable an hourly rate of compensation of $300 and observing, in an FDCPA case involving an award of attorneys' fees to Fishman & Mallon, LLP, that "[i]n this District, courts have found attorneys' fees ranging from $225 to $375 reasonable for civil litigators working in small firms." (internal citations and quotations omitted)); *Ryan v. Allied Interstate, Inc.*, 882 F.Supp.2d 628 at 630 (S.D.N.Y.,2012) (awarding plaintiff's counsel, a firm partner with over two decades of legal experience, an hourly rate of $300 in an FDCPA case); *Solomon v. Allied Interstate, LLC*, 2013 WL 5629640, at 2 (S.D.N.Y.,2013) (reducing award of attorneys' fees in FDCPA action to an hourly rate of $125 because "no reasonable client would pay nearly $4,000 to collect only $1,000"); *Muise v. Allied Interstate, Inc.*, No. 12 Civ. 1317(TPG), 2012 WL 4044699, at *1 (S.D.N.Y. Sept. 12, 2012) (in FDCPA case that

19

settled prior to the opening of discovery, hourly attorney rates ranging from $100 to $200 deemed "more than adequate to ensure that firms . . . will continue to bring meritorious FDCPA cases"); *Leyse,* 545 F.Supp.2d at 336–37 (deeming reasonable an hourly rate of $225 in FDCPA class action where attorney had a decade of practice and experience in similar consumer protection lawsuits); *Kapoor,* 269 F.Supp.2d at 15 (capping hourly fee rate at $225 in FDCPA action involving counsel with extensive consumer fraud experience); *cf. Rodriguez v. Pressler & Pressler, L.L.P.,* No. 06 Civ. 5103(BMC)(JO), 2009 WL 689056, at *1 (E.D.N.Y. Mar. 16, 2009) (approving hourly rates of $450 and $300 for FDCPA attorneys); *Richardson v. Professional Recovery Systems, LLC,* No. 07 Civ. 3666(BMC) (E.D.N.Y. Nov. 26, 2007) (approving hourly rate of $300 for attorney working on unopposed fee application in FDCPA case). It follows that Mr. Keshavarz's requested hourly rate is excessive, especially when coupled with the nature of Plaintiff's retainer agreement and counsel's conduct in this action.



*a.*

---

[2] Plaintiff requested, and the Court preliminarily ordered, that the retainer agreement be maintained confidential. Defendant submits there is no basis for the retainer agreement to be kept confidential.





███████████████████████████████████████████████████████████

████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████

### b. *Plaintiff's hourly rate should be adjusted based upon his conduct*

█████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ First, in *Kulig v. Midland Funding, LLC*, 2014 WL 5017817, at *6 (S.D.N.Y., 2014). The court denied Mr. Keshavarz's application for class certification.   The Court cited various instances of misconduct in denying the motion for class certification including counsel's failure to communicate to Plaintiff a class-wide settlement offer, holding that Mr. Keshavarz "reveals a fundamental misunderstanding regarding a bedrock, mandatory professional duty applicable to any attorney-client relationship. The discussion and evaluation of settlement offers is perhaps the single most significant point of contact between class counsel and a class representative throughout the pendency of the action. In *Kulig* Mr. Keshavarz provided a companion document attached to his retainer agreement which stated as follows:

> [B]ecause this is a class case, you must make decisions that are fair to everyone else in the class .... This includes making decisions about whether to settle the case. If the Defendant wants to settle just with you, you need to think about your responsibilities to the class. Just like a politician shouldn't sell out his constituents by taking a bribe, you need to think of the class before settling the case. *Id.* at 6.

