# A H M A D   K E S H A V A R Z

*Attorney at Law*

16 COURT STREET, #2600
BROOKLYN, NY 11241

WWW.NEWYORKCONSUMERATTORNEY.COM
E-mail: ahmad@NewYorkConsumerAttorney.com

Telephone: (718) 522-7900
Fax: (877) 496-7809

February 5, 2026

**VIA ECF**

Honorable Lara K. Eshkenazi
United States District Court,
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:  **Plaintiffs' Opposition to Landlord Defendants' Motion to Compel [Dkt. No. 66].**
> ***Gachelin et al v. Kavulich & Associates, P.C. et al**, 1:25-cv-03127-PKC-LKE*

Dear Judge Eshkenazi:

The undersigned represents Plaintiffs in this action against Defendants Kavulich & Associates, P.C., a debt collection law firm, and its principal Gary Kavulich ("the Kavulich Defendants"); Renaissance Equity Holdings LLC D ("Renaissance"), a landlord which retained, directly or through a servicer, the Kavulich Defendants to collect rental arrears against consumers including the Plaintiffs for a debt that previously settled in landlord-tenant court, and the related, interlocking, and controlling management and ownership entities, Renaissance Equity Holdings LLC, Clipper Realty, L.P., Clipper Equity, LLC, and Clipper Realty, Inc. (together with Renaissance, "the Landlord Defendants"); A & F Process Service Inc. d/b/a Allied Process Service ("Allied"), a process serving company which Plaintiffs allege submitted a false affidavit of service against Plaintiffs on behalf of the Kavulich Defendants and Renaissance; and Hashem Hussein, a process server who executed the affidavit of service.

## 1.  Motion to compel should be denied without prejudice for failure to confer via telephone as required by local rule.

Plaintiffs file this letter in opposition to the Motion to Compel filed by the Landlord Defendants, Dkt. No. 66. The Landlord Defendants, with one exception noted below, did not meet and confer with Plaintiffs' counsel as required prior to moving to compel. Therefore, the motion to compel should be denied, without prejudice.

Fed.R.Civ.P. 37(a)(1) reuires a certificate of conference in any motion to compel. "The motion ***must*** include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." (emphasis added). There is no such certification in the motion to compel. This the motion should be denied without prejudice.

Moreover, as you know, Your Honors' Individual Practice rule III. B. 1. requires, "Before making a discovery motion, parties must meet and confer, and make a good faith effort to resolve any disputes." This was not done. Opposing counsel ***never even called*** the undersigned before making the application. On December 30, the day after receiving Plaintiffs discovery answers opposing counsel sent a letter [Dkt. No. 66-6] opposing counsel sent a letter

with the following attempt to confer: "Please cure these deficiencies by December 31, 2025 or provide a time to meet and confer on or before that day." In addition the email opposing counsel sent [Dkt. No. 66-7] was sent the day before the undersigned went on vacation and asked to speak when opposing counsel knows [Dkt. 62] the undersigned was stuck out of town with limited computer access because of the snow storm that shut down flights to New York. In sum, opposing counsel did not "make a good faith effort" to "meet and confer". As per Your Honors' rules, the application should be denied. "Failure to comply with this requirement *will* result in denial of the motion." Rule III B. 1.(emphasis added).

Yesterday I emailed counsel for Landlord Defendants, reminded him of the local rule requirement to speak by telephone (apparently now revised), and asked him to withdraw the application without prejudice. I asked for times to speak Thursday or Friday this week about any discovery concerns he might have. Opposing counsel refused to withdraw the application.

Incidentally, Plaintiffs made no objection to most of the document production demands, and indicated production would be made under separate cover. I have been organizing several hundred pages of document production, and will get that bate-stamped and served later this week.

**2. The only issue discussed on the phone was initial disclosures, which were largely addressed, and yet Landlord Defendants are seeking to compel on items he indicated were not in dispute.**

As to the only issues opposing counsel spoke on the phone that remained in dispute with was as to Plaintiff's initial disclosures. Opposing counsel asked for an itemization of the various monetary expenses. I indicated these were items such as plane tickets on the transportation costs related to having to be forced to make repeated trips to New York to oppose the attempts of Renaissance to obtain a judgment based on a false affidavit of service for a debt Renaissance had settled before nevertheless sending the debt to be sued upon. As I indicated to opposing counsel, I believe those expenses will not be more than about $2,000, but I will get the charges and add up the numbers. I noted to opposing counsel that the Landlord Defendants had yet to propound production demands, but when they did I would respond. There is no dispute Landlord Defendants are entitled to information regarding these small economic damages and no dispute I will provide it.

As to the discovery issues on Dkt. No. 66 pp. 2-4, for which Landlord Defendants have never made any good faith attempt to confer and which should therefore be denied out of hnad without prejudice, there are indications that Landlord Defendants are attempting to raise again items that counsels had conferred and resolved. The undersigned discussed and provided significant legal authority [Dkt. No. 66-1, page 4 of 6, ¶ 3] for the proposition that a party need not provided a monetary amount for an unliquidated damages, especially if the party does not know. Opposing counsel accepted that, indicated he would look into the caselaw, and if he had contrary caselaw he would raise it, which he never has. As to medical damages, I indicated the case was seeking garden variety emotional distress and in those instances the caselaw indicated that medical records did not need to be provided. Opposing counsel seemed to accept that, and indicated that if that were an issue he would discuss with me again. He never did. And yet now he seeks medical releases.

**3. Impermissible Reply should be stricken or ignored.**

Landlord Defendants use the opportunity of the motion to compel application to add a two page reply in support of its application to stay discovery (ironically) and to compel a settlement conference [Dkt. No. 61]. That is improper without seeking leave and should be stricken or disregarded.

### 4. Personal attacks on the undersigned are improper and false.

Opposing counsel also takes the opportunity in its application to make personal attacks against the undersigned [Dkt. No. 66, p. 4]. Normally I would ignore such conduct as it says more about the speaker than the recipient, but the allegations are so over the top that I feel compelled to make some response.

Opposing counsel cites to declaration of a former opposing counsel for a car dealership, Nicholas Goodman, making a series of bad faith allegations against the undersigned in the fee petition opposition in *Francois v. Spartan Auto Group, LLC*, et. al., Civ- No. 1:22-cv-4447 (JSR). What opposing counsel somehow forgot to mention was that in his fee petition order, Judge Rakoff rejected the allegations of bad faith.[1] In particular, the Court rejected any allegation that settlement offers were not relayed to the plaintiff. ("Plaintiff has produced evidence that she instructed her counsel to reject each of those offers."). Judge Rakoff also emphasized the importance of enforcement of consumer protection statutes.[2]

---

[1] *Francois v. Victory Auto Group LLC*, 2025 WL 2699991, at *4–7 (S.D.N.Y., 2025):

[D]efendants broadly contend that plaintiff's counsel prolonged the litigation in various ways, unreasonably inflating the number of hours expended. Defendants' complaints are many but roughly accuse Keshavarz of failing to engage in good-faith settlement negotiations…

… Defendants contend that the award should be significantly reduced, and, in particular, request that the award be reduced to compensate for only the work done before defendants made their first settlement offer in July 2022, or at the latest, one of their subsequent settlement offers. In the alternative, defendants contend that any additional hours should be reduced by 50 percent. See Fee Opp. at 20.

The Court declines to reduce the number of hours billed to categorically exclude work undertaken after defendants' various settlement offers. "Absent a showing of bad faith, 'a party's declining settlement offers should [not] operate to reduce an otherwise appropriate fee award.' " Ortiz v. Regan, 980 F.2d 138, 141 (2d Cir. 1992) (quoting Cowan v. Prudential Ins. Co. of Am., 728 F. Supp. 87, 92 (D. Conn. 1990), rev'd on other grounds, 935 F.2d 522 (2d Cir. 1991)); see also Rozell v. Ross-Hoist, 576 F. Supp. 2d 527, 542 (S.D.N.Y. 2008) ("Nor is it appropriate to reduce the lodestar on the grounds that the plaintiff might have settled earlier.")…

… The Court also is not persuaded that plaintiff's rejection of the various settlement offers was in bad faith. Plaintiff has produced evidence that she instructed her counsel to reject each of those offers. See Fee Reply at 8. Moreover, although communications between the parties about the possibility of mediation and/or settlement were terse and somewhat tense, both parties appear to have contributed to the tenor of those exchanges by stating non-negotiable demands about the circumstances in which they would agree to mediation and/or settlement… Accordingly, the Court will not categorically exclude from compensation the hours billed after defendants' various settlement offers on account of bad faith.

[2] *Francois v. Victory Auto Group LLC*, 2025 WL 2699991, at 7 (S.D.N.Y., 2025):

Finally, the Court notes that although defendants repeatedly emphasize the small value of plaintiff's claims, the disproportionality between the "financial value" of a case and the fees requested is not, in and of itself, a reason to reduce the award. See Kassim v. City of Schenectady, 415 F.3d 246, 252 (2d Cir. 2005); see also Millea, 658 F.3d at 168 ("Absent a purely technical victory in an otherwise frivolous suit, litigation outcomes are only relevant to fee award calculations when they are a direct result of the quality of the attorney's performance."). This is particularly so

3

Oddly, the Landlord Defendants' cite to *Samms v. Abrams*, 198 F.Supp.3d 311, 319, 320 (S.D.N.Y., 2016) where the Court (coincidently, also Judge Rakoff) also rejected defense counsel's personal attacks on the undersigned. ("Abrams has not made a satisfactory showing that Samms's counsel acted in bad faith. Notably, plaintiff also complains about defendant's delay in responding to settlement offers."). *Id*. Indeed, in reviewing the case overall, the Court found a substantial fee award was justified.

The Landlord Defendants cite *Kulig v Midland Funding, LLC*, 13-CV-4715 PKC, 2014 WL 6769741, at *1 (S.D.N.Y. Nov. 20, 2014) for the proposition that counsel "failed to inform client of settlement offer." That most certainly not what the case says. The case says that the undersigned signed a declaration that I relayed a settlement offer to the client but that the client's testimony on this was ambiguous. "This testimony neither provides direct support for Keshavarz's version of events nor directly contradicts it." *Id*.

In sum, counsel for Landlord Defendants is attempting to distract this Court the merits of the case by making personal attacks on the undersigned. As Judge Rakoff noted, personal attacks regarding other cases, "have no bearing on the case here." *Samms* at 320.

This case is about the Landlord Defendants suing two elderly tenants, settling the debt, and nevertheless then forwarding the account over to Kavulich to sue upon the settled debt, possibly not disclosing the debt was already settled, [Dkt. No. 44-19 (email directing Kavulich to file suit)]; using a process server who has been documented to have filed hundreds of affidavits of impossible service; forcing Plaintiffs, *pro se*, to make four trips from Florida to Kings County Court in attempt to strong-arm and wear Plaintiff's down to sign a judgment and indeed to release claims against their claims Landlord Defendants and Kavulich for this misconduct. Now in the case at bar, the Landlord Defendants are attempting to strong arm Plaintiffs into a settlement without disclosing any discovery whatsoever, much less the discovery needed to properly evaluate the value of this case – especially as to potentially enormous punitive damages. And one factor a jury considers in the award of punitive damages is the financial resources of the defendant. (see Dkt. No.44-13 pp. 73-74, detailing assets more than $1.2 billion and annual revenues more than $148 million).

Plaintiff prays the Court deny the application of the Landlord Defendants [Dkt. No. 66] without prejudice, in its entirety.

Respectfully,

/s/

Ahmad Keshavarz

cc: Enclosure

---

in the context of consumer protection statutes, such as the FCRA, which were "enacted in part to secure legal representation for plaintiffs whose ... injury [is] too small, in terms of expected monetary recovery, to create an incentive for attorneys to take the case under conventional fee arrangements." Hancock, 592 F. Supp. 3d at 255 (quoting Rivera v. Corp. Receivables, Inc., 540 F. Supp. 2d 329, 338 (D. Conn. 2008)); see also Kassim, 415 F.3d at 252. Thus, even if plaintiff's recoverable damages were "minimal," as defendants contend, that would not render the number of hours expended unreasonable or require reducing the fee award. Fee Opp. at 2; see also Millea, 658 F.3d at 154 ("The whole purpose of fee-shifting statutes is to generate attorneys' fees that are disproportionate to the plaintiff's recovery").