

Allen Schwartz, Esq.<br>
150 Broadway, Suite 701<br>
New York, NY 10038<br>
(347) 682-5075<br>
allen@allenschwartzlaw.com

**VIA ECF**                                                                                     February 12, 2026

Honorable Lara K. Eshkenazi
United States District Court, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201
      Re: *Gachelin et al v. Kavulich & Associates, P.C. et al*, 1:25-cv-03127-PKC-LKE

Dear Judge Eshkenazi:

On behalf of the Landlord Defendants, I respectfully submit this letter in opposition to Plaintiffs' motion to compel.[1]

### I.    The Landlord Defendants' Document Production

The Landlord Defendants made an extensive production today producing the rent ledger showing payment and expense history for Plaintiffs, internal and external email communications in connection to the alleged attempted collection of the purported debt (with redactions when with counsel), their leases with Plaintiffs, documents relating to a prior settlement agreement for a personal injury lawsuit filed by Mr. Gachelin against Renaissance, photographs of the vacated unit, documents relating to cleanup costs, documents relating to Plaintiffs' relationship with the Landlord Defendants, and other documents regarding Plaintiffs. They also provided Plaintiffs with a privilege log to account for redacted documents. Previously, in connection with their initial disclosures on November 5, 2025, the Landlord Defendants produced insurance policies and letters showing that the Landlord Defendants were denied insurance coverage for this litigation.

### II.    Plaintiffs' Meet and Confer Narrative is Fictitious

Plaintiff's meet and confer narrative is fictitious. On November 6, 2025, Plaintiff's counsel contacted me requesting a 30-day extension of his time to respond to Renaissance's pending motion to dismiss, telling me that he had no time that month to prepare opposition, that his schedule was jam packed with depositions and travel and other matters for the next month, and asked that I consent to the letter application he intended to file with the Court that would extend his time to oppose the motion into December 2025. During a phone call on November 7,

---

[1] The "Landlord Defendants" are Renaissance Equity Holdings, LLC D, Clipper Equity LLC, Clipper Realty Inc., Clipper Realty L.P., and Renaissance Equity Holdings LLC.

2025 to address his adjournment request, we agreed that, as part of Renaissance's consenting to adjourn the motion to dismiss opposition deadline (Renaissance was adamant that it wanted that motion briefed as soon as possible), at Renaissance's request, we would have our first meet and confer on discovery issues on November 25, 2025. That was memorialized in an email where Plaintiff's counsel stated: "We conferred and agreed 1. You agree to the attached [letter application to adjourn]. 2. We confer on November 25." See **Exhibit 1**.

Then after getting Renaissance's consent to this substantial extension, Plaintiff's counsel then acted as if none of that just happened, sending me an email on November 13, 2025 acting as though we had already met and conferred (**Exhibit 2**), and another on November 18, 2025, threatening to file a motion to compel the next day. See **Exhibit 3**. On November 18, 2025, I responded that we had scheduled our first meet and confer for November 25, 2025, and counsel's subsequent behavior was improper. See **Exhibit 4.** Counsel wrote me on November 24, 2025, demanding that we confer that day, again completely ignoring and not acknowledging the email I sent on November 18, 2025, or his own agreement on November 7, 2025 that we would confer on November 25, 2025. See **Exhibit 5** ("I just left you a voicemail to discuss discovery issues further. I have now left multiple unreturned calls to discuss discovery. I will note that in my certificate of conference. I can speak from 9:00 AM to 9:45, 11:30 – 2:00, 4:00 – 6:00."). I responded that we would meet and confer on the date we had agreed upon. *See id.*

On November 25, 2025, we held an approximately two-hour call via Zoom (which counsel does not mention). During that meet and confer, I told counsel that I believed many of Plaintiffs' demands were disproportionate to the needs of this case given the amounts at issue appear to be small. Many of his demands were overbroad and sought irrelevant information or documents far afield from Plaintiffs' claims and some appeared to be fishing expeditions to identify new entities to sue or to manufacture new claims or lawsuits. I also told counsel that we would make a production later that week but that we need to enter a protective order (as contemplated by the Court's scheduling order) before we could make a document production.

On November 25, 2025, counsel sent me a proposed protective order with changes to the Court's form order. *See* **Exhibit 6**. On November 26, 2025, I responded with revisions to his proposal. *See* **Exhibit 7**. Plaintiff's counsel insisted on his proposed changes at that time going into the Thanksgiving weekend. *See* **Exhibit 8**. After insisting that I agree to his changes to the protective order in a series of emails, on December 4, 2025, I received an email from Plaintiff's counsel requesting that Renaissance withdraw its motion to dismiss because he had amended the complaint, and telling me, "Will get back to on protective order in a separate email." *See* **Exhibit 9**. I did not hear back about the protective order for almost another month.

Meanwhile, on December 8, 2025, the Landlord Defendants had independently served an offer of judgment that proposed to resolve this matter for an amount of $72,000.00 plus reasonable attorney's fees. Plaintiffs did not respond to that offer of judgment. In my call with Plaintiff's counsel on November 26, 2025, I had also orally conveyed a similar offer to him and told him that the Landlord Defendants wanted to engage in settlement discussions to resolve this action. Moreover, I explained that Landlord Defendants would be less willing to settle if they had to expend heavy litigation costs after making good faith attempts to resolve this action. I asked that regardless of whether the offer was deemed acceptable by Plaintiffs, that he confer

with his clients and respond with a settlement demand or counterproposal whatever amount it might be. I received no response following this call. I then followed up with an email on December 4, 2025, which was likewise ignored. *See* **Exhibit 10**.

The next email communication from Plaintiff's counsel regarding the protective order came on December 26, 2025, during the holiday weekend, wherein he told me he would agree to the changes I requested. *See* **Exhibit 11**. I asked counsel if the other parties had agreed, and on or about December 29, 2025 he circulated the document to the other parties, who gave their consent that day. *See* **Exhibits 12 and 13**. He then filed the proposed protective order with the Court on January 20, 2026.

The next day, the Landlord Defendants filed a motion for a settlement conference and a renewed request for a discovery stay pending the resolution of the Landlord Defendants' motion to dismiss and/or a settlement conference. ECF No. 61. This motion was filed after the Landlord Defendants' good-faith settlement proposals and in consideration of the now briefed motion to dismiss, and in the firm belief that a settlement conference with the client's present is, in the Landlord Defendants' view, absolutely critical to achieve any settlement. On February 1, 2026, the Landlord Defendants filed a motion to compel discovery in the alternative of their pending stay motion. ECF No. 66. Plaintiffs filed this motion to compel on February 5, 2026. ECF No. 68.

### III. Plaintiffs' Have Not Sought to Confer Regarding the Recent Discovery Demands Directed to the Newly Appearing Landlord Defendants

On December 26, 2025, Plaintiffs emailed discovery demands on the newly appearing Landlord Defendants which almost entirely duplicate the demands they served on Renaissance. Plaintiffs did not seek to meet and confer with respect to demands on the newly appearing Landlord Defendants and to the extent their requests contain any demand not previously served on Renaissance, in accordance with local rules, the Court should not address such demand until after conferral.[2]

### IV. The Objections to the Requests for Production

Plaintiffs' document requests appear designed to increase litigation costs by seeking documents that by their very nature "raise significant attorney-client, work product, and deliberative privilege concerns" given that Plaintiffs are seeking all communications between Defendants and counsel in prosecuting a landlord-tenant action against Plaintiffs to evict them for unpaid rental arrears, entering into a settlement with them which allegedly released any arrears in exchange for their departure from the property, and then commencing a lawsuit in civil court seeking to collect the arrears. *Rapkin v Rocque*, 228 F Supp 2d 142, 156 (D Conn. 2002). These communications are privileged since they involve "confidential communications between

---

[2] Plaintiffs appended a request to admit which the newly appearing Landlord Defendants responded to on February 12, 2026, after the January 25, 2026 deadline. Plaintiffs have stated that they will not accept a late response from the newly appearing Landlord Defendants. The newly appearing Landlord Defendants will therefore be filing a motion to extend the time to respond and/or to withdraw any deemed admissions.

client and counsel made for the purpose of obtaining or providing legal assistance." *Bonacasa v Std. Chartered PLC*, 22-CV-03320 (ER), 2025 WL 1380079, at *2 (S.D.N.Y. May 12, 2025) (citations and quotations omitted). The Landlord Defendants assert the attorney client and work product privileges as to each request that could be construed as seeking such information.

Furthermore, the fact that unpaid arrears were settled in a so-ordered state-court stipulation, and a collection lawsuit was subsequently filed, is a matter of public record reflected in court filings and is uncontested. Plaintiffs are not entitled to breach the attorney-client privilege and obtain the Landlord Defendants' communications with counsel.

Request No. 1 seeks "documents regarding plaintiff," as well as "the putative debt" or "attempts to collect the putative debt." The Landlord Defendants object to the request to produce "documents regarding plaintiff" or "the putative debt" unrelated to the allegations at issue in this case. Request No. 3 similarly seeks documents "regarding plaintiff," which is likewise overbroad, unduly burdensome, and disproportionate to the needs of the case. Request No. 4 seeks "[d]ocuments sufficient to demonstrate the identity of every person who was involved in attempts to collect the debt," which the Landlord Defendants assume to mean the putative debt at issue in this proceeding. The Landlord Defendants object to this request as both vague and unduly burdensome to the extent it is not limited to seeking to identify the individuals who had a material role in attempting to collect the debt.

Request No. 5 remains vague and unclear to the extent that the Landlord Defendants still do not understand what "govern" the collection of the debt at issue in this proceeding means. Similarly, Request Nos. 6 and 8 are unclear and vague and the Landlord Defendants cannot discern what Plaintiffs are seeking in requesting documents "reflecting the policies and procedures" with respect to rent ledgers or settlements of arrears.[3] To the extent they are seeking all rent ledgers and all settlements with all of the Landlord Defendants' tenants, this request is patently improper, overbroad, unduly burdensome, disproportionate, and vexatious in nature.

Request No. 15 is facially overly broad, unduly burdensome and disproportionate insofar as it seeks all communications relating to the "putative debt." "Discovery requests should be tailored as narrowly as possible to the specific issues of this case." *Rapkin v Rocque*, 228 F Supp 2d 142, 156 (D Conn. 2002). The allegation in this action is that the Landlord Defendants improperly sought to collect on released arrears despite a so-ordered release. Communications unrelated to the attempted collection of the "putative debt" are irrelevant, unduly burdensome, disproportionate, and are improperly designed to increase the costs of this litigation.

Request No. 16 seeks irrelevant information regarding all rent rolls, leases and other documents in Plaintiff's former building for all tenants at the property, not Plaintiffs. This request "calls to mind case law that states that '[d]iscovery is not a fishing expedition for Plaintiffs to obtain information to try and create claims that do not already exist.'" *Stein v Skatteforvaltningen*, 23 CIV. 2508 (NRB), 2024 WL 382090, at *1 (S.D.N.Y. Feb. 1, 2024)

---

[3] These requests seek the "documents reflecting the policies and procedures in connection with the use of rent ledgers and/or breakdowns such as the Rent Ledger used in the Lawsuit against Plaintiff" or the "Documents reflecting the policies and procedures in connection with the settlement of putative rental arrears, including the policies and procedures in connection with the authorization of the LT Settlement."

(*Toussaint v. Interfaith Med. Ctr.*, 21 Civ. 1100 (ARR)(JRC), 2022 WL 118722, at *8 n.10 (E.D.N.Y. Jan. 12, 2022). "The Court [should] not tolerate discovery requests that are mere fishing expeditions." *Rapkin*, 228 F Supp 2d at 156. This request seeks information that is irrelevant, unduly burdensome, disproportionate, and vexatious in nature.

Plaintiffs similarly object to Request No. 18 which seeks all "contracts governing the relationship between Renaissance Equity Holdings LLC D and other Flatbush Gardens entities, including but not limited to Clipper Realty and the other Renaissance Equity Holdings LLCs." Plaintiffs are not entitled to a fishing expedition into the corporate documents and corporate structure and contracts of the Landlord Defendants so they can try to identify more Landlord Defendant entities to sue. Plaintiffs do not "demonstrate that [][this] discovery would change the landscape of this case." *Loma Deli Grocery Corp. v United States*, 20 CIV. 7236 (JPC), 2021 WL 4135216, at *12 (S.D.N.Y. Sept. 10, 2021).

Finally, the Landlord Defendants do not believe that this discovery is warranted, justified, or proportionate to the amounts at stake or the issues in this case. When cases do not involve significant money at stake the "burden becomes a greater consideration." *Artese v Academy Collection Serv., Inc.*, 3:96CV2546(GLG), 1997 WL 509404, at *1 (D Conn. July 28, 1997) (noting that in FDCPA cases, plaintiff's lawyers are incentivized to inflate the costs of discovery). As the undersigned wrote in another to the Court, cases in this District have found that these cases typically support emotional distress damages between $100 and $5000.00, and counsel's verbal representation has been that the Plaintiffs suffered less than $2000 in economic damages. Moreover, Plaintiffs have resisted discovery regarding their alleged claims of damages.

## V.     The Objections to the Interrogatories

Regarding the interrogatory responses, the Landlord Defendants object to Request No. 11, which demands that the Landlord Defendants identify everyone who acts on their behalf to collect any rental arrears, not just from Plaintiffs. This request seeks irrelevant information, is overly broad, and unduly burdensome, especially in the context of a business that owns numerous real properties with many rental units and many employees. It is also disproportionate and part of Plaintiff's counsel's fishing expedition to locate new Landlord Defendant targets. "The Court [should] not tolerate discovery requests that are mere fishing expeditions." *Rapkin*, 228 F Supp. 2d at 156. Similarly, Request Nos. 10 and 12 seek to identify Landlord Defendant affiliates involved in the ownership and management of the property where Plaintiffs lived, but that has no relevance or bearing on the claims in this proceeding, as identifying all owners or building managers at the property is irrelevant to the claims here—namely, the allegation that Renaissance, together with affiliate entities, improperly pursued a collection lawsuit against Plaintiffs.

Plaintiffs do not understand what the Landlord Defendants are seeking in Request No. 13 in asking for an accounting of what the Landlord Defendants claim is owed from "from the filing of the lawsuit." Moreover, Plaintiffs do not believe this request has any relevance. The Landlord Defendants do not dispute that they entered a so-ordered stipulation releasing arrears sought in a lawsuit, the claim seeking those arrears was dismissed, and they are not seeking arrears here.

                        Sincerely,

                        /s/ Allen Schwartz, Esq.