# AHMAD KESHAVARZ
*Attorney at Law*

---

16 COURT STREET, #2600
BROOKLYN, NY 11241

WWW.NEWYORKCONSUMERATTORNEY.COM
E-mail: ahmad@NewYorkConsumerAttorney.com

Telephone: (718) 522-7900
Fax: (877) 496-7809

February 19, 2026

**VIA ECF**

Honorable Pamela K. Chen
United States District Court,
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    Plaintiffs' sur-reply in response to new arguments the Landlord Defendants raised for the first time in their Reply in Support of their Motion to Dismiss. (Dkt. 55, pp. 3-7)
            *Gachelin et al. v. Kavulich & Associates, P.C. et al.*, 1:25-cv-03127-PKC-LKE

Dear Judge Chen:

      The undersigned represents Plaintiffs in this action against Defendants Kavulich & Associates, P.C., a debt collection law firm, and its principal Gary Kavulich ("the Kavulich Defendants"); Renaissance Equity Holdings LLC D, a landlord which retained, directly or through a servicer, the Kavulich Defendants to collect rental arrears against consumers including the Plaintiffs for a debt that previously settled in landlord-tenant court, and the related entities Clipper Equity LLC, Clipper Realty Inc., Clipper Realty L.P., and Renaissance Equity Holdings LLC (together with Renaissance Equity Holdings LLC D, "the Landlord Defendants"); A & F Process Service Inc. d/b/a Allied Process Service ("Allied"), a process serving company which Plaintiffs allege submitted a false affidavit of service against Plaintiffs on behalf of the Kavulich Defendants and the Landlord Defendants; and Hashem Hussein, a licensed process server who executed the affidavit of service.

      On December 26, 2025, the Landlord Defendants filed a Motion to Dismiss [Dkt. No. 54], and a Memorandum of Law in Support [Dkt. No. 54-1] ("Mot."). The Landlord Defendants had served this motion on November 3, 2025, in the name of the original Landlord Defendant only, Renaissance Equity Holdings LLC D. [Dkt. No. 42]. Plaintiffs amended their complaint after receipt of this motion to add the rest of the Landlord Defendants [Dkt. No. 44]. In Response, the Landlord Defendants asked to proceed with their already-served Motion to Dismiss as to all of the Landlord Defendants. [Dkt. No. 48]. Plaintiffs proceeded to serve their Response in Opposition on December 12, 2025. [Dkt. No. 52]. On December 26, the Landlord Defendants served their Reply, and Plaintiffs and the Landlord Defendants filed all the papers on ECF. [Dkt. Nos. 54-56].

      In their Reply in Support of their Motion to Dismiss, the Landlord Defendants raised for the first time arguments as to why they are not vicariously liable for the acts of their freely chosen agents in the course of litigation against the Plaintiffs. On February 4, 2026, Your Honor granted Plaintiffs leave to file a sur-reply of no more than three pages in response. The Landlord

Defendants' newly-raised arguments, briefly outlined below, fail for the reasons discussed herein.

Plaintiff's GBL 349 claims against Landlord Defendant include their regular use of false affidavits of service to seek or obtain sewer service judgements. (In the case at bar, the Landlord Defendants used a false affidavit of service to seek the entry of default judgments against Plaintiffs). This is both direct liability as the party in the collection lawsuit and vicarious liability for the conduct of Kavulich in doing so on half of the Landlord Defendants. Another GBL 349 claim against the Landlord Defendants is vicarious liability for Kavulich failing to have meaningful attorney involvement to make an independent legal determination that plaintiffs owed the debt for which he sued them and for which he vigorously sought to enter judgment. *See* Dkt. No. 44 (FAC) ¶¶ 33, 41-44, 46; and generally ¶¶ 74-111].

Plaintiff's gross negligence claim against the Landlord Defendants includes forwarding a known settled debt to Kavulich for suit. [Dkt. No. 44 (FAC) ¶¶ 29-33].

In its Reply, Landlord Defendants argue that because Plaintiffs' claims against it are under state law (the FDCPA not applying to an original creditor) that they are not actionable. In doing so they cite to cases that have nothing to do with the claims Plaintiffs have actually brought.

Debt collection attorneys (like Kavulich) and the plaintiffs their represent in collection lawsuits have long been held to liable for violations of GBL 349 in the use of false affidavits of service and failing to having meaningful attorney involvement in the collection lawsuits.

The Court need no further than its own decision in *Villalba v. Houslanger & Associates, PLLC*, 2022 WL 900538, at *17–18 (E.D.N.Y., 2022) to reject the arguments of the Landlord Defendants. In *Villalba* the debt collection law firm opposed and dragged out proceedings for order to show cause in state court seeking to vacate an "invalid" judgment (that is, a judgment entered based on a false affidavit of service). Your Honor denied a motion to dismiss the GBL 349 claim brought against the creditor for the failure of its collection laws firm to perform a meaningful attorney review in its collection efforts. "Given these circumstances, Galeas was entitled to "reasonably assume[ ] that an attorney had conducted a meaningful review of the [judgment] and was representing that the claims ... were actionable." *Villalba* at * 17 citing to *Diaz v. Portfolio Recovery Assocs., LLC*, No. 10-CV-3920 (ERK), 2012 WL 661456, at *14 (E.D.N.Y. Feb. 28, 2012), *report and recommendation adopted*, No. 10-CV-3920 (MKB) (CLP), 2012 WL 1882976 (E.D.N.Y. May 24, 2012).

The same is true here. Kavulich is alleged to failing to perform in a meaningful attorney review by checking the court files to determine whether the alleged rental arrears were owed; continued to press seeking the entry of a default judgment in the face of the evidence the debt was not owed and Mr. Gachelin and Ms. Abrams were never served, forcing an elderly couple to fly from Florida to Kings county court four times over a period of five months. And while the defendants in Villalba were liable under GBL 349 for collecting on judgments the result of using a false affidavit of service, that would apply equally here as Landlord Defendants and Kavulich used the false affidavit of service to attempt to enter judgment and to attempt to strong-arm them into the entry of a settlement by which a judgment would be entered against them while also releasing any claims against the Landlord Defendants or Kavulich for their misconduct.

Landlord Defendants substantive state law decisions related to sewer service liability are entirely off point. *Sanchez v. Abderrahman*, 2013 WL 8170157, at *6, fn. 14 (E.D.N.Y. 2013) is irrelevant as it deals with non-delegable duty for process server liability, and issue not raised or relied upon by Plaintiffs. Gentile v. American Express Company, 2024 WL 4350714, at *2 (E.D.N.Y., 2024) dismissed a claim of abuse of process claim based on sewer service is immaterial as Plaintiffs have not brought a claim for abuse of process. The Landlord Defendants do not even contend any of the state court cases they cite to dismiss a GBL 349 claim based on an allegation of the use of false affidavits of service to seek or obtain default judgments.

The Landlord Defendants argue that there must be evidence its control or a right to control the acts of Kavulich. Reply p. 6. This argument has been widely rejected since the thorough analysis *Okyere* decision.

> We do not agree with a requirement that an FDCPA plaintiff show "control" because claims that a principal is liable for an agent's actions normally do not require such allegations. Rather, "traditional vicarious liability rules" ordinarily make principals liable for acts of their agents merely when the agents act "in the scope of their authority."

*Okyere v. Palisades Collection, LLC*, 961 F.Supp.2d 508, 517 (S.D.N.Y.,2013). *See also, inter alia*, *Gomez v. Resurgent Capital Services, LP*, 129 F.Supp.3d 147, 156–58 (S.D.N.Y., 2015); *Hunter v. Palisades Acquisition XVI, LLC*, No. 16 CIV. 8779 (ER), 2017 WL 5513636, at *9 (S.D.N.Y. Nov. 16, 2017).

A principal is liable for the tortious acts of its agent within the scope of the agency. *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 110 (S.D.N.Y. 2009). A principal-agent relationship exists when the principal consents to allow the agent to act on his behalf and subject to his control, and where the agent consents to so act. Restatement (Third) of Agency, § 1.01; *Fils-Aime v. Ryder TRS Inc.*, 40 A.D.3d 917, 918 (App. Div. 2d Dept. 2007). The principal need only have the right to control the agent's conduct; it need not actually control every detail of the agent's conduct. *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522, 1546 (S.D.N.Y. 1991); *Mazart v. State*, 441 N.Y.S.2d 600, 605 (Ct. Claims 1981); 2A N.Y. Jur. 2d Agency § 1.3. All knowledge acquired by the agent acting in the scope of its agency is imputed to the principal. Meisel, 651 F. Supp. 2d at 110. Applied here, Landlord Defendants cannot disclaim the knowledge of Kavulich.

In any event, in the attorney-client context, there is always a right to control. "Moreover, the nature of an attorney-client relationship itself reflects that the client has the power to "control" its agent in material respects if the client wishes to do so." *Okyere* at 517.

Finally, the Landlord Defendants did exercise control over Kavulich in the most fundamental aspect of this case: they forwarded the account to Kavulich to file suit upon knowing they had already settled the debt.

Respectfully,
/s/
Ahmad Keshavarz