The Court was not only critical of Mr. Keshavarz's view that Ms. Kulig's acceptance of an

█

offer, prior to class certification, is a betrayal of the class or comparable to "a politician . . .

sell[ing] out his constituents by taking a bribe," but also took notice of prior similar conduct:

> The Court also notes that this is not the first time a court has taken
> notice of troubling conduct by plaintiff's counsel in connection with
> individual settlement offers in the context of another FDCPA class
> action suit. In *Mayorga v. First Resolution Inv. Corp.,* 12–cv–587
> (DLI)(VVP) (E.D.N.Y.), Mr. Keshavarz, representing the plaintiff,
> filed a motion to certify a class and requesting a stay of briefing
> pending discovery as to class issues. *Id.,* Dkt. No. 4. The motion was
> filed within two weeks of the filing of the complaint, and before
> defendants had been served. *Id.* Counsel attached a letter to the
> certification motion explaining that he filed the motion in order to
> preclude the possibility of defendant making a settlement offer of
> complete relief to the individual plaintiff before the certification
> motion was filed. *Id.,* Dkt. No. 4–6. In an order striking plaintiff's
> motion to certify the class, Judge Irizarry found counsel's request to
> file the motion at that juncture "absurd," and further stated that "it
> is unconscionable for plaintiff to make a motion for class
> certification simply to avoid plaintiff's recovery from defendant.
> The court takes a dim view of this practice." *Id.,* Order, Dkt. Entry
> Dated Feb. 21, 2012. This Court takes judicial notice of Judge
> Irizarry's order.

> *id*, at \*6 (S.D.N.Y.,2014)

Despite Mr. Keshavarz's representations to the contrary in his motion papers, he made no

serious effort to settle this case.  Without Plaintiff having made a demand, Abrams made a blind

settlement offer of $5,000 in May of 2015.  Thereafter on July 24, 2015 Abrams made an Offer

of Judgment of $7,001. (See Offer of Judgment annexed to Genovesi Declaration as "Exhibit I").

Mr. Keshavarz rejected Abrams' $5,000 offer three months later on August 4, 2015 and Mr.

Keshavarz never responded to Abrams $7,001 offer which expired by its terms.  The technique

employed by Mr. Keshavarz's was to simply ask Abrams to make another offer.  Despite a series

of conversations in which it was expressed that Abrams was not going to simply keep making

offers in the hope that one would be accepted; but that it was expected that Plaintiff would at some

point make a demand, no demand was forthcoming until October 28, 2015 when Plaintiff

demanded $280,000 (or $392,000 depending on how the settlement documents were exchanged).

Against this background, the Second Circuit has held that a district court can take into account the sequence of settlement discussions when assessing the "reasonableness" of the fees requested. *See Sands v. Runyon*, 28 F.3d 1323, 1334 (2d Cir. 1994) (a district court can consider settlement offers in making a fee award). ████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████ █████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████ Therefore, although settlement misconduct (without more) may not be a reason for the *outright* denial of fees, *see Cabala v. Crowley*, 736 F.3d 226, 230-31 (2d Cir. 2013), a court can consider the non-transmission of settlement offers and like instances of litigation misconduct in determining what amount of fees can be reasonably recovered. *See, e.g.*, *Sands*, 28 F.3d at 1334; *Louima v. City of New York*, 2004 WL 2359943 (E.D.N.Y., 2004) (reducing portion of the attorney's fees awarded to plaintiff's co-counsel in light of the firm's withdrawing from the representation without cause and for disclosing client confidences).

As applied to the facts of this case, Mr. Keshavarz's misconduct had the effect of prolonging this case and increasing his fees, which appears to have been his aim. The misconduct identified should not be rewarded through payment of over $186,520 to Mr. Keshavarz, thereby encouraging similar misconduct by him and by attorneys in other cases.

For these reasons, the requested fees by Mr. Keshavarz should be dramatically reduced, even apart from the many other considerations discussed below. *See, e.g.*, *Rodriguez v. Disner*,

688 F.3d 645, 654-55 (9th Cir. 2012) ("[A] district court may consider a lawyer's misconduct, which affects the value of the lawyer's services . . ."); *In re E. Sugar Antitrust Litig.*, 697 F.2d 524, 533 (3d Cir. 1982) (affirming denial of fees awarded for services after the date on which counsel should have disclosed a conflict of interest).

Finally, in *Khan v Midland Funding, LLC* 12-cv-08462 (RJS) (S.D.N.Y.) the Court addressed Mr. Keshavarz's strategic determination to demand discovery against Defendant Rubin & Rothman in the face of undisputed evidence that the Defendant did nothing wrong. (See Khan v Midland Transcript at page 24, line 13 annexed to Genovesi Declaration as "Exhibit G")

> THE COURT: I'm probably gonna grant your motion for the judgment on pleadings, because I think the complaint is woefully inadequate. I don't know why you didn't make a motion to dismiss. It's woefully inadequate with respect to -- so that's probably going to happen. Let's just do that.
>
> Mr. Keshavarz, I just think you have got a strategy here which is to sort of create the most pain, early, and you think that gives you leverage. I mean it might work, it might not work. But I tell you, ultimately, I'm going to decide what happens on attorneys fees. And you have blown an hour of my time, you have blown a couple of hours of my time with the submissions, and I am gonna remember that. And so you know if you want all of these things, you want to go after them because you think that you have got them in your sights, I think you pled a bad complaint against them. I think the summary judgment will probably even be stronger.
>
> MR. ARLEO: I would rather do summary judgment.
>
> THE COURT: Keep track of what you spend here.
>
> MR. SCHWARTZ: I served him --
>
> THE COURT: I'll stay discovery in the interim with respect to Rubin & Rothman, because I think it can't be -- the whole system breaks down if this is just a game where the goal is to exact as much pain as possible to use the admissions process to sort of a gotcha. And I just -- I don't like -- I don't like the way you are approaching this, Mr. Keshavarz. So I certainly have the discretion to stay discovery, I will decide the motion.
>
> MR. KESHAVARZ: Okay. If I --

27

MR. ARLEO: We did serve you with the Rule 11 notice, safe harbor by e-mail, in case you didn't get the –

MR. KESHAVARZ: The motion for judgment on the pleadings, their basis for their motion for judgment on the pleadings is that a communication between one debt collector and another is not actionable under the --

THE COURT: You thought that it might be granted just because you have pled no facts to suggest that there was any communication by them that led to the violation that you are speaking of. You are just -- you're surmising that because they were involved in something in 2007, they must have been involved in something in 2011. That's not enough under Iqbal and Twombly, and that's the reason I am likely to grant this stay. So if you want to make your complaint, you can do that, just turn this whole thing into a circus. But, you know, look, I brought you guys in here because I thought we could get to the point where we are really focused on issues that matter to your respective clients. But I don't think clients matter much here, I think this is really about something else, not clients. So, I don't feel we have much choice other than making the motions. So, discovery is stayed. And then we'll see where we are.

████████████████████████████████████

████████████████████████████████████

██████████████████████████  Mr. Keshavarz employed a similar  strategy in

connection with Plaintiff's Rule 26 automatic disclosure which ensured this case would not settle

or resolve by Rule 68 Offer of Judgment.  Having participated in many federal cases, Plaintiff's

counsel is of course cognizant the Rule 26 requirement that each "party must, without awaiting a

discovery request, provide to the other parties: **(iii)** a computation of each category of damages

claimed by the disclosing party--who must also make available for inspection and copying as

under Rule 34 the documents or other evidentiary material, unless privileged or protected from

disclosure, on which each computation is based, including materials bearing on the nature and

extent of injuries suffered." Fed. R. Civ. P. 26(a)(1)(A)(iii).

Rule 26(a) requires a party, in addition to providing a calculation of damages, to make

"available for inspection and copying as under Rule 34 the documents or other evidentiary material . . . on which such computation is based." Fed. R. Civ. P. 26(a). The Advisory Committee Notes to Rule 26(a)(1)(c) accompanying its promulgation make clear that the rule "imposes a burden of disclosure that includes the functional equivalent of a standing Request for Production under Rule 34. A party claiming damages or other monetary relief must, in addition to disclosing the calculation of such damages, make available the supporting documents for inspection and copying as if a request for such material had been made under Rule 34." Fed. R. Civ. P. 26 Advisory Committee Notes to 1993 Amendments. Failure to disclose a calculation of damages and the documents supporting that calculation constitutes a violation of Rule 26. *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295-96 (2d Cir. 2006).

Rule 37(c)(1) provides that a party failing to provide information required by Rule 26(a) or (e) "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." *Hoffman v. Constr. Protective Services, Inc.*, 541 F.3d 1175, 1179 (9th Cir. 2008), *as amended* (Sept. 16, 2008)

Rule 26(a)(1)(A)(iii) requires the disclosure of "a computation of each category of damages claimed by the disclosing party." Rule 26(e)(1)(A) requires disclosing parties to supplement their prior disclosures "in a timely manner" when the prior response is "incomplete or incorrect." "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed." Hoffman, 541 F3d 1175, 1179.

Here although Mr. Keshavarz referred Mr. Samms to Guy Fairstein in December 2014, and Mr. Fairstein last billing entry is dated May 20, 2015, Mr. Keshavarz did not disclose the amount of Mr. Fairstein's bill until August 18, 2015. (See Fainstein's Bill, Genovesi Declaration

29

"Exhibit A") Not only was Mr. Faistein's bill calculable, but it comprised almost the entirety of Plaintiff's damages in this case.

Plaintiff violated the requirements of Rule 26 by not only failing to provide a computation of each category of damages claimed but also failing to make available for inspection and copying, the documents or other evidentiary material on which computation is based, *including materials bearing on the nature and extent of injuries suffered*. Fed. R. Civ. P. 26(a)(1)(A)(iii).

Plaintiff's first Rule 26 disclosure is dated May 5, 2015 and contains no computation of economic damages. (See Rule 26 Disclosure 1, Genovesi Declaration at "Exhibit B"). Plaintiff's second Rule 26 Disclosure is dated August 7, 2015 and also contains no computation of economic damages. (See Rule 26 Disclosure 2, Genovesi Declaration at "Exhibit C"). It was not until September 5, 2015, after amending his Rule 26 disclosure several more times, that Plaintiff finally amended his Rule 26 disclosure to include calculable damages. (See Rule 26 Disclosure 3, Genovesi Declaration at "Exhibit D"; See Rule 26 Disclosure 4, Genovesi Declaration at "Exhibit E"; See Rule 26 Disclosure 5, Genovesi Declaration at "Exhibit F").

Plaintiff's failure to timely provide any disclosures pursuant to Rule 26 frustrated the very purpose of Defendant's Offer of Judgment which was served on July 24, 2016 as was made based upon Defendant's guess at the amount of damages Plaintiff would claim. (See Exhibit I). Since Plaintiff was obligated to provide this information to Defendants even without a discovery request, this failure to provide a computation of damages should preclude Plaintiff from being awarded attorneys' fees or should result in a substantial diminution of any attorney's fee award. The practice of not providing known, calculable damages until late in discovery can easily be understood as a device to frustrate offers of judgment. Defendant had to guess at the amount of Plaintiff's calculable damages without the benefit of Mr. Fairstein's bill or the amount of money

Plaintiff claims he paid to go to court and guessed $6,001 plus statutory damages of $1,000. The jury's verdict of a few hundred dollars more than Defendant's offer of judgment which rewards Plaintiff for not complying with the Federal Rules.

> **c. Plaintiff's attorney's work on this case has not precluded him from accepting other employment or from billing time on other existing cases**

In his application Plaintiff's counsel recites that he has been precluded from accepting other employment or from billing on other existing matters. Notably Mr. Keshavarz worked with one associate who late in this litigation left and was replaced by another associate and has no support staff. Throughout this litigation, calls to Mr. Keshavarz' office were either answered by Mr. Keshavarz or went to voicemail. The billing records submitted by Plaintiff's counsel reflect no time expended by anyone other than Mr. Keshavarz. However, since filing this action Plaintiff's counsel has filed the following actions:

| | | | | | |
|---|---|---|---|---|---|
| Keshavarz, Ahmad (aty) | nysdce | 1:2015-cv-02741 | 480 | 04/08/2015 | |
| Samms v. Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara & Wolf, LLP | | | | | |
| Keshavarz, Ahmad (aty) | nysdce | 1:2015-cv-03524 | 480 | 05/05/2015 | 03/15/2016 |
| Arroyo v. JPMorgan Chase Bank, N.A. et al | | | | | |
| Keshavarz, Ahmad (aty) | nyedce | 1:2015-cv-03757 | 480 | 06/26/2015 | |
| Francis v. LVNV Funding LLC et al | | | | | |
| Keshavarz, Ahmad (aty) | nysdce | 1:2015-cv-05813 | 480 | 07/24/2015 | |
| Victor Callender V. Forster and Garbus, LLP | | | | | |
| Keshavarz, Ahmad (aty) | nysdce | 1:2015-cv-07795 | 480 | 10/01/2015 | 03/17/2016 |
| Mateo v. Mel S. Harris and Associates LLC et al | | | | | |
| Keshavarz, Ahmad (aty) | nysdce | 1:2015-cv-05854 | 480 | 10/11/2015 | |
| Young v. Portfolio Recovery Associates LLC | | | | | |
| Keshavarz, Ahmad (aty) | nysdce | 1:2015-cv-08232 | 480 | 10/19/2015 | 05/11/2016 |
| Sands v. Gutman, Mintz, Baker & Sonnenfeldt, P.C. | | | | | |
| Keshavarz, Ahmad (aty) | nysdce | 1:2015-cv-09388 | 480 | 11/30/2015 | |
| Arias v. Gutman Mintz Baker & Sonnenfeldt PC et al | | | | | |
| Keshavarz, Ahmad (aty) | nyedce | 1:2015-cv-07088 | 480 | 12/11/2015 | 03/17/2016 |
| Phillips v. LVNV Funding, LLC et al | | | | | |

| Keshavarz, Ahmad (aty) | nysdce | 1:2016-cv-00750 | 480 | 02/01/2016 |
|---|---|---|---|---|
| Dixon v. Stephen Einstein & Associates, P.C. | | | | |
| Keshavarz, Ahmad (aty) | nyedce | 1:2016-cv-01074 | 480 | 03/03/2016 |
| Martinez v. LVNV Funding LLC et al | | | | |
| Keshavarz, Ahmad (aty) | nysdce | 1:2016-cv-02134 | 480 | 03/22/2016 |
| Morales v. Kavulich & Associates, P.C. et al | | | | |
| Keshavarz, Ahmad (aty) | nyedce | 1:2016-cv-01627 | 480 | 04/02/2016 |
| Prage v. Kavulich & Associates, P.C. et al | | | | |
| Keshavarz, Ahmad (aty) | nysdce | 1:2016-cv-03499 | 480 | 05/10/2016 |
| Guzman et al v. Mel S Harris and Associates, LLC et al | | | | |

All of the foregoing actions involved Mr. Keshavarz's personal involvement, which demonstrates that Plaintiff's counsel was clearly not precluded from working on other cases during the course of this litigation.

CONCLUSION

Wherefore, based upon the foregoing, Defendant respectfully that the fees Plaintiff's counsel has requested be denied entirely or, in the alternative, substantially reduced.

Dated:      June 1, 2016
           Lake Success, New York

                  Respectfully submitted,

                  ABRAMS, FENSTERMAN, FENSTERMAN,
                  EISMAN, FORMATO, FERRARA
                  & WOLF, LLP

                  By_____

                  Anthony Genovesi, Esq.
                  1111 Marcus Avenue
                  Lake Success, New York 11042
                  (516) 328-2300
                  *Attorneys for Defendant